FILED
06/01/2020
Shirley Faust
CLERK
Missoula County District Court
STATE OF MONTANA
By: Latishia Atkins
DV-32-2020-0000604-OC
Deschamps, Robert L III
7.1

EXHIBIT 6:
PAGE 5

# PAYOFF LETTER

June 30, 2018

Project Spokane, LLC
5619 DTC Parkway, #475
Greenwood Village, CO 80111
Attention: Sean Walsh

Re: Bonner Property Development, LLC Debt Payoff

Dear Mr. Walsh:

Reference is made to: (i) that certain Promissory Note, dated December 23, 2016 (the "Promissory Note"), by Project Spokane, LLC, a Colorado limited liability company ("Maker"), in favor of Bonner Property Development, LLC, a Montana limited liability company ("Payee"), in the original principal amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) and (ii) that certain Security Agreement, dated December 23, 2016, by and between Maker and Payee (together with the Promissory Note and all related instruments, documents and agreements, the "Loan Documents").

This letter confirms that:

(1)  The outstanding balance as of the close of business on July 6, 2018 (the "Proposed Repayment Date") with regards to the Loan Documents (as adjusted per item (2) below, the "Pay-Off Amount") is as follows:

| | |
|---|---|
| Principal loan | $867,170.87 |
| Accrued interest to July 6, 2018 | $717.59 |
| **Total** | **$867,888.46** |

(2)  (2)  If Payee does not receive the Pay-Off Amount on the Proposed Repayment Date, interest will continue to accrue at the rate of **$119.60** per diem until the Pay-Off Amount is repaid.

(3)  Upon payment of the Pay-Off Amount, all obligations of Maker under the Loan Documents will be satisfied and the Loan Documents will be terminated and be of no further force or effect whatsoever.

Payee hereby agrees that effective upon payment of the Pay-Off Amount:

(a)  Payee hereby releases any and all mortgages, liens, charges, encumbrances, security interests, pledges, participations, guarantees, agreements and other rights of any kind and nature heretofore granted to Payee, or which Payee may have, in or to any assets, properties or equity interests heretofore pledged as collateral under the Loan Documents or securing any amounts owed to Payee thereunder or any obligations of Maker thereunder;

Exhibit G (2 of 3)

EXHIBIT 6.
PAGE 6

(b)     Payee hereby authorizes Maker or its designees to execute and deliver, or to cause to be executed and delivered all such documents, instruments and agreements, including UCC-3 termination statements, and to take, or cause to be taken, all actions as may be necessary or desirable, from time to time, to evidence the release of record of any mortgage, lien, charge, encumbrance, security interest, pledge, participation, guarantee, agreement and other right of any kind and nature, granted to Payee under the Loan Documents or securing any amounts owed to Payee thereunder or any obligations of Maker thereunder; and

(c)     Payee shall promptly deliver to Maker the original Promissory Note, marked "canceled."

Payment of the Pay-Off Amount should be made by ACH transfer of immediately available funds in accordance with the following instructions:

**Bonner Property Development**
**ABA No**          337
**Account No**          3164

[*Signature Page Follows*]

EXHIBIT 6.
PAGE 7

Sincerely,

Bonner Property Development, LLC

Name: _Stephen R. Nelson_
Title: _Member/manager_

_Michael D. Boehme_
_Member/manager_

_[Signature Page to Payoff Letter –Bonner Property Development, LLC]_

EXHIBIT 6.
PAGE 8

## Exhibit B

## Assignment and Assumption Agreement

Please see attached.

## ASSIGNMENT, ASSUMPTION AND AMENDMENT OF LEASE

**THIS ASSIGNMENT, ASSUMPTION AND AMENDMENT OF LEASE** (this "Assignment and Amendment") is made effective this  10th  day of July, 2018 (the "Effective Date"), by and between **PROJECT SPOKANE, LLC**, a Colorado limited liability company, whose mailing address is 5619 DTC Parkway, #475, Greenwood Village, CA 80111 ("Assignor"), and **HYPERBLOCK LLC,** a Delaware limited liability company, whose mailing address is 120 Adelaide Street West, Suite 2210, Toronto, ON M5H 1T1 ("Assignee").

### RECITALS:

A.      Assignor currently owns certain real property located in the Bonner Millsite in Bonner, Montana (the "premises") which are currently leased pursuant to the terms and conditions of that certain Commercial Lease Agreement, dated March 1, 2016, as amended by that certain First Amendment, effective as of January 1, 2017, and that certain Second Amendment, dated July 13, 2017 (the "Lease"), by and between Assignor and **BONNER PROPERTY DEVELOPMENT, LLC**, a Montana limited liability company (herein referred to as "Lessor").

B.      Assignor has engaged in a transaction pursuant to which substantially all of the assets of Assignor have been acquired by Hyperblock LLC, a Delaware limited liability company (the "Transaction").

B.      Pursuant to the Transaction, Assignor desires to transfer all of its right, title and interest in the Lease to Assignee upon the terms and conditions hereinafter set forth.

C.      Also pursuant to the Transaction, Assignee desires to assume the Lease and all obligations thereunder upon the terms and conditions set forth below.

D.      Lessor consents to the assignment under the conditions set forth herein and agrees to amend the Lease to reflect Assignee as the tenant moving forward.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained herein and for valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the parties hereby agree as follows:

1.      **Assignment of Lease; Disclosure of Assignee's Information**.

A.      Assignor hereby grants, assigns and transfers to Assignee all of its right, title and interest in and to the Lease as amended by this Assignment and Amendment.

B.      Assignee hereby provides the following specific information to Lessor in connection with this Assignment and Amendment:

(i)      The name and contact information for Assignee is:

HYPERBLOCK, LLC
c/o HYPERBLOCK TECHNOLOGIES CORP.
388 Carlaw Avenue, Suite 300
Toronto, Ontario

Assignment, Assumption and Amendment of Lease

EXHIBIT 6.
PAGE 10

M4M 2T4
Telephone Number: 416-551-7646
E-mail Address:  tim@hyperblock.co
Current Contact Name:  Tim Smart

**2.**     **Duties and Obligations.**  Assignor hereby assigns and delegates to Assignee only Assignor's duties and obligations under the Lease which both (i) first arising after the closing of the Transaction, and (ii) do not relate to or arise from pre-closing breaches or occurrences prior to the closing that may give rise to such a breach (the "Assumed Obligations"); and in consideration of the Lease herein being assigned to Assignee, Assignee hereby accepts this assignment and agrees to assume and perform, and hereby assumes, all of the Assumed Obligations contained in the Lease to be observed, kept, performed or complied with by Assignor under the Lease from and after the Effective Date (and the Assignor shall remain liable for all other duties, obligations, covenants, agreements, promises, terms, conditions and provisions contained in the Lease).

**3.**     **Amendments to Lease**.   The Lease shall be amended, effective as of the Effective Date, to reflect Assignee as the tenant thereunder, and Lessor hereby consents to the Assignment and Amendment subject to the representations, warranties and conditions reflected herein.

**4.**     **Representations, Warranties and Estoppel Certificate from Assignment Parties**.  Assignor acknowledges, represents and warrants as follows:

•      The Lease, as amended by this Assignment and Amendment (collectively, the "Amended Lease"), is in full force and effect against Assignor, and has been so since the execution of the Lease, and has not been modified, changed, altered, assigned, supplemented or amended in any respect except for the First Amendment and Second Amendment.  From the Tenant's perspective, the Lease is not in default and is valid and in full force and effect against Assignor on the date hereof.  The Lease represents the entire agreement between Assignor, as landlord, and Assignor, as tenant, with respect to the premises.

•      Assignor's interest therein is free and clear from all encumbrances, and Assignor has fully performed all covenants and obligations under the Lease and has not done or permitted any act in violation of the covenants contained in the Lease;

•      there are no attachments, executions, assignments for the benefit of creditors, receiverships, conservatorships, or voluntary or involuntary proceedings in bankruptcy or pursuant to any other laws for relief or debtors contemplated or filed by Assignor or pending against Assignor, or involving the premises;

•      Assignor has not subleased all or any portion of the leased premises or (prior to the date hereof) assigned any of its rights under the Lease, nor pledged any interest therein;

•      Assignor is in full and complete possession of the premises and prior to the date hereof commenced full occupancy and use thereof except as to expansion space not yet occupied. Assignor is operating at the premises under the name of Project Spokane.

•      The rent and other charges payable in connection with the Lease are paid currently through the date hereof, and:

Assignment, Assumption and Amendment of Lease

•        no advance rent or other payment has been made in connection with the Lease, except rent for the current month;

•        there is no "free rent" or other rent concession or adjustments to which Assignor is entitled under the remaining term of the Lease; and

•        the Base Rent is set forth in Section 4(a) of the Lease.

•        All obligations, commitments, space, payments, repairs, tenant improvements, build out, inducements, other sums and conditions under the Lease to be performed to date by Lessor have been satisfied, free of defenses and set-offs including any construction work on the premises.

•        There is no existing default or unfulfilled obligations on the part of Assignor in any of the terms and conditions of the Lease, and no event has occurred or condition exists which, with the passing of time or giving of notice or both, would constitute an event of default on the part of Assignor under the Lease.

•        Assignor claims no offsets, set-offs, rebates, adjustments, concessions, abatements or defenses against or with respect to rent, additional rent, security deposits or other sums payable under the terms of the Lease.

•        Assignor has no option or right of first refusal to purchase the premises or any part thereof.

•        Assignor has not committed any violation of any environmental law or regulation with respect to the premises.

•        There are no unpaid or outstanding claims, bills or invoices for any labor performed upon or materials furnished to either Assignor or the premises on its behalf for which any lien or encumbrance including, without limitation, materialmen, suppliers and mechanic's liens, have been asserted or may be asserted against either Assignor or the premises.

•        There are no existing, pending or threatened lawsuits affecting the premises or the Lease to which Assignor is a party.

•        Assignor has all applicable permits, licenses, certificates of occupancy and other documentation required by the applicable governmental authorities in order to operate its business in full accordance with the law.

•        Assignor and Assignee have notified their insurance carriers of the change in lessee under the Lease and owner of the operations conducted in the premises and owner of the personal property and/or fixtures in the premises for purposes of the insurance carrier naming Lessor under the Lease as additional insured, for liability and fire and casualty insurance coverages. Further, fully effective as of the Effective Date, Lessor is named as an additional insured in Assignee's policies and promptly following the closing of the Transaction Assignee will provide Lessor with such declaration pages and other certificates of insurance as are required to document such coverage to Lessor's satisfaction in its reasonable discretion.

•        The Transaction has closed and, pursuant thereto, substantially all assets of Assignor have been assigned, conveyed and fully transferred to Assignee, including substantially all property and operations located in the premises.

Assignment, Assumption and Amendment of Lease

EXHIBIT 6.
PAGE 12

**5.     Attorneys' Fees.**   Should any party incur any costs or expenses, including reasonable attorneys' fees, to enforce any of the provisions of this Agreement, the non-prevailing party shall reimburse the prevailing party upon demand.

**6.     Counterparts.**   This Assignment and Amendment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  As used herein, "counterparts" shall include full copies of this Agreement signed and delivered by facsimile transmission or electronic mail ("e-mail") correspondence, as well as photocopies of such facsimile transmission or e-mail correspondence.

**7.     Binding Effect.**   The provisions of this Assignment and Amendment shall be binding upon and inure to the benefit of the heirs, representatives, successors and assigns of the parties hereto.

***Signatures on the Following Page***

Assignment, Assumption and Amendment of Lease

EXHIBIT 6.
PAGE 13

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____

Sean Walsh
Manager

ASSIGNEE:

**HYPERBLOCK LLC**

By: _____

Eric So
Chairman

LESSOR:

**BONNER PROPERTY
DEVELOPMENT, LLC**

By: _____
Its:   Co-Manager

Assignment, Assumption and Amendment of Lease

EXHIBIT 6.
PAGE 14

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____
      Sean Walsh
      Manager

ASSIGNEE:

**HYPERBLOCK LLC**

By: _____
      Eric So
      Chairman

LESSOR:

**BONNER PROPERTY
DEVELOPMENT, LLC**

By: _____
Its:  Co-Manager

Assignment, Assumption and Amendment of Lease

EXHIBIT 6.
PAGE 15

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____
    Sean Walsh
    Manager

ASSIGNEE:

**HYPERBLOCK LLC**

By: _____
    Eric So
    Chairman

LESSOR:

**BONNER PROPERTY
DEVELOPMENT, LLC**

By: _____
Its: Co-Manager
    Stephen K. Nelson

<div align="center">

**ASSIGNMENT, ASSUMPTION AND AMENDMENT OF LEASE**

</div>

**THIS ASSIGNMENT, ASSUMPTION AND AMENDMENT OF LEASE** (this "Assignment and Amendment") is made effective this  10th  day of July, 2018 (the "Effective Date"), by and between **PROJECT SPOKANE, LLC**, a Colorado limited liability company, whose mailing address is 5619 DTC Parkway, #475, Greenwood Village, CA 80111 ("Assignor"), and **HYPERBLOCK LLC,** a Delaware limited liability company, whose mailing address is 120 Adelaide Street West, Suite 2210, Toronto, ON M5H 1T1 ("Assignee").

<div align="center">

**RECITALS:**

</div>

A.      Assignor currently owns certain real property located in the Bonner Millsite in Bonner, Montana (the "premises") which are currently leased pursuant to the terms and conditions of that certain Commercial Lease Agreement, dated March 1, 2016, as amended by that certain First Amendment, effective as of January 1, 2017, and that certain Second Amendment, dated July 13, 2017 (the "Lease"), by and between Assignor and **BONNER PROPERTY DEVELOPMENT, LLC**, a Montana limited liability company (herein referred to as "Lessor").

B.      Assignor has engaged in a transaction pursuant to which substantially all of the assets of Assignor have been acquired by Hyperblock LLC, a Delaware limited liability company (the "Transaction").

B.      Pursuant to the Transaction, Assignor desires to transfer all of its right, title and interest in the Lease to Assignee upon the terms and conditions hereinafter set forth.

C.      Also pursuant to the Transaction, Assignee desires to assume the Lease and all obligations thereunder upon the terms and conditions set forth below.

D.      Lessor consents to the assignment under the conditions set forth herein and agrees to amend the Lease to reflect Assignee as the tenant moving forward.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained herein and for valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the parties hereby agree as follows:

1.      **Assignment of Lease; Disclosure of Assignee's Information.**

A.      Assignor hereby grants, assigns and transfers to Assignee all of its right, title and interest in and to the Lease as amended by this Assignment and Amendment.

B.      Assignee hereby provides the following specific information to Lessor in connection with this Assignment and Amendment:

(i)      The name and contact information for Assignee is:

HYPERBLOCK, LLC
c/o HYPERBLOCK TECHNOLOGIES CORP.
388 Carlaw Avenue, Suite 300
Toronto, Ontario

M4M 2T4
Telephone Number: 416-551-7646
E-mail Address:  tim@hyperblock.co
Current Contact Name:  Tim Smart

**2.    Duties and Obligations.**  Assignor hereby assigns and delegates to Assignee only Assignor's duties and obligations under the Lease which both (i) first arising after the closing of the Transaction, and (ii) do not relate to or arise from pre-closing breaches or occurrences prior to the closing that may give rise to such a breach (the "Assumed Obligations"); and in consideration of the Lease herein being assigned to Assignee, Assignee hereby accepts this assignment and agrees to assume and perform, and hereby assumes, all of the Assumed Obligations contained in the Lease to be observed, kept, performed or complied with by Assignor under the Lease from and after the Effective Date (and the Assignor shall remain liable for all other duties, obligations, covenants, agreements, promises, terms, conditions and provisions contained in the Lease).

**3.    Amendments to Lease**.    The Lease shall be amended, effective as of the Effective Date, to reflect Assignee as the tenant thereunder, and Lessor hereby consents to the Assignment and Amendment subject to the representations, warranties and conditions reflected herein.

**4.    Representations, Warranties and Estoppel Certificate from Assignment Parties**.  Assignor acknowledges, represents and warrants as follows:

•    The Lease, as amended by this Assignment and Amendment (collectively, the "Amended Lease"), is in full force and effect against Assignor, and has been so since the execution of the Lease, and has not been modified, changed, altered, assigned, supplemented or amended in any respect except for the First Amendment and Second Amendment.  From the Tenant's perspective, the Lease is not in default and is valid and in full force and effect against Assignor on the date hereof.  The Lease represents the entire agreement between Assignor, as landlord, and Assignor, as tenant, with respect to the premises.

•    Assignor's interest therein is free and clear from all encumbrances, and Assignor has fully performed all covenants and obligations under the Lease and has not done or permitted any act in violation of the covenants contained in the Lease;

•    there are no attachments, executions, assignments for the benefit of creditors, receiverships, conservatorships, or voluntary or involuntary proceedings in bankruptcy or pursuant to any other laws for relief or debtors contemplated or filed by Assignor or pending against Assignor, or involving the premises;

•    Assignor has not subleased all or any portion of the leased premises or (prior to the date hereof) assigned any of its rights under the Lease, nor pledged any interest therein;

•    Assignor is in full and complete possession of the premises and prior to the date hereof commenced full occupancy and use thereof except as to expansion space not yet occupied. Assignor is operating at the premises under the name of Project Spokane.

•    The rent and other charges payable in connection with the Lease are paid currently through the date hereof, and:

EXHIBIT 7.
PAGE 3

•        no advance rent or other payment has been made in connection with the Lease, except rent for the current month;

•        there is no "free rent" or other rent concession or adjustments to which Assignor is entitled under the remaining term of the Lease; and

•        the Base Rent is set forth in Section 4(a) of the Lease.

•        All obligations, commitments, space, payments, repairs, tenant improvements, build out, inducements, other sums and conditions under the Lease to be performed to date by Lessor have been satisfied, free of defenses and set-offs including any construction work on the premises.

•        There is no existing default or unfulfilled obligations on the part of Assignor in any of the terms and conditions of the Lease, and no event has occurred or condition exists which, with the passing of time or giving of notice or both, would constitute an event of default on the part of Assignor under the Lease.

•        Assignor claims no offsets, set-offs, rebates, adjustments, concessions, abatements or defenses against or with respect to rent, additional rent, security deposits or other sums payable under the terms of the Lease.

•        Assignor has no option or right of first refusal to purchase the premises or any part thereof.

•        Assignor has not committed any violation of any environmental law or regulation with respect to the premises.

•        There are no unpaid or outstanding claims, bills or invoices for any labor performed upon or materials furnished to either Assignor or the premises on its behalf for which any lien or encumbrance including, without limitation, materialmen, suppliers and mechanic's liens, have been asserted or may be asserted against either Assignor or the premises.

•        There are no existing, pending or threatened lawsuits affecting the premises or the Lease to which Assignor is a party.

•        Assignor has all applicable permits, licenses, certificates of occupancy and other documentation required by the applicable governmental authorities in order to operate its business in full accordance with the law.

•        Assignor and Assignee have notified their insurance carriers of the change in lessee under the Lease and owner of the operations conducted in the premises and owner of the personal property and/or fixtures in the premises for purposes of the insurance carrier naming Lessor under the Lease as additional insured, for liability and fire and casualty insurance coverages. Further, fully effective as of the Effective Date, Lessor is named as an additional insured in Assignee's policies and promptly following the closing of the Transaction Assignee will provide Lessor with such declaration pages and other certificates of insurance as are required to document such coverage to Lessor's satisfaction in its reasonable discretion.

•        The Transaction has closed and, pursuant thereto, substantially all assets of Assignor have been assigned, conveyed and fully transferred to Assignee, including substantially all property and operations located in the premises.

EXHIBIT 7.
PAGE 4

**5.     Attorneys' Fees.**   Should any party incur any costs or expenses, including reasonable attorneys' fees, to enforce any of the provisions of this Agreement, the non-prevailing party shall reimburse the prevailing party upon demand.

**6.     Counterparts.**   This Assignment and Amendment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.   As used herein, "counterparts" shall include full copies of this Agreement signed and delivered by facsimile transmission or electronic mail ("e-mail") correspondence, as well as photocopies of such facsimile transmission or e-mail correspondence.

**7.     Binding Effect.**   The provisions of this Assignment and Amendment shall be binding upon and inure to the benefit of the heirs, representatives, successors and assigns of the parties hereto.

***Signatures on the Following Page***

EXHIBIT 7.
PAGE 5

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____

Sean Walsh
Manager

ASSIGNEE:

**HYPERBLOCK LLC**

By: _____

Eric So
Chairman

LESSOR:

**BONNER PROPERTY
DEVELOPMENT, LLC**

By: _____
Its:  Co-Manager

Assignment, Assumption and Amendment of Lease

EXHIBIT 7.
PAGE 6

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____
      Sean Walsh
      Manager

ASSIGNEE:

**HYPERBLOCK LLC**

By: _____
      Eric 8o
      Chairman

LESSOR:

**BONNER PROPERTY
DEVELOPMENT, LLC**

By: _____
Its:   Co-Manager

Assignment, Assumption and Amendment of Lease

EXHIBIT 7.
PAGE 7

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

    **PROJECT SPOKANE, LLC**
    By: PS Mgt LLC, its Manager

        By: _____
           Sean Walsh
           Manager

ASSIGNEE:

    **HYPERBLOCK LLC**

    By: _____
       Eric So
       Chairman

LESSOR:

    **BONNER PROPERTY
    DEVELOPMENT, LLC**

    By: _____
    Its: Co-Manager
          Stephen K. Nelson

EXHIBIT 8.
PAGE 1

**Attachments:**      F Hyperblock Term Sheet 9-14-18 (003).docx

Term sheet regarding HyperBlock lease amendment.
Sent from Nelson to Bjornson and Jake Pelczar of BOM
on Friday, November 2, 2018 2:13:03 PM

EXHIBIT 8.
PAGE 2

## Term Sheet Hyperblock

- Create amendment to the Lease.
- New 10 year lease period.
- New lease begins 3/1/19
- Secure $2.625m loan at Bank of Montana.
- Clause to allow us if we have to put Hyperblock office on commercial power.  Only if no reasonable alternative. At worst case we would install a meter to determine Hyperblock's electrical costs & charge them as part of their rent the same cost as they would have paid with their power.  The only time this might be in effect is if we have a customer for the rest of the Sorter building that would not need a new electrical service.
- All leases maintain 2% annual increase.
- Accelerated payment schedule for the $2 + million loan payback.  Provide us with an example of the free cash flow statement, the % of payment, so we know what to ask for & be able to determine payments.  I think it will be 25% of free cash flow.  Dan Stivers can help define this.
- UCC filings & lien releases for each job & piece of equipment putting Bonner Property Development LLC in a first lien position.
- All funds will be used for infrastructure & permanent buildings on this new project only.

- Noise for the new expansion could be an issue & will need to be resolved in a satisfactory manner.

- Substation Lease Appx. 125' X 125' including an easement for the power pole structures along the river bank.   $5000.00 per month.
- Land lease:  See attached exhibit. 106,650 sq. ft.  $8,073.75 per month.  $96,885.00 annually.

Other Issues:

- Site Prep, relocate gravel & compact.  Estimated at $227,000, we split the cost $158,500 Hyperbloch and $68,500 Bonner Property Developmnt LLC.  This includes relocating the gravel. $205,000.  New gas line.  $8,000.00.  Relocate fire hydrant. $4,000.00.  Certify compaction. $10,000.00.  Total $227,000.00.
- Sprinklers:  Bonner Property Development replaces the new sprinkler heads & leases the appropriate lift at their sole cost, in the original leased area appx. 117,000 sq. ft. ASAP 60 days.  Approximately 1700 sprinkler heads at $8.29 each. This cost will not exceed $45,000.00.  Labor will be supplied by  Hyperblock.
- Bonner Property Development LLC will replace the sprinkler heads in the other half of the space at its sole cost, as time permits no later than April 30, 2019.

EXHIBIT 8.
PAGE 3

- BPD will & has installed a sump & gravel around the Pump house at its sole cost for the purpose of dust control.

- Hyperblock may install additional fans in the Planer building with approval of Landlord. Things to consider will be noise & the structural integrity of the building. The noise level from the existing large fans in the NE end of the planer building are excessive as noted in Big Sky Acoustics initial report on August 6, 2018.  Hyperblock at its sole cost will mitigate this noise to a reasonable level.

-

EXHIBIT 8.
PAGE 4

**From:**        David Bjornson
**To:**          Jaymie Bowditch
**Subject:**     FW: Term Sheet for Hyperblock
**Date:**        Tuesday, December 11, 2018 5:21:53 PM
**Attachments:** Hyperblock Term Sheet 9-14-18 (003).docx

---

**From:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Sent:** Friday, November 02, 2018 2:13 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** mdbbpd@gmail.com; 'Jake Pelczar' <jpelczar@bankofmt.com>
**Subject:** Term Sheet for Hyperblock

David,  Attached is a term sheet for Hyperblock.  I was thinking an amendment to the lease. I have added Jake with Bank of Montana so if you need to review the loan documents or add something for us then here is the chance.  Jake, David Bjornson will probably need to look at the closing documents & maybe add some stuff for us. Thx Steve.

EXHIBIT 8.
PAGE 5

# Term Sheet Hyperblock

- Create amendment to the Lease.
- New 10 year lease period.
- New lease begins 3/1/19
- Secure $2.625m loan at Bank of Montana.
- Clause to allow us if we have to put Hyperblock office on commercial power.  Only if no reasonable alternative. At worst case we would install a meter to determine Hyperblock's electrical costs & charge them as part of their rent the same cost as they would have paid with their power.  The only time this might be in effect is if we have a customer for the rest of the Sorter building that would not need a new electrical service.
- All leases maintain 2% annual increase.
- Accelerated payment schedule for the $2 + million loan payback.  Provide us with an example of the free cash flow statement, the % of payment, so we know what to ask for & be able to determine payments.  I think it will be 25% of free cash flow.  Dan Stivers can help define this.
- UCC filings & lien releases for each job & piece of equipment putting Bonner Property Development LLC in a first lien position.
- All funds will be used for infrastructure & permanent buildings on this new project only.

- Noise for the new expansion could be an issue & will need to be resolved in a satisfactory manner.

-  Substation Lease Appx. 125' X 125' including an easement for the power pole structures along the river bank.   $5000.00 per month.
- Land lease:  See attached exhibit. 106,650 sq. ft.  $8,073.75 per month.  $96,885.00 annually.

Other Issues:

-  Site Prep, relocate gravel & compact.  Estimated at $227,000, we split the cost $158,500 Hyperbloch and $68,500 Bonner Property Developmnt LLC.  This includes relocating the gravel. $205,000.  New gas line.  $8,000.00.  Relocate fire hydrant. $4,000.00.  Certify compaction. $10,000.00.  Total $227,000.00.
-  Sprinklers:  Bonner Property Development replaces the new sprinkler heads & leases the appropriate lift at their sole cost, in the original leased area appx. 117,000 sq. ft. ASAP 60 days.  Approximately 1700 sprinkler heads at $8.29 each. This cost will not exceed $45,000.00.  Labor will be supplied by  Hyperblock.
- Bonner Property Development LLC will replace the sprinkler heads in the other half of the space at its sole cost, as time permits no later than April 30, 2019.

EXHIBIT 8.
PAGE 6

- BPD will & has installed a sump & gravel around the Pump house at its sole cost for the purpose of dust control.

- Hyperblock may install additional fans in the Planer building with approval of Landlord. Things to consider will be noise & the structural integrity of the building. The noise level from the existing large fans in the NE end of the planer building are excessive as noted in Big Sky Acoustics initial report on August 6, 2018.  Hyperblock at its sole cost will mitigate this noise to a reasonable level.

-

EXHIBIT 9.
PAGE 1

| | |
|---|---|
| **From:** | David Bjornson |
| **To:** | Jill Broughton |
| **Subject:** | FW: $2.625 m loan conditions. |
| **Date:** | Tuesday, November 27, 2018 2:40:04 PM |
| **Attachments:** | Spokane Project lease 3-1-16.pdf |
| | First Amendment to Comercial Lease Agreement - BPD- Project Spokane - Fully Executed 12-23-16.pdf |
| | 2017.07.13 Second Lease Amendment BPD - ProjectSpokane EXECUTED.pdf |

**From:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Sent:** Tuesday, November 27, 2018 12:46 PM
**To:** 'Jake Pelczar' <jpelczar@bankofmt.com>; 'Sean Walsh' <sean@hyperblock.co>
**Cc:** 'Dan Stivers' <dan@hyperblock.co>; mdbbpd@gmail.com; David Bjornson <david@bjornsonlaw.com>; 'Danny Day' <dday@bankofmt.com>
**Subject:** RE: $2.625 m loan conditions.

Jake,  Here are the amendments & the lease.  I will be talking to David shortly & have him finish up the lease amendment.  Let me know if you need anything else.  Thx Steve.

**From:** Jake Pelczar [mailto:jpelczar@bankofmt.com]
**Sent:** Tuesday, November 27, 2018 12:10 PM
**To:** Sean Walsh <sean@hyperblock.co>; bsmcorpmt@gmail.com
**Cc:** Dan Stivers <dan@hyperblock.co>; mdbbpd@gmail.com; David@bjornsonlaw.com; Danny Day <dday@bankofmt.com>
**Subject:** RE: $2.625 m loan conditions.

Sounds good, Everyone!

David/Steve, if you guys could send us copies of the lease amendments, that would be great. Sean, we'll get docs to you guys as soon as possible.

Thanks guys,

Jake

**Jacob T. Pelczar**
Vice President
Phone: 406.829.2662  /  Fax: 406.829.2355
Bank of Montana
125 Bank Street, Suite 100
Missoula, MT 59802
NMLS: 944575

*The information contained in this message is proprietary and/or confidential.*
*If you are not the intended recipient, please: (i) delete the message and all copies;*
*(ii) do not disclose, distribute or use the message in any manner; and (iii) notify*
*the sender immediately. In addition, please be aware that any message addressed*
*to our domain is subject to archiving and review by persons other than the intended*
*recipient. Thank you.*

EXHIBIT 9.
PAGE 2

**From:** Sean Walsh <sean@hyperblock.co>
**Sent:** Tuesday, November 27, 2018 10:04 AM
**To:** bsmcorpmt@gmail.com
**Cc:** Dan Stivers <dan@hyperblock.co>; mdbbpd@gmail.com; Jake Pelczar <jpelczar@bankofmt.com>; David@bjornsonlaw.com
**Subject:** Re: $2.625 m loan conditions.

This works, Steve.

Jake - please send us final loan docs asap, so we can pass by the Hyperblock Board of Directors for approval.

Thank you,
Sean

On Tue, Nov 27, 2018 at 11:58 AM Steve Nelson <bsmcorpmt@gmail.com> wrote:

> Gentlemen:  After a long night deliberating about our deal here is what we propose.
> We will close the loan with these conditions. David, you will need to incorporate these in the new lease.
> 1). Once the loan is closed we will authorize the use of funds to pay off Missouri River Contracting for the dirt work behind the Sorter building. $150,000. In addition any loan fees the bank has can be paid at closing.
> 2). Hyperblock agrees to sign the lease with the terms Dan & I have agreed to.
> 3). Before we authorize any further expenditures from the loan at least $3 m of capital must be injected into HyperBlock. Of this $3 m $1 m must be used for any of the following.
>    A. Build the 161,000 kva line across the river.
>    B. Construct the substation or buy equipment for the substation.
>    C. Complete additional infrastructure for the remainder of the 40 megawatt build out.
>
> The object here is to have a completed infrastructure ready for a 40 megawatt data center. I have heard estimates of $3.5 m to $3.8 m.
> When everything is complete  if there is a balance of the $2.625 loan it can be used for buildings or further infrastructure on site.
>
> If this is agreeable to everyone & after some editing we will get Jake & David to draw up some documents.
> Thanks everyone. Steve.
>
> Sent from my iPhone


--
Phone - 650.409.7326

Executive Assistant - Kristen Martin - kristen@hyperblock.co - 720.390.8023

LinkedIn

Confidentiality Note: This e-mail and any attachments are confidential and protected by legal privilege. Please be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete all copies from your system. Thank you for your cooperation.

## RESOLUTIONS OF THE DIRECTORS

### OF

### HYPERBLOCK INC.
(the "**Corporation**")

**LOAN FROM THE BANK OF MONTANA**

**WHEREAS:**

The Corporation, through its wholly owned subsidiary HyperBlock LLC wishes to take out a USD$2,625,000 loan from the Bank of Montana (the "**Loan**") with a maturity date of December 1, 2023 at a variable interest rate of 2.99% over the Prime Rate index published in the Wall Street Journal.

The terms and conditions of the Loan are detailed in draft loan documents (the "**Loan Documents**") that have been provided to the Directors of the Corporation and are attached hereto in Schedule A.

**NOW, THEREFORE, BE IT RESOLVED THAT:**

The entering into of the Loan by HyperBlock LLC on terms substantially similar to those set out in the Loan Documents is hereby approved and authorized.

**General**

Any one (1) officer or director of the Corporation is authorized, acting for, in the name of and on behalf of the Corporation, to execute or cause to be executed, and to deliver or to cause to be delivered, all such agreements, documents and other instruments, all in such form and containing such terms and conditions as any one of them shall consider necessary or desirable in connection with the foregoing resolutions and shall approve, such approval to be conclusively evidenced by the execution thereof by the Corporation, and to do or cause to be done all such other acts and things as any one of them shall consider necessary or desirable in order to give effect to the intent of the foregoing resolutions.

This resolution may be executed in as many counterparts as are necessary and all counterparts together shall constitute the same resolution. Facsimile, pdf and electronic signatures shall and do hereby constitute valid approval of this resolution.

*[execution page follows]*

These resolutions are consented to by all of the directors of the Corporation, pursuant to Section 129 of the *Business Corporations Act* (Ontario), as evidenced by the signatures below.

DATED the _30th_ day of November, 2018.

Eric So

Tony Gaffney

Dayna Gibbs

Rob Segal

Ronald R. Spoehel

Sean Walsh

EXHIBIT 10.(i)
PAGE 3

These resolutions are consented to by all of the directors of the Corporation, pursuant to Section 129 of the *Business Corporations Act* (Ontario), as evidenced by the signatures below.

DATED the 3ʳᵈ day of November, 2018.

_____
Eric So

_____
Tony Gaffney

_____
Dayna Gibbs

_____
Rob Segal

_____
Ronald R. Spoehel

_____
Sean Walsh

EXHIBIT 10.(i)
PAGE 4

## SCHEDULE A

## LOAN DOCUMENTS

# RESOLUTION OF CORPORATE LLC MEMBER

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

**Corporation:** HyperBlock, Inc.
388 Carlaw Avenue, Suite 300
Toronto, ON M4M 2T4

---

**I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:**

**ORGANIZATION.** The Corporation is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the Province of Ontario. The Corporation is duly authorized to transact business in the State of Montana and all other states in which the Corporation is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Corporation is doing business. Specifically, the Corporation is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Corporation has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Corporation maintains an office at 388 Carlaw Avenue, Suite 300, Toronto, ON M4M 2T4. Unless the Corporation has designated otherwise in writing, the principal office is the office at which the Corporation keeps its books and records including its records concerning the Collateral. The Corporation will notify Lender prior to any change in the location of the Corporation's state of organization or any change in the Corporation's name. The Corporation shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Corporation and the Corporation's business activities.

**RELATIONSHIP TO BORROWER AND GRANTOR.** The Corporation is a Member in **HyperBlock, LLC**. **HyperBlock, LLC** has applied or will be applying to **Bank of Montana ("Lender")** for a loan or loans and other financial accommodations from Lender and has agreed to grant collateral for a loan or loans and other financial accommodations from Lender to **HyperBlock, LLC**, including those which may be described on any exhibit or schedule attached to this Resolution. The Corporation has considered the value of **HyperBlock, LLC** obtaining the financial accommodations described above and granting the collateral.

**AUTHORIZATION TO BE A MEMBER.** The Corporation is authorized to be and become a Member in the Limited Liability Company named **HyperBlock, LLC**, whose office is at 5619 DTC Parkway #475, Greenwood Village, CO 80111.

**RESOLUTIONS ADOPTED.** At a meeting of the Directors of the Corporation, or if the Corporation is a close corporation having no Board of Directors then at a meeting of the Corporation's shareholders, duly called and held on **November 30, 2018**, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**OFFICER.** The following named person is an officer of HyperBlock, Inc.:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| **Sean M. Walsh** | **Chief Executive Officer** | Y | X [signature] |

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Corporation. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of the Corporation:

**Execute Documents.** As Member of HyperBlock, LLC, to execute and deliver to Lender the form of Limited Liability Company Resolution and other loan documents submitted by Lender, confirming the nature and existence of HyperBlock, LLC, including the Corporation's participation in HyperBlock, LLC as a Member, and evidencing the terms of the loan from Lender to HyperBlock, LLC.

**Authorize Officers.** To authorize other officers or employees of the Corporation, from time to time, to act in his or her stead or as his or her successors on behalf of the Corporation as Member in HyperBlock, LLC.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, **including agreements waiving the right to a trial by jury**, as the officer may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**NOTICES TO LENDER.** The Corporation will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Corporation's name; (B) change in the Corporation's assumed business name(s); (C) change in the management of the Corporation; (D) change in the authorized signer(s); (E) change in the Corporation's principal office address; (F) change in the Corporation's state of organization; (G) conversion of the Corporation to a new or different type of business entity; or (H) change in any other aspect of the Corporation that directly or indirectly relates to any agreements between the Corporation and Lender. No change in the Corporation's name or state of organization will take effect until after Lender has received notice.

**PARTICIPATION AUTHORIZED.** The Corporation's participation in HyperBlock, LLC as a Member and the execution, delivery, and performance of the documents described herein have been duly authorized by all necessary action by the Corporation and do not conflict with, result in a violation of, or constitute a default under (A) any provision of its articles of incorporation, bylaws, or any agreement or other instrument binding upon the Corporation or (B) any law, governmental regulation, court decree, or order applicable to the Corporation.

**CERTIFICATION CONCERNING OFFICERS AND RESOLUTIONS.** The officer named above is duly elected, appointed, or employed by or for the Corporation, as the case may be, and occupies the position set opposite his or her respective name. This Resolution now stands of record on the books of the Corporation, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**NO CORPORATE SEAL.** The Corporation has no corporate seal, and therefore, no seal is affixed to this Resolution.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written

EXHIBIT 10.(ii)
PAGE 2

## RESOLUTION OF CORPORATE LLC MEMBER
### (Continued)

Loan No:      4200                                                    Page 2

notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time).  Any such notice shall not affect any of the Corporation's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF, I have hereunto set my hand and attest that the signature set opposite the name listed above is his or her genuine signature.**

I have read all the provisions of this Resolution, and I personally and on behalf of the Corporation certify that all statements and representations made in this Resolution are true and correct.  This Resolution of Corporate LLC Member is dated _Dec. 14, 2018_

CERTIFIED TO AND ATTESTED BY:

X _____
Sean   M.   Walsh,   Chief   Executive   Officer   of
HyperBlock, Inc.

LaserPro, Ver. 16.3.11.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - MT  L:\CFI\LPL\C17.FC  TR-1954  PR-4

# LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL / SUBORDINATE DEBT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Company:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

**I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:**

**THE COMPANY'S EXISTENCE.** The complete and correct name of the Company is HyperBlock, LLC ("Company"). The Company is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware. The Company is duly authorized to transact business in the State of Montana and all other states in which the Company is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Company is doing business. Specifically, the Company is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Company has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Company maintains an office at 5619 DTC Parkway #475, Greenwood Village, CO 80111. Unless the Company has designated otherwise in writing, the principal office is the office at which the Company keeps its books and records. The Company will notify Lender prior to any change in the location of the Company's state of organization or any change in the Company's name. The Company shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Company and the Company's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the members of the Company, duly called and held on **December 3, 2018**, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**MANAGER.** The following named entity is a manager of HyperBlock, LLC:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| HyperBlock, Inc. | Sole Member | Y | |

**ACTIONS AUTHORIZED.** The authorized entity listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Company. Specifically, but without limitation, the authorized entity is authorized, empowered, and directed to do the following for and on behalf of the Company:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between the Company and Lender, such sum or sums of money as in its judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of the Company's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the Company's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Company or in which the Company now or hereafter may have an interest, including without limitation all of the Company's real property and all of the Company's personal property (tangible or intangible), as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Company to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Subordination.** To subordinate, in all respects, any and all present and future indebtedness, obligations, liabilities, claims, rights, and demands of any kind which may be owed, now or hereafter, from any person or entity to the Company to all present and future indebtedness, obligations, liabilities, claims, rights, and demands of any kind which may be owed, now or hereafter, from such person or entity to Lender ("Subordinated Indebtedness"), together with subordination by the Company of any and all security interests of any kind, whether now existing or hereafter acquired, securing payment or performance of the Subordinated Indebtedness; all on such subordination terms as may be agreed upon between the Company's Managers and Lender and in such amounts as in its judgment should be subordinated.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Company or in which the Company may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Company's account with Lender, or to cause such other disposition of the proceeds derived therefrom as it may deem advisable.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, **including agreements waiving the right to a trial by jury,** as the manager may in its discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Company has filed or recorded all documents or filings required by law relating to all assumed business names used by the Company. Excluding the name of the Company, the following is a complete list of all assumed business names under which the Company does business: **None.**

# LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL / SUBORDINATE DEBT
## (Continued)

| Loan No: | 4200 | | Page 2 |

**NOTICES TO LENDER.** The Company will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Company's name; (B) change in the Company's assumed business name(s); (C) change in the management or in the Managers of the Company; (D) change in the authorized signer(s); (E) change in the Company's principal office address; (F) change in the Company's state of organization; (G) conversion of the Company to a new or different type of business entity; or (H) change in any other aspect of the Company that directly or indirectly relates to any agreements between the Company and Lender. No change in the Company's name or state of organization will take effect until after Lender has received notice.

**CERTIFICATION CONCERNING MANAGERS AND RESOLUTIONS.** The manager named above is duly elected, appointed, or employed by or for the Company, as the case may be, and occupies the position set opposite its respective name. This Resolution now stands of record on the books of the Company, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Company's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and attest that the signature set opposite the name listed above is its genuine signature.

I have read all the provisions of this Resolution, and I personally and on behalf of the Company certify that all statements and representations made in this Resolution are true and correct. This Limited Liability Company Resolution to Borrow / Grant Collateral / Subordinate Debt is dated ____ *December 14, 2018.*

**THIS RESOLUTION IS DELIVERED UNDER SEAL AND IT IS INTENDED THAT THIS RESOLUTION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

CERTIFIED TO AND ATTESTED BY:

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By: _____ (Seal)
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

NOTE: If the manager signing this Resolution is designated by the foregoing document as one of the managers authorized to act on the Company's behalf, it is advisable to have this Resolution signed by at least one non-authorized manager of the Company.

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - DE/MT  L:\CFN\PL\C15.FC  TR-1284  PR-4

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,625,000.00 | 12-14-2018 | 12-01-2023 | 14200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO  80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

**Principal Amount:  $2,625,000.00**                    **Date of Note:** Dec. 14_____, 2018

**PROMISE TO PAY.  HyperBlock, LLC ("Borrower") promises to pay to Bank of Montana ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Six Hundred Twenty-five Thousand & 00/100 Dollars ($2,625,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance.**

**DRAW PERIOD.  If the loan is not in Default, Borrower may draw down loan funds until December 1, 2019 or until the principal has been fully advanced (the "Draw Period").  Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances.  Advances under this Note, as well as directions for payment from Borrower's accounts, must be requested in writing by Borrower or by an authorized person, as described in the Business Loan Agreement.  Borrower agrees to be liable for all sums either:  (A)  advanced in accordance with the instructions of an authorized person or  (B)   credited to any of Borrower's accounts with Lender.**

**PAYMENT.**  During the Draw Period, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 1, 2019, with all subsequent interest payments to be due on the same day of each month after that.

Beginning on the 1st day of the month immediately following the end of the Draw Period, Borrower is to begin making principal and interest payments.  The principal and interest payment amount is to be calculated based on the then outstanding balance, amortized over the remaining number of months until Maturity.  The payment is subject to change based on changes to the Index.  Monthly payments are due on the 1st day of the month with all outstanding principal, accrued interest, and costs due to Lender to be paid in full at Maturity.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PROMISE TO PAY ADDITIONAL PROVISION.**  Each party comprising Borrower is jointly and severally liable with regards to this Promissory Note (this "Note") and all obligations hereunder.  This means Lender can require any party comprising Borrower to pay all amounts due under this Note, including future advances made to or for the benefit of any Borrower.  The liability of each party comprising Borrower shall be primary, direct, immediate, absolute, continuing, and unlimited and Lender may, at its sole option, proceed against any one of the parties comprising Borrower without having commenced any action, having obtained any judgment, or otherwise having pursued performance by any other party comprising Borrower.  Lender can release any Borrower from responsibility under this Note, and the others will remain responsible, but no Borrower shall be discharged or released for any reason, including bankruptcy, receivership or other proceeding, unless required by law or applicable regulation.  Each time the term "Borrower" appears herein, including in the section entitled DEFAULT, it shall refer to each and every Borrower, applied on an individual and a collective basis.

**INTEREST RATE AND PAYMENT CHANGES.**  The interest rate and payment may change under the terms and conditions defined in the LATE CHARGE section, AUTOMATIC PAYMENT section, DISHONORED ITEM FEE section, and/or INTEREST AFTER DEFAULT section herein.

**VARIABLE INTEREST RATE.**  The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as Published in The Wall Street Journal (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current Index rate upon Borrower's request.  The interest rate change will not occur more often than each day.  Borrower understands that Lender may make loans based on other rates as well.  **The Index currently is 5.250% per annum.**  Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.990 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.240% per annum based on a year of 360 days.  NOTICE:  Under no circumstances will the interest rate on this Note be less than 8.240% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.   In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $0.00**.  Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Bank of Montana, 125 Bank Street, Suite 100, Missoula, MT  59802.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $200.00, whichever is greater.** If three or more late payments are made to Lender beyond the grace period during the life of this Loan, the interest rate and spread will be permanently increased 50 basis points effective as of the date the third regularly scheduled payment is not made on or before the grace period ends. This automatic increase does not limit Lender's other remedies related to Default, including, but not limited to, applying the "INTEREST AFTER DEFAULT".

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days or the Prime Offer Rate as published in the Wall Street Journal plus 8.000% fully variable based on a year of 360 days, whichever is greater. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**CURE PROVISIONS.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, paralegal fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.**

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Montana.**

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $200.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored. If three or more dishonored items are presented to Lender during the life of this Note, the interest rate and spread will be permanently increased 50 basis points effective as of the date the third item is dishonored. This automatic increase does not limit Lender's other remedies related to Default, including, but not limited to, applying the "INTEREST AFTER DEFAULT".

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS.  BORROWER AGREES TO THE TERMS OF THE NOTE. THIS NOTE MAY BE EXECUTED IN ANY NUMBER OF COUNTERPARTS, INCLUDING BY ELECTRONIC MEANS, WHICH TOGETHER SHALL CONSTITUTE AND BE DEEMED AN ORIGINAL DOCUMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC
By: _____
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

LENDER:

BANK OF MONTANA
X _____
Jacob T. Pelczar, Vice President

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Puerto Rico_ )
                                                    ) SS
COUNTY OF _Puerto Rico_ )

This instrument was acknowledged before me on _December 14 th_ _Sean M. Walsh_, 20 _18_ by **Sean M. Walsh**.

_Linnette M Vazquez Rivera_
_RUA (Notary) # 16913_
[Type or Print Name]

Notary Public for the State of _Puerto Rico_
Residing at _Puerto Rico_

My commission expires _not expire_
_Affidavit # 863_

authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

    (A)  a Deed of Trust dated _Dec. 14_ , 2018, to a trustee in favor of Lender on real property located in Missoula County, State of Montana.

    (B)  an Assignment of All Rents to Lender on real property located in Missoula County, State of Montana.

**ADDITIONAL LEGAL COSTS.** Attorneys' Fees; Expenses defined herein shall be amended to also include paralegal fees and costs.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTICES.** Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the address shown near the beginning of this Note. Any person may change his or her address for notices under this Note by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers. It will be Borrower's responsibility to tell the others of the notice from the Lender.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency. Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Bank of Montana 125 Bank Street Missoula, MT 59802.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Montana (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.



# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12 - 14 -2018 | 12-01-2023 | 4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO  80111

**Lender:**  Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

THIS BUSINESS LOAN AGREEMENT dated Dec. 14 , 2018, is made and executed between HyperBlock, LLC ("Borrower") and Bank of Montana  ("Lender") on the following terms and conditions.  Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement.  Borrower understands and agrees that:  (A)  in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement;  (B)  the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and  (C)  all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.**  This Agreement shall be effective as of Dec 14 , 2018, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.**  Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.**  Borrower shall provide to Lender the following documents for the Loan:  (1)  the Note;  (2)  Security Agreements granting to Lender security interests in the Collateral;  (3)  financing statements and all other documents perfecting Lender's Security Interests;  (4)  evidence of insurance as required below;  (5)  guaranties;  (6)  together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.**  Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents.  In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.**  Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.**  The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.**  There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**Advance Documentation.**  Advances are subject to Borrower providing Lender with a written Advance Request (attached as Exhibit A) and acceptable invoices, evidencing costs specifically related to electrical infrastructure or other Guarantor approved improvements to the Bonner Mill Site. All Advances are subject to Lender's sole discretion. Without limiting the foregoing, Lender's obligation to make an Advance is subject to Lender's receipt of the prior written consent to such Advance by each Guarantor, such consents to be in form and substance satisfactory to Lender.

**Advances.**  Lender's obligation to disburse an Advance requested by Borrower is subject to Lender's receipt of the prior written consent to such Advance by each Guarantor, such consents to be in form and substance satisfactory to Lender. Unless otherwise consented to in writing by Lender, Borrower and Guarantors, all Advances shall be funded to a title company for further payment or release under escrow instructions or similar instructions reasonably acceptable to Lender.  Loan disbursements for payments due Lender or for Lender Expenditures (as provided below) are not subject to Borrower or Guarantor consent and may be disbursed to Lender or as Lender may otherwise determine in its discretion.

**REPRESENTATIONS AND WARRANTIES.**  Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.**  Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware.  Borrower is duly authorized to transact business in the State of Montana and all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business.  Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition.  Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage.  Borrower maintains an office at 5619 DTC Parkway #475, Greenwood Village, CO  80111.  Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral.  Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name.  Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.**  Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by

Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than contemporaneous with Borrower providing said statements to applicable regulatory authorities, Borrower's balance sheet and income statement for the year ended, audited by a certified public accountant satisfactory to Lender.

**Interim Statements.** Unless waived by Lender, as soon as available, but in no event later than contemporaneous with Borrower providing said statements to applicable regulatory authorities, Borrower's quarterly balance sheet and profit and loss statement for the period ended, prepared by Borrower.

**Tax Returns.** As soon as available, but in no event later than 180 days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| Stephen K. Nelson | $2,625,000.00 |
| Michael D. Boehme | $2,625,000.00 |
| Bonner Property Development, LLC | $2,625,000.00 |

**Other Agreements.**  Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.**  Use all Loan proceeds solely for the following specific purposes: **Improvements to electrical infrastructure and/or other improvements authorized by Guarantor/Grantor at the Bonner Mill Site.**

**Taxes, Charges and Liens.**  Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.  Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as  (1)  the legality of the same shall be contested in good faith by appropriate proceedings, and  (2)  Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.**  Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender.  Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.**  Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Operating Accounts.**  Maintain through the life of the loan, primary deposit accounts affiliated with the operations of its Montana facilities with Lender. Bitcoin denominated accounts are specifically excluded from this provision.

**Environmental Studies.**  Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.**  Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act.  Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized.  Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.**  Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records.  If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.**  Borrower shall comply in all respects with any and all covenants, terms, conditions and provisions set forth in the Hazardous Substances Certificate and Indemnity Agreement executed in connection with the Loan.

**Additional Assurances.**  Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**Lease and Credit Enhancement.** Lender is not bound by any provision of the Lease Agreement dated March 1, 2016 with Project Spokane, LLC as Tenant or any provision of the Credit Enhancement Agreement dated _____, 2018.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.**  Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.**  (1)  Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases,  (2)  sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or  (3)  sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHT TO CURE.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after Lender sends written notice to Borrower or Grantor, as the case may be, demanding cure of such default: (1) cure the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency"

subsection above, such acceleration shall be automatic and not optional.  In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise.  Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement.  Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.**  Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender.  Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters.  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests.  Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests.  Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan.  Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.  This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of Montana.**

**Choice of Venue.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.**  Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement.  Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address.  Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.**  If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.**  To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates.  Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.**  All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns.  Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.**  Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents.  Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be

continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated _____, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

EXHIBIT 11.(ii)
PAGE 7

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS.   THIS BUSINESS LOAN AGREEMENT IS DATED Dec. 14 , 2018.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

By: _____

Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

**LENDER:**

**BANK OF MONTANA**

By: _____

Jacob T. Pelczar, Vice President

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - MT  L:\CFI\LPL\C40.FC  TR-1284  PR-4 (M)

EXHIBIT 11.(ii)
PAGE 8

EXHIBIT 11.(iii)
PAGE 1

# LANDLORD'S CONSENT TO ASSIGNMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
|  | 12 - 14-2018 | 12-01-2023 | 200 |  |  | *** |  |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

| Borrower: | HyperBlock, LLC<br>5619 DTC Parkway #475<br>Greenwood Village, CO  80111 | Lender: | Bank of Montana<br>125 Bank Street<br>Suite 100<br>Missoula, MT  59802 |
|-----------|-----------|---------|---------|

**THIS LANDLORD'S CONSENT TO ASSIGNMENT** is entered into among HyperBlock, LLC ("Borrower"), whose address is 5619 DTC Parkway #475, Greenwood Village, CO  80111; Bank of Montana ("Lender"), whose address is 125 Bank Street, Suite 100, Missoula, MT  59802; and Bonner Property Development, LLC ("Landlord"), whose address is 224 N. Higgins Avenue, Missoula, MT  59802.  Borrower and Lender have entered into, or are about to enter into, an agreement whereby Lender has acquired or will acquire a security interest or other interest in the Collateral. Some or all of the Collateral may be affixed or otherwise become located on the Premises.  To induce Lender to extend the Loan to Borrower against such security interest in the Collateral and for other valuable consideration, Landlord hereby agrees with Lender and Borrower as follows.

**COLLATERAL DESCRIPTION.**  The word "Collateral" means certain of Borrower's personal property in which Lender has acquired or will acquire a security interest, including without limitation the following specific property:

   None.

**BORROWER'S ASSIGNMENT OF LEASE.**  Borrower hereby assigns to Lender all of Borrower's rights in the Lease, as partial security for the Loan.  The parties intend that this assignment will be a present transfer to Lender of all of Borrower's rights under the Lease, subject to Borrower's rights to use the Premises and enjoy the benefits of the Lease while not in default on the Loan or Lease.  Upon full performance by Borrower under the Loan, this assignment shall be ended, without the necessity of any further action by any of the parties.  This assignment includes all renewals of and amendments to the Lease or the Loan, until the Loan is paid in full.  No amendments may be made to the Lease without Lender's prior written consent, which shall not be unreasonably withheld or delayed.

**CONSENT OF LANDLORD.**  Landlord consents to the above assignment.  If Borrower defaults under the Loan or the Lease, Lender may reassign the Lease, and Landlord agrees that Landlord's consent to any such reassignment will not be unreasonably withheld or delayed.  So long as Lender has not entered the Premises for the purpose of operating a business, Lender will have no liability under the Lease, including without limitation liability for rent.  Whether or not Lender enters into possession of the Premises for any purpose, Borrower will remain fully liable for all obligations of Borrower as lessee under the Lease.  While Lender is in possession of the Premises, Lender will cause all payments due under the Lease and attributable to that period of time to be made to Landlord.  If Lender later reassigns the Lease or vacates the Premises, Lender will have no further obligation to Landlord.

**LEASE DEFAULTS.**  Both Borrower and Landlord agree and represent to Lender that, to the best of their knowledge, there is no breach or offset existing under the Lease or under any other agreement between Borrower and Landlord.  Landlord agrees not to terminate the Lease, despite any default by Borrower, without giving Lender written notice of the default and an opportunity to cure the default within a period of sixty (60) days from the receipt of the notice.  If the default is one that cannot reasonably be cured by Lender (such as insolvency, bankruptcy, or other judicial proceedings against Borrower), then Landlord will not terminate the Lease so long as Landlord receives all sums due under the Lease for the period during which Lender is in possession of the Premises, or so long as Lender reassigns the Lease to a new lessee reasonably satisfactory to Landlord.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:  This Agreement shall extend to and bind the respective heirs, personal representatives, successors and assigns of the parties to this Agreement.  The covenants of Borrower and Landlord respecting subordination of the claim or claims of Landlord in favor of Lender shall extend to, include, and be enforceable by any transferee or endorsee to whom Lender may transfer any claim or claims to which this Agreement shall apply.  Lender need not accept this Agreement in writing or otherwise to make it effective.  This Agreement shall be governed by and construed in accordance with the laws of the State of Montana.  If Landlord is other than an individual, any agent or other person executing this Agreement on behalf of Landlord represents and warrants to Lender that he or she has full power and authority to execute this Agreement on Landlord's behalf.  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is in writing and signed by Lender.  Without notice to Landlord and without affecting the validity of this Consent, Lender may do or not do anything it deems appropriate or necessary with respect to the Loan, any obligors on the Loan, or any Collateral for the Loan; including without limitation extending, renewing, rearranging, or accelerating any of the Loan indebtedness.

**AMENDMENTS.**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**NO WAIVER BY LENDER.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Landlord, shall constitute a waiver of any of Lender's rights or of any of Landlord's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SEVERABILITY.**  If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall

be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Agreement.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.**  The word "Agreement" means this Landlord's Consent to Assignment, as this Landlord's Consent to Assignment may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Consent to Assignment from time to time.

**Borrower.**  The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**  The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Landlord.**  The word "Landlord" means Bonner Property Development, LLC, and is used for convenience purposes only.  Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

**Lease.**  The word "Lease" means that certain lease of the Premises, dated March 1, 2016, between Landlord and Borrower..

**Lender.**  The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.**  The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

**Note.**  The word "Note" means the Note dated *Dec. 14*, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Premises.**  The word "Premises" means the real property located in Missoula County, State of Montana, commonly known as 9214 Bonner Mill Road, Bonner , MT  59823.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S CONSENT TO ASSIGNMENT, AND BORROWER AND LANDLORD AGREE TO ITS TERMS.  THIS AGREEMENT IS DATED *Dec. 14*, 2018.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**
By: _____
Sean M. Walsh, Chief Executive Officer of
HyperBlock, Inc.

**LANDLORD:**

**BONNER PROPERTY DEVELOPMENT, LLC**
By: _____
Stephen K. Nelson, Co-Manager and Member
of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member
of Bonner Property Development, LLC

**LENDER:**

**BANK OF MONTANA**
X _____
Jacob T. Pelczar, Vice President

be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Agreement.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.**  The word "Agreement" means this Landlord's Consent to Assignment, as this Landlord's Consent to Assignment may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Consent to Assignment from time to time.

**Borrower.**  The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**  The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Landlord.**  The word "Landlord" means Bonner Property Development, LLC, and is used for convenience purposes only.  Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

**Lease.**  The word "Lease" means that certain lease of the Premises, dated March 1, 2016, between Landlord and Borrower..

**Lender.**  The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.**  The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

**Note.**  The word "Note" means the Note dated _December 14_, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Premises.**  The word "Premises" means the real property located in Missoula County, State of Montana, commonly known as 9214 Bonner Mill Road, Bonner , MT  59823.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S CONSENT TO ASSIGNMENT, AND BORROWER AND LANDLORD AGREE TO ITS TERMS.  THIS AGREEMENT IS DATED _December 14_, 2018.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

By: _____
Sean M. Walsh, Chief Executive Officer of
HyperBlock, Inc.

**LANDLORD:**

**BONNER PROPERTY DEVELOPMENT, LLC**

By: _____
Stephen K. Nelson, Co-Manager and Member
of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member
of Bonner Property Development, LLC

**LENDER:**

**BANK OF MONTANA**

X _____
Jacob T. Pelczar, Vice President

EXHIBIT 11.(iii)
PAGE 4

be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Landlord's Consent to Assignment, as this Landlord's Consent to Assignment may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Consent to Assignment from time to time.

**Borrower.** The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Landlord.** The word "Landlord" means Bonner Property Development, LLC, and is used for convenience purposes only. Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

**Lease.** The word "Lease" means that certain lease of the Premises, dated March 1, 2016, between Landlord and Borrower..

**Lender.** The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

**Note.** The word "Note" means the Note dated _December 14_ , 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Premises.** The word "Premises" means the real property located in Missoula County, State of Montana, commonly known as 9214 Bonner Mill Road, Bonner , MT   59823.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S CONSENT TO ASSIGNMENT, AND BORROWER AND LANDLORD AGREE TO ITS TERMS. THIS AGREEMENT IS DATED _December 14_ , 2018.

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC
By: _____
Sean M. Walsh, Chief Executive Officer of
HyperBlock, Inc.

LANDLORD:

BONNER PROPERTY DEVELOPMENT, LLC
By: _____
Stephen K. Nelson, Co-Manager and Member
of Bonner Property Development, LLC
By: _____
Michael D. Boehme, Co-Manager and Member
of Bonner Property Development, LLC

LENDER:

BANK OF MONTANA
X _____
Jacob T. Pelczar, Vice President

EXHIBIT 11.(iii)
PAGE 6

**WHEN RECORDED MAIL TO:**
Bank of Montana
125 Bank Street
Suite 100
Missoula, MT   59802

**RECORDATION REQUESTED BY:**
Bank of Montana
125 Bank Street
Suite 100
Missoula, MT   59802

**SEND TAX NOTICES TO:**
Bonner  Property  Development,
LLC
224 N. Higgins Avenue
Missoula, MT   59802

201822089  B:1006 P:1305  Pages:6  Fee:$42.00
12/18/2018 03:05:34 PM  Subordination Agreement
Tyler R. Gernant, Missoula County Clerk & Recorder

**FOR RECORDER'S USE ONLY**

**NOTICE:  THIS  SUBORDINATION AGREEMENT - LEASE RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

## SUBORDINATION AGREEMENT - LEASE

**THIS  SUBORDINATION AGREEMENT - LEASE** dated December 14, 2018, is made and executed between HyperBlock, LLC (referred to herein sometimes as "Lessee" and sometimes as "Borrower"); and Bank of Montana ("Lender").

**SUBORDINATED LEASE.**  Lessee has executed a lease dated March 1, 2016 of the property described herein (the "Subordinated Lease").  The following information is the summary of the basic terms and conditions of the Subordinated Lease:  Lease dated March 1, 2016 between Bonner Property Development, LLC and Project Spokane, LLC, including any amendments.

**REAL PROPERTY DESCRIPTION.**  The Lease covers a portion of the following described real property located in Missoula County, State of Montana:

Tract 25A, Certificate of Survey No. 06487; a Tract of land located in the East One-Half (E1/2) of Section 21 and the West One-Half (W1/2) of Section 22, Township 13 North, Range 18 West, P.M.M., Missoula County, Montana.

The Real Property or its address is commonly known as  9214 Bonner Mill Road, Bonner, MT  59823.

**SUPERIOR INDEBTEDNESS.**  Lender has extended or has agreed to extend the following described financial accommodations to Borrower, secured by the Real Property (the "Superior Indebtedness"):

**Note in the amount $2,625,000.**

**LENDER'S LIEN.**  The Superior Indebtedness is or will be secured by the Real Property and evidenced by a mortgage, deed of trust, or other lien instrument, dated Dec. 14, 2018, from Bonner Property Development, LLC to Lender (the "Lender's Lien").  As a condition to the granting of the requested financial accommodations, Lender has required that the Lender's Lien be and remain superior to the Subordinated Lease.

**REQUESTED FINANCIAL ACCOMMODATIONS.** Lessee wants Lender to provide financial accommodations to Lessee in the form of the Superior Indebtedness. Lessee represents and acknowledges to Lender that Lessee will benefit as a result of these financial accommodations from Lender to Lessee, and Lessee acknowledges receipt of valuable consideration for entering into this Subordination.

**NOW THEREFORE THE PARTIES TO THIS SUBORDINATION HEREBY AGREE AS FOLLOWS:**

**SUBORDINATION.** All of Lessee's right, title, and interest in and to the Subordinated Lease and the Real Property is and shall be subordinated in all respects to Lender's Lien and the Superior Indebtedness, and it is agreed that Lender's Lien shall be and remain, at all times, prior and superior to Lessee's interests in the Subordinated Lease and the Real Property. Lessee also subordinates to Lender's Lien all other Security Interests in the Real Property held by Lessee, whether now existing or hereafter acquired.

**LESSEE'S REPRESENTATIONS AND WARRANTIES.** Lessee hereby represents and warrants to Lender that Lessee has heretofore delivered to Lender a true, correct and complete copy of the Lease, which constitutes the entire agreement between the parties thereto and Lessee further acknowledges that the Lease is in full force and effect and that no default by Lessee or, to Lessee's knowledge, by other party under the terms and provisions of the Lease exists as of the date hereof.

**LESSEE WAIVERS.** Lessee waives any right to require Lender:  (A)  to make, extend, renew, or modify any loan to Lessee or to grant any other financial accommodations to Lessee whatsoever;  (B)  to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of any  secured by Lender's Lien, or notice of any action or nonaction on the part of Lessee, Lender, any surety, endorser, or other guarantor in connection with the Superior Indebtedness, or in connection with the creation of new or additional indebtedness;  (C)  to resort for payment or to proceed directly or at once against any person, including Lessee;  (D)  to proceed directly against or exhaust any collateral held by Lender from Lessee, any other guarantor, or any other person;  (E)  to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Lessee or to comply with any other applicable provisions of the Uniform Commercial Code;  (F)  to pursue any other remedy within Lender's power; or  (G)  to commit any act or omission of any kind, at any time, with respect to any matter whatsoever.

**LENDER'S RIGHTS.** Lender may take or omit any and all actions with respect to Lender's Lien without affecting whatsoever any of Lender's rights under this Subordination.  In particular, without limitation, Lender may  (A)  make one or more additional secured or unsecured loans to Lessee;  (B)  repeatedly alter, compromise, renew, extend, accelerate, or otherwise change the time for payment or other terms of the Superior Indebtedness or any part of it, including increases and decreases of the rate of interest on the Superior Indebtedness; extensions may be repeated and may be for longer than the original loan term;  (C)  take and hold collateral for the payment of the Superior Indebtedness, and exchange, enforce, waive, and release any such collateral, with or without the substitution of new collateral;  (D)  release, substitute, agree not to sue, or deal with any one or more of Lessee's sureties, endorsers, or guarantors on any terms or manner Lender chooses;  (E)  determine how, when and what application of payments and credits, shall be made on the Superior Indebtedness;  (F)  apply such security and direct the order or manner of sale of the security, as Lender in its discretion may determine; and  (G)  transfer this Subordination to another party.

**DEFAULT BY LESSEE.** If Lessee becomes insolvent or bankrupt, this Subordination shall remain in full force and effect. Any default by Lessee under the terms of the Subordinated Lease also shall constitute an event of default under the terms of the Superior Indebtedness in favor of Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Subordination:

**Amendments.** This Subordination, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Subordination.  No alteration of or amendment to this Subordination shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Subordination, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.  Whether or not any court action is involved, and to the

extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.   Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law.   Lessee also will pay any court costs, in addition to all other sums provided by law.

**Authority.**   The person who signs this Subordination as or on behalf of Lessee represents and warrants that he or she has authority to execute this Subordination and to subordinate the Subordinated Indebtedness and the Lessee's security interests in Lessee's property, if any.

**Caption Headings.**   Caption headings in this Subordination are for convenience purposes only and are not to be used to interpret or define the provisions of this Subordination.

**Governing Law.   This Subordination will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.   This Subordination has been accepted by Lender in the State of Montana.**

**Choice of Venue.**   If there is a lawsuit, Lessee agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**No Waiver by Lender.**   Lender shall not be deemed to have waived any rights under this Subordination unless such waiver is given in writing and signed by Lender.   No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.   A waiver by Lender of a provision of this Subordination shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Subordination.   No prior waiver by Lender, nor any course of dealing between Lender and Lessee, shall constitute a waiver of any of Lender's rights or of any of Lessee's obligations as to any future transactions.   Whenever the consent of Lender is required under this Subordination, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors.**   This Subordination shall extend to and bind the respective heirs, personal representatives, successors and assigns of the parties to this Subordination, and the covenants of Lessee herein in favor of Lender shall extend to, include, and be enforceable by any transferee or endorsee to whom Lender may transfer any or all of the Superior Indebtedness.

**Waive Jury.   All parties to this Subordination hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.**   The following capitalized words and terms shall have the following meanings when used in this Subordination.   Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.   Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.   Words and terms not otherwise defined in this Subordination shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.**   The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Lender.**   The word "Lender" means Bank of Montana, its successors and assigns.

**Note.**   The word "Note" means the Note dated Dec - 14            , 2018 and executed by HyperBlock,

LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Subordination.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**EACH PARTY TO THIS SUBORDINATION ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS SUBORDINATION, AND EACH PARTY AGREES TO ITS TERMS. THIS SUBORDINATION IS DATED** Dec. 14 , 2018.

**LESSEE:**


**HYPERBLOCK, LLC**


**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**
By: _____
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

**LENDER:**


**BANK OF MONTANA**
X _____
Jacob T. Pelczar, Vice President

_____

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Puerto Rico_ )

                                              ) SS

COUNTY OF _Puerto Rico_ )

This record was acknowledged before me on _December 14th_ ___Sean M. Walsh___, 20 _18_ by **Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc., Sole Member of HyperBlock, LLC.**

_____
(Signature of notarial officer)

_Notary # 16913_
Title of officer (if not shown in stamp)
_Commission not expire_
_Affidavit # 862_

## LENDER ACKNOWLEDGMENT

STATE OF _MT_ )
) SS
COUNTY OF _MISSoula_ )

This record was acknowledged before me on _Dec 17_ , 20 _18_ by **Jacob T. Pelczar** as **Vice President** of **Bank of Montana**.

_alex Drayton_
(Signature of notarial officer)

_Assistant Operations Officer_
Title of officer (if not shown in stamp)

ALEXANDRA DRAYTON
Notary Public for the
State of Montana
Residing at MISSOULA, MT
Commission Expires
April 26, 2022

(Official stamp)

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - MT
L:\CFI\LPL\G215.FC  TR-1284  PR-4 (M)

EXHIBIT 11.(v)
PAGE 1

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

**LOAN TYPE.** This is a Variable Rate Nondisclosable Draw Down Line of Credit Loan to a Limited Liability Company for $2,625,000.00 due on December 1, 2023.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ **Personal, Family, or Household Purposes or Personal Investment.**

☒ **Business (Including Real Estate Investment).**

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Purchase Electrical Infrastructure.

**REAL ESTATE DOCUMENTS.** If any party to this transaction is granting a security interest in any real property to Lender and Borrower is not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, Borrower agrees to perform and comply with the Real Estate Documents just as if Borrower has signed as a direct and original party to the Real Estate Documents. This means Borrower agrees to all the representations and warranties made in the Real Estate Documents. In addition, Borrower agrees to perform and comply strictly with all the terms, obligations and covenants to be performed by either Borrower or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell Borrower about any action or inaction Lender takes in connection with the Real Estate Documents. Borrower assumes the responsibility for being and keeping informed about the property. Borrower also waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the property, or any delay by Lender in realizing upon the property.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $2,625,000.00 as follows:

| | |
|---|---|
| **Other Disbursements:**<br>$2,523,296.50 Loan Funds Available to Borrower | $2,523,296.50 |
| **Other Charges Financed:**<br>$5,301.00 Lender's Title Insurance Cost to Stewart Title of Missoula County, Inc.<br>$245.00 Recording Costs to Stewart Title of Missoula County, Inc.<br>$2,500.00 Legal Costs to Bank of Montana | $8,046.00 |
| **Total Financed Prepaid Finance Charges:**<br>$12.00 Flood Certification to Partners Credit & Verification Solutions<br>$93,000.00 Bank Fee to Bank of Montana<br>$250.00 Express Mail/Remote Signing Costs to Bank of Montana<br>$350.00 Settlement Cost to Stewart Title of Missoula County, Inc.<br>$45.50 Credit Report to Partners Credit & Verification Solutions | $93,657.50 |
| **Note Principal:** | $2,625,000.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| **Prepaid Finance Charges Paid in Cash:**<br>$20,000.00 Bank Fee to Bank of Montana | $20,000.00 |
| **Other Charges Paid in Cash:**<br>$7,500.00 Appraisal Cost to Kembel Kosena & Co. | $7,500.00 |
| **Total Charges Paid in Cash:** | $27,500.00 |

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED Dec. 14.

EXHIBIT 11.(v)
PAGE 2

**DISBURSEMENT REQUEST AND AUTHORIZATION**
**(Continued)**

Loan No: :     4200                                                                                       Page 2

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By: _____
    Sean   M.   Walsh,   Chief   Executive   Officer   of
    HyperBlock, Inc.

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - MT  L:\CFI\LPL\I30.FC  TR-1284  PR-4

EXHIBIT 11.(vi)
PAGE 1

# ERRORS AND OMISSIONS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

**LOAN NO.:** 4200

The undersigned Borrower for and in consideration of the above-referenced Lender funding the closing of this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, any or all loan closing documentation if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Federal Housing Authority or the Department of Veterans Affairs.

The undersigned Borrower does hereby so agree and covenant in order to assure that this loan documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in and to said loan documentation.

DATED effective this December 14, 2018.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

By: [signature]
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

LaserPro, Ver. 18.3.11.003 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - MT L:\CFI\LPL\I26.FC TR-1284 PR-4

EXHIBIT 11.(vii)
PAGE 1

# GENERAL AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

I hereby authorize **Bank of Montana** to verify my past and present employment, earnings records, bank accounts, stock holdings, and any other asset balances needed to process or update my application or current account.

I further authorize **Bank of Montana** to order credit reports and verify all other credit information, including past and present mortgage and land lord references.

Additionally, I agree to provide **Bank of Montana** annually or as requested:

(i.) Tax Returns and/or Tax Return Extension Notices as soon as available, but in no event later than one hundred eighty (180) days after the end of each fiscal year;
(ii.) An updated Personal Financial Statement in a format acceptable to Bank of Montana; and
(iii.) Any other pertinent financial materials that support the foregoing items.

I agree to provide any requested financial information to **Bank of Montana** within ten (10) days of the date of the request.

It is understood that a photocopy or digital copy of this document presented to a third party shall serve as sufficient authorization to provide **Bank of Montana** the requested information.

This General Authorization is valid for a period of one (1) year, or for the duration of my banking and/or loan relationship with **Bank of Montana**, whichever is longer.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

By: ______________________________
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

**GUARANTOR:**

X ______________________________
Stephen K. Nelson, Individually

X ______________________________
Michael D. Boehme, Individually

**BONNER PROPERTY DEVELOPMENT, LLC**

By: ______________________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: ______________________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

**GRANTOR:**

**BONNER PROPERTY DEVELOPMENT, LLC**

By: ______________________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: ______________________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

LaserPro, Ver. 18.3.11.003 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - MT L:\CFI\LPL\G80.FC TR-1284 PR-4

EXHIBIT 11.(vii)
PAGE 2

# GENERAL AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | ______4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

I hereby authorize **Bank of Montana** to verify my past and present employment, earnings records, bank accounts, stock holdings, and any other asset balances needed to process or update my application or current account.

I further authorize **Bank of Montana** to order credit reports and verify all other credit information, including past and present mortgage and land lord references.

Additionally, I agree to provide **Bank of Montana** annually or as requested:

(i.) Tax Returns and/or Tax Return Extension Notices as soon as available, but in no event later than one hundred eighty (180) days after the end of each fiscal year;
(ii.) An updated Personal Financial Statement in a format acceptable to Bank of Montana; and
(iii.) Any other pertinent financial materials that support the foregoing items.

I agree to provide any requested financial information to **Bank of Montana** within ten (10) days of the date of the request.

It is understood that a photocopy or digital copy of this document presented to a third party shall serve as sufficient authorization to provide **Bank of Montana** the requested information.

This General Authorization is valid for a period of one (1) year, or for the duration of my banking and/or loan relationship with **Bank of Montana**, whichever is longer.

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By:______________________________
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

GUARANTOR:

X______________________________
Stephen K. Nelson, Individually

X______________________________
Michael D. Boehme, Individually

BONNER PROPERTY DEVELOPMENT, LLC

By:______________________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By:______________________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By:______________________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By:______________________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

LaserPro, Ver. 18.3.11.003 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - MT L:\CFI\LPL\G60.FC TR-1284 PR-4

# GENERAL AUTHORIZATION

EXHIBIT 11.(vii)
PAGE 3

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

I hereby authorize **Bank of Montana** to verify my past and present employment, earnings records, bank accounts, stock holdings, and any other asset balances needed to process or update my application or current account.

I further authorize **Bank of Montana** to order credit reports and verify all other credit information, including past and present mortgage and land lord references.

Additionally, I agree to provide **Bank of Montana** annually or as requested:

(i.) Tax Returns and/or Tax Return Extension Notices as soon as available, but in no event later than one hundred eighty (180) days after the end of each fiscal year;
(ii.) An updated Personal Financial Statement in a format acceptable to Bank of Montana; and
(iii.) Any other pertinent financial materials that support the foregoing items.

I agree to provide any requested financial information to **Bank of Montana** within ten (10) days of the date of the request.

It is understood that a photocopy or digital copy of this document presented to a third party shall serve as sufficient authorization to provide **Bank of Montana** the requested information.

This General Authorization is valid for a period of one (1) year, or for the duration of my banking and/or loan relationship with **Bank of Montana**, whichever is longer.

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By:______________________________
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

GUARANTOR:

X______________________________
Stephen K. Nelson, Individually

X______________________________
Michael D. Boehme, Individually

BONNER PROPERTY DEVELOPMENT, LLC

By:______________________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By:______________________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By:______________________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By:______________________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

LaserPro, Ver. 18.3.11.003 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - MT L:\CFI\LPL\G60.FC TR-1284 PR-4

EXHIBIT 11.(viii)
PAGE 1

# CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 1200 | | | *** | |
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

Federal law requires this consent form be provided to you. Unless authorized by law, your tax return preparer cannot disclose, without your consent, your tax return information to third parties for purposes other than the preparation and filing of your tax return. If you consent to the disclosure of your tax return information, Federal law may not protect your tax return information from further use or distribution.

You are not required to complete this form. If we obtain your signature on this form by conditioning our services on your consent, your consent will not be valid. If you agree to disclosure of your tax return information, your consent is valid for the amount of time you specify. If you do not specify the duration of your consent, your consent is valid for one (1) year.

Please initial by **one** of the following options:

_______ I **grant** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

_______ I **deny** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

By executing this release, I hereby authorize Bank of Montana and such individuals as they designate, to disclose my tax return information for the following purpose:

Annual Updates, As Requested by Regulators, or as otherwise required by Bank of Montana

Authorization Valid Through: **December 1, 2023**

I, ______________________________, authorize

(preparer) ______________________________ to disclose to **Bank of Montana** any current and historical tax return information requested by Bank of Montana related to my personal and business entities.

**Signature:** ______________________________ **Date:** ______________

**Company Name(s) (if applicable):**

______________________________

______________________________

If you believe your tax return information has been disclosed or used improperly in a manner unauthorized by law without your permission, you may contact the Treasury Inspector General for Tax Administration (TIGTA) by telephone at 1-800-366-4484, or by email to: complaints@tigta.treas.gov.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

**By:** ______________________________
**Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.**

**GUARANTOR:**

**X** ______________________________
**Stephen K. Nelson, Individually**

**X** ______________________________
**Michael D. Boehme, Individually**

**BONNER PROPERTY DEVELOPMENT, LLC**

**By:** ______________________________
**Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC**

**By:** ______________________________
**Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC**

# CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION

| Principal $2,625,000.00 | Loan Date 12-03-2018 | Maturity 12-01-2023 | Loan No 4200 | Call / Coll | Account | Officer *** | Initials |
|---|---|---|---|---|---|---|---|
| References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations. | | | | | | | |

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

Federal law requires this consent form be provided to you. Unless authorized by law, your tax return preparer cannot disclose, without your consent, your tax return information to third parties for purposes other than the preparation and filing of your tax return. If you consent to the disclosure of your tax return information, Federal law may not protect your tax return information from further use or distribution.

You are not required to complete this form. If we obtain your signature on this form by conditioning our services on your consent, your consent will not be valid. If you agree to disclosure of your tax return information, your consent is valid for the amount of time you specify. If you do not specify the duration of your consent, your consent is valid for one (1) year.

Please initial by **one** of the following options:

______ I **grant** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

______ I **deny** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

By executing this release, I hereby authorize Bank of Montana and such individuals as they designate, to disclose my tax return information for the following purpose:

Annual Updates, As Requested by Regulators, or as otherwise required by Bank of Montana

Authorization Valid Through: **December 1, 2023**

I, ______________________________, authorize

(preprarer) ______________________________ to disclose to **Bank of Montana** any current and historical tax return information requested by Bank of Montana related to my personal and business entities.

**Signature:** ______________________________ **Date:** ____________

**Company Name(s) (if applicable):**

______________________________

______________________________

If you believe your tax return information has been disclosed or used improperly in a manner unauthorized by law without your permission, you may contact the Treasury Inspector General for Tax Administration (TIGTA) by telephone at 1-800-366-4484, or by email to: complaints@tigta.treas.gov.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

**By:** ______________________________
**Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.**

**GUARANTOR:**

**X** ______________________________
**Stephen K. Nelson, Individually**

**X** ______________________________
**Michael D. Boehme, Individually**

**BONNER PROPERTY DEVELOPMENT, LLC**

**By:** ______________________________
**Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC**

**By:** ______________________________
**Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC**

## CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION
### (Continued)

| Loan No: | 4200 | | Page 2 |
|---|---|---|---|

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____     By: _____
Stephen  K.  Nelson,  Co-Manager  and  Member  of          Michael  D.  Boehme,  Co-Manager  and  Member  of
Bonner Property Development, LLC          Bonner Property Development, LLC

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018   All Rights Reserved.   - MT  L:\CFI\LPL\G60.FC  TR-1284  PR-4

# CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

---

Federal law requires this consent form be provided to you. Unless authorized by law, your tax return preparer cannot disclose, without your consent, your tax return information to third parties for purposes other than the preparation and filing of your tax return. If you consent to the disclosure of your tax return information, Federal law may not protect your tax return information from further use or distribution.

You are not required to complete this form. If we obtain your signature on this form by conditioning our services on your consent, your consent will not be valid. If you agree to disclosure of your tax return information, your consent is valid for the amount of time you specify. If you do not specify the duration of your consent, your consent is valid for one (1) year.

Please initial by **one** of the following options:

______ **I grant** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

______ **I deny** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

By executing this release, I hereby authorize Bank of Montana and such individuals as they designate, to disclose my tax return information for the following purpose:

Annual Updates, As Requested by Regulators, or as otherwise required by Bank of Montana

Authorization Valid Through: **December 1, 2023**

I, ______________________________________________, authorize

(preparer) ______________________________________________ to disclose to **Bank of Montana** any current and historical tax return information requested by Bank of Montana related to my personal and business entities.

**Signature:** ______________________________________________ **Date:** ____________________

**Company Name(s) (if applicable):**

______________________________________________

______________________________________________

If you believe your tax return information has been disclosed or used improperly in a manner unauthorized by law without your permission, you may contact the Treasury Inspector General for Tax Administration (TIGTA) by telephone at 1-800-366-4484, or by email to: complaints@tigta.treas.gov.

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By: ______________________________
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

GUARANTOR:

X ______________________________
Stephen K. Nelson, Individually

X [signature] ______________________________
Michael D. Boehme, Individually

BONNER PROPERTY DEVELOPMENT, LLC

By: ______________________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: [signature] ______________________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

**CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION**
**(Continued)**

Loan No:         4200                                                                                              Page 2

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____                    By: _____
Stephen K. Nelson, Co-Manager and Member of              Michael D. Boehme, Co-Manager and Member of
Bonner Property Development, LLC                          Bonner Property Development, LLC

Form **W-9**
(Rev. November 2017)

Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

▶ Go to **www.irs.gov/FormW9** for instructions and the latest information.

Give Form to the
requester. Do not
send to the IRS.

Print
or
type

See
Specific
Instructions
on
page
3.

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

HyperBlock, LLC

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☐ Individual/sole proprietor or   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate
single-member LLC

☒ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check
LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is
another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that
is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to
certain entities, not individuals; see
instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting
code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.

5619 DTC Parkway #475

**6** City, state, and ZIP code

Greenwood Village, CO  80111

Requester's name and address (optional)

Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

**7** List account number(s) here (optional)

2018004200

**Part I**  **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given
on line 1 to avoid backup withholding. For individuals, this is generally your social
security number (SSN). However, for a resident alien, sole proprietor, or disregarded
entity, see the instructions for Part I, later. For other entities, it is your employer
identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see
*What Name and Number To Give the Requester* for guidelines on whose number to
enter.

Social security number

or

Employer identification number

**OMITTED FOR PRIVACY**

**Part II**  **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal
Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has
notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to
backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does
not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual
retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but
you must provide your correct TIN. See the instructions for Part II, later.

Sign
Here

Signature of
U.S. person ▶ *John Wahl*                 Date ▶ *12/14/2018*

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. For the latest information about developments related to
Form W-9 and its instructions, such as legislation enacted after they were
published, go to www.irs.gov/FormW9.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information
return with the IRS must obtain your correct taxpayer identification number (TIN)
which may be your social security number (SSN), individual taxpayer identification
number (ITIN), adoption taxpayer identification number (ATIN), or employer
identification number (EIN), to report on an information return the amount paid to
you, or other amount reportable on an information return. Examples of information
returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by
brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide
your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to
backup withholding. See *What is backup withholding*, later.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to
be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If
applicable, you are also certifying that as a U.S. person, your allocable share of any
partnership income from a U.S. trade or business is not subject to the withholding tax
on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are
exempt from the FATCA reporting, is correct. See *What is FATCA reporting*, later, for
further information.

Cat. No. 10231X                      Form **W-9** (Rev. 11-2017)

# BANK OF MONTANA®
### YOUR BUSINESS BANK

# BENEFICIAL OWNERSHIP CERTIFICATION FORM

## WHAT IS THIS FORM?

To help the government fight financial crime, Federal regulation requires certain financial institutions to obtain, verify and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e. the beneficial owners) helps law enforcement investigate and prosecute these crimes.

## WHO HAS TO COMPLETE THIS FORM?

This form must be completed by the person opening an account on behalf of a legal entity with any of the following U.S. financial institutions: (i) a bank or credit union; (ii) a broker or dealer in securities; (iii) a mutual fund; (iv) a futures commission merchant; or (v) an introducing broker in commodities.

For the purposes of this form a **legal entity** includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States or a foreign country. **Legal entity** does not include sole proprietorships, unincorporated associations or natural persons opening accounts on their own behalf.

## WHAT INFORMATION DO I HAVE TO PROVIDE?

This form requires you to provide the name, address, date of birth and Social Security Number (or passport number or other similar information, in the case of foreign persons) for the following individuals (i.e. the **beneficial owners**):

(i)     Each individual, if any, who owns, directly or indirectly, 25% or more of the equity interests of the legal entity customer (e.g. each natural person who owns 25% or more of the shares of the corporation;                                                                          and

(ii)    An individual with significant responsibility for managing the legal entity customer (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President or Treasurer)

The number of individuals that satisfy this definition of "beneficial owner" may vary. Under Section (i), depending on the factual circumstances, up to four individuals (but as few as zero) may need to be identified. Regardless of the number of individuals identified under Section (i), you must provide the identifying information of one individual under Section (ii). It is possible that in some circumstances the same individual may be identified in both sections (e.g. the President of Acme, Inc. who also holds a 30% equity interest). Thus, a completed form will contain the identifying information of at least one individual under Section (ii) and up to five individuals (i.e. one individual under Section (ii) and four 25% equity holders under Section (i)).

The financial institution may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

EXHIBIT 11.(x)
PAGE 2

# BENEFICIAL OWNERSHIP
# CERTIFICATION FORM

Persons opening an account on behalf of a legal entity must provide the following information[1].

| | |
|---|---|
| **Name and Title of Natural Person Opening Account** | Sean M. Walsh, CEO |
| **Name, Type, and Address of Legal Entity for which the Account is being Opened** | HyperBlock, LLC 5619 DTC Parkway 475, Greenwood Village Colorado 80111 |

Please provide the following information[2] for **each** individual, if any, who directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, **owns 25% or more** in the equity interests of the legal entity listed above.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number[3] | Ownership % |
|---|---|---|---|---|---|
| HyperBlock, Inc. | N/A | 388 Carlaw Ave Suite 300 Toronto, ON m4m2T4 | | **OMITTED FOR PRIVACY** | 100% |
| | | | | | |
| | | | | | |
| | | | | | |

*...Continued on the following page*

**IMPORTANT:** If there is a legal entity that owns 25% or more of this legal entity customer, please complete the **Beneficial Ownership Addendum** located on Page 4.

---

[1] Modeled from FinCEN Appendix A, Certification Regarding Beneficial Owners of Legal Entity Customers.
[2] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[3] In lieu of a passport number, foreign persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

EXHIBIT 11.(x)
PAGE 3

# BENEFICIAL OWNERSHIP
# CERTIFICATION FORM

Please provide the following information[4] for **one** individual with **significant responsibility for managing the legal entity listed above**, such as:

[X] An executive officer or senior manager (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President or Treasurer); OR

[ ] Any other individual who regularly performs similar functions.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number[5] |
|------|--------------|---------|-----------------------------------------|------------------------------------------------------------------------------------------------------------|
| Sean M. Walsh | 5/24/1972 | 151 Calle San Francisco Suite 200 San Juan, PR 00901-1607 | **OMITTED FOR PRIVACY** | |
| | | | | |
| | | | | |
| | | | | |

I, _Sean M. Walsh_, hereby certify, to the best of my knowledge, that the information provided above is complete and correct. I also agree to notify Bank of Montana in the event of any ownership change.

_____
Signature                                      Date
Legal Entity Identifier: _____ (Optional)

[4] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[5] In lieu of a passport number, foreign persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

# BENEFICIAL OWNERSHIP ADDENDUM

This addendum should be used when there are one or more legal entities
that own 25% or more of the legal entity customer opening this account.

| | |
|---|---|
| **Legal Entity Name**[6] | HyperBlock, Inc. |
| **% Ownership in Customer Opening the Account** | 100% |

Please provide the following information[7] for **each** individual, if any, who directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, **owns 25% or more** in the equity interests of the legal entity listed above.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number[8] | Ownership % |
|---|---|---|---|---|---|
| Please note, HyperBlock, Inc. is a Canadian, publically traded company listed on the Toronto stock exchange. | | | | | |
| | | | | | |

| | YES | NO |
|---|---|---|
| Are any of the individuals listed above also owners in the legal entity opening the account? | ☐ | ☐ |

[6] Name of the legal entity that has ownership in the customer seeking to open the account.
[7] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[8] In lieu of a passport number, foreign persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

EXHIBIT 11.(x)
PAGE 5

If you answered "YES", please comment on whether any of the individuals listed above own, in the aggregate[9], 25% or more of the legal entity opening the account.

---

[9] Add ownership percentages for each individual listed on Page 2 and Page 4 to determine whether they own 25% or more of the legal entity opening the account.

# COMMERCIAL GUARANTY

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

**Guarantor:** Stephen K. Nelson
733 Anglers Bend Way
Missoula, MT 59802

**GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral

held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed

under this Guaranty.

**Notices.**  Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty.  Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.  Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty.  No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.**  Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.  Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.**

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Guaranty.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.**  The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.**  The word "Guarantor" means everyone signing this Guaranty, including without limitation Stephen K. Nelson, and in each case, any signer's successors and assigns.

**Guaranty.**  The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.**  The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.**  The word "Lender" means Bank of Montana, its successors and assigns.

**Note.**  The word "Note" means the promissory note dated _December 14_, 2018, **in the original principal amount of $2,625,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED** _December 14_ **, 2018.**

GUARANTOR:

X _____
Stephen K. Nelson

LaserPro, Ver. 18.1.1.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - MT  L:\CFI\LPL\E20.FC  TR-1594  PR-4 (M)

EXHIBIT 12.(ii)
PAGE 1

# COMMERCIAL GUARANTY

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO   80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT   59802

**Guarantor:** Bonner Property Development, LLC
224 N. Higgins Avenue
Missoula, MT   59802

Whereas, Guarantor leases certain real property to Borrower under a Lease Agreement dated as of March 1, 2016 (the "Lease"); and

Whereas, Lender has agreed, on even date with this Commercial Guaranty, to extend a loan to Borrower to fund, in whole or in part, certain improvements for the benefit of the property that is the subject of the Lease; and

Whereas, the improvement to the property provides a direct benefit to Guarantor; and

Whereas, Lender would not agree to extend the loan to Borrower without Guarantor's execution and delivery of this Commercial Guaranty and the Guarantor's grant of a Deed of Trust to Lender as Beneficiary and encumbering, among other things, the property that is subject to the Lease; and

Whereas, Guarantor executes and delivers this Commercial Guaranty to induce Lender to make the loan to Borrower;

In Consideration of the Above, the parties agree as follows:

**GUARANTEE OF PAYMENT AND PERFORMANCE.**  For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents.  This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.**  The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.**  THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.**  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty.  A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.**  Guarantor authorizes Lender, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:**  (A)  to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower;  (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term;  (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral;  (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness;  (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine;  (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and  (H)  to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.**  Guarantor represents and warrants to Lender that  (A)  no representations or agreements

of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition; and (k) Lender is not bound by any provision of the Lease Agreement dated March 1, 2016 with Project Spokane, LLC as Tenant or any provision of the Credit Enhancement Agreement dated _____, 2018. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**COLLATERAL.** This Guaranty is secured by real property legally described as: Tract 25A, Certificate of Survey No. 06487; a Tract of land located in the East One-Half (E1/2) of Section 21 and the West One-Half (W1/2) of Section 22, Township 13 North, Range 18 West, P.M.M., Missoula County, Montana. The real property is commonly known as 9214 Bonner Mill Road, Bonner, MT 59823.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal

expenses whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.   This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.**

**Choice of Venue.**  If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**Integration.**   Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty.  Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.**  In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them.  The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them.  If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.  If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.**  Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty.  Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.  Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty.  No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.**  Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.  Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.**

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Guaranty.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.**  The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.**  The word "Guarantor" means everyone signing this Guaranty, including without limitation Bonner Property Development, LLC, and in each case, any signer's successors and assigns.

**Guaranty.**  The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.**  The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.**  The word "Lender" means Bank of Montana, its successors and assigns.

**Note.**  The word "Note" means the promissory note dated _December 14_, 2018, **in the original principal amount of $2,625,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EXHIBIT 12.(ii)
PAGE 4

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED _December 14_, 2018.

GUARANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____          By: _____
Stephen K. Nelson, Co-Manager and Member of          Michael D. Boehme, Co-Manager and Member of
Bonner Property Development, LLC          Bonner Property Development, LLC

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - MT  L:\CFI\LPL\E20.FC  TR-1264  PR-41 (M)

EXHIBIT 12.(ii)
PAGE 5

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED _December  14_ , 2018.

GUARANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____
Stephen K. Nelson, Co-Manager and Member of
Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member of
Bonner Property Development, LLC

EXHIBIT 12(iii)
PAGE 1

WHEN RECORDED MAIL TO:
Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

RECORDATION REQUESTED BY:
Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

SEND TAX NOTICES TO:
Bonner  Property  Development,
LLC
224 N. Higgins Avenue
Missoula, MT  59802

201822086  B:1006 P:1302  Pages:11  Fee:$77.00
12/18/2018 03:05:34 PM  Deed Of Trust
Tyler R. Gernant, Missoula County Clerk & Recorder

FOR RECORDER'S USE ONLY

## DEED OF TRUST

**MAXIMUM LIEN.**  The total principal indebtedness that may be outstanding at any given time which is secured by this Deed of Trust is $2,625,000.00.

**THIS DEED OF TRUST is dated** _December  14_ , 2018, among Bonner Property Development, LLC ("Grantor"); Bank of Montana, whose address is 125 Bank Street, Suite 100, Missoula, MT  59802 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Stewart Title of Missoula County, Inc. , whose address is 320 West Broadway, Missoula, MT  59802 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.**  For valuable consideration, Grantor conveys to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in Missoula County, State of Montana:

Tract 25A, Certificate of Survey No. 06487; a Tract of land located in the East One-Half (E1/2) of Section 21 and the West One-Half (W1/2) of Section 22, Township 13 North, Range 18 West, P.M.M., Missoula County, Montana.

The Real Property or its address is commonly known as 9214 Bonner Mill Road, Bonner, MT  59823.

**CROSS-COLLATERALIZATION.**  In addition to the Note, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.**  In addition to the Note, this Deed of Trust secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Deed of Trust secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS BY BORROWER AND GRANTOR'S PAYMENT AND PERFORMANCE OF GRANTORS OBLIGATIONS UNDER THE COMMERICAL GUARANTY DATED AS OF EVEN DATE HEREOF AND (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower and Grantor shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Grantor shall strictly perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property. The following provisions relate to the use of the Property or to other limitations on the Property. The Real Property does not exceed forty (40) acres, and this instrument is a Trust Indenture executed in conformity with the Small Tract Financing Act of Montana.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years (excluding the Lease Agreement dated as of March 1, 2016 with Project Spokane, LLC as Tenant, as the same may be amended with the consent of Lender, and subsequently assigned to Borrower as successor Tenant (the "Lease"), lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Montana law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts

Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2) the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Deed of Trust also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.**  Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and  (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.**  All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.**  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.**  Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.**  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Deed of Trust or upon all or any part of the  Indebtedness secured by this Deed of Trust;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust;  (3)  a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.**  If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness, including without limitation all future advances, when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower

or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.**  The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness.  This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.**  Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Adverse Change.**  A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHT TO CURE.**  If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default:  (1)  cures the default within thirty (30) days; or  (2)  if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.**  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.**  Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Borrower would be required to pay.

**Foreclosure.**  With respect to all or any part of the Real Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**UCC Remedies.**  With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.**  Lender shall have the right, without notice to Borrower or Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.  In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender.  If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property

preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either  (1)  pay a reasonable rental for the use of the Property, or (2)  vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust, the Commercial Guaranty or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor:  (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public;  (b) join in granting any easement or creating any restriction on the Real Property; and  (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Missoula County, State of Montana. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall

be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ADDITIONAL LEGAL COSTS.** Attorneys' Fees; Expenses defined herein shall be amended to also include paralegal fees and costs.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** **This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Montana.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** **All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the

homestead exemption laws of the State of Montana as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Bank of Montana, and its successors and assigns.

**Borrower.** The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents. This Deed of Trust is intended to be a trust indenture as provided for in the Small Tract Financing Act of Montana.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means Bonner Property Development, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means Bank of Montana, its successors and assigns.

**Note.** The word "Note" means the promissory note dated *December 14*, 2018, **in the original principal amount of $2,625,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Stewart Title of Missoula County, Inc. , whose address is 320 West Broadway, Missoula, MT 59802 and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND
GRANTOR AGREES TO ITS TERMS.

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC
By: _____
Stephen K. Nelson, Co-Manager and Member of Bonner
Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member of Bonner
Property Development, LLC

---

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ___Montana___                                                    )
                                                                          ) SS
COUNTY OF ___Missoula___                                                  )

This record was acknowledged before me on ___12 5___, 20 18 by **Stephen K.
Nelson**, Co-Manager and Member of Bonner Property Development, LLC ~~and Michael D. Boehme,
Co-Manager and Member of Bonner Property Development, LLC.~~

EMILIE J JOHNSTON
Notary Public for the
State of Montana
Residing at MISSOULA, MT
My Commission Expires
February 20, 2022
(Official stamp)

_____
(Signature of notarial officer)

___COU___
Title of officer (if not shown in stamp)

---

### REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust.  All sums
secured by this Deed of Trust have been fully paid and satisfied.   You are hereby directed, upon payment to
you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to
cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust),
and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate
now held by you under this Deed of Trust.   Please mail the reconveyance and Related Documents to:

Date: _____          Beneficiary: _____

                                                 By: _____

                                                 Its: _____

---

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.    All Rights Reserved.    - MT
L:\CFI\LPL\G01.FC  TR-1284  PR-4 (M)

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND
GRANTOR AGREES TO ITS TERMS.

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____
Stephen K. Nelson, Co-Manager and Member of Bonner
Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member of Bonner
Property Development, LLC

_____

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF Arizona _____          )
                                                     ) SS
COUNTY OF Maricopa _____           )

This record was acknowledged before me on December 4 _____, 20 18 by ~~Stephen K.~~
~~Nelson, Co-Manager and Member of Bonner Property Development, LLC and~~ Michael D. Boehme,
Co-Manager and Member of Bonner Property Development, LLC.

MELISSA A. FANELLI
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 551327
Expires September 03, 2022

_____
(Signature of notarial officer)

Notary Public
_____
Title of officer (if not shown in stamp)

(Official stamp)

_____

## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all Indebtedness secured by this Deed of Trust.  All sums
secured by this Deed of Trust have been fully paid and satisfied.  You are hereby directed, upon payment to
you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to
cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust),
and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate
now held by you under this Deed of Trust.  Please mail the reconveyance and Related Documents to:

_____.

Date: _____          Beneficiary:

                                                     _____

                                                     By: _____
                                                     Its: _____

_____

LaserPro, Ver. 18.3.11.003   Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - MT
L:\CFI\LPL\G01.FC   TR-1284   PR-4 (M)



EXHIBIT 12.(iv)
PAGE 1

**WHEN RECORDED MAIL TO:**
   Bank of Montana
   125 Bank Street
   Suite 100
   Missoula, MT  59802

**RECORDATION REQUESTED BY:**
   Bank of Montana
   125 Bank Street
   Suite 100
   Missoula, MT  59802

**SEND TAX NOTICES TO:**
   Bonner Property Development,
   LLC
   224 N. Higgins Avenue
   Missoula, MT  59802

```
201822087  B:1006 P:1303  Pages:8  Fee:$56.00
12/18/2018 03:05:34 PM  Assignment Of Rents
Tyler R. Gernant, Missoula County Clerk & Recorder
```

**FOR RECORDER'S USE ONLY**

### ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated *December 14*, 2018, is made and executed between **Bonner Property Development, LLC** (referred to below as "Grantor") and **Bank of Montana**, whose address is 125 Bank Street, Suite 100, Missoula, MT  59802 (referred to below as "Lender").

**ASSIGNMENT.** For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Missoula County, State of Montana:

> Tract 25A, Certificate of Survey No. 06487; a Tract of land located in the East One-Half (E1/2) of Section 21 and the West One-Half (W1/2) of Section 22, Township 13 North, Range 18 West, P.M.M., Missoula County, Montana.

The Property or its address is commonly known as  9214 Bonner Mill Road, Bonner, MT  59823.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Assignment secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Assignment secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Assignment secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

**THIS ASSIGNMENT IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF BORROWER AND GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Lender need not tell Borrower about any action or inaction Lender takes in connection with this Assignment. Borrower assumes the responsibility for being and keeping informed about the Property. Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Property, or any delay by Lender in realizing upon the Property. Borrower agrees to remain liable under the Note with Lender no matter what action Lender takes or fails to take under this Assignment.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related

EXHIBIT 2 (IV)
PAGE 2

Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.**   Grantor warrants that:

**Ownership.**   Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.**   Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.**   Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.**   Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.**   Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents.   For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.**   Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.**   Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.**   Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.**   Lender may do any and all things to execute and comply with the laws of the State of Montana and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.**   Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.**   Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.**   Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.**   Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.**   All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents.   Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.**   If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property.   Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.**   If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and

preserving the Property.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Assignment also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.**  Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.**  Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.**  Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default on Other Payments.**  Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.**  Borrower, any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's, any guarantor's or Grantor's property or ability to perform their respective obligations under this Assignment or any of the Related Documents.

**Environmental Default.**  Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.**  The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.**  The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Adverse Change.**  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Termination or Amendment of Lease.**  The Commercial Lease Agreement dated as of March 1, 2016 with Spokane Project LLC as Tenant is amended or terminated without the prior written consent of Lender.

**Insecurity.**  Lender in good faith believes itself insecure.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**CURE PROVISIONS.**  If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default:  (1) cures the default within thirty (30) days; or  (2)  if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and

thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.**  Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**Collect Rents.**  Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness.  In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above.  If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds.  Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.  Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.**  Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.  The receiver may serve without bond if permitted by law.  Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount.  Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.**  Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.**  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.**  If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.  Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.  Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law.  Grantor also will pay any court costs, in addition to all other sums provided by law.

**ADDITIONAL LEGAL COSTS.** Attorneys' Fees; Expenses defined herein shall be amended to also include paralegal fees and costs.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Assignment:

**Amendments.**  This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment.  No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.**  Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.  This Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.  This Assignment has been accepted by Lender in the State of Montana.**

**Choice of Venue.**  If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**Joint and Several Liability.**  All obligations of Borrower and Grantor under this Assignment shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower.  This means that each Grantor signing below is responsible for all obligations in this Assignment.  Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the

powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Assignment.

**Merger.**  There shall be no merger of the interest or estate created by this Assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.**  (1)  In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require.  (2)  If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several.  This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors.  If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit.  (3)  The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment.  No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.**  Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment.  Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.  Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.**  The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.**  If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Assignment.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.**  Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.**  Time is of the essence in the performance of this Assignment.

**Waive Jury.**  All parties to this Assignment hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.**  Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Montana as to all Indebtedness secured by this Assignment.

**Waiver of Right of Redemption.**  NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Assignment.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

EXHIBIT 12.(iv)
PAGE 6

**Assignment.**   The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.**   The word "Borrower" means HyperBlock, LLC.

**Default.**   The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.**   The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.**   The word "Grantor" means Bonner Property Development, LLC.

**Guarantor.**   The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.**   The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.**   The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.   Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Assignment.

**Lender.**   The word "Lender" means Bank of Montana, its successors and assigns.

**Note.**   The word "Note" means the promissory note dated  December 14 , 2018, **in the original principal amount of $2,625,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.**   The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.**   The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.**   The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

EXHIBIT 12.(iv)
PAGE 7

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON December 14 , 2018.

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

---

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF Montana _____ )
                                          ) SS
COUNTY OF Missoula _____ )

This record was acknowledged before me on 12 15 , 20 18 by Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC and Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC.

EMILIE J JOHNSTON
Notary Public for the
State of Montana
Residing at MISSOULA, MT
My Commission Expires
February 20, 2022
(Official stamp)

_____
(Signature of notarial officer)

COD
_____
Title of officer (if not shown in stamp)

---

LaserPro, Ver. 18.3.11.003   Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - MT
L:\CFI\LPL\G14.FC   TR-1284   PR-4 (M)

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON _December 14_ , 2018.

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Arizona_                                      )
                                                       ) SS
COUNTY OF _Maricopa_                                    )

This record was acknowledged before me on _December 4_ , 20 _18_ by Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC and Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC.

_____
(Signature of notarial officer)

MELISSA A. FANELLI
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 551327
Expires September 03, 2022

(Official stamp)

_Notary Public_
Title of officer (if not shown in stamp)

---

LaserPro, Ver. 18.3.11.003   Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - MT
L:\CFI\LPL\G14.FC   TR-1284   PR-4 (M)

EXHIBIT 12.(v)
PAGE 1

# LANDLORD'S CONSENT TO ASSIGNMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | 12-14-2018 | 12-01-2023 | 4200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | HyperBlock, LLC<br>5619 DTC Parkway #475<br>Greenwood Village, CO  80111 | Lender: | Bank of Montana<br>125 Bank Street<br>Suite 100<br>Missoula, MT  59802 |
|-----------|---|---------|---|

**THIS LANDLORD'S CONSENT TO ASSIGNMENT is entered into among HyperBlock, LLC ("Borrower"), whose address is 5619 DTC Parkway #475, Greenwood Village, CO  80111; Bank of Montana ("Lender"), whose address is 125 Bank Street, Suite 100, Missoula, MT  59802; and Bonner Property Development, LLC ("Landlord"), whose address is 224 N. Higgins Avenue, Missoula, MT  59802.** Borrower and Lender have entered into, or are about to enter into, an agreement whereby Lender has acquired or will acquire a security interest or other interest in the Collateral. Some or all of the Collateral may be affixed or otherwise become located on the Premises. To induce Lender to extend the Loan to Borrower against such security interest in the Collateral and for other valuable consideration, Landlord hereby agrees with Lender and Borrower as follows.

**COLLATERAL DESCRIPTION.** The word "Collateral" means certain of Borrower's personal property in which Lender has acquired or will acquire a security interest, including without limitation the following specific property:

**None.**

**BORROWER'S ASSIGNMENT OF LEASE.** Borrower hereby assigns to Lender all of Borrower's rights in the Lease, as partial security for the Loan. The parties intend that this assignment will be a present transfer to Lender of all of Borrower's rights under the Lease, subject to Borrower's rights to use the Premises and enjoy the benefits of the Lease while not in default on the Loan or Lease. Upon full performance by Borrower under the Loan, this assignment will be ended, without the necessity of any further action by any of the parties. This assignment includes all renewals of and amendments to the Lease or the Loan, until the Loan is paid in full. No amendments may be made to the Lease without Lender's prior written consent, which shall not be unreasonably withheld or delayed.

**CONSENT OF LANDLORD.** Landlord consents to the above assignment. If Borrower defaults under the Loan or the Lease, Lender may reassign the Lease, and Landlord agrees that Landlord's consent to any such reassignment will not be unreasonably withheld or delayed. So long as Lender has not entered the Premises for the purpose of operating a business, Lender will have no liability under the Lease, including without limitation liability for rent. Whether or not Lender enters into possession of the Premises for any purpose, Borrower will remain fully liable for all obligations of Borrower as lessee under the Lease. While Lender is in possession of the Premises, Lender will cause all payments due under the Lease and attributable to that period of time to be made to Landlord. If Lender later reassigns the Lease or vacates the Premises, Lender will have no further obligation to Landlord.

**LEASE DEFAULTS.** Both Borrower and Landlord agree and represent to Lender that, to the best of their knowledge, there is no breach or offset existing under the Lease or under any other agreement between Borrower and Landlord. Landlord agrees not to terminate the Lease, despite any default by Borrower, without giving Lender written notice of the default and an opportunity to cure the default within a period of sixty (60) days from the receipt of the notice. If the default is one that cannot reasonably be cured by Lender (such as insolvency, bankruptcy, or other judicial proceedings against Borrower), then Landlord will not terminate the Lease so long as Landlord receives all sums due under the Lease for the period during which Lender is in possession of the Premises, or so long as Lender reassigns the Lease to a new lessee reasonably satisfactory to Landlord.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement: This Agreement shall extend to and bind the respective heirs, personal representatives, successors and assigns of the parties to this Agreement. The covenants of Borrower and Landlord respecting subordination of the claim or claims of Landlord in favor of Lender shall extend to, include, and be enforceable by any transferee or endorsee to whom Lender may transfer any claim or claims to which this Agreement shall apply. Lender need not accept this Agreement in writing or otherwise to make it effective. This Agreement shall be governed by and construed in accordance with the laws of the State of Montana. If Landlord is other than an individual, any agent or other person executing this Agreement on behalf of Landlord represents and warrants to Lender that he or she has full power and authority to execute this Agreement on Landlord's behalf. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is in writing and signed by Lender. Without notice to Landlord and without affecting the validity of this Consent, Lender may do or not do anything it deems appropriate or necessary with respect to the Loan, any obligors on the Loan, or any Collateral for the Loan; including without limitation extending, renewing, rearranging, or accelerating any of the Loan indebtedness.

**AMENDMENTS.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Landlord, shall constitute a waiver of any of Lender's rights or of any of Landlord's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall

be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Agreement.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.**  The word "Agreement" means this Landlord's Consent to Assignment, as this Landlord's Consent to Assignment may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Consent to Assignment from time to time.

**Borrower.**  The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**  The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Landlord.**  The word "Landlord" means Bonner Property Development, LLC, and is used for convenience purposes only.  Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

**Lease.**  The word "Lease" means that certain lease of the Premises, dated March 1, 2016, between Landlord and Borrower..

**Lender.**  The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.**  The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

**Note.**  The word "Note" means the Note dated _Dec. 14_, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Premises.**  The word "Premises" means the real property located in Missoula County, State of Montana, commonly known as 9214 Bonner Mill Road, Bonner , MT  59823.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S CONSENT TO ASSIGNMENT, AND BORROWER AND LANDLORD AGREE TO ITS TERMS.  THIS AGREEMENT IS DATED _Dec. 14_, 2018.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**
By: _____
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

**LANDLORD:**

**BONNER PROPERTY DEVELOPMENT, LLC**
By: _____
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

**LENDER:**

**BANK OF MONTANA**
X _____
Jacob T. Pelczar, Vice President

be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Landlord's Consent to Assignment, as this Landlord's Consent to Assignment may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Consent to Assignment from time to time.

**Borrower.** The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Landlord.** The word "Landlord" means Bonner Property Development, LLC, and is used for convenience purposes only. Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

**Lease.** The word "Lease" means that certain lease of the Premises, dated March 1, 2016, between Landlord and Borrower..

**Lender.** The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

**Note.** The word "Note" means the Note dated *December 14*, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Premises.** The word "Premises" means the real property located in Missoula County, State of Montana, commonly known as 9214 Bonner Mill Road, Bonner , MT  59823.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S CONSENT TO ASSIGNMENT. AND BORROWER AND LANDLORD AGREE TO ITS TERMS.  THIS AGREEMENT IS DATED *December 14*, 2018.

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC
By: _____
Sean M. Walsh, Chief Executive Officer of
HyperBlock, Inc.

LANDLORD:

BONNER PROPERTY DEVELOPMENT, LLC
By: _____
Stephen K. Nelson, Co-Manager and Member
of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member
of Bonner Property Development, LLC

LENDER:

BANK OF MONTANA
X _____
Jacob T. Pelczar, Vice President

EXHIBIT 12.(v)
PAGE 4

be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Landlord's Consent to Assignment, as this Landlord's Consent to Assignment may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Consent to Assignment from time to time.

**Borrower.** The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Landlord.** The word "Landlord" means Bonner Property Development, LLC, and is used for convenience purposes only. Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

**Lease.** The word "Lease" means that certain lease of the Premises, dated March 1, 2016, between Landlord and Borrower..

**Lender.** The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

**Note.** The word "Note" means the Note dated *December 14*, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Premises.** The word "Premises" means the real property located in Missoula County, State of Montana, commonly known as 9214 Bonner Mill Road, Bonner , MT  59823.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S CONSENT TO ASSIGNMENT, AND BORROWER AND LANDLORD AGREE TO ITS TERMS. THIS AGREEMENT IS DATED *December 14*, 2018.

**BORROWER:**

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By: _____
Sean M. Walsh, Chief Executive Officer of
HyperBlock, Inc.

**LANDLORD:**

BONNER PROPERTY DEVELOPMENT, LLC

By: _____
Stephen K. Nelson, Co-Manager and Member
of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member
of Bonner Property Development, LLC

**LENDER:**

BANK OF MONTANA

X _____
Jacob T. Pelczar, Vice President

EXHIBIT 12.(v)
PAGE 6

WHEN RECORDED MAIL TO:
 Bank of Montana
 125 Bank Street
 Suite 100
 Missoula, MT  59802

RECORDATION REQUESTED BY:
 Bank of Montana
 125 Bank Street
 Suite 100
 Missoula, MT  59802

SEND TAX NOTICES TO:
 Bonner  Property  Development,
 LLC
 224 N. Higgins Avenue
 Missoula, MT  59802

201822088  B:1006 P:1304  Pages:7  Fee:$49.00
12/18/2018 03:05:34 PM  Contracts & Agreements
Tyler R. Gernant, Missoula County Clerk & Recorder

FOR RECORDER'S USE ONLY

## HAZARDOUS SUBSTANCES CERTIFICATE AND INDEMNITY AGREEMENT

THIS HAZARDOUS SUBSTANCES AGREEMENT dated *December 14*, 2018, is made and executed among Bonner Property Development, LLC, whose address is 224 N. Higgins Avenue, Missoula, MT  59802 (sometimes referred to below as "Grantor" and sometimes as "Indemnitor"); and Bank of Montana, 125 Bank Street, Suite 100, Missoula, MT  59802 (referred to below as "Lender").  For good and valuable consideration and to induce Lender to make a loan to Borrower, each party executing this Agreement hereby represents and agrees with Lender as follows:

**PROPERTY DESCRIPTION.**  The word "Property" as used in this Agreement means the following Real Property located in Missoula County, State of Montana:

Tract 25A, Certificate of Survey No. 06487; a Tract of land located in the East One-Half (E1/2) of Section 21 and the West One-Half (W1/2) of Section 22, Township 13 North, Range 18 West, P.M.M., Missoula County, Montana.

The Real Property or its address is commonly known as  9214 Bonner Mill Road, Bonner, MT  59823.

**REPRESENTATIONS.**  The following representations are made to Lender, subject to disclosures made and accepted by Lender in writing:

**Use of Property.**  After due inquiry and investigation, and except for any use that may have resulted in the existing Hazardous Substances disclosed below in this section, Indemnitor has no knowledge, or reason to believe, that there has been any use, generation, manufacture, storage, treatment, refinement, transportation, disposal, release, or threatened release of any Hazardous Substances by any person on, under, or about the Property.

**Hazardous Substances.**  Hazardous Substances are present or have been released on, in, or about the Property, as more specifically described in the disclosures made to and accepted by Lender in writing.  After due inquiry and investigation, and except as disclosed in this paragraph and accepted by Lender in writing, Indemnitor has no knowledge, or reason to believe, that the Property, whenever and whether owned by previous Occupants, has ever contained asbestos, PCBs, lead paints or other Hazardous Substances, whether used in construction or stored on the Property.

**No Notices.**  Indemnitor has received no summons, citation, directive, letter or other communication, written or oral, from any agency or department of any county or state or the U.S. Government concerning any intentional or unintentional action or omission on, under, or about the Property which has resulted in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of Hazardous Substances into any waters, ambient air or onto any lands or where damage may have resulted to the lands, waters, fish, shellfish, wildlife, biota, air or other natural resources.  Indemnitor has received no notices, oral or written, from any party or person, including without limitation any federal, state or local government agency or governing body, relating to any Hazardous Substances on, in, under or about the Property or any liability or responsibility therefore.

**AFFIRMATIVE COVENANTS.**  Indemnitor covenants with Lender as follows:

**Use of Property.**  Indemnitor will not use and does not intend to use the Property to generate, manufacture, refine, transport, treat, store, handle or dispose of any Hazardous Substances, PCBs, lead paint or asbestos.

**Existing Hazards.**  Indemnitor shall comply with any and all laws, regulations, orders, permits,

covenants, approvals, restrictions or other requirements with respect to existing Hazardous Substances, including without limitation any restrictions on use of the Property, requirements to maintain remedial or monitoring systems, or requirements to provide notice to third parties of certain actions.

**Compliance with Environmental Laws.**  Indemnitor shall cause the Property and the operations conducted on it to comply with any and all Environmental Laws and orders of any governmental authorities having jurisdiction under any Environmental Laws and shall obtain, keep in effect and comply with all governmental permits and authorizations required by Environmental Laws with respect to such Property or operations.   Indemnitor shall furnish Lender with copies of all such permits and authorizations and any amendments or renewals of them and shall notify Lender of any expiration or revocation of such permits or authorizations.

**Preventive, Investigatory and Remedial Action.**  Indemnitor shall exercise extreme care in handling Hazardous Substances if Indemnitor uses or encounters any.   Indemnitor, at Indemnitor's expense, shall undertake any and all preventive, investigatory or remedial action (including emergency response, removal, containment and other remedial action)  (a) required by any applicable Environmental Laws or orders by any governmental authority having jurisdiction under Environmental Laws, or  (b) necessary to prevent or minimize property damage (including damage to Occupant's own property), personal injury or damage to the environment, or the threat of any such damage or injury, by releases of or exposure to Hazardous Substances in connection with the Property or operations of any Occupant on the Property. In the event Indemnitor fails to perform any of Indemnitor's obligations under this section of the Agreement, Lender may (but shall not be required to) perform such obligations at Indemnitor's expense. All such costs and expenses incurred by Lender under this section and otherwise under this Agreement shall be reimbursed by Indemnitor to Lender upon demand with interest at the Note default rate, or in the absence of a default rate, at the Note interest rate.   Lender and Indemnitor intend that Lender shall have full recourse to Indemnitor for any sum at any time due to Lender under this Agreement.   In performing any such obligations of Indemnitor, Lender shall at all times be deemed to be the agent of Indemnitor and shall not by reason of such performance be deemed to be assuming any responsibility of Indemnitor under any Environmental Law or to any third party.   Indemnitor hereby irrevocably appoints Lender as Indemnitor's attorney-in-fact with full power to perform such of Indemnitor's obligations under this section of the Agreement as Lender deems necessary and appropriate.

**Notices.**  Indemnitor shall immediately notify Lender upon becoming aware of any of the following:

(1)  Any spill, release or disposal of a Hazardous Substance on any of the Property, or in connection with any of its operations if such spill, release or disposal must be reported to any governmental authority under applicable Environmental Laws.

(2)  Any contamination, or imminent threat of contamination, of the Property by Hazardous Substances, or any violation of Environmental Laws in connection with the Property or the operations conducted on the Property.

(3)  Any order, notice of violation, fine or penalty or other similar action by any governmental authority relating to Hazardous Substances or Environmental Laws and the Property or the operations conducted on the Property.

(4)  Any judicial or administrative investigation or proceeding relating to Hazardous Substances or Environmental Laws and to the Property or the operations conducted on the Property.

(5)  Any matters relating to Hazardous Substances or Environmental Laws that would give a reasonably prudent Lender cause to be concerned that the value of Lender's security interest in the Property may be reduced or threatened or that may impair, or threaten to impair, Indemnitor's ability to perform any of its obligations under this Agreement when such performance is due.

**Access to Records.**  Indemnitor shall deliver to Lender, at Lender's request, copies of any and all documents in Indemnitor's possession or to which it has access relating to Hazardous Substances or Environmental Laws and the Property and the operations conducted on the Property, including without limitation results of laboratory analyses, site assessments or studies, environmental audit reports and other consultants' studies and reports.

**Inspections.**  Lender reserves the right to inspect and investigate the Property and operations on it at any time and from time to time, and Indemnitor shall cooperate fully with Lender in such inspection and investigations.   If Lender at any time has reason to believe that Indemnitor or any Occupants of the Property are not complying with all applicable Environmental Laws or with the requirements of this Agreement or that a material spill, release or disposal of Hazardous Substances has occurred on or under the Property, Lender may require Indemnitor to furnish Lender at Indemnitor's expense an environmental audit or a site assessment with respect to the matters of concern to Lender.   Such audit or assessment shall be performed by a qualified consultant approved by Lender.   Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to any Indemnitor or to any other person.

**INDEMNITOR'S WAIVER AND INDEMNIFICATION.**  Indemnitor hereby agrees to and shall indemnify, defend, and hold harmless Lender and Lender's officers, directors, employees and agents, and Lender's successors and assigns and their officers, directors, employees and agents from and against any and all claims, demands, losses, liabilities, costs, fines, penalties and expenses (including without limitation attorneys' fees at trial and on any appeal or petition for review, consultants' fees, remedial action costs, natural resource damages and diminution in value) incurred by such person  (a) arising out of or relating to

any investigatory or remedial action involving the Property, the operations conducted on the Property, or any other operations of Indemnitor or any Occupant and required by Environmental Laws or by orders of any governmental authority having jurisdiction under any Environmental Laws, including without limitation any natural resource damages, or (b) arising out of or related to any noncompliance with or violation of Environmental Laws or any applicable permits or approvals, or (c) on account of injury to Lender or any person whatsoever or damage to any property arising out of, in connection with, or in any way relating to (i) the breach of any covenant, representation or warranty contained in this Agreement, (ii) the violation of any Environmental Laws, permits, authorizations or approvals, (iii) the use, treatment, storage, generation, manufacture, transport, release, spill, disposal or other handling of Hazardous Substances on the Property, or (iv) the contamination of any of the Property by, or the presence, release or threatened release of, Hazardous Substances by any means whatsoever (explicitly including without limitation any presently existing contamination of the Property, whether or not previously disclosed to Lender), or (d) pursuant to this Agreement, or (e) arising out of or relating to the presence, release or threatened release of existing Hazardous Substances on, in, under or about the Property, including without limitation the migration of existing Hazardous Substances through the Property, irrespective of whether Indemnitor takes, or does not take, any action with regard to their migration through the Property.  Indemnitor's obligations under this section shall survive the termination of this Agreement and as set forth below in the **Survival** section.  In addition to this indemnity, Indemnitor hereby releases and waives all present and future claims against Lender for indemnity or contribution in the event Indemnitor becomes liable for cleanup or other costs under any Environmental Laws.

**PAYMENT: FULL RECOURSE TO INDEMNITOR.**  Indemnitor intends that Lender shall have full recourse to Indemnitor for Indemnitor's obligations under this Agreement as they become due to Lender.  Such liabilities, losses, claims, damages and expenses shall be reimbursable to Lender as Lender's obligations to make payments with respect thereto are incurred, without any requirement of waiting for the ultimate outcome of any litigation, claim or other proceeding, and Indemnitor shall pay such liability, losses, claims, damages and expenses to Lender as so incurred within thirty (30) days after written notice from Lender.  Lender's notice shall contain a brief itemization of the amounts incurred to the date of such notice.  In addition to any remedy available for failure to pay periodically such amounts, such amounts shall thereafter bear interest at the Note default rate, or in the absence of a default rate, at the Note interest rate.

**SURVIVAL.**   The covenants contained in this Agreement shall survive (A)   the repayment of the Indebtedness, (B)  any foreclosure, whether judicial or nonjudicial, of the Property, and (C)  any delivery of a deed in lieu of foreclosure to Lender or any successor of Lender.   The covenants contained in this Agreement shall be for the benefit of Lender and any successor to Lender, as holder of any security interest in the Property or the indebtedness secured thereby, or as owner of the Property following foreclosure or the delivery of a deed in lieu of foreclosure.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**   This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  If Lender institutes any suit or action to enforce any of the terms of this Agreement, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.  Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.  Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law.  Indemnitor also will pay any court costs, in addition to all other sums provided by law.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.   This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of Montana.**

**Choice of Venue.**  If there is a lawsuit, Indemnitor agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**Joint and Several Liability.**  All obligations of Indemnitor under this Agreement shall be joint and several, and all references to Indemnitor shall mean each and every Indemnitor.  This means that each Indemnitor signing below is responsible for all obligations in this Agreement.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender

in exercising any right shall operate as a waiver of such right or any other right.   A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.   No prior waiver by Lender, nor any course of dealing between Lender and Indemnitor, shall constitute a waiver of any of Lender's rights or of any of Indemnitor's obligations as to any future transactions.   Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.   Indemnitor hereby waives notice of acceptance of this Agreement by Lender.

**Notices.**   Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement.   Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.   For notice purposes, Indemnitor agrees to keep Lender informed at all times of Indemnitor's current address.   Unless otherwise provided or required by law, if there is more than one Indemnitor, any notice given by Lender to any Indemnitor is deemed to be notice given to all Indemnitors.

**Severability.**   If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.   If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.   If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.   Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.**   Subject to any limitations stated in this Agreement on transfer of Indemnitor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.   If ownership of the Property becomes vested in a person other than Indemnitor, Lender, without notice to Indemnitor, may deal with Indemnitor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Indemnitor from the obligations of this Agreement or liability under the Indebtedness.

**Time is of the Essence.**   Time is of the essence in the performance of this Agreement.

**Waive Jury.   All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.**   The following capitalized words and terms shall have the following meanings when used in this Agreement.   Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.   Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.   Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.**   The word "Agreement" means this Hazardous Substances Agreement, as this Hazardous Substances Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Hazardous Substances Agreement from time to time.

**Borrower.**   The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.**   The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Hazardous Substances.**   The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled.   The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws.   The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.**   The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Indemnitor's obligations or expenses incurred by Lender to enforce Indemnitor's obligations under this Agreement, together with interest on such amounts as

provided in this Agreement.

**Lender.** The word "Lender" means Bank of Montana, its successors and assigns.

**Note.** The word "Note" means the Note dated December 14 , 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Occupant.** The word "Occupant" means individually and collectively all persons or entities occupying or utilizing the Property, whether as owner, tenant, operator or other occupant.

**Property.** The word "Property" means all of Indemnitor's right, title and interest in and to all the Property as described in the "Property Description" section of this Agreement.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AGREEMENT, AND EACH AGREES TO ITS TERMS.   NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS AGREEMENT EFFECTIVE.   THIS AGREEMENT IS DATED** December ,14 **2018.**

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC
By: _____
Stephen K. Nelson, Co-Manager and Member of Bonner
Property Development, LLC
By: _____
Michael D. Boehme, Co-Manager and Member of Bonner
Property Development, LLC

LENDER:

BANK OF MONTANA
X _____
Jacob T. Pelczar, Vice President

_____

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF Montana _____ )
                                             ) SS
COUNTY OF Missoula _____ )

This record was acknowledged before me on ___12/5/18___, 20 18 by Stephen K.
Nelson, Co-Manager and Member of Bonner Property Development, LLC and Michael D. Boehme,
Co-Manager and Member of Bonner Property Development, LLC.

> EMILIE J JOHNSTON
> Notary Public for the
> State of Montana
> Residing at MISSOULA, MT
> My Commission Expires
> February 20, 2022
> (Official stamp)

_____
(Signature of notarial officer)

COU
_____
Title of officer (if not shown in stamp)

_____

## LENDER ACKNOWLEDGMENT

STATE OF Montana _____ )
                                             ) SS
COUNTY OF Missoula _____ )

This record was acknowledged before me on ___12/5___, 20 18 by Jacob T. Pelczar as
Vice President of Bank of Montana.

> EMILIE J JOHNSTON
> Notary Public for the
> State of Montana
> Residing at MISSOULA, MT
> My Commission Expires
> February 20, 2022
> (Official stamp)

_____
(Signature of notarial officer)

COU
_____
Title of officer (if not shown in stamp)

**GRANTOR:**


**BONNER PROPERTY DEVELOPMENT, LLC**

By: _____
Stephen K. Nelson, Co-Manager and Member of Bonner
Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member of Bonner
Property Development, LLC

**LENDER:**


**BANK OF MONTANA**

X _____
Jacob T. Pelczar, Vice President

---

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _Arizona_                  )
                                       ) SS

COUNTY OF _Maricopa_              )

This record was acknowledged before me on _December  4_____, 20 _18_ by ~~Stephen K.~~
~~Nelson, Co-Manager and Member of Bonner Property Development, LLC and~~ Michael D. Boehme,
Co-Manager and Member of Bonner Property Development, LLC.

MELISSA A. FANELLI
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 551327
Expires September 03, 2022

                                                    (Signature of notarial officer)

                                            _Notary Public_

(Official stamp)                                Title of officer (if not shown in stamp)

---

## LENDER ACKNOWLEDGMENT

STATE OF _____       )
                                       ) SS

COUNTY OF _____     )

This record was acknowledged before me on _____, 20_____ by **Jacob T. Pelczar** as
**Vice President** of **Bank of Montana**.

                                              _____
                                              (Signature of notarial officer)

                                              _____
(Official stamp)                               Title of officer (if not shown in stamp)

# COMMERCIAL GUARANTY

**Borrower:**  HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO  80111

**Lender:**  Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

**Guarantor:**  Michael D. Boehme
55 Brookside
Missoula, MT  59802

**GUARANTEE OF PAYMENT AND PERFORMANCE.**  For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents.  This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.**  The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.**  THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.**  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty.  A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.**  Guarantor authorizes Lender, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A)  to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H)  to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.**  Guarantor represents and warrants to Lender that (A)  no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B)  this Guaranty is executed at Borrower's request and not at the request of Lender; (C)  Guarantor has full power, right and authority to enter into this Guaranty; (D)  the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E)  Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F)  upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G)  no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H)  no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I)  Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J)  Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition.  Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor  any information or documents acquired by Lender in the course of  its relationship with Borrower.

**GUARANTOR'S WAIVERS.**  Except as prohibited by applicable law, Guarantor waives any right to require Lender (A)  to continue lending money or to extend other credit to Borrower; (B)  to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C)  to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D)  to proceed directly against or exhaust any collateral

held by Lender from Borrower, any other guarantor, or any other person;   (E)   to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code;   (F)   to pursue any other remedy within Lender's power; or   (G)   to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of   (A)   any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale;   (B)   any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness;   (C)   any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness;   (D)   any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness;   (E)   any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or   (F)   any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.   If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.**   Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.   If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.**   Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.   Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower.   In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness.   Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness.   If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender.   Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.**   The following miscellaneous provisions are a part of this Guaranty:

**Amendments.**   This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty.   No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**   Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty.   Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.   Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.   Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**   Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.   This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.**

**Choice of Venue.**   If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**Integration.**   Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty.   Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.**   In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them.   The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them.   If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced.   Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.   If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed

under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Michael D. Boehme, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means Bank of Montana, its successors and assigns.

**Note.** The word "Note" means the promissory note dated *December 14*, 2018, **in the original principal amount of $2,625,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED *December 14*, 2018.

GUARANTOR:

X _____

Michael D. Boehme

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - MT  L:\CFI\LPL\E20.FC  TR-1284  PR-4 (M)

# CREDIT ENHANCEMENT AGREEMENT

THIS AGREEMENT is made _____, 2018, between BONNER PROPERTY
December 13, 2018
DEVELOPMENT ("Pledgor"), whose mailing address is 224 N. Higgins Avenue, Missoula, Montana
59802, and HYPERBLOCK LLC, a Delaware limited liability company ("Borrower"), whose address
is 120 Adelaide Street West, Suite 2210, Toronto, ON M5H 1T1.

## RECITALS

**A.**      Borrower is the commercial tenant in premises owned by Pledgor, located in
Bonner, Montana at the Bonner Mill Site (the "Premises"), pursuant to an assignment to Borrower
and Borrower's assumption of that certain Commercial Lease Agreement dated March 1, 2016
between Project Spokane, LLC and Pledgor, as amended (the "Lease").

**B.**      Borrower plans to raise capital in the amount of from $3,000,000 to $5,000,000
("New Equity"), and to borrow funds as further described herein, the proceeds of which equity and
debt will be used in part to construct improvements and fixtures upon the Premises.

**C.**      Pledgor is willing to provide credit enhancements in the form of its guarantee and
the pledge of certain real property described hereinbelow (collectively, the "Credit Enhancement")
to facilitate a loan facility for Borrower with Bank of Montana, with a maximum principal balance
of $2,625,000 (the "Bank Loan"), with the proceeds of the Bank Loan to be applied to certain
infrastructure and improvements located at the Premises.

**D.**      The parties acknowledge and agree that the Bank Loan would not be possible
without the Credit Enhancement provided by Pledgor.

**E.**      The parties wish to set forth their agreements under which Pledgor will be able to
assure it is indemnified and protected with respect to the Bank Loan, that the proceeds of the Bank
Loan are applied to infrastructure and improvements at the Premises.

NOW, THEREFORE, the parties agree as follows:

### Section 1
### Credit Enhancement

**1.1**      As consideration for the conditions imposed upon Borrower as set forth in further
detail herein, Pledgor hereby agrees to provide its Credit Enhancement, through the provision of its
guaranty and to place certain of its real property at risk and available to the Bank of Montana
through the execution and delivery of a guaranty, deed of trust, assignment of rents, an assignment
of the Lease, and other requisite documents to secure the Bank Loan up to a maximum of
$2,625,000 in principal balance.   The real property to be pledged is the land and improvements
located upon the real property legally described on **Exhibit A**  (the "Pledged Collateral").

**1.2**      Borrower hereby indemnifies and holds harmless Pledgor from and against any and
all costs, losses and expenses associated with the Bank Loan and the construction and installation
of the improvements constructed through the equity and debt financing of Borrower.  Should (i)
the Pledged Collateral become further encumbered as a result of a default by Borrower under the
Bank Loan, (ii) Pledgor advance any funds or incur any costs associated with the Bank Loan or this

Credit Enhancement as a result of any default by Borrower under the Bank Loan or related documents, and/or (iii) Pledgor incur any expense or losses associated with defending against or negotiating with the Bank of Montana or relating to any claims under this Credit Enhancement, Borrower shall reimburse Pledgor within thirty (30) days of invoicing by Pledgor, with copies and appropriate evidence of such advances or expenditures.  The reimbursement obligation shall be secured by a first lien position security interest in the new assets and other improvements that Borrower intends to acquire with the proceeds from Bank Loan and the New Equity ("Borrower's Pledged Assets").  Borrower shall execute and deliver a security agreement contemporaneously with this Agreement in form and substance acceptable to Pledgor and its counsel ("Security Agreement").  Borrower covenants to obtain lien waivers and releases from contractors and suppliers and to maintain Pledgor's first lien position in Borrower's Pledged Assets at all times. Any default under the Bank Loan shall also be a default under this Agreement, and Pledgor shall have the remedies provided under the Security Agreement.

      **1.3**     Borrower promises to use any excess available cash from net operating cash flow, as determined by Borrower in Borrower's reasonable discretion, to make accelerated repayment of the Bank Loan.  Borrower hereby covenants in good faith to work to make its operations bankable without the need for the Credit Enhancement, and to have the guaranty and the Pledged Collateral released from this pledge at the earliest opportunity.

## Section 2
## Consideration to Pledgor; Conditions to Pledgor's Obligations

      **2.1**     Borrower acknowledges the value of the Credit Enhancement.  In consideration for Pledgor's obligations hereunder:

      **a.**     Borrower shall enter into that certain Third Amendment to Commercial Lease with Pledgor for its operations at the Bonner Mill Site, for a term extending through February 28, 2029, shall construct the improvements described in the Third Amendment to Commercial Lease and shall comply in all respects with the remaining terms thereof.

      **b.**     All of the proceeds of the Bank Loan must be used for improvements and fixtures related to the operations of Borrower's business located at the Bonner Mill Site operations of Borrower, according to plans and specifications approved in advance by Pledgor, and in compliance with the terms of the Lease.  In order to ensure this, the proceeds of the Bank Loan shall be made through a title company in the manner of a construction loan, with fully detailed and supported draw requests, approved by Pledgor in writing prior to disbursement, and accompanied by lien waivers and releases in preservation of Pledgor's first lien security interest in Borrower's Pledged Assets.

      **c.**     From the initial closing of the Bank Loan, certain fees and costs will be paid as provided in the Third Amendment to Commercial Lease, but all further disbursements on the Bank Loan shall be subject to satisfaction of the conditions provided in the Third Amendment to Commercial Lease.

### Section 3
### Representations and Warranties

**3.1**     Borrower has full power and authority to execute and perform the terms and provisions of this Agreement and to borrow hereunder, and the execution hereof, of the Bank Loan and the Third Amendment to Commercial Lease have all been approved by all parties required through all corporate and company action required by law and their organizational documents.

### Section 4
### Affirmative Covenants

**4.1**     Borrower agrees that until all indebtedness incurred which is supported by the Credit Enhancement has been paid in full, and Pledgor is no longer obligated or exposed under the Credit Enhancement, it will:

    **a.**     Furnish Pledgor a profit and loss statement for each quarter and a balance sheet contemporaneously with Borrower furnishing said statements with applicable financial regulatory authorities;

    **b.**     Furnish to Pledgor all financial information furnished from time to time by Borrower to the Bank of Montana, subject to applicable law;

    **c.**     With reasonable promptness and subject to applicable law, furnish to Pledgor, such additional financial statements and such data and information concerning the financial condition of Borrower as may be reasonably requested by Pledgor;

    **d.**     Meet with Pledgor from time to time to update Pledgor as to financial condition (subject to applicable law), operations, projections, marketing plans, business developments and status of the Bank Loan;

    **e.**     At all times keep its property and operations insured against loss or damage, and from business interruption, to the extent and against risks that similar property is usually insured by other companies engaged in the same business with Pledgor identified in such insurance policies as may be applicable to Borrower's Pledged Assets as an additional named insured;

    **f.**     Execute such financing statements and other documents as Pledgor may reasonably request to perfect and continue a first position security interest in Borrower's Pledged Assets in favor of Pledgor.

### Section 5
### Events of Default

**5.1**     If any of the following events shall occur and be continuing, Pledgor may declare a default hereunder and shall be able to pursue remedies under this Agreement and under the Security Agreement:

      **a.**     If Borrower fails to make payment of any principal or interest due on the Bank Loan when the same shall become due by the terms thereof;

      **b.**     If Borrower defaults under the terms and conditions of the Lease, including the terms reflected in the Third Amendment to Commercial Lease.

      **c.**     If any material representation or warranty made by Borrower in any writing furnished to Pledgor in connection with or pursuant to this Agreement or the Bank Loan shall be false in any material respect on the dates which they were made;

      **d.**     If Borrower petitions or applies to any court for the appointment of a trustee or receiver for Borrower, of any substantial part of the assets of Borrower, or commences any proceedings relating to Borrower under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, or if any such petition or application is filed, or any such proceeding is commenced, against Borrower, and such proceeding is not dismissed within sixty (60) days.

**Section 6**
**Miscellaneous**

      **6.1**    This Agreement shall be binding on the parties and inure to the benefit of their respective successors and assigns.  This Agreement may not be modified without the express written consent of the parties.

      **6.2**    Paragraph headings are for purposes of identification only.  In the event of a conflict between the body of the document and the paragraph headings, the body of the document shall control.

      **6.3**    It is agreed that in the event of a dispute arising hereunder, any attorney's fees incurred shall be considered a part of the costs of action payable to the substantially prevailing party whether such fees are incurred in collection, suit or other proceeding, on appeal or in a bankruptcy action.

      **6.4**    No delay on the part of Pledgor in exercising any right, power or privilege granted hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof.  The rights and remedies herein expressly specified are cumulative and are not exclusive of any other rights and remedies which Pledgor would otherwise have.

      **6.5**    All notices provided for hereunder shall be sent by certified mail, return receipt requested, addressed to the parties at the addresses set forth herein, or to such other address with respect to any party as such party shall notify the other in writing.  Any such notice shall be deemed to have been given three (3) days after the date it is duly deposited and certified in any U.S. Post Office.

      **6.6**    In conjunction with the transactions evidenced by this Credit Enhancement Agreement, Borrower will execute a Security Agreement.

**6.7**     If for any reason any provision of this Credit Enhancement Agreement is determined by a tribunal of competent jurisdiction to be legally invalid or unenforceable, the validity of the remainder of the Credit Enhancement Agreement will not be affected and such provision will be deemed modified to the minimum extent necessary to make such provision consistent with applicable law and, in its modified form, such provision will then be enforceable and enforced.

- SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 13.
PAGE 6

The parties have caused this Agreement to be executed as of the day and year first above written.

**BORROWER:**

Hyperblock LLC

By: _____

Its: Chief Executive Officer

**PLEDGOR:**

Bonner Property Development, LLC

By: _____

Its: Co-Manager

Credit Enhancement Agreement
[F:/Files/1017/1001/00649142.DOCX 2]

Signature Page

EXHIBIT 13.
PAGE 7

**Exhibit A**

**Legal Description of Collateral**

Tract 25A, Certificate of Survey No. 06487; a Tract of land located in the East One-Half (E1/2) of Section 21 and the West One-Half (W1/2) of Section 22, Township 13 North, Range 18 West, P.M.M., Missoula County, Montana.

# SECURITY AGREEMENT

FOR VALUE RECEIVED,

| Debtor: | Secured Party: |
|---|---|
| **Hyperblock LLC,**<br>**a Delaware limited liability company**<br><br>**120 Adelaide Street West, Suite 2210**<br>**Toronto, ON M5H 1T1.** | **Bonner Property Development, LLC,**<br>**a Montana limited liability company**<br><br>**224 North Higgins Ave**<br>**Missoula, MT 59802** |

The Debtor hereby grants to Secured Party a continuing security interest on the terms and conditions set forth in this Agreement, in all of Debtor's right, title and interest in and to the Debtor's assets as set forth below, whether now owned or hereafter acquired and whether now existing or hereafter arising (collectively the "Collateral"):

> **To the extent acquired, improved or built in part and directly or indirectly with proceeds of the "Bank Loan" from Bank of Montana, as that term is defined in that certain Credit Enhancement Agreement executed by the Debtor and Secured Party concurrently herewith, the following:**

> **Furniture, equipment, fixtures, and other articles of personal property now or hereafter owned by Debtor; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of any such property.**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any

of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(F)  All proceeds, including without limitation, any equipment purchased with proceeds, as well as all accessories, attachments, accessions, replacements and additions, whether added now or later, together with all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, whether due to judgment, settlement or other process.

**Section 1.  Obligations Secured by this Agreement.** This Agreement secures the payment and performance by the Debtor of the following obligations:

(i) All obligations owed by the Debtor to Secured Party arising out of the provision of guarantee and collateral generally described in that certain Credit Enhancement Agreement executed concurrently herewith, and that certain Lease Agreement dated March 1, 2016, as amended, including that certain Third Amendment to Commercial Lease, which amendment is executed concurrently herewith (the "Agreements"), of which Agreements the Debtor and the Secured Party are parties; provided, however, that this Agreement shall cease to secure any obligations Debtor, as tenant, may owe to Secured Party, as landlord, under said Lease Agreement dated March 1, 2016, as amended, including that certain Third Amendment to Commercial Lease once Debtor has fully repaid all principal and interest owing under a loan with principal balance of $2,625,000 between Debtor and the Bank of Montana (the "Bank Loan");

(ii) All renewals, extensions, refinancing, modifications, substitutions, or consolidations of the Agreements; and

(iii) The performance of all of the Debtor's obligations under this Agreement or the Agreements (collectively the "Secured Obligations").

**Section 2.  Maintenance of Security Interest**. The Debtor agrees to take all reasonable actions and execute instruments which the Secured Party may reasonably request in order to create, perfect, evidence, determine the priority of, protect, enforce, continue, or terminate the security interest created by this Agreement. The Debtor agrees to perform such

actions at no cost to the Secured Party. The Secured Party may, but is not obligated to file any document or agreement to put third parties on notice of its security interest.

**Section 3.**     **Release of Security Interest**. Subject to Section 1(i), this Agreement will remain in full force and effect until the Debtor satisfies all of its obligations under the Agreements in full, performs all of the Debtor's obligations under this Agreement, and otherwise satisfies the Secured Obligations. Upon such performance, the Secured Party will deliver a U.C.C. termination statement to the Debtor or other instruments the Debtor reasonable requests. The Debtor will be responsible for recording and filing all such releases at the Debtor's own expense.

**Section 4.**     **Possession of Collateral**. The Debtor will have the right to retain possession of the Collateral and to use it in any lawful manner not inconsistent with the provisions of this Agreement for so long as it complies with all requirements of this Agreement. The Debtor expressly waives all right to possession of the Collateral after the occurrence of an event of default, and agrees to deliver possession of the Collateral to the Secured Party promptly upon demand after the occurrence of an event of default.

**Section 5.**     **Protection of Collateral**. The Debtor (i) will pay promptly when due all taxes, assessments, fees, and other charges levied on the ownership or use of the Collateral, and (ii) will not do anything or permit anything to be done that would materially impair the value of the Collateral or the security interest granted by this Agreement (this shall include, but not be limited to, the disposing of any of the Collateral if not in the normal course of business).

**Section 6.**     **Inspection of Collateral**. Upon 48 hours' notice, the Secured Party or its agent has the right to inspect and examine the Collateral at any reasonable time during normal business hours on reasonable advance written notice, wherever it is located. The Debtor agrees to assist the Secured Party in making such inspections, and to assemble the Collateral for the Secured Party when the Secured Party asks it to do so, to the extent that it is reasonably able to do so.

**Section 7.**     **Notification of Changes**. The Debtor agrees to notify the Secured Party immediately in writing of (i) any change in the jurisdiction of organization, or the name, address, ownership, or place of business of the Debtor, (ii) any change in the location of the Collateral, unless otherwise allowed by this Agreement, (iii) any loss of or damage to the Collateral, (iv) any sale, exchange, lease, encumbrance, or other transfer of any of the Collateral or any interest in the Collateral, except in the normal course of business, and (v) any other material change in the business or financial condition of the Debtor, in the Collateral, or in the security provided by this Agreement.

**Section 8.**    <u>**Events of Default**</u>. The Debtor will be in default under this Agreement if any of the following events or conditions occur:

(i)    An event of default occurs under the Agreements or with regard to any documents or agreements related or connected to the Secured Obligations;

(ii)    The Commercial Lease for the property which is served by the Collateral, located in Bonner, Montana between Secured Party, as Landlord, and Debtor, as Tenant, is terminated for any reason;

(iii)    The Debtor files a petition in bankruptcy, takes any action under any other law relating to the relief of debtors, makes a general assignment for the benefit of creditors, or consents to the appointment of a receiver or trustee for any substantial part of the Debtor's property;

(iv)    An involuntary petition in bankruptcy is filed against the Debtor or a receiver or trustee is appointed to take possession of any substantial part of the property of the Debtor, and the petition or appointment is not withdrawn within 60 days;

(v)    Any substantial part of the property of the Debtor is seized, attached or garnished and not dismissed within 60 days;

(vi)    The Debtor fails to perform any obligation or comply with any requirement of this Agreement and does not cure such failure within 30 days of written notice from the Secured Party; or

(vii)    There is a default under any document or agreement related or connected to the Agreements.

**Section 9.**    <u>**Remedies on Default**</u>. (a) Upon the occurrence of any of the events of default listed in the previous section of this Agreement the Secured Party may, at its election, exercise any or all of the following rights and remedies:

(i)    The Secured Party may require the Debtor to assemble the Collateral and make it available to the Secured Party at a place designated by the Secured Party which is reasonably convenient to both parties to the extent it can reasonably be so assembled. The Debtor agrees to use reasonable efforts to comply promptly with any such demand.

(ii)    The Secured Party may, with legal process, enter the premises where the Collateral is located and take possession of and remove it.

(iii)    The Secured Party may sell all or any part of the Collateral in any commercially reasonable manner, at public or private sale, in one or more sales or lots, and at any price and on any terms that the Secured Party considers reasonable. The Secured Party may be a purchaser at any such sale unless it is prohibited from being a

EXHIBIT 14.
PAGE 5

purchaser by law. The sale may be made without any demand for performance, notice of intention to sell, or notice of the time or place of sale, except to the extent that such notice is required by the Montana enactment of Article 9 of the Uniform Commercial Code and cannot be waived. The Secured Party will apply the net proceeds of any sale, after deducting its expenses in taking, storing, insuring, repairing, and selling the Collateral, including reasonable attorneys' fees, to payment or reduction of the Secured Obligations in any order and amount chosen by the Secured Party.  The Debtor will remain liable to the Secured Party for any deficiency, and the Secured Party will pay any excess proceeds to the Debtor.

(iv)     The Secured Party may exercise any and all other remedies available to it at law or in equity.

(b) The rights and remedies of the Secured Party under this Agreement are cumulative and not alternative, and may be exercised concurrently or successively.

**Section 10.     Successors Bound by Agreement**. This Agreement is binding upon and will inure to the benefit of the parties and their heirs, executors, representatives, successors and assigns.

**Section 11.     Assignment by Secured Party**. The Secured Party may assign, transfer or deliver any or all of the Secured Obligations, and any or all of its rights under this Agreement without the prior written consent of Debtor. Debtor may not assign it rights or obligations hereunder without the prior written consent of the Secured Party, which may be withheld in the Secured Party's sole discretion.

**Section 12.     Modification of Agreement**. No modification of this Agreement will be valid or binding unless the modification is in writing, signed by all parties to this Agreement.

**Section 13.     Waiver**. No waiver of any provision of this Agreement will be valid or binding unless the waiver is in writing, signed by the party waiving the provision. The failure of any party to this Agreement to exercise any right or remedy provided for in this Agreement or to insist upon the strict performance of any provision of this Agreement will not be a waiver of that party's right to exercise that right or remedy or insist upon the strict performance of that provision in the future.

**Section 14.     Notice**. Any notice that this Agreement requires or permits to be delivered to any person will be in writing and will be effective when delivered. Such notices shall be sent the addresses first listed above, as may be changes from time to time by written notice.

EXHIBIT 14.
PAGE 6

**Section 15.      Attorneys' Fees**. If either of the parties to this Agreement institute legal proceedings to enforce the terms of this Agreement, the parties agree that the prevailing party in the proceedings will be entitled to recover the reasonable attorney's fees and legal costs it incurs prior to and at trial and on any appeal or discretionary review, as they may be approved by the court having jurisdiction over the proceedings, with a limit of $40,000.

**Section 16.      Time of Essence**. Time will be of the essence in complying with the terms and conditions of this Agreement.

**Section 17.      Headings**. The headings, titles and subtitles in this Agreement are inserted for convenience of reference only, do not in any way limit or amplify the terms and provisions of this Agreement, and are to be ignored in any construction of the provisions of this Agreement.

**Section 18.      Applicable Law**. This Agreement will be governed by and construed in accordance with the laws of the State of Montana applicable to agreements entered into and performed in the State of Montana.

**Section 19.      Counterpart Signatures.** This Agreement may be executed in any number of counterparts and when taken together shall constitute one original document.

SIGNATURE APPEARS ON FOLLOWING PAGE

EXHIBIT 14.
PAGE 7

This Agreement is effective as of December  13  , 2018.

**DEBTOR:**

**Hyperblock LLC**

By: _____

_____
      Sean Walsh

Its:   Chief Executive Officer

EXHIBIT 15.
PAGE 1

# THIRD AMENDMENT
## TO
## COMMERCIAL LEASE AGREEMENT

THIS THIRD AMENDMENT TO LEASE AGREEMENT ("Third Amendment") is entered into effective as of December 13, 2018, by and between **Bonner Property Development, LLC**, a Montana limited liability company ("Landlord"), and **Hyperblock LLC**, a Delaware limited liability company ("Tenant").

## Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017, and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Lease Amendments").

C.      The Lease was assigned to and assumed by Hyperblock LLC pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Tenant wishes to expand and improve its space within the Bonner Mill Site in Bonner, Montana, to undertake some improvements and to extend the term of the Lease.

E.      As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 (USD) and from additional borrowing of $2,625,000.00 (USD) from the Bank of Montana (the "New Loan" as defined below).  Tenant has committed to the expenditure of certain of the new equity proceeds and all of the proceeds of the New Loan to improvements to be located on the Property (as that term is defined in the Lease as amended by the Lease Amendments and this Third Amendment).

F.      The parties wish to amend the Lease to reflect the additional premises, the commitment of Tenant to the improvements and for various other agreements between them.  All dollar figures in this Agreement are U.S. Dollars.

## Amendments

Landlord and Tenant agree as follows:

1.      Property.

    a.      Revised Description of "Property".  New third and fourth paragraphs of **Section 1.a.** shall be added to the Lease, as follows:

        iii.   Bare land located behind the Sorter building of approximately 106,650

---

square feet, as reflected on the site plan on **Exhibit E.**

    iv. Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit F.** In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

    b. **Section 1.b.I.** shall be amended to add new subsections iii) and iv), to read as follows:

    iii) Respecting the land described in Section 1.a.iii, Landlord will cause the gas lines to be moved, fire hydrant to be relocated and for gravel to be relocated and compacted in the manner already agreed by Landlord and Tenant, at a total cost of $227,000, to be shared 30% by Landlord and 70% by Tenant (with estimated totals of $68,500 and $158,500, respectively), Tenant's portion to be funded by Tenant from the initial disbursement of the New Loan.

    iv) Sprinkler replacement:  Landlord will provide sprinkler heads in the area originally leased by Tenant under the original Lease Agreement in the Planer Building (approximately 1,700 heads) and will provide the use of a lift for use by Tenant in replacing such sprinkler heads; provided, however, the total cost to Landlord shall not exceed $45,000.00.  All labor is to be provided by Tenant or at Tenant's cost.  The sprinkler heads in the other half of the space in the Planer Building (the "Expansion Space" as referenced in the Lease and Lease Amendments) which Landlord is solely obligated to maintain and replace pursuant to the Lease and Lease Amendments, will be replaced by Landlord no later than April 30, 2019.

    c. The following new **subsections ix)** shall be added to **Section 1.b.II.**

    ix) As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 ("New Equity") and from additional borrowing of $2,625,000.00 from the Bank of Montana ("New Loan"). Tenant has committed to the expenditure of no less than $1,000,000 of the New Equity proceeds and all of the proceeds of the New Loan to improvements on the Property including a 40 megawatt substation and related improvements.  In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of this Third Amendment and that certain Credit Enhancement Agreement between Tenant and Landlord executed concurrently herewith.  Concerning the administration of the New Loan, Tenant agrees and Landlord approves and authorizes as follows:

EXHIBIT 15.
PAGE 3

A. The New Loan will be closed within 30 days of the date hereof.

B. From the closing of the New Loan shall be paid the Tenant's share of the cost of those certain improvements described in Section 1.B.I.iii) in the amount of $158,500 plus any bank loan fees and other charges as set forth in the Bank of Montana Disbursement Request and Authorization form.

C. Landlord shall not be obligated to approve further disbursements by Lender under the New Loan except and until as follows:

    i. Tenant has provided Landlord reasonable evidence that Tenant raised at least $3,000,000.00 in New Equity proceeds; and

    ii. Tenant has provided Landlord reasonable evidence that Tenant spent, or irrevocably committed to spend in a manner expressly approved by Landlord in writing, at least $1,000,000.00 of the New Equity to:

        1. Build the 161,000 kva power line across the river; and/or

        2. Construct a 40 megawatt power substation on the Property to provide additional power supply to the operation of Tenant's business on the Property (the "new Substation"); and/or

        3. Acquire the equipment for said New Substation; and/or

        4. Complete additional infrastructure for the remainder of buildout of said New Substation.

    iii. After full satisfaction of i. and ii. above, Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate documentation that the disbursements are appropriate, and within the scope of and in accordance with plans and specifications approved in writing by Landlord.

2. Term; Occupancy.

    a. Section 2.a. **Section 2.a.** of the Lease shall be amended to provide that the term of the Lease, as amended and extended, shall extend through February 28, 2029.

---

Additionally, the Renewal Periods shall be amended so that Tenant shall have the option to renew the Lease for two (2) additional periods of ten (10) years each.

3. <u>Rent</u>.

    a.   <u>Base Rent</u>. **Sections 4.a.(i), (ii) and (iii)** shall be amended and restated in their entirety, beginning effective March 1, 2019, to read as follows:

       (i)     The Base Rent payable hereunder shall initially be as follows:

          A.   $75,506.85 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months; plus

          B.   $96,885.00 per year, or $8,073.75 per month, for the approximately 106,650 square feet of bare land as set forth in Section 1.a.iii and reflected on the site plan on **Exhibit E**; plus

          C.   $60,000.00 per year, or $5,000.00, for the approximately 15,625 square feet (125' x 125') of land for the power substation as set forth in Section 1.a.iv and reflected on the site plan on **Exhibit F**,

The Base Rent for the buildings as set forth in Section 4.a.(i).A, above, shall be referred to herein as the "Building Base Rent". The Base Rent for the bare land as set forth in Section 4.a.(i).B and 4.a.(i).C, above, shall be referred to herein as the "Land Base Rent". The Building base Rent and the Land Base Rent shall be collectively referred to herein as the "Base Rent". The Base Rent as set forth above shall continue at this rate for through February 28, 2020. On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

       (ii)     If Tenant exercises the Expansion Space Option, the Building Base Rent payable shall be increased proportionally based on the increased square footage for the "Planer Building" and Sorter Building" portions of the Property and the Expansion Space that will be leased by Tenant. Specifically, if Tenant exercises the Expansion Space Option the new square footage of "Planer Building" and Sorter Building" space being leased by Tenant upon which Building Base Rent will be based will be 243,949 square feet currently comprising the Building Base Rent plus 59,000 square feet (the Expansion Space) for total of 302,949 square feet.

       (iii)     Beginning January 1, 2017, Tenant shall transfer two Bitcoins per month to the wallet(s) or other destination directed by Landlord from time to time

for sixty (60) consecutive months; <u>provided that</u> should the value of a Bitcoin exceed $5,000.00 each at the time of any transfer, the number of Bitcoin required to be transferred shall be limited to a total value of $10,000.00 per month, with any partial Bitcoins not capable of being so transferred carrying over to be transferred in the next succeeding month in addition to any Bitcoin required to be transferred in such succeeding month.   Any fractional Bitcoin remaining untransferred after 60 months pursuant to this limitation shall be paid in cash in the month succeeding the 60th month.

4.  <u>Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements</u>. Landlord has agreed, subject to certain terms and conditions, to pledge certain of its property to the Bank of Montana to secure the New Loan to Tenant, under which Tenant will construct certain infrastructure and improvements on the Property.  The terms and conditions of this arrangement is set forth in that certain Credit Enhancement Agreement negotiated and executed by the parties contemporaneously with this Third Amendment.  Execution of this Third Amendment is conditioned upon execution of the Credit Enhancement Agreement and vice versa.

5.  <u>Commercial Power</u>.   In Landlord's discretion at any time during the term of the Lease, it shall have the right to cause Tenant's power needs relating to Tenant's use of the Sorter Building portion of the Property currently occupied by Tenant to be serviced through a commercial power service, with Tenant's power to be separately metered and billed.   All costs of the equipment, lines and any increase in the cost of power relating to servicing the Sorter Building occupied by Tenant through a commercial power service shall be borne by Landlord.

6.  <u>Noise – Expansion</u>.  The parties mutually acknowledge that noise caused by Tenant's operations has been an issue in the Bonner, Montana locale.  Relative to the installation and operation of any new equipment, including servers and fans, Tenant shall make a good faith effort to address noise levels, mitigation steps and limits that may be related to said new equipment.

7.  <u>Remaining Provisions of Lease</u>.   To the extent not modified herein, all remaining provisions of the Lease and Lease Amendments shall remain in full force and effect, and are hereby reaffirmed.

8.  <u>Counterparts</u>.   This Third Amendment may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

- SIGNATURES APPEAR ON FOLLOWING PAGE -

IN WITNESS WHEREOF this Third Amendment to Lease has been executed effective the date and year first above written.

LANDLORD:                                              TENANT:

Bonner Property Development, LLC                       Hyperblock LLC

By: _____                         By: _____

Stephen Nelson, Co-Manager                            Print name:  Sean Walsh

                                                      Its:  Chief Executive Officer _____

By: _____

Michael Boehme, Co-Manager

EXHIBIT 15.
PAGE 7

EXHIBIT E

Bare Land located behind the Sorter building



PROJECT SPOKANE
(106,650 SF)

PRELIMINARY

| PROJECT NO. | PROJECT NAME | LOCATION: | | | | REVISIONS | DATE | TERRITORIAL LANDWORKS, INC. |
| 11-2896 | BONNER MILL SUBDIVISION | BONNER MILL SEC.21, T.13N., R.18W., P.M.M. MISSOULA COUNTY, MONTANA | | | | | | CIVIL ENGINEERING • SURVEYING • LAND USE CONSULTING |
| SHEET | SHEET TITLE | PREPARED FOR: | | | | | | www.TerritorialLandworks.com |
| 1 OF 1 | HYPERBLOCK SITE LAYOUT | BONNER PROPERTY DEVELOPMENT, LLC | | | | | | Ph: 406/721-0142   P.O. Box 3851 Fax: 406/721-5224   Missoula, MT 59806 |

EXHIBIT 15.
PAGE 9

EXHIBIT F

Land for the power substation consisting of 15,625 square feet (125 x 125)

EXHIBIT 15.
PAGE 10



| | |
|---|---|
| **From:** | David Bjornson |
| **To:** | |
| **Cc:** | |
| **Subject:** | |
| **Date:** | |
| | FW: Small Amendment to Third Lease Amendment |
| **Attachments:** | Third Lease Amendment (JAB Revisions 12-6-2018) (00649148-3).docx |
| **Importance:** | High |

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Tuesday, December 11, 2018 5:46 PM
**To:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; David Bjornson <david@bjornsonlaw.com>
**Cc:** Dan Stivers <dan@hyperblock.co>; Kristen Martin <ea@projectspokane.co>
**Subject:** Small Amendment to Third Lease Amendment
**Importance:** High

Sean/Eric,

I spoke to David Bjornson (copied here) after our call this afternoon.  Concerning the lease amendment Dave wanted a minor clarification to the language concerning draw requests set forth in Section 1.c. of the attached (bottom of page 3).  In the interest of expediency I am sending this to David for him to review at the same time.  In the attached I have accepted all of my changes I had proposed last Friday afternoon so the only thing in redline is the additional change Dave has requested.

The change clarifies that once HB has satisfied the $3MM equity and $1MM expenditure requirements, BPD will approve and authorize any draw requests provided said requests as submitted to Bank of Montana are detailed and supported by documentation to show that the draw requests are to be used to pay for improvements related to the 40 MW substation.

ASAP Please let me know if this this acceptable to Hyperblock.  Once I have obtained everyone's consent to the documents I will send clean copies out for execution.

I will also be sending you one small change to the Security Agreement in a separate email.  However, the changes I proposed to the Credit Enhancement Agreement are all acceptable to BPD.

-- Jaymie

**James A. Bowditch**

**President**

Boone Karlberg P.C.

201 West Main St., Suite 300

PO Box 9199

Missoula, MT 59807-9199

Phone: 406.543.6646

Fax: 406.532.5752

www.boonekarlberg.com

---

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

EXHIBIT 17.
PAGE 3

# THIRD AMENDMENT
## TO
# COMMERCIAL LEASE AGREEMENT

THIS THIRD AMENDMENT TO LEASE AGREEMENT ("Third Amendment") is entered into effective as of November _____, 2018, by and between **Bonner Property Development, LLC**, a Montana limited liability company ("Landlord"), and **Hyperblock LLC**, a Delaware limited liability company ("Tenant").

## Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017, and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Lease Amendments").

C.      The Lease was assigned to and assumed by Hyperblock LLC pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Tenant wishes to expand and improve its space within the Bonner Mill Site in Bonner, Montana, to undertake some improvements and to extend the term of the Lease.

E.      As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 (USD) and from additional borrowing of $2,625,000.00 (USD) from the Bank of Montana (the "New Loan" as defined below).  Tenant has committed to the expenditure of certain of the new equity proceeds and all of the proceeds of the New Loan to improvements to be located on the Property (as that term is defined in the Lease as amended by the Lease Amendments and this Third Amendment).

F.      The parties wish to amend the Lease to reflect the additional premises, the commitment of Tenant to the improvements and for various other agreements between them.  All dollar figures in this Agreement are U.S. Dollars.

## Amendments

Landlord and Tenant agree as follows:

1.   <u>Property</u>.

    a.      <u>Revised Description of "Property"</u>.  New third and fourth paragraphs of **Section 1.a.** shall be added to the Lease, as follows:

        iii.   Bare land located behind the Sorter building of approximately 106,65o square feet, as reflected on the site plan on **Exhibit E.**

iv. Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit F.**   In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

b.  **Section 1.b.I.** shall be amended to add new subsections iii) and iv), to read as follows:

iii)  Respecting the land described in Section 1.a.iii, Landlord will cause the gas lines to be moved, fire hydrant to be relocated and for gravel to be relocated and compacted in the manner already agreed by Landlord and Tenant, at a total cost of $227,000, to be shared 30% by Landlord and 70% by Tenant (with estimated totals of $68,500 and $158,500, respectively), Tenant's portion to be funded by Tenant from the initial disbursement of the NewLoan.

iv)  Sprinkler replacement:   Landlord will provide sprinkler heads in the area originally leased by Tenant under the original Lease Agreement in the Planer Building (approximately 1,700 heads) and will provide the use of a lift for use by Tenant in replacing such sprinkler heads; provided, however, the total cost to Landlord shall not exceed $45,000.00.  All labor is to be provided by Tenant or at Tenant's cost.  The sprinkler heads in the other half of the space in the Planer Building (the "Expansion Space" as referenced in the Lease and Lease Amendments) which Landlord is solely obligated to maintain and replace pursuant to the Lease and Lease Amendments, will be replaced by Landlord no later than April 30, 2019.

c.  The following new **subsections ix)** shall be added to **Section 1.b.II.**

ix)   As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 ("New Equity") and from additional borrowing of $2,625,000.00 from the Bank of Montana ("New Loan").  Tenant has committed to the expenditure of no less than $1,000,000 of the New Equity proceeds and all of the proceeds of the New Loan to improvements on the Property including a 40 megawatt substation and related improvements.  In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of this Third Amendment and that certain Credit Enhancement Agreement between Tenant and Landlord executed concurrently herewith.  Concerning the administration of the New Loan, Tenant agrees and Landlord approves and authorizes as follows:

A. The New Loan will be closed within 30 days of the date hereof.

B. From the closing of the New Loan shall be paid the Tenant's share of the cost of those certain improvements described in Section 1.B.I.iii) in the amount of $158,500 plus any bank loan fees and other charges as set forth in the Bank of Montana Disbursement Request and Authorization form.

C. Landlord shall not be obligated to approve further disbursements by Lender under the New Loan except and until as follows:

    i. Tenant has provided Landlord reasonable evidence that Tenant raised at least $3,000,000.00 in New Equity proceeds; and

    ii. Tenant has provided Landlord reasonable evidence that Tenant spent, or irrevocably committed to spend in a manner expressly approved by Landlord in writing, at least $1,000,000.00 of the New Equity to:

        1. Build the 161,000 kva power line across the river; and/or

        2. Construct a 40 megawatt power substation on the Property to provide additional power supply to the operation of Tenant's business on the Property (the "new Substation"); and/or

        3. Acquire the equipment for said New Substation; and/or

        4. Complete additional infrastructure for the remainder of buildout of said New Substation.

    iii. After full satisfaction of i. and ii. above, Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for disbursements on the New Loan provided Borrower submits to the Bank of Montana fully detailed draw requests for disbursements supported by documentation in accordance with plans and specifications approved in writing by Landlord.

2. Term; Occupancy.

    a. Section 2.a. **Section 2.a.** of the Lease shall be amended to provide that the term of the Lease, as amended and extended, shall extend through February 28, 2029. Additionally, the Renewal Periods shall be amended so that Tenant shall have the option to renew the Lease for two (2) additional periods of ten (10) years each.

3. Rent.

a.  Base Rent. **Sections 4.a.(i), (ii) and (iii)** shall be amended and restated in their entirety, beginning effective March 1, 2019, to read as follows:

(i)    The Base Rent payable hereunder shall initially be as follows:

A.  $75,506.85 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months; plus

B.  $96,885.00 per year, or $8,073.75 per month, for the approximately 106,650 square feet of bare land as set forth in Section 1.a.iii and reflected on the site plan on **Exhibit E**; plus

C.  $60,000.00 per year, or $5,000.00, for the approximately 15,625 square feet (125' x 125') of land for the power substation as set forth in Section 1.a.iv and reflected on the site plan on **Exhibit F**,

The Base Rent for the buildings as set forth in Section 4.a.(i).A, above, shall be referred to herein as the "Building Base Rent". The Base Rent for the bare land as set forth in Section 4.a.(i).B and 4.a.(i).C, above, shall be referred to herein as the "Land Base Rent". The Building base Rent and the Land Base Rent shall be collectively referred to herein as the "Base Rent". The Base Rent as set forth above shall continue at this rate for through February 28, 2020. On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

(ii)    If Tenant exercises the Expansion Space Option, the Building Base Rent payable shall be increased proportionally based on the increased square footage for the "Planer Building" and Sorter Building" portions of the Property and the Expansion Space that will be leased by Tenant. Specifically, if Tenant exercises the Expansion Space Option the new square footage of "Planer Building" and Sorter Building" space being leased by Tenant upon which Building Base Rent will be based will be 243,949 square feet currently comprising the Building Base Rent plus 59,000 square feet (the Expansion Space) for total of 302,949 square feet.

(iii)    Beginning January 1, 2017, Tenant shall transfer two Bitcoins per month to the wallet(s) or other destination directed by Landlord from time to time for sixty (60) consecutive months; provided that should the value of a Bitcoin exceed $5,000.00 each at the time of any transfer, the number of Bitcoin required to be transferred shall be limited to a total value of $10,000.00 per month, with any partial Bitcoins not capable of being so transferred carrying over to be transferred in the next succeeding month in addition to any Bitcoin required to be transferred in such succeeding month. Any fractional Bitcoin remaining

untransferred after 60 months pursuant to this limitation shall be paid in cash in the month succeeding the 60th month.

4.  Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements. Landlord has agreed, subject to certain terms and conditions, to pledge certain of its property to the Bank of Montana to secure the New Loan to Tenant, under which Tenant will construct certain infrastructure and improvements on the Property.  The terms and conditions of this arrangement is set forth in that certain Credit Enhancement Agreement negotiated and executed by the parties contemporaneously with this Third Amendment.  Execution of this Third Amendment is conditioned upon execution of the Credit Enhancement Agreement and vice versa.

5.  Commercial Power.  In Landlord's discretion at any time during the term of the Lease, it shall have the right to cause Tenant's power needs relating to Tenant's use of the **Sorter Building portion of the Property currently occupied by Tenant** to be serviced through a commercial power service, with Tenant's power to be separately metered and billed.   All costs of the equipment, lines and any increase in the cost of power relating to servicing the Sorter Building occupied by Tenant through a commercial power service shall be borne by Landlord.

6.  Noise – Expansion.  The parties mutually acknowledge that noise caused by Tenant's operations has been an issue in the Bonner, Montana locale.  Relative to the installation and operation of any new equipment, including servers and fans, Tenant shall make a good faith effort to address noise levels, mitigation steps and limits that may be related to said new equipment.

7.  **Remaining Provisions of Lease**.   To the extent not modified herein, all remaining provisions of the Lease and Lease Amendments shall remain in full force and effect, and are hereby reaffirmed.

8.  Counterparts.   This Third Amendment may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 17.
PAGE 8

IN WITNESS WHEREOF this Third Amendment to Lease has been executed effective the date and year first above written.

LANDLORD:                                    TENANT:

Bonner Property Development, LLC             Hyperblock LLC


By: _____         By:_____
Stephen Nelson, Co-Manager                   Print name:_____
                                              Its: _____


By: _____
Michael Boehme, Co-Manager

EXHIBIT 17.
PAGE 9

## EXHIBIT E

Bare Land located behind the Sorter building

EXHIBIT 17.
PAGE 10

EXHIBIT F

Land for the power substation consisting of 15,625 square feet (125 x 125)

EXHIBIT 17.
PAGE 11

| From: | Jaymie Bowditch |
|---|---|
| To: | Sean Walsh; Eric So; David Bjornson |
| Cc: | Dan Stivers; Kristen Martin |
| Subject: | Security Agreement |
| Date: | Tuesday, December 11, 2018 6:14:43 PM |
| Attachments: | Security Agreement (JAB Revisions 12-7-2018) (00649422-2).docx |
| Importance: | High |

Sean/Eric,

Concerning the Security Agreement, David wants to be certain that the obligations imposed on HB in the Third Amendment to Lease concerning the Credit Enhancement BPD is providing are secured by the 40 MW substation improvements. However, I do not want the security agreement to secure all obligations under the lease since the lease will be in effect well after the Bank of Montana loan is paid. I have therefore agreed to retain the language in Section 1 of the attached Security Agreement stating that said agreement secures obligation HB owes under the lease but have added language to clarify that the 40 MW substation only serves as collateral under the lease until the BoM loan is paid. Once the loan is paid, BPD can no longer look to the collateral as security for any other obligations owed by HB under the lease (e.g. the payment of rent).

I am again sending this to David for him to review at the same time. In the attached I have accepted all of my changes I had proposed last Friday afternoon so the only thing in redline is the change to address the foregoing – which is in redline.

ASAP Please let me know if this this acceptable to Hyperblock. Once I have obtained everyone's consent to the documents I will send clean copies out for execution.

-- Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless_

EXHIBIT 17.
PAGE 12

*otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

EXHIBIT 17.
PAGE 13

# SECURITY AGREEMENT

FOR VALUE RECEIVED,

| Debtor: | Secured Party: |
|---|---|
| **Hyperblock LLC,**<br>**a Delaware limited liability company**<br><br>**120 Adelaide Street West, Suite 2210**<br>**Toronto, ON M5H 1T1.** | **Bonner Property Development, LLC,**<br>**a Montana limited liability company**<br><br>**224 North Higgins Ave**<br>**Missoula, MT 59802** |

The Debtor hereby grants to Secured Party a continuing security interest on the terms and conditions set forth in this Agreement, in all of Debtor's right, title and interest in and to the Debtor's assets as set forth below, whether now owned or hereafter acquired and whether now existing or hereafter arising (collectively the "Collateral"):

> **To the extent acquired, improved or built in part and directly or indirectly with proceeds of the "Bank Loan" from Bank of Montana, as that term is defined in that certain Credit Enhancement Agreement executed by the Debtor and Secured Party concurrently herewith, the following:**
>
> **Furniture, equipment, fixtures, and other articles of personal property now or hereafter owned by Debtor; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of any such property.**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any

EXHIBIT 17.
PAGE 14

of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(F)  All proceeds, including without limitation, any equipment purchased with proceeds, as well as all accessories, attachments, accessions, replacements and additions, whether added now or later, together with all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, whether due to judgment, settlement or other process.

**Section 1. <u>Obligations Secured by this Agreement</u>.** This Agreement secures the payment and performance by the Debtor of the following obligations:

(i) All obligations owed by the Debtor to Secured Party arising out of the provision of guarantee and collateral generally described in that certain Credit Enhancement Agreement executed concurrently herewith, and that certain Lease Agreement dated March 1, 2016, as amended, including that certain Third Amendment to Commercial Lease, which amendment is executed concurrently herewith (the "Agreements"), of which Agreements the Debtor and the Secured Party are parties; provided, however, that this Agreement shall cease to secure any obligations Debtor, as tenant, may owe to Secured Party, as landlord, under said Lease Agreement dated March 1, 2016, as amended, including that certain Third Amendment to Commercial Lease**.** once Debtor has fully repaid all principal and interest owing under a loan with principal balance of $2,625,000 between Debtor and the Bank of Montana (the "Bank Loan");

(ii) All renewals, extensions, refinancing, modifications, substitutions, or consolidations of the Agreements; and

(iii) The performance of all of the Debtor's obligations under this Agreement or the Agreements (collectively the "Secured Obligations").

**Section 2.     <u>Maintenance of Security Interest</u>**. The Debtor agrees to take all reasonable actions and execute instruments which the Secured Party may reasonably request in order to create, perfect, evidence, determine the priority of, protect, enforce, continue, or terminate the security interest created by this Agreement. The Debtor agrees to perform such

EXHIBIT 17.
PAGE 15

actions at no cost to the Secured Party. The Secured Party may, but is not obligated to file any document or agreement to put third parties on notice of its security interest.

      **Section 3.**    **Release of Security Interest**. Subject to Section 1(i), this Agreement will remain in full force and effect until the Debtor satisfies all of its obligations under the Agreements in full, performs all of the Debtor's obligations under this Agreement, and otherwise satisfies the Secured Obligations. Upon such performance, the Secured Party will deliver a U.C.C. termination statement to the Debtor or other instruments the Debtor reasonable requests. The Debtor will be responsible for recording and filing all such releases at the Debtor's own expense.

      **Section 4.**    **Possession of Collateral**. The Debtor will have the right to retain possession of the Collateral and to use it in any lawful manner not inconsistent with the provisions of this Agreement for so long as it complies with all requirements of this Agreement. The Debtor expressly waives all right to possession of the Collateral after the occurrence of an event of default, and agrees to deliver possession of the Collateral to the Secured Party promptly upon demand after the occurrence of an event of default.

      **Section 5.**    **Protection of Collateral**. The Debtor (i) will pay promptly when due all taxes, assessments, fees, and other charges levied on the ownership or use of the Collateral, and (ii) will not do anything or permit anything to be done that would materially impair the value of the Collateral or the security interest granted by this Agreement (this shall include, but not be limited to, the disposing of any of the Collateral if not in the normal course of business).

      **Section 6.**    **Inspection of Collateral**. Upon 48 hours' notice, the Secured Party or its agent has the right to inspect and examine the Collateral at any reasonable time during normal business hours on reasonable advance written notice, wherever it is located. The Debtor agrees to assist the Secured Party in making such inspections, and to assemble the Collateral for the Secured Party when the Secured Party asks it to do so, to the extent that it is reasonably able to do so.

      **Section 7.**    **Notification of Changes**. The Debtor agrees to notify the Secured Party immediately in writing of (i) any change in the jurisdiction of organization, or the name, address, ownership, or place of business of the Debtor, (ii) any change in the location of the Collateral, unless otherwise allowed by this Agreement, (iii) any loss of or damage to the Collateral, (iv) any sale, exchange, lease, encumbrance, or other transfer of any of the Collateral or any interest in the Collateral, except in the normal course of business, and (v) any other material change in the business or financial condition of the Debtor, in the Collateral, or in the security provided by this Agreement.

**Section 8.**     **Events of Default**. The Debtor will be in default under this Agreement if any of the following events or conditions occur:

(i)     An event of default occurs under the Agreements or with regard to any documents or agreements related or connected to the Secured Obligations;

(ii)     The Commercial Lease for the property which is served by the Collateral, located in Bonner, Montana between Secured Party, as Landlord, and Debtor, as Tenant, is terminated for any reason;

(iii)     The Debtor files a petition in bankruptcy, takes any action under any other law relating to the relief of debtors, makes a general assignment for the benefit of creditors, or consents to the appointment of a receiver or trustee for any substantial part of the Debtor's property;

(iv)     An involuntary petition in bankruptcy is filed against the Debtor or a receiver or trustee is appointed to take possession of any substantial part of the property of the Debtor, and the petition or appointment is not withdrawn within 60 days;

(v)     Any substantial part of the property of the Debtor is seized, attached or garnished and not dismissed within 60 days;

(vi)     The Debtor fails to perform any obligation or comply with any requirement of this Agreement and does not cure such failure within 30 days of written notice from the Secured Party; or

(vii)     There is a default under any document or agreement related or connected to the Agreements.

**Section 9.**     **Remedies on Default**. (a) Upon the occurrence of any of the events of default listed in the previous section of this Agreement the Secured Party may, at its election, exercise any or all of the following rights and remedies:

(i)     The Secured Party may require the Debtor to assemble the Collateral and make it available to the Secured Party at a place designated by the Secured Party which is reasonably convenient to both parties to the extent it can reasonably be so assembled. The Debtor agrees to use reasonable efforts to comply promptly with any such demand.

(ii)     The Secured Party may, with legal process, enter the premises where the Collateral is located and take possession of and remove it.

(iii)     The Secured Party may sell all or any part of the Collateral in any commercially reasonable manner, at public or private sale, in one or more sales or lots, and at any price and on any terms that the Secured Party considers reasonable. The Secured Party may be a purchaser at any such sale unless it is prohibited from being a

EXHIBIT 17.
PAGE 17

purchaser by law. The sale may be made without any demand for performance, notice of intention to sell, or notice of the time or place of sale, except to the extent that such notice is required by the Montana enactment of Article 9 of the Uniform Commercial Code and cannot be waived. The Secured Party will apply the net proceeds of any sale, after deducting its expenses in taking, storing, insuring, repairing, and selling the Collateral, including reasonable attorneys' fees, to payment or reduction of the Secured Obligations in any order and amount chosen by the Secured Party.  The Debtor will remain liable to the Secured Party for any deficiency, and the Secured Party will pay any excess proceeds to the Debtor.

(iv)     The Secured Party may exercise any and all other remedies available to it at law or in equity.

(b) The rights and remedies of the Secured Party under this Agreement are cumulative and not alternative, and may be exercised concurrently or successively.

**Section 10.     Successors Bound by Agreement**. This Agreement is binding upon and will inure to the benefit of the parties and their heirs, executors, representatives, successors and assigns.

**Section 11.     Assignment by Secured Party**. The Secured Party may assign, transfer or deliver any or all of the Secured Obligations, and any or all of its rights under this Agreement without the prior written consent of Debtor. Debtor may not assign it rights or obligations hereunder without the prior written consent of the Secured Party, which may be withheld in the Secured Party's sole discretion.

**Section 12.     Modification of Agreement**. No modification of this Agreement will be valid or binding unless the modification is in writing, signed by all parties to this Agreement.

**Section 13.     Waiver**. No waiver of any provision of this Agreement will be valid or binding unless the waiver is in writing, signed by the party waiving the provision. The failure of any party to this Agreement to exercise any right or remedy provided for in this Agreement or to insist upon the strict performance of any provision of this Agreement will not be a waiver of that party's right to exercise that right or remedy or insist upon the strict performance of that provision in the future.

**Section 14.     Notice**. Any notice that this Agreement requires or permits to be delivered to any person will be in writing and will be effective when delivered. Such notices shall be sent the addresses first listed above, as may be changes from time to time by written notice.

EXHIBIT 17.
PAGE 18

**Section 15.**     **Attorneys' Fees**. If either of the parties to this Agreement institute legal proceedings to enforce the terms of this Agreement, the parties agree that the prevailing party in the proceedings will be entitled to recover the reasonable attorney's fees and legal costs it incurs prior to and at trial and on any appeal or discretionary review, as they may be approved by the court having jurisdiction over the proceedings, with a limit of $40,000.

**Section 16.**     **Time of Essence**. Time will be of the essence in complying with the terms and conditions of this Agreement.

**Section 17.**     **Headings**. The headings, titles and subtitles in this Agreement are inserted for convenience of reference only, do not in any way limit or amplify the terms and provisions of this Agreement, and are to be ignored in any construction of the provisions of this Agreement.

**Section 18.**     **Applicable Law**. This Agreement will be governed by and construed in accordance with the laws of the State of Montana applicable to agreements entered into and performed in the State of Montana.

**Section 19.**     **Counterpart Signatures.** This Agreement may be executed in any number of counterparts and when taken together shall constitute one original document.

SIGNATURE APPEARS ON FOLLOWING PAGE

EXHIBIT 17.
PAGE 19

This Agreement is effective as of December _____, 2018.


**DEBTOR:**

**Hyperblock LLC**


By:_____


_____
Its: _____

**Exhibit 18.** *[Dec. #19]*: Emails with Bowditch, Walsh, Nelson, Bjornson, Stivers, et. al., from December 2018 related to agreements, revisions, and Walsh's participation in negotiations process:

        (i)        Emails between Bjornson and Bowditch on 12/7/2018-12/11/2018 with comments to revised drafts (attachments omitted for brevity);

        (ii)      Emails between Bjornson and Bowditch on 12/12/2018-12/13/2018 (CC Walsh) (Requesting final executed documents);

        (iii)     Email from Kristen Martin (Walsh's executive assistant) to group (including Bowditch and Walsh) on 12/13/2018 at 11:42 AM (with documents executed by Sean - attachments omitted for brevity);

        (iv)     Emails between Walsh and Bowditch (including Stivers) on 12/11/2018 (regarding approval to BPD's security interest and language for Security Amendment); 914 and 630 pm

| From: | David Bjornson |
|---|---|
| To: | jbowditch@boonekarlberg.com |
| Cc: | Jill Broughton |
| Subject: | RE: HYPERBLOCK documents |
| Date: | Tuesday, December 11, 2018 2:38:23 PM |
| Attachments: | Third Lease Amendment (JAB Revisions 12-6-2018) DHB COMMENTS.docx |
| | Credit Enhancement Agreement (JAB Revisions 12-6-2018).DHB COMMENTS.docx |
| | Security Agreement (JAB Revisions 12-7-2018) (00649422).DHB COMMENTS.docx |

Exhibit 18(i)
(attachments omitted for brevity)

Jaymie –

I have been through all of your comments, and have reviewed issues with our clients. Many of your changes were beneficial clean up, so thank you.  The attached reflect just a few remaining issues for us to discuss and resolve.  Feel free to give me a call this afternoon.  I have a conference call at 3 which will be around 30 minutes or so.
David

_____

## David H. Bjornson

**Bjornson Jones Mungas, PLLC**

**2809 Great Northern Loop, Suite 100**

**Missoula, Montana  59808**

**(406) 721-8896**

**(406) 541-8037--fax**

**http://www.bjornsonlaw.com/attorneys/david-h-bjornson/**

Email:  david@bjornsonlaw.com

*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Friday, December 07, 2018 4:59 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Subject:** Security Agreement

David,

I also have a few minor changes to the Security Agreement as set forth in the attached.

I'll likely be in the office tomorrow and am around all of next week if you want to chat.

-- Jaymie

EXHIBIT 18.
PAGE 3

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

---

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

| From: | David Bjornson |
|---|---|
| To: | Jaymie Bowditch; Kristen Martin |
| Cc: | Sean Walsh; Eric So; Dan Stivers; Denise Cooper; Jill Broughton |
| Subject: | RE: Final Hyperblock/BPD Documents |
| Date: | Thursday, December 13, 2018 1:55:16 PM |

Received.  Thank you. David

**Exhibit 18(ii)**

# David H. Bjornson

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
**http://www.bjornsonlaw.com/attorneys/david-h-bjornson/**
**Email:  david@bjornsonlaw.com**
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

---

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Thursday, December 13, 2018 11:59 AM
**To:** Kristen Martin <ea@projectspokane.com>
**Cc:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; Dan Stivers <dan@hyperblock.co>; David Bjornson <david@bjornsonlaw.com>; Denise Cooper <dcooper@boonekarlberg.com>
**Subject:** RE: Final Hyperblock/BPD Documents

Also to Dave, if you have them can you attach exhibits to the final fully executed documents before you send to me?

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

EXHIBIT 18.
PAGE 5

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** Jaymie Bowditch
**Sent:** Thursday, December 13, 2018 11:55 AM
**To:** 'Kristen Martin' <ea@projectspokane.co>
**Cc:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; Dan Stivers <dan@hyperblock.co>; david@bjornsonlaw.com; Denise Cooper <dcooper@boonekarlberg.com>
**Subject:** RE: Final Hyperblock/BPD Documents

Will do once BPD signs.

David, can you please obtain signatures from Steve and/or Mike and send me fully executed copies for our files?

Thanks.

P.S. to all – I suspect the bank would appreciate a copy of at least the Credit Enhancement Agreement but do not know whether Bank of Montana requires a copy.  Does anyone think I should (or should not) provide a copy of this document (or all documents) to Jake at B of M?

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another*

*party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** Kristen Martin <ea@projectspokane.co>
**Sent:** Thursday, December 13, 2018 11:42 AM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; Dan Stivers <dan@hyperblock.co>; david@bjornsonlaw.com; Denise Cooper <dcooper@boonekarlberg.com>
**Subject:** Re: Final Hyperblock/BPD Documents

Jaymie,

Please find attached the final Credit Enhancement Letter, Security Agreement and Third Lease Amendment as executed by Sean.  Can you please send through a fully executed copy for our records?

Best,

Kristen

On Wed, Dec 12, 2018 at 8:21 PM Jaymie Bowditch <jbowditch@boonekarlberg.com> wrote:

Sean,

Attached are clean execution copies of the Credit Enhancement Agreement, Third Amendment to Lease and Security Agreement.  If you prefer that we send these to you via DocuSign, please let us know and my paralegal will do so tomorrow.

-- Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or*

EXHIBIT 18.
PAGE 7

*recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

--
Kristen M. Martin
Executive Assistant to Sean M. Walsh
Mobile: 720.390.8023

| | |
|---|---|
| **From:** | David Bjornson |
| **To:** | Big Sky Mobile Catering; mdbbpd@gmail.com |
| **Cc:** | Jill Broughton |
| **Subject:** | FW: Final Hyperblock/BPD Documents |
| **Date:** | Thursday, December 13, 2018 11:47:45 AM |
| **Attachments:** | 2018.12.13 - Credit Enhancement Agreement (Final) - SW Executed.pdf |
| | 2018.12.13 - Security Agreement - Final - SW Executed.pdf |
| | 2018.12.13 - Third Lease Amendment - Final - SW Executed.pdf |

Exhibit
18(iii)
(attachments
omitted for
brevity)

**From:** Kristen Martin <ea@projectspokane.co>
**Sent:** Thursday, December 13, 2018 11:42 AM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; Dan Stivers
<dan@hyperblock.co>; David Bjornson <david@bjornsonlaw.com>; Denise Cooper
<dcooper@boonekarlberg.com>
**Subject:** Re: Final Hyperblock/BPD Documents

Jaymie,

Please find attached the final Credit Enhancement Letter, Security Agreement and Third Lease
Amendment as executed by Sean.  Can you please send through a fully executed copy for our
records?

Best,

Kristen

On Wed, Dec 12, 2018 at 8:21 PM Jaymie Bowditch <jbowditch@boonekarlberg.com> wrote:

> Sean,
>
> Attached are clean execution copies of the Credit Enhancement Agreement, Third
> Amendment to Lease and Security Agreement.  If you prefer that we send these to you via
> DocuSign, please let us know and my paralegal will do so tomorrow.
>
> -- Jaymie
>
>
> **James A. Bowditch**
> **President**
> Boone Karlberg P.C.
> 201 West Main St., Suite 300
> PO Box 9199
> Missoula, MT 59807-9199
> Phone: 406.543.6646

Fax: 406.532.5752
www.boonekarlberg.com

---

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

--
Kristen M. Martin
Executive Assistant to Sean M. Walsh
Mobile: 720.390.8023

EXHIBIT 18.
PAGE 10

| | |
|---|---|
| **From:** | Sean Walsh |
| **To:** | jbowditch@boonekarlberg.com |
| **Cc:** | Eric So; David Bjornson; Dan Stivers; Kristen Martin |
| **Subject:** | Re: Security Agreement |
| **Date:** | Tuesday, December 11, 2018 6:30:27 PM |

Exhibit
18(iv)

Hi Jaymie,

That sounds reasonable to me.

Thank you,
Sean

On Tue, Dec 11, 2018 at 9:14 PM Jaymie Bowditch <jbowditch@boonekarlberg.com> wrote:

> Sean/Eric,
>
>
> Concerning the Security Agreement, David wants to be certain that the obligations imposed on HB in the Third Amendment to Lease concerning the Credit Enhancement BPD is providing are secured by the 40 MW substation improvements.  However, I do not want the security agreement to secure all obligations under the lease since the lease will be in effect well after the Bank of Montana loan is paid.  I have therefore agreed to retain the language in Section 1 of the attached Security Agreement stating that said agreement secures obligation HB owes under the lease but have added language to clarify that the 40 MW substation only serves as collateral under the lease until the BoM loan is paid.  Once the loan is paid, BPD can no longer look to the collateral as security for any other obligations owed by HB under the lease (e.g. the payment of rent).
>
>
> I am again sending this to David for him to review at the same time.  In the attached I have accepted all of my changes I had proposed last Friday afternoon so the only thing in redline is the change to address the foregoing – which is in redline.
>
>
> ASAP Please let me know if this this acceptable to Hyperblock.  Once I have obtained everyone's consent to the documents I will send clean copies out for execution.
>
>
> -- Jaymie
>
>
> [   ]
>
> **James A. Bowditch**
>
> **President**

EXHIBIT 18.
PAGE 11

Boone Karlberg P.C.

201 West Main St., Suite 300

PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646

Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

--
Phone - 650.409.7326

Executive Assistant - Kristen Martin - kristen@hyperblock.co - 720.390.8023

LinkedIn

Confidentiality Note: This e-mail and any attachments are confidential and protected by legal privilege. Please be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete all copies from your system. Thank you for your cooperation.

EXHIBIT 19.(i)
PAGE 1

# FOURTH AMENDMENT
## TO
# COMMERCIAL LEASE AGREEMENT

THIS FOURTH AMENDMENT TO LEASE AGREEMENT ("Fourth Amendment") is entered into effective as of January 23, 2019, by and between **Bonner Property Development, LLC**, a Montana limited liability company ("Landlord"), and **Hyperblock LLC**, a Delaware limited liability company ("Tenant").

### Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.      The Lease was assigned to and assumed by Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").  The First Amendment, Second Amendment and Third Amendment are collectively referred to herein as the "Lease Amendments".

E.      As part of certain expansions and improvements Tenant is conducting at the Bonner Mill Site in Bonner, Montana, Landlord has provided certain benefits to Tenant in exchange for which Tenant is agreeable to a modification of the revised description of the "Property" to provide that certain Tenant improvements to the Property are to remain on the Property upon a termination or expiration of the Lease.

F.      The parties wish to amend the Lease, as previously modified by the Second Amendment, as set forth in this Fourth Amendment.

//

//

//

//

//

## Amendments

Landlord and Tenant agree as follows:

1. <u>Property</u>.

   a.   <u>Revised Description of "Property"</u>.  The first paragraph of **Section 1.a.** shall be amended and restated in its entirety to read as follows:

The following premises located within various improvements located within the Bonner Mill Site in the City of Bonner Missoula County, Montana (collectively, the "Property"):

   i.   A portion of the total square footage of the "Planer Building" for a total of 234,949 square feet as shown on the site plan attached as **Exhibit A**.  The Planer Building in which the Property is located is approximately 300,715 square feet in total.

   ii.   A portion of the total square footage of the "Sorter Building" for a total of 9,000 square feet as shown on the site plan attached as **Exhibit B** (the "Property").  The Sorter Building in which the Property is located is approximately 68,000 square feet in total.

Any fixtures and personal property located on or about the Property as of the Lease Commencement Date (defined below) shall be considered part of the Property hereby leased and subject to all terms and conditions hereof.  The term "Fixture" shall refer to those items so permanently attached or embedded to as to be considered part of the premises, as defined in Section 70-15-103, MCA.  Upon termination or expiration of this Lease for any reason, Tenant shall be entitled to remove from the Property any improvements that Tenant has made to the Property and that are not considered "Fixtures."  As used herein the term "Fixture" shall not include unattached personal property, furniture, or trade fixtures of Tenant including those set forth in **Exhibit E-1**, attached hereto and incorporated herein by reference.  Furthermore, however, whether or not best legally described as Fixtures, all property relating to electrical supply and distribution shall remain with the Property and become the property of Landlord at the termination of the Lease, including but not limited to the property described in **Exhibit E-2**, attached hereto and incorporated herein by reference.

Landlord acknowledges and agrees that an important inducement to Tenant's agreement to expand the Property leased by Tenant is Landlord's agreement to lend to Tenant $1,200,000.00 pursuant to the terms of that certain Promissory Note between Landlord as lender and tenant as Borrower, dated December 23, 2016.

land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

2. <u>Remaining Provisions of Lease</u>.  To the extent not modified herein, all remaining provisions of the Lease and Lease Amendments shall remain in full force and effect, and are hereby reaffirmed.

3. <u>Counterparts</u>.  This Fourth Amendment may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

IN WITNESS WHEREOF this Fourth Amendment to Lease has been executed effective the date and year first above written.

LANDLORD:                                           TENANT:

Bonner Property Development, LLC          Hyperblock LLC

By: _____                 By: _____
Stephen Nelson, Co-Manager                 Print name: Sean Walsh
                                                          Its: Chief Executive Officer

By: _____
Michael Boehme, Co-Manager

EXHIBIT 19.(i)
PAGE 4

EXHIBIT E-1

Items not to Remain with Property or be Treated as Fixtures

-   All servers
-   All network equipment

EXHIBIT 19.(i)
PAGE 5

EXHIBIT E-2

Items to Remain with Property and Landlord Whether or not Fixtures

**-** All electrical supply and distribution related property of any kind, including but not limited to substations, distribution lines, poles, switching gear, fans, panels, fans, wire, fuse systems
- 5,000 KVA substations with associated switch gear
- 225A distribution panels with main breaker
- 500 KVA transformers 480Vto 208V
- 36" Tubeaxial 3HP fans
- 60" Tubeaxial 20Hp fans
- 2500 feet of cable tray
- 2500 feet of pallet racking
- 150,000 feet of 10 gauge wire
- 5 section 15KV fuse disconnect (outdoor)

EXHIBIT 19.(i)
PAGE 6

EXHIBIT F

Bare Land located behind the Sorter building



EXHIBIT 19.(i)
PAGE 8

EXHIBIT G

Land for the power substation consisting of 15,625 square feet (125 x 125)



EXHIBIT 19.(i)
PAGE 9



# SIDE AGREEMENT

THIS SIDE AGREEMENT (this "**Agreement**") is entered into as of January 23, 2019, by and between **Bonner Property Development, LLC**, a Montana limited liability company ("Landlord") and **Hyperblock LLC**, a Delaware limited liability company ("Tenant").

## RECITALS

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease. Capitalized terms not otherwise defined herein shall be as defined in the Lease and/or Lease Amendments.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017, and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (which together with the Third Amendment, defined below, are herein collectively referred to as the "Lease Amendments").

C.      The Lease was assigned to and assumed by Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed the Third Amendment to Commercial Lease Agreement, effective December 13, 2018 (the "Third Amendment") to allow Tenant to expand and improve its space within the Bonner Mill Site in Bonner, Montana, to undertake some improvements and to extend the term of the Lease.

E.      As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 (USD) and from additional borrowing of $2,625,000.00 (USD) pursuant to the New Loan from the Bank of Montana (as defined in the Third Amendment).  Tenant has committed to the expenditure of certain of the new equity proceeds and all of the proceeds of the New Loan to improvements to be located on the Property (as that term is defined in the Lease as amended by the Lease Amendments).

F.      In connection with the New Loan, Landlord agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Third Amendment and that certain Credit Enhancement Agreement between Tenant and Landlord executed December 13, 2018, including that Landlord shall not be obligated to approve further disbursements by the Bank of Montana under the New Loan except and until Tenant has provided reasonable evidence to

Landlord that Tenant has raised at least $3,000,000.00 in New Equity proceeds, among other obligations.

      G.    Although Tenant continues its efforts to raise New Equity proceeds, Tenant has not yet raised at least $3,000.000.00.

      H.    The parties wish to move forward to construct the New Substation despite New Equity proceeds not yet being contributed, and to document their agreements herein.

All dollar figures in this Agreement are U.S. Dollars.


## AGREEMENT

      NOW, THEREFORE, in consideration of the foregoing recitals, which are hereby incorporated into this Agreement as if fully set forth herein, and the following terms and conditions, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

      **1.**    Tenant shall deposit $1,000,000.00 into its account at the Bank of Montana.

      **2.**    Such funds shall only be used for improvements on the Property as further described in the Third Amendment, and as drawn and disbursed under the procedures provided therein.

      **3.**    Once $1,000,000.00 has been deposited and disbursed in accordance with the terms and conditions of the Third Amendment, Landlord shall provide Landlord's approval and authorization to Bank of Montana and/or the applicable title company for advances on and disbursements from the New Loan in the amount of up to $1,000,000.00, which shall also be disbursed through title and applied in accordance with the terms of the Third Amendment.  In this regard, Landlord and Tenant agree that while Tenant shall diligently continue its efforts to raise New Equity proceeds, Tenant shall not be obligated to provide Landlord evidence that Tenant has raised at least $3,000,000.00 in New Equity proceeds as condition to Landlord approving up to (but no more than) $1,000,000.00 in disbursements by Lender under the New Loan, and that subsection 1.b.II.ix) of the Lease (as set forth in subsection 1.c. of the Third Amendment) is modified accordingly.

      **4.**    All remaining provisions of the Lease and Lease Amendments shall remain in full force and effect, and are hereby reaffirmed.

EXHIBIT 19.(ii)
PAGE 3

**5.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute and be construed as one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**[*Signature pages follow*]**

**TENANT:**

Hyperblock LLC, a Delaware limited liability
company

By: _____

Sean Walsh

Its Chief Executive Officer

**LANDLORD:**

Bonner Property Development, LLC., a Montana
limited liability company

By: _____

Stephen Nelson

Co-Manager

By: _____

Michael Boehme

Co-Manager

EXHIBIT 20.
PAGE 1

**Exhibit 20.**     *[Dec. #25]* Emails RE restructuring:

    (i)    Email from Bowditch to DHB on 01/18/2019 at 2:51 PM (with statement by Jaymie regarding Walsh's approval of revisions: "I think Sean is okay with the revisions to Exhibit E that Steve has proposed.")

    (ii)    Email from Bowditch to DHB (CC to Walsh) on 01/31/2019 at 9:37 AM with attached "Collateral Lease Assignment that both HB and PS have approved";

| | |
|---|---|
| **From:** | Jaymie Bowditch |
| **To:** | David Bjornson |
| **Cc:** | Jill Broughton |
| **Subject:** | RE: Side Agreement |
| **Date:** | Friday, January 18, 2019 3:08:26 PM |
| **Attachments:** | Second Lease Amendment.BPD - Project Spokane - 2.10.17 (00512248-2).docx |

David,

I think Sean is okay with the revisions to Exhibit E that Steve has proposed. As to the changes to the second lease amendment itself, attached is what I think is the final version in Word. Could you please modify the language at the top of Page 2 you think needs to be modified so I can review?

Also, as I mentioned the other day Project Spokane is in the process of "restructuring" the debt Hyperblock still owes under the APA. One of the things we will be requesting is a collateral assignment of Hyperblock, LLC's interest as a tenant under the lease with BPD. We will likely need some consent to this from BPD (e.g. BPD agreeing to copy PS on any lease default notices). I am telling you this because Sean thinks he is okay with removing the substation equipment from Exhibit E if BPD will be reasonable in consenting to whatever may be needed for this collateral assignment. I am certain BPD will be since it does not detrimentally affect BPD (and in fact is likely a benefit to BPD) but Sean asked that I confirm.

Therefore, please do and I think we can put this one to bed.

-- Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

---

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

EXHIBIT 20.
PAGE 3

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

---

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Friday, January 18, 2019 2:26 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

Then yes we are good I think with that.   In addition to the revision of Exhibit E, the flush language in the paragraph at the top of page 2 will need to be revised.   David

_____

## David H. Bjornson

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
**http://www.bjornsonlaw.com/attorneys/david-h-bjornson/**
**Email:  david@bjornsonlaw.com**
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

---

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Friday, January 18, 2019 2:23 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

That is my understanding.

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199

EXHIBIT 20.
PAGE 4

Phone: 406.543.6646

Fax: 406.532.5752

[www.boonekarlberg.com](www.boonekarlberg.com)

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <[david@bjornsonlaw.com](david@bjornsonlaw.com)>
**Sent:** Friday, January 18, 2019 2:22 PM
**To:** Jaymie Bowditch <[jbowditch@boonekarlberg.com](jbowditch@boonekarlberg.com)>
**Cc:** Jill Broughton <[jill@bjornsonlaw.com](jill@bjornsonlaw.com)>
**Subject:** RE: Side Agreement

I think the answer is yes.   The network equipment is related to the servers, correct?
David

**From:** Jaymie Bowditch <[jbowditch@boonekarlberg.com](jbowditch@boonekarlberg.com)>
**Sent:** Friday, January 18, 2019 2:16 PM
**To:** David Bjornson <[david@bjornsonlaw.com](david@bjornsonlaw.com)>
**Cc:** Jill Broughton <[jill@bjornsonlaw.com](jill@bjornsonlaw.com)>
**Subject:** RE: Side Agreement

Dave,

Just so I am clear, if we back everything out of Exhibit E in the attached except for "all servers" and "all network equipment" is that okay with Steve and Mike?

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752

www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Friday, January 18, 2019 2:10 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

He looked it over and communicated that the servers would not be included but all else would.  Thanks.  David

_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
**http://www.bjornsonlaw.com/attorneys/david-h-bjornson/**
**Email:  david@bjornsonlaw.com**
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Thursday, January 17, 2019 11:50 AM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

I understand.  Have Steve look at that second amendment and let you know, as soon as he can, what items he wants to remain upon a lease termination or expiration.  I'll then get that

EXHIBIT 20.
PAGE 6

info to Sean and Dan for their review.

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Thursday, January 17, 2019 10:09 AM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

Will do.   I think they will be good with it.   I know they will want to do the other part now also.   David
_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
Email:  david@bjornsonlaw.com
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

EXHIBIT 20.
PAGE 7

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Thursday, January 17, 2019 10:01 AM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

David,

I just got off the phone with Sean and Dan.  Both are fine with the Side Agreement with the changes I made to clarify loan proceeds are capped at $1MM without proof of $3MM in new equity raised.  Let me know when BPD approves and I'll get Sean to sign and then deposit the $1MM with B of M.

--Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** Jaymie Bowditch
**Sent:** Wednesday, January 16, 2019 3:54 PM
**To:** 'David Bjornson' <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>

**Subject:** RE: Side Agreement

Looks good.  Let me know when BPD approves and I'll get Sean to sign.

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Wednesday, January 16, 2019 3:42 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

That looks good to me.  Forwarding now.  Here is how I saved them.  David
_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
Email:  david@bjornsonlaw.com
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this*

EXHIBIT 20.
PAGE 9

*communication in error, please notify us immediately by telephone and delete the message from your system.*

---

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Wednesday, January 16, 2019 2:49 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

David,

Sorry for the confusion.  Take a look at Section 3 now.

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

---

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

---

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Wednesday, January 16, 2019 2:24 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

Jaymie – it was not my understanding that the $3M item was waived except as to the $1M and $1M.  Did you have input to the contrary?  David

EXHIBIT 20.
PAGE 10

_____

## David H. Bjornson

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
**http://www.bjornsonlaw.com/attorneys/david-h-bjornson/**
**Email:  david@bjornsonlaw.com**
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential*
*information and is intended only for the use of the individual or entity named above.  If you have received this*
*communication in error, please notify us immediately by telephone and delete the message from your system.*

---

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Wednesday, January 16, 2019 1:50 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Subject:** RE: Side Agreement

David,

I actually think what your associate drafted is quite good and not overkill.  In fact, I have made a couple of minor change and added some language to Para. 3, all in redline in the attached.

I will be speaking to Sean this afternoon at 3:00.  I think he will be fine with this document so please let me know if you and BPD are okay with what is attached.

-- Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

EXHIBIT 20.
PAGE 11

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Monday, January 14, 2019 7:01 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Subject:** Side Agreement

This is probably overkill for the situation – an associate in our firm drafted it up for consideration.   I am sending it to you before our clients have reviewed and commented.  Also, we should consider modifying Exhibit E to 2nd Amendment in relation to the issues raised about the power installations.

David

_____

## David H. Bjornson

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
**http://www.bjornsonlaw.com/attorneys/david-h-bjornson/**
**Email:  david@bjornsonlaw.com**

*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

EXHIBIT 20.
PAGE 12

| From: | Jaymie Bowditch |
|---|---|
| To: | David Bjornson |
| Cc: | Sean Walsh; Kristen Martin |
| Subject: | Collateral Assignment of Lease |
| Date: | Thursday, January 31, 2019 9:37:21 AM |
| Attachments: | Collateral Assignment of Lease (00663112-3).docx |

David,

As you may recall, Project Spokane, LLC and Hyperblock LLC are restructuring some aspects of the deferred obligation that HB owes to PS pursuant to the asset sale last summer.  In exchange for PS agreeing to do so, PS has requested and HB has agreed to a collateral assignment of the lease between HB and BPD.

In that regard attached is a Collateral Lease Assignment that both HB and PS have approved.  Could you review on behalf of BPD and let me know if you have any concerns?  The HB board is meeting today at 12:30 to (hopefully) approve this restructuring.  While I don't expect you to be able to look at this prior to the board meeting, any urgency you can place on reviewing this would be appreciated.  I don't expect you'll have any concern since all we're asking for from BPD is consent to PS stepping into the lease as Tenant if needed and for BPD to copy PS on any lease default notices to HB.

Thanks David.  Please call if you have questions.

-- Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

---

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that*

## COLLATERAL ASSIGNMENT OF LEASE

THIS COLLATERAL ASSIGNMENT OF LEASE (this "Assignment") dated as of **February 1 , 2019**, is entered into by and between Hyperblock LLC, a Delaware limited liability company (the "Assignor"), and Project Spokane, LLC, a Colorado limited liability company (the "Assignee").

### Recitals

A.       Effective March 1, 2016, Bonner Property Development, LLC ("Lessor") and Assignee entered into that certain Commercial Lease Agreement, as amended (the "Lease"), for certain real property located in the Bonner Mill Site in Bonner, Montana as further described in the Lease (the "Subject Property").

B.       The Lease was assigned to and assumed by Assignor pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018 executed in conjunction with Assignor's acquisition of substantially all of the assets of Assignee pursuant to an Asset Purchase Agreement between Assignor as buyer and Assignee as seller (the "Purchase Agreement").

C.       Pursuant to the terms of the Purchase Agreement as subsequently modified by a Secured Promissory Note (the "Note"), dated as of February 1, 2019 , executed by Assignor and Hyperblock Inc, an Ontario company that is the parent of Assignor (the "Parent") in conjunction herewith, Assignor and Parent are indebted to Assignee in the amount of $5,000,000 CAD.

D.       The Note is secured by those certain Security Agreements dated as of February 1 , 2019, by and between Assignor and Assignee (the "Assignor Security Agreement") and by and between the Parent and the Assignee (the "Parent Security Agreement"). The Assignor Security Agreement, the Parent Security Agreement and the Note are collectively referred to herein as the "Note Documents".

E.       To further secure the Note, Assignor has agreed to assign to Assignee, and Assignee has agreed to take from Assignor, an assignment of the Lease for collateral purposes, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and in order to induce Assignee to extend accommodations to Assignor and Parent as evidenced by the Note, Assignor hereby agrees with the Assignee for the benefit of Assignee as follows:

**1.       Assignment**. Assignor, in consideration of the Note and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby absolutely and unconditionally grant, convey, assign, transfer and set over unto Assignee all rights, interests and estates of Assignor in, to and under the Lease, together with all renewals and extensions of the Lease and other agreements and all other leases or agreements that may hereafter be entered into which cover all or any portion of the Subject Property and together with all of Assignor's rights to collect and receive any rents and charges that it may receive from approved users, operators, sublessees and permitees (the "Rents"). This assignment is for the purpose of securing payment and performance of Assignor under the Note Documents. Assignee, by acceptance hereof, agrees not to take any action to assert its rights to possession of the Subject Property or Assignor's rights to collect and receive the Rents unless and until there shall exist or occur an Event of Default (as defined in the Note). Assignee acknowledges and agrees that Assignee's rights to the Rents upon an Event of Default under the Note and a default under the Lease shall be subject and subordinate to the rights of Lessor to said Rents, if any.

**2.** **Representations and Warranties of Assignor**. Assignor hereby represents and warrants to Assignee that:

**a.** Assignor has the right to assign the Lease and the Rents hereby assigned and no other person or entity has any right, title or interest therein;

**b.** Assignor has performed and will duly and punctually perform all of the material terms, covenants, conditions and warranties of the Lease;

**c.** Assignor has not at any time prior to the date hereof exercised any right to subordinate any Lease to any deed of trust or mortgage or any other encumbrance of any kind;

**d.** Assignor has not executed any prior assignments of the Lease or the Rents;

**e.** Assignor has performed no act or executed any other instrument which might prevent Assignee from enjoying and exercising any of its rights and privileges evidenced hereby;

**f.** The Lease is valid and subsisting and in full force and effect and unmodified; and

**g.** There are no defaults now existing under the Lease and no event has occurred which with the passage of time or the giving of notice, or both, would constitute such a default.

**3.** **Limitation of Assignee's Liability**. Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder. Assignor shall and does hereby agree to indemnify, defend and hold Assignee harmless from and against any and all liability, loss or damage incurred under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, and from any and all claims and demands whatsoever that may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease, other than claims and demands that arise in connection with the gross negligence or willful misconduct of the Assignee. Should Assignee incur any such liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, or in defense of any such claims or demands, the amount thereof, including reasonable and documented out-of-pocket costs, expenses and attorney fees, shall be secured hereby and Assignor shall reimburse Assignee therefor promptly upon written demand, failing which Assignee may, at its option, declare all indebtedness secured hereby and by the Note Documents to be immediately due and payable. This Assignment shall not operate to place responsibility upon Assignee for the control, care, management or repair of the Subject Property, nor for the carrying out of any of the terms and conditions of the Lease; nor shall it operate to make Assignee responsible or liable for any waste committed on the Subject Property or for any dangerous or defective condition of the Subject Property, or for any negligence in the management, upkeep, repair, or control of the Subject Property resulting in loss or injury or death to any tenant, licensee, employee, or stranger.

**4.** **Assignee's Remedies**. This Assignment is primary in nature to the obligation evidenced and secured by the Note. Assignor agrees that Assignee may enforce this Assignment without first resorting to or exhausting any other security or collateral; provided, however, that nothing herein contained shall prevent Assignee from suing on the Note or exercising any other right under any document securing the payment of the Note.

**5.** **No Waiver**. Nothing contained herein and no act done or omitted by Assignee pursuant to the powers and rights granted hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note or a waiver or curing of any default hereunder or under the Note, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of the Note. The right of Assignee to collect the interest and indebtedness

evidenced by the Note and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

**6.     Term of Assignment**. If the Note and all other indebtedness secured hereby are paid as the same become due and payable and if all of the covenants, warranties, undertakings and agreements made in the Note and in this Assignment are kept and performed, this Assignment shall become null and void and of no further force and effect but the affidavit, certificate, letter or statement of any officer, agent or attorney of Assignee showing any portion of the Note or such other indebtedness to remain unpaid or any of such covenants, warranties, undertakings and agreements not to be kept or performed shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon.

**7.     Survival; Attornment**. Upon fourteen (14) days' notice from Assignee to Lessor of the occurrence and continuation of any Events of Default (as that term is defined in the Note) under the Note, then Lessor, Assignor and Assignee do hereby agree that the Lease and all terms, provisions, covenants and agreements thereof shall survive the occurrence and continuation of any such Events of Default, and the Lease shall remain in full force and effect, in accordance with and subject to all of its terms, provisions, agreements and covenants as a direct lease between Lessor (as lessor) and Assignee or any assignee of Assignee (as tenant). Lessor shall, in such event, exercise and undertake all of the rights and obligations of the lessor in and under the Lease and Assignee or such assignee, as lessee, shall keep, observe and perform as to Lessor all of the terms, covenants and conditions to be kept by the lessee pursuant to the Lease, and Lessor shall have the same remedies for nonperformance or default of any agreement or term of the Lease as it would had or would have had as lessor under the Lease if no such Event of Default had occurred and was continuing. Such notices to Landlord shall be given to Landlord in the manner provided in the Lease at the following address:

> Bonner Property Development, LLC
> 224 N. Higgins Avenue
> Missoula, Montana  59802

or at such other address as Lessor shall provide Assignee in writing in the same manner.

**8.     Notice of Default**. For and so long as any obligations remain outstanding under any Note Document, Lessor agrees that, prior to terminating the Lease or taking any proceedings to enforce any such termination thereof for any reason other than the expiration of the term of the Lease, Lessor shall give Assignee, at the same time it gives Assignor notice thereof, prior notice in writing of any default under the Lease, specifying the reason for such default. Such notice shall be given to Assignee in the same manner provided in the Lease at the following address:

| for Holder: | Project Spokane, LLC |
| --- | --- |
| | 5619 DTC Parkway #475 |
| | Greenwood Village, Colorado 80111 |
| | Attn:  Sean Walsh |
| | Email:  sean@redwoodcityventures.com |
| | |
| with a copy to: | Boone Karlberg P.C. |
| | 201 West Main St., Suite 300 |
| | PO Box 9199 |
| | Missoula, MT 59807-9199 |
| | Attn:  James A. Bowditch |
| | Email: jbowditch@boonekarlberg.com |

or at such other address as Assignee shall provide Lessor in writing in the same manner.

      **9.**    **Additional Rights of Assignee**.

          **a.**    Assignee may take or release other security for the payment of the Note and other indebtedness secured by the Note, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the satisfaction of the Note and such other indebtedness without prejudice to any of its rights under this Assignment.

          **b.**    Assignee may at any time and from time to time in writing: (i) waive compliance by Assignor with any covenant herein made by Assignor to the extent and in the manner specified in such writing; (ii) consent to Assignor doing any act that hereunder Assignor is prohibited from doing, or consent to Assignor failing to do any act which hereunder Assignor is required to do, to the extent and in the manner specified in such writing; or (iii) release any portion of the Subject Property and/or the Lease, or any interest therein, from this Assignment. No such act shall in any way impair the rights of Assignee hereunder except to the extent specifically agreed to by Assignee in such writing.

          **c.**    The rights and remedies of Assignee hereunder shall not be impaired by any indulgence, including, but not limited to, (i) any renewal, extension, or modification that Assignee may grant with respect to any indebtedness secured hereby; (ii) any surrender, compromise, release, renewal, extension, exchange, or substitution that Assignee may grant in respect of any item of the Subject Property and/or the Lease or any part thereof or any interest therein; or (iii) any release or indulgence granted to any endorser, guarantor or surety of any indebtedness secured hereby.

      **10.**    **Severability**.  A determination that any provision of this Assignment is unenforceable or invalid shall not affect the enforceability or validity of any other provision and any determination that the application of any provision of this Assignment to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

      **11.**    **No Merger**.  Notwithstanding (a) the fact that any Lease or the leasehold estate created thereby may be held, directly or indirectly, by or for the account of any person or entity that shall have an interest in the fee estate of the Subject Property; (b) the operation of law; or (c) any other event, the lessee's leasehold estate under such Lease shall not merge into the fee estate and the lessee shall remain obligated under such Lease as assigned by this Assignment.

      **12.**    **Binding**.  The terms, provisions, representations, and warranties herein contained shall inure to the benefit of, and bind, the parties hereto and their respective heirs, representatives, successors and assigns, all Lessor approved subtenants and assigns of this Lease, and subsequent holders of the Note. All references in this Assignment to Assignor or Assignee shall be deemed to include all such heirs, representatives, successors and assigns of such respective party.

      **13.**    **Additional Documentation**.  Assignor agrees to and shall promptly execute or cause to be executed and deliver to Assignee a specific assignment of each and every lease hereafter executed and covering all or a portion of the Subject Property, such specific assignment to be in the form of this Assignment.

      **14.**    **Construction**.  Within this Assignment, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural, unless the context otherwise requires. The provisions of this Assignment are intended to supplement the provisions contained in the Note. In the event of any conflict between the terms of this