Quentin M. Rhoades
State Bar No. 3969
Robert Erickson
State Bar No. 9966
Rhoades, Siefert & Erickson PLLC
430 Ryman Street
Missoula, Montana 59802
Telephone: (406) 721-9700
qmr@montanalaywer.com
erickson@montanalawyer.com

*Pro Querente*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| **STEVE NELSON, MICHAEL BOEHME, and BONNER PROPERTY DEVELOPMENT, LLC,**<br><br>Plaintiffs,<br><br>vs.<br><br>**PROJECT SPOKANE, LLC, and SEAN WALSH,**<br><br>Defendants. | Cause No. **9:20-cv-00082-DLC**<br><br>***PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR EXTENSION OF TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ENTERED*** |

Plaintiffs, Steve Nelson, Michael Boehme, and Bonner Property Development, LLC (BPD), support their request that the Court, pursuant to Fed. R. Civ. P. 65(b)(2), enter an order extending the temporary restraining order (TRO) entered in this case by the Montana Fourth Judicial District judge on June 1, 2020, with the following:

/ / /

## BRIEF

## ISSUE

In this case, prior to removal, the state court entered a TRO on June 1, 2020. It will expire by operation of law, on June 11, 2020. *See* 27-19-316(4), MCA. Upon consultation with Defendants' counsel, Defendants intend to sell the property at their earliest opportunity to the detriment of Plaintiffs' prior security interest. At this juncture in time, even though there is no pending notice of disposition or public sale that affects the personal property at issue in this case, the issue of whether to continue to enjoin any sale is nevertheless ripe. The Court should, therefore, enter an order extending the TRO out of comity with the state court and to prevent imminent harm to Plaintiffs' interests.

## FACTS

The following facts are summarized directly from the Declaration of Stephen Nelson, which was filed in the state court and served as the basis for entry of the TRO. (Doc. 1-8.) Walsh was the CEO of HyperBlock, LLC. HyperBlock, LLC also owed Walsh and his other company, Project Spokane, LLC (Project Spokane), several million dollars on two promissory notes, which were secured by HyperBlock's computer equipment. HyperBlock, acting through Walsh, agreed with Walsh to borrow some $2.6 million to buy new highly specialized computer equipment to which would attach Walsh and Project Spokane's liens—which loans

2

are guaranteed by Plaintiffs Nelson and Boehme and secured by Plaintiff BPD's real estate.  The purpose of the brand-new equipment, however, was not to serve the business purposes of HyperBlock, which was in such financial straits it could not pay its own electric bills.  Rather, the purpose of the brand-new equipment was for additional collateral for Walsh and Spokane to sell at a planned public sale to satisfy their notes. Three months later in April 2020, once the Bank of Montana Loan was drawn down and the new purchases completed with the loan proceeds, Walsh abruptly resigned from HyperBlock, accelerated the LLC and personal notes—then $5.22 million and now approximately $6 million—and made demand for immediate payment.  Since HyperBlock did not and could not satisfy the accelerated LLC Notes, which Walsh knew, Walsh gave notice of a public sale to liquidate the new equipment by auction.  Walsh's intention was not to repay the recent purchase money loan to the Bank of Montana but, rather, to pocket the cash and pay off himself and his company Project Spokane leaving the purchase money lender and the guarantor Plaintiffs hanging out to dry.

In this way, Walsh benefitted himself and Project Spokane by causing HyperBlock to buy millions of dollars in equipment with borrowed money guaranteed by Plaintiffs, which they could both then turn around and sell to satisfy the non-purchase money notes they held against HyperBlock.  If the sale is rescheduled by Defendants and allowed to move forward, Defendants will obtain an

undeserved windfall of millions of dollars, and Plaintiffs will suffer a catastrophic loss in a commensurate amount—all in violation of Defendants' promises to Plaintiffs.

## ARGUMENT

A temporary restraining order is intended to preserve the status quo until the court can rule upon a motion for a preliminary injunction. Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure*, § 2951.  The standards for a temporary restraining order and preliminary injunction are the same.  The moving party must establish (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm if the preliminary injunction [or temporary restraining order] is denied, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).  If a plaintiff can raise "serious questions going to the merits" and "demonstrate a balance of hardships that tips sharply towards the plaintiff," the plaintiff is entitled to a temporary restraining order "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

A temporary restraining order may be granted without notice to the adverse party only if: (1) specific facts in an affidavit show that immediate and irreparable

4

injury, loss, or damage will result before the adverse party can be heard, and (2) the movant's attorney certifies in writing the notice efforts made or why notice should not be required. Fed. R. Civ. P. 65(b). *Ex parte* temporary restraining orders are disfavored to "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (citing *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)).

Although *ex parte* temporary restraining orders are necessary in certain circumstances, under federal law they are restricted to serve the purpose of maintaining the status quo and preventing irreparable harm until a hearing can be held. *Id.* Circumstances where an *ex parte* order are appropriate include where the adverse party is unknown or cannot be located in time for a hearing or where notice to the defendant would render the litigation fruitless. For instance, in trademark infringement cases, an *ex parte* order is granted when the alleged infringer is likely to dispose of the infringing goods before the hearing. *Id.* In such instances, "plaintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing ... [and] must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a

5

history." *Id.* (citing *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650-651 (6th Cir. 1993)). In sum, the motion must establish a significant likelihood that notice would lead to destruction or unavailability of the subject property before the Court can hold a hearing. The order must be as narrow in scope and brief in duration as possible. *Id.*

    In this case, there is as clear likelihood that the sale of the brand-new equipment Walsh bought for HyperBlock to serve as his collateral will terminate the status quo which would lead to destruction or the unavailability of the subject property before the Court can hold a hearing. The Court should prevent that from happening by extending the state court's TRO until a hearing can be held. It should do so, moreover, without need for a bond because the new equipment itself will secure its value to the parties with competing claims upon it.

    DATED this 11th day of June 2020.

Respectfully Submitted,
RHOADES SIEFERT & ERICKSON PLLC

By: /s/Quentin M. Rhoades
    Quentin M. Rhoades
    Robert Erickson
    *Pro Querente*