FILED

06/01/2020
*Shirley Faust*
CLERK
Missoula County District Court
STATE OF MONTANA
By: Laura Driscoll
DV-32-2020-0000604-OC
Deschamps, Robert L III
3.00

Quentin M. Rhoades
State Bar No. 3969
Robert Erickson
State Bar No. 9966
Rhoades, Siefert & Erickson PLLC
430 Ryman Street
Missoula, Montana 59802
Telephone: (406) 721-9700
qmr@montanalaywer.com
erickson@montanalawyer.com

*Pro Querente*

## IN THE FOURTH JUDICIAL DISTRICT COURT OF MONTANA
## MISSOULA COUNTY

| | |
|---|---|
| STEVE NELSON, MICHAEL BOEHME and BONNER PROPERTY DEVELOPMENT, LLC,<br><br>Plaintiffs,<br><br>**vs.**<br><br>PROJECT SPOKANE, LLC, and SEAN WALSH,<br><br>Defendants. | Cause No. **DV-32-2020-0000604-OC**<br>Dept. No. **1**<br><br><br>***FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL*** |

Plaintiffs, Bonner Property Development, LLC, Steve Nelson, and

Michael Boehme, for their first amended complaint against Defendants,

Project Spokane, LLC, and Sean Walsh, allege as follows:

## INTRODUCTION

1.     This is a declaratory judgment action and a civil action for, *inter alia,* fraud, unjust enrichment, promissory estoppel, and equitable estoppel. In addition to a declaratory judgment determining the respective rights and responsibilities of the parties, Plaintiffs seek equitable relief in the form of a judgment (a) enjoining public sale of certain personal and real property, consisting of Bitcoin mining equipment, fixtures, and other assets located on leased property in Bonner, Montana; (b) ordering specific performance of a promise to provide first priority for Plaintiffs' security interest in this property and to execute documents necessary to fulfill this promise; or, in the alternative, (c) imposing of a constructive trust on the subject equipment, fixtures and other assets.

## PARTIES

2.     Plaintiff Bonner Property Development, LLC (BPD), is a Montana limited liability company with its principal place of business in Missoula County, Montana.  It owns real property of concern in this action consisting of real property and improvements located at the Bonner Mill Site (the Premises), the site of the former Stimson Lumber Mill in Bonner, Montana.

2

3.      Plaintiff Steve Nelson (Nelson) is a resident of Missoula, Montana, and a member of BPD.

4.      Plaintiff Michael Boehme (Boehme) is a resident of Missoula, Montana, and a member of BPD.

5.      Upon information and belief, Defendant Project Spokane, LLC (Project Spokane) is a Colorado limited liability company with its principal place of business in Colorado.

6.      Upon information and belief, Defendant Sean Walsh (Walsh) is a resident of Puerto Rico.

7.      Upon information and belief, Project Spokane is the alter ego of Walsh, and HyperBlock LLC is the alter ego of both Walsh and Project Spokane, as described herein.

## JURISDICTION AND VENUE

8.      The Court, as a court of general jurisdiction, has authority to adjudicate the issues given rise to by this action.

9.      Venue is proper before this Court as the property upon which the Court is asked to exercise its authority is located in Missoula County, Montana

## GENERAL ALLEGATIONS

10.    On information and belief, Walsh has been involved in Bitcoin and other cryptocurrency businesses since at least 2014.  In 2008, Walsh founded and was the sole member of Aquifer International Commerce, LLC, established under the laws of California. (Mr. Walsh later converted Aquifer International Commerce, LLC to a corporation—Aquifer International Commerce, Inc. (Aquifer).)  Upon information and belief, Aquifer engaged in Bitcoin mining in California.  Aquifer filed for bankruptcy nine months after beginning operations, although the case was dismissed. Upon information and belief, Aquifer and Walsh never paid amounts due to Aquifer's landlord for rent or power used at their California location.

11.    In 2016, Walsh founded Project Spokane, LLC, a Colorado limited liability company primarily engaged in Bitcoin mining and Bitcoin related businesses.

12.    On or about March 1, 2016, BPD, as landlord, and Project Spokane, as tenant, entered into a Commercial Lease Agreement.  The foregoing Commercial Lease Agreement and all its amendments are hereinafter referred to as the "Commercial Lease."

4

13.    The Commercial Lease concerns the lease of real estate and improvements located at the Bonner Mill Site, the site of the former Stimson Lumber Mill in Bonner, Montana, as well as fixtures and personal property, the latter of which consists of millions of dollars-worth of computer hardware used in a large Bitcoin mining operation, all located on the leased premises.[1]

14.    On or about December 23, 2016, BPD and Project Spokane entered into a First Amendment to Commercial Lease Agreement with an effective date of January 1, 2017.

15.    On or about July 13, 2017,  BPD and Project Spokane entered into a Second Amendment to Commercial Lease Agreement with an effective date of January 1, 2017.

16.    Walsh incorporated Hyperblock Technologies Corp. (Hyperblock Technologies), a Canadian corporation, under the Ontario Business Corporations Act on October 10, 2017.

---

[1] Bitcoin mining is performed by expensive high-powered computer hardware used to solve complex computational math problems (that is, so complex that they cannot be solved by hand, and indeed complicated enough to tax even incredibly powerful computers). For more background, see, *e.g.*, https://www.investopedia.com/terms/b/Bitcoin-mining.asp.

17.     Beginning in late 2017, Hyperblock Inc. began a transaction with Project Spokane.  At that time, Walsh controlled Hyperblock Technologies and Project Spokane and would soon form HyperBlock LLC (HyperBlock).

18.     On November 29, 2017, Hyperblock Technologies entered into a sale agreement with Project Spokane, pursuant to which HyperBlock agreed to purchase certain servers used for mining cryptocurrency from Project Spokane for $5,500,000.

19.     Under a separate Co-Location Agreement executed effective December 18, 2017 , Project Spokane also agreed to provide hosting services to Hyperblock Technologies in the leased premises in Bonner, Montana for the cryptocurrency mining operations sold and purchased.

20.     On December 18, 2017, Hyperblock Technologies and Project Spokane amended the November 29, 2017, sale agreement. In the amendment, Hyperblock Technologies agreed to purchase additional servers used for mining cryptocurrency from Project Spokane for an additional $1 million due on signing and an additional $3 million due to Project Spokane upon execution of Hyperblock Technologies' acquisition of Project Spokane. The amended sale agreement closed on December 19, 2017.

6

21.    Walsh formed HyperBlock LLC (HyperBlock) on or about December 29, 2017.  HyperBlock is a Delaware limited liability company with its principal place of business in Toronto, Ontario, Canada.   Upon information and belief, the sole member owner of HyperBlock is Hyperblock Inc. (HBI), which was formed as the result of a formal corporate merger of Hyperblock Technologies and another Bitcoin mining company.  HBI is incorporated in Ontario, Canada, and was a publicly traded company on the Canadian Securities Exchange.  HyperBlock is engaged in the business of Bitcoin mining and related businesses, primarily on the Premises.

22.    Walsh has played several simultaneous roles in which he has controlled the promotion, operations and finances of the Bitcoin mining facilities located on the Premises.  He served as the Chairman and CEO of HBI (until his recent resignation) and was and possibly remains the only shareholder with more than a 10% stake in HBI, at one time in excess of 20% of the over 200,000,000 shares outstanding, and was and may remain a holder of a significant number of stock options.  Walsh functioned as the Chief Executive Officer of HyperBlock, which is now in possession of the Bitcoin operation.  Walsh is also the controlling member and manager of

7

Project Spokane, which originally organized and promoted the Bitcoin operation until it sold its assets to HyperBlock.

23.    BPD is the landlord of HyperBlock and a creditor of HyperBlock with the senior valid secured interest in 1,493 Bitcoin mining servers (the Equipment) in the possession of HyperBlock and located on the Premises. BPD also has a nonpriority interest in all the remaining assets of HyperBlock (except servers purchased prior to December 31, 2019).

24.    On January 7, 2018, HyperBlock entered into an agreement with Project Spokane and Walsh to acquire the assets and liabilities of Project Spokane.  Again, at the time, Walsh was the controlling member of Project Spokane and the Chief Executive Officer of HBI.

25.    On July 10, 2018, HyperBlock, Project Spokane LLC, and Sean Walsh closed on the sale of Project Spokane's assets and liabilities to HyperBlock. This transaction was part of a larger corporate transaction whereby HBI was formed through the merger of Hyperblock Technologies and CryptoGlobal Corp., two Canadian corporations. Walsh became the CEO and Chairman of HBI and held over 21% of the outstanding issued stock in HBI.

26.    HyperBlock paid an aggregate purchase price for Project Spokane's assets of $65,947,720.65 CAD in cash, promissory notes, and shares in the new merged entity, HBI.  As part of the transaction between HyperBlock and Project Spokane on July 10, 2018, HyperBlock issued a promissory note to Project Spokane in the amount of $5,000,000.  The promissory note was to be paid in installments of at least $450,000 each month, increased by the amount that HyperBlock's working capital exceeded CAD$15,000,000.

27.    Project Spokane filed a UCC-1 financing statement on July 10, 2018, to secure HyperBlock's obligations under the promissory note.

28.    Before its acquisition of the Project Spokane assets, HyperBlock had no cash flow or operating results.

29.    In conjunction with HyperBlock's acquisition of substantially all of the assets of Project Spokane, on July 10, 2018, the Commercial Lease (between Plaintiff BPD and Project Spokane) was assigned by Project Spokane to HyperBlock, and HyperBlock assumed the Commercial Lease, pursuant to an Assignment, Assumption and Amendment of Lease (Assignment) executed effective July 10, 2018.

9

30.    Walsh negotiated and, with a few exceptions, signed  the relevant documents generated in the set of transactions that resulted in HyperBlock's acquiring the operations of and otherwise stepping into the shoes of Project Spokane.  Without limitation, Walsh negotiated the Assignment for both assignor Project Spokane and assignee HyperBlock. Thus, Walsh served as chief executive officer for both the old tenant (Project Spokane) and the new one (HyperBlock).

31.    On or about December 2018, Walsh decided he would expand the Bitcoin mining operation on the leased premises by expanding into additional space at the Bonner Mill Site and improving such premises to make it usable, and including a substantial power substation to handle the additional power needs of such expanded operation. Walsh needed capital. So, among other things, he requested that the landlord, BPD, and its principals make concessions, amend the Commercial Lease, and provide "credit enhancements" in the form of loan guarantees and a lien on the real property which contained the leased premises, to finance his ambitions for HyperBlock's expansion.

32.    In exchange, Walsh committed HyperBlock to confirm it would leave certain of the fixtures and other assets on the leased premises at the

termination of the Lease, including but not limited to a substantial number of fans which are installed physically into the roof and power transformers which are incorporated into the power distribution system for the premises. To facilitate the scheme, without limitation, Walsh requested that BPD and its principals, Nelson and Boehme, put their credit at stake by guaranteeing bank financing in the amount of a maximum of over $3 million for the acquisition of additional Bitcoin mining computer hardware and improvements included in the expansion.  Walsh promised that the security interest that HyperBlock granted to BPD would have first priority and to undertake such steps as are required to establish and maintain that first priority.

33.    Without the promise given by Walsh, BPD, Nelson, and Boehme would not have executed the personal guaranties or the other agreements described below.

34.    On or about December 13, 2018, BPD and HyperBlock, through its officer Walsh, entered into four related agreements:  (1) Third Amendment to Commercial Lease Agreement; (2) a Credit Enhancement Agreement; (3) a Security Agreement; and (4) Side Letter to Third

Amendment to Commercial Lease Agreement.  All four were negotiated and executed by Walsh on behalf of HyperBlock and Project Spokane.

35.    The December 13, 2018 agreements provided, among other things, that BPD would pledge real estate as security on behalf of HyperBlock so that HyperBlock could obtain a loan from Bank of Montana (the BOM Loan), which would also be personally guaranteed by Nelson and Boehme, and in turn HyperBlock would use the proceeds of the loan for equipment and improvements at the leased premises and HyperBlock would grant and maintain a first position security interest for BPD on the assets purchased from the loan funds.

36.    The Credit Enhancement Agreement provides in its recitals, that "[t]he parties wish to set forth their agreements under which [BPD] will be able to assure it is indemnified and protected with respect to the Bank Loan [and] that the proceeds of the Bank Loan are applied to infrastructure and improvements at the Premises."

37.    The Credit Enhancement Agreement provides, among other things: (a) "[HyperBlock's] reimbursement obligation shall be secured by a first lien position security interest on the new assets and other improvements that [HyperBlock] intends to acquire with the proceeds of

12

[the BOM loan]"; (b) "[HyperBlock] covenants to . . . maintain [BPD's] first lien position in [the improvements HyperBlock intends to acquire with the proceeds of the BOM loan] at all times"; and (c) "[HyperBlock] agrees that until all indebtedness incurred which is supported by the Credit Enhancement has been paid in full, and [BPD] is no longer obligated or exposed under the Credit Enhancement, [HyperBlock] will . . . [e]xecute such financing statements or other documents as [BPD] may reasonably request to perfect and continue a first position security interest in [the improvements HyperBlock intends to acquire with the proceeds of the BOM loan]."

38.    Walsh signed the Credit Enhancement Agreement on behalf of HyperBlock.

39.    The Credit Enhancement Agreement would later be modified to expand BPD's collateral to include "ALL personal property owned by [HyperBlock]" located at the leased premises, excluding only the servers owned by HyperBlock as of December 31, 2019, as noted below.

40.    On or about December 14, 2018, because of Plaintiff's commitments, HyperBlock, as borrower, executed a Promissory Note in the

13

principal amount of $2,625,000 payable to Bank of Montana, as lender (the BOM Loan).  Walsh signed the Promissory Note on behalf of the borrower.

41.    As a condition precedent to agreeing to the BOM Loan, Bank of Montana required BPD, the landlord, to pledge its real property and improvements as collateral for the BOM Loan to its tenant, HyperBlock. Thus, by means of a Deed of Trust, BPD conveyed an interest in the leased premises to Bank of Montana as security for the BOM Loan—which Walsh eventually used, January and February of 2020, to expand the operations of the tenant, HyperBlock.

42.    As an additional condition precedent to agreeing to Walsh's proposal for the BOM Loan, Bank of Montana also required BPD's principals, Nelson and Boehme, to each individually guarantee HyperBlock's obligations under the BOM Loan.

43.    Both Nelson and Boehme consented in the condition precedent and executed personal guaranties for the BOM Loan.  Neither Nelson nor Boehme personally received any consideration, such as credit enhancement fees, in exchange for putting their personal credit at stake. Walsh's promise  to provide first priority to the lien rights arising under the Security Agreement with HyperBlock constituted the key material

14

inducement for the entry into these agreements, without which neither BPD nor Nelson nor Boehme would have provided the credit enhancements to support Walsh's ambitious expansion of HyperBlock's Bitcoin mining operations.

44.    Both Nelson and Boehme relied on the promises of Walsh, on his own behalf and on behalf of the companies he managed and in which he owns a stake, directly or indirectly, Project Spokane and HyperBlock, that the security interest granted to BPD would have first priority. In the event HyperBlock defaulted on the BOM Loan and Nelson and Boehme became obligated to BOM on their guaranties, BPD could exercise its rights as a first-priority secured creditor to liquidate its collateral and satisfy the reimbursement obligations of Nelson and Boehme under the guaranties.

45.    Without the promises by Walsh, made on his own behalf and on behalf of the company he ran, neither Nelson nor Boehme would have given their guaranties.  Without their guaranties, Walsh could not realize his ambition to greatly expand HyperBlock Bitcoin mining operations.

46.    Upon closing of the BOM Loan, HyperBlock's obligations to Bank of Montana were (1) secured by the leased premises; and (2) personally guaranteed by BPD, by Nelson and by Boehme.

47.    Without limitation, the December 13, 2018, Security Agreement, which Walsh negotiated and executed for HyperBlock, secures all obligations arising out of the Credit Enhancement Agreement and the Commercial Lease until such time as HyperBlock fully satisfies the BOM Loan.

48.    Without limitation, the Security Agreement grants a continuing first-priority security interest in all personal property, including the Bitcoin mining equipment, among other personal and real property, to the extent acquired, improved or built in part, directly or indirectly, with the proceeds of the BOM Loan.

49.    On or about January 23, 2019, BPD and HyperBlock entered into a Fourth Amendment to Commercial Lease Agreement.  Without limitation, the Fourth Amendment to Commercial Lease Agreement provides that all fixtures "and personal property located on or about the Property as of the Lease Commencement Date (defined below) shall be considered part of the Property hereby leased and subject to all terms and conditions hereof."  It continues: "Furthermore, however, whether or not best legally described as Fixtures, all property relating to electrical supply and distribution shall remain with the Property and become the property of

16

Landlord at the termination of the Commercial Lease, including but not limited to the property described in Exhibit E-2, attached hereto and incorporated herein by reference." This list includes fans, electrical transformers and other specific items consisting of personal property and fixtures.

50.    In June 2019, HBI began shutting down its facilities and consolidated its most valuable servers and equipment at the HyperBlock facility in Bonner, Montana.

51.    Also in June 2019, Walsh lent $2 million to HyperBlock to purchase and deploy new Bitcoin mining equipment. Walsh signed the note for HyperBlock which bore an interest rate of 15% and was secured by the assets of HyperBlock.

52.    Walsh filed a UCC-1 financing statement on July 19, 2019.

53.    By December 2019, it was determined that Walsh's grand expansion was not feasible and so, instead, Walsh proposed that the BOM Loan finance the acquisition of some specific and leading-edge Bitcoin mining equipment.

54.    On or about December 31, 2019, in order to facilitate the pivot of the BOM Loan to new cryptocurrency mining server instead of fixtures

17

and expansion space, BPD and HyperBlock entered into a Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement (the Modification).  Walsh negotiated, executed, and delivered all documents on behalf of HyperBlock and had actual knowledge of and gave consent to all their material terms, promises and obligations.

55.    The Modification allowed for an increase in the BOM loan, allowed the funds from the BOM loan to purchase new servers "which will be held and operated on the Property," confirmed HyperBlock's obligations under the Credit Enhancement Agreement and Security Agreement, and expanded the definition of BPD's collateral  to include "ALL personal property owned by [HyperBlock]" located at the leased premises, excluding only the servers owned by HyperBlock as of December 31, 2019.  The Modification did not disturb or modify the priority interest in assets purchased with the proceeds of the BOM Loan.

56.    Upon information and belief, by January 10, 2020, if not long before, Walsh knew that HyperBlock was in a precarious financial position. Without limitation, upon information and belief, Walsh knew that:  (a) HyperBlock was or quickly would be in arrears with its electrical supply

contract with Energy Keepers, Inc. for inexpensive electricity which allowed the cryptocurrency mining operation to be profitable and without which HyperBlock could not operate; (b) a reduction in the rate of issuance of Bitcoin by 50% (which occurs approximately every four years) was imminent, which would double the computational work (the computer effort) required to mine each new Bitcoin; and (c) HyperBlock was contemplating ceasing operations and HBI was contemplating an imminent bankruptcy filing.

57.    Nonetheless, at Walsh's request, on or about January 10, 2020, the BOM Loan was increased in its principal balance to $3,540,000.00. Walsh immediately used a substantial portion of that the money (the original $2.625M) to purchase 1,493 Bitcoin mining servers (the Equipment).  Upon information and belief, the cost of the servers, purchased with BOM loan funds (secured by BPD, Nelson, and Boehme) was approximately $2.5 million.

58.    Upon information and belief, unbeknownst to Plaintiffs, Walsh purchased the Equipment with the BOM loan funds with no intention of providing BPD with a first position security interest (by way of a subordination agreement) in the Equipment, as promised, so that Walsh

and Project Spokane could later declare a default under their alleged loans to HyperBlock and execute on the Equipment and other assets and reap a windfall without repaying the BOM Loan. This would likely result, Defendants knew, in Bank of Montana's execution on BPD's pledged real estate and/or Bank of Montana invoking its rights under the personal guaranties of Nelson and Boehme—with no recourse or other consequence to Walsh and Project Spokane.

59.    Earlier, on or about January 31, 2019, when Project Spokane and HyperBlock, both controlled by Walsh, restructured a deferred obligation that HyperBlock owed to Project Spokane, HyperBlock agreed to a collateral assignment of the Commercial Lease.  Under the Commercial Lease, this assignment required the consent of the landlord.

60.    During these negotiations with BPD, Walsh and Project Spokane acknowledged the promise of a first-position security interest , agreeing that in the event of default under the BOM Loan, if Project Spokane did not, under the assignment, step in as tenant and continue to run the Bitcoin mine, its rights would be subject to those of BPD, Nelson and Boehme.

20

61.     Despite the written promises of HyperBlock in the Security

Agreement and Credit Enhancement Agreement,  Walsh has refused on

his own behalf or that of Project Spokane to fulfill on the contractual

commitment as to the first lien security interest, to even acknowledge such

security interest, or, among other things, execute a subordination

agreement in favor of BPD's interests or take other steps as contractually

committed with respect to the Equipment and other collateral.

62.     Upon information and belief, on or about February 2020,

HyperBlock ceased making payments to its electrical suppler, Energy

Keepers, Inc.

63.     On April 24, 2020, Walsh resigned as CEO of HBI.  The same

day, Project Spokane and he personally accelerated the maturity date of

the promissory notes issued to them in July 2018 and June 2019,

respectively. HBI's public filings report that Project Spokane demanded

immediate payment of CAD$5,220,000, and Walsh demanded immediate

payment of USD$2,100,000.

64.     On May 11, 2020, a 50% reduction in the reward for mining a

block of Bitcoin occurred, which cut the HyperBlock's mining rewards in

half.  This was not a surprise in the industry, as Bitcoin value "halves" every four years.[2]

65.    Upon information and belief, on May 14, 2020, after notices of default, Energy Keepers, Inc. terminated its electricity supply contract with HyperBlock.  Without access to large amounts of electricity, a Bitcoin mine cannot operate.

66.    On May 14, 2020, HBI issued a press release stating that the Bonner datacenter was offline, and the company ceased all Bitcoin mining operations.  HBI stated that the termination of electric service to HyperBlock's facility on May 14, 2020, and the 50% reduction in the rate of issuance of Bitcoin, which cut the company's mining rewards in half, rendered the company unable to continue operations.

67.    On or about May 15, 2020, HBI filed an "Assignment in Bankruptcy" under the Bankruptcy and Insolvency Act (Canada).

68.    Four days later, on May 19, 2020, Walsh (personally) and Project Spokane served a "Notice of Disposition of Collateral by Public Sale" in which Walsh and Project Spokane stated that they intend to

---

[2] A Bitcoin "halving event" is when the reward for mining Bitcoin transactions is cut in half. This event also cuts in half Bitcoin's inflation rate and the rate at which new Bitcoins enter circulation. *See, e.g.*, https://www.investopedia.com/Bitcoin-halving-4843769

conduct a public sale of certain collateral, including the Equipment and other collateral subject to BPD's security interest and ownership interests as constituting real property, despite the promise to maintain BPD's first-position security interest in such Equipment, and including fixtures that belong to BPD and in which neither Walsh nor Project Spokane has an interest.

69.    The sale described in the Notice of Disposition of Collateral by Public Sale is scheduled to occur on June 3, 2020, at 12:00 p.m. Eastern time.

70.    The Notice of Disposition of Collateral by Public Sale erroneously fails to acknowledge and provide notice to third parties that portions of the fixtures that Walsh and Project Spokane intend to "sell" are actually owned by BPD and that other property that Walsh and Project Spokane intend to "sell" are subject to BPD's first position security interest. Upon information and belief, Walsh and Project Spokane have advertised the sale specified in the Notice of Disposition of Collateral by Public Sale.

71.    On May 20, 2020, upon information and belief, Energy Keepers, Inc. sent a Notice of Termination Payment to HyperBlock claiming

Energy Keepers, Inc. is owed $3,691,604.12 for power delivered to HyperBlock between February 1 and May 14, 2020 and other damages.

72.    Plaintiffs had a telephone meeting with Walsh and his counsel on May 26, 2020, and requested that Walsh and Project Spokane honor and disclose to prospective purchasers the promised first lien priority interest, and, at a minimum, reissue the Notice of Sale with a revised list of assets and acknowledging BPD's security interest, both priority and nonpriority and, if necessary, postpone the public sale to allow the parties to attempt to negotiate a resolution.  Plaintiffs further suggested that Walsh and Project Spokane could execute a subordination agreement to fulfill the contractual obligation.

73.    Walsh refused both requests.

74.    As of May 26, 2020, the BOM Loan has been declared by the Bank of Montana to be in default.

75.    By allowing the BOM Loan to go into default, HyperBlock is also in default of the Commercial Lease.  HyperBlock is in default of the Commercial Lease on other grounds as well.   BPD has issued a Notice of Default respecting the same on May 31, 2020.

76.     If the sale is not enjoined, property that is owned by BPD and/or property that is subject BPD's first position security interest, and BPD's lawful remedies related thereto, will be irreparably harmed or impaired.

## COUNT ONE
## (Fraud)

77.     Plaintiffs reallege the foregoing.

78.     Walsh, individually, and as the agent of Project Spokane, made promises without any intention of performing them.

79.     Among other representations, Walsh, individually and as the agent of Project Spokane, represented to Plaintiffs that BPD would have a first position security interest in the Equipment and that certain fixtures and other assets would remain on the leased premises and be owned by BPD at the termination of the Commercial Lease.

80.     Among other representations, Walsh, individually and as the agent of Project Spokane, represented to Plaintiffs that all property relating to fans and electricity supply and distribution would remain with the leased premises and become BPD's property at the termination of the Commercial Lease.

81.     Among other representations, Walsh and Project Spokane have represented that they have rights in property that is not owed by HyperBlock and in which Walsh and Project Spokane have no rights.

82.     Walsh made these representations in writing and orally.

83.     The representations were false.

84.     The representations were material.

85.     Walsh, individually and as the agent of Project Spokane, knew the representations were false.

86.     Walsh intended that the representation would be relied upon by Plaintiffs to their detriment.

87.     Plaintiffs were ignorant of the representations' falsity.

88.     Plaintiffs justifiably relied on the representations.

89.     Plaintiffs had the right to rely on the representations.

90.     As a result, Plaintiffs have been damaged in reliance on the representations.

**COUNT THREE**
**(Unjust Enrichment)**

91.     Plaintiffs reallege the foregoing.

92.     Plaintiffs allege that Defendants received benefits from Plaintiffs, in the form of Plaintiffs' guaranties for and BPD's agreement to

convey a security interest in its own property to secure the BOM Loan supply.

93.     Defendants knew about or appreciated the benefits they received.

94.     Defendants accepted or retained the benefits under circumstances where it was inequitable for Defendants to do so. Specifically, Walsh and Project Spokane are attempting to assert lien priorities over collateral in which Walsh promised, in his own name and in the name of Project Spokane, would be reserved to secure the BOM Loan on a first lien basis.

95.     If the public sale is allowed to proceed, Plaintiffs will be deprived of all interests in this collateral.

96.     If the public sale is allowed to proceed, BPD will be deprived of certain property that it owns and in which HyperBlock, Walsh, and Project Spokane have no rights.

97.     Under the circumstances, all collateral HyperBlock obtained from the proceeds of the BOM Loan are subject to a constructive trust in favor of Plaintiffs.

        ///

27

## COUNT THREE
## (Promissory Estoppel)

98.   Plaintiffs reallege the foregoing.

99.   Walsh, on his own behalf and on behalf of both HyperBlock and Project Spokane, promised that the security interest granted to BPD would have first priority and that he would execute all documents necessary to reflect such priority.  Walsh made these promises in clear and unambiguous terms.

100.  Plaintiffs relied upon these promises in, among things, putting at risk their own credit and their own property in order to aid Walsh in obtaining millions of dollars in capital to buy the Equipment.

101.  It was reasonable and foreseeable that Plaintiffs would take Walsh at his word and rely upon his promises.

102.  Plaintiffs have been injured in that Walsh and Project Spokane have asserted security interests in priority to BPD's and have given notice of a public sale in order to sell the Equipment and other collateral, including fixtures, and pocket the proceeds.

103.  In proceeding with a public sale of the Equipment, Defendants are doing exactly what they promised Plaintiffs they would not do.

## COUNT FOUR
### (Equitable Estoppel)

104.   Plaintiffs reallege the foregoing.

105.   Walsh's conduct and language, on his own behalf and behalf of both Project Spokane and HyperBlock conduct, amounted to a representation of a material fact, as set forth in this Complaint.

106.   Defendants knew the facts at the time of Walsh's conduct and language.

107.   Plaintiffs did not know the true facts, that Walsh and Project Spokane already had been granted security interests in the collateral pledged to BPD and had filed financing statements in an attempt to create first-priority security interests in the collateral superior to those of Plaintiffs. At the time, Plaintiffs acted to their detriment in aiding Walsh in obtaining the BOM Loan.

108.   Walsh's representations were made with the intent or expectation that they would be acted on by Plaintiffs.

109.   Walsh's representations were relied upon by Plaintiffs, leading them to act upon those representations.

110.   Plaintiffs did in fact rely on Walsh's representations to change their position for the worse.

111. Given the circumstances, Walsh and Project Spokane are estopped from asserting priorities in the Bitcoin mining equipment greater than those of Plaintiffs, to the extent the BOM Loan remains unsatisfied.

## COUNT FIVE
## (Declaratory Judgment)

112. Plaintiffs reallege the foregoing.

113. The Court retains the power and authority to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations under §§ 27-8-101, et seq., MCA.

114. Any person under a deed, will, written contract, or other writings constituting a contract or whose rights, status or other relations are affected by statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

115. Without limitation, Defendants have noticed and intend to conduct a sale of fixtures attached to real property owned by BPD.

116. Defendants do not have an interest in these fixtures superior to BPD's interest in the fixtures as the owner of the property to which they are affixed.

117.   For the reasons specified above, Defendants are also estopped from asserting a first position lien against the Equipment.

118.   For the reasons stated above, Defendants' security interests in the Equipment are junior to BPD's by equitable subordination, or the notes given by HyperBlock should be recharacterized from loans to contributions of equity from which no security interest in the Equipment or any other collateral could arise.

119.   For the reasons stated above, Project Spokane is the alter-ego of Walsh, with no separate legal identity or existence.

120.   For the reasons specified above, the Bitcoin mining equipment obtained from the proceeds of the BOM Loan are subject to a constructive trust in favor of Plaintiffs.

      a.   Under the circumstances, BPD is entitled to a judgment declaring and decreeing that: Defendants do not have a security or other interest in these fixtures and, in any event, could never obtain an interest in these fixtures superior to BPD's interest in the fixtures as the owner of the property to which they are affixed.

b.    Defendants are estopped from asserting a first position lien

against the Equipment Defendants intend to sell.

121.  The Bitcoin equipment obtained from the proceeds of the BOM

Loan is subject to a constructive trust in favor of Plaintiffs.

122.  Under the circumstances described herein, the equities

mandate further necessary and proper supplemental relief to BPD under §

27-8-313, MCA, including but not limited to an award of the expenses,

costs and attorney's fees BPD has and will incur because:  (a) Defendants

possess what BPD seeks in their declaratory judgment claim, namely

priority lien on the Equipment; (b) it is necessary for Plaintiffs to seek this

declaratory judgment in order to prevent a public sale of property, both the

Equipment and fixtures, in which it has legal and equitable interests and

rights; and (c) this declaratory judgment proceeding is necessary to change

the status quo.

**COUNT SIX**
**(Specific Performance)**

123.  Plaintiffs reallege the foregoing.

124.   Project Spokane and Walsh have a contractual duty to

subordinate their interests in the Equipment located on the leased premises

of BPD.

32

125.   Project Spokane and Walsh refused to sign a subordination agreement or otherwise subordinate their interests in the Equipment, which consists of a breach of their contractual duties to BPD.

126.   The Equipment is unique and circumstances, including the location and present disposition of the equipment, otherwise make it proper to decree specific performance.

127.   In the alternative, Plaintiffs would suffer damages if specific performance were not decreed and if the Equipment were sold at public sale.

## REQUEST FOR RELIEF

Accordingly, Plaintiffs request the Court enter a judgment:

1.      Entering a declaratory judgment as described herein;

2.      Awarding damages against Defendants, jointly and severally, in an amount to be determined at trial;

2.      Imposing a constructive trust on the Equipment obtained with the proceeds of the BOM Loan and on any proceeds of sale if a public or other sale is conducted on the Equipment;

3.     Enjoining Defendants from conducting a public sale or other disposition of the Equipment and fixtures included in the notice of public sale;

4.      Reasonable attorney fees and costs of court; and

5.     Such other relief as the Court deems just.

DATED this 1st day of July 2020.

Respectfully Submitted,
RHOADES SIEFERT & ERICKSON PLLC


By:  */s/Quentin M. Rhoades*
        Quentin M. Rhoades
        Robert Erickson
        *Pro Querente*

**JURY DEMAND**

A jury trial is demanded on all counts so triable.

DATED this 1st day of July 2020.

Respectfully Submitted,
RHOADES SIEFERT & ERICKSON PLLC


By:  */s/Quentin M. Rhoades*
Quentin M. Rhoades
Robert Erickson
*Pro Querente*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June 2020, I served a true and correct copy of the foregoing on the following persons by depositing said copy overnight delivery by FedEx, prepaid, and by email, addressed as follows:

Peter Ito
Ito Law Group
1550 Larimer Street, Suite 667
Denver, CO  80202
*peter@itolawgroup.com*

By: /s/ Quentin M. Rhoades
Quentin M. Rhoades

36

# CERTIFICATE OF SERVICE

I, Quentin M. Rhoades, hereby certify that I have served true and accurate copies of the foregoing Complaint - Amended Complaint to the following on 06-01-2020:

Project Spokane, LLC (Defendant)
365-B Clinton Street
Costa Meas 92626
Service Method: Email

Sean Walsh (Defendant)
365-B Clinton Street
Costa Mesa 92626
Service Method: Email

Electronically Signed By: Quentin M. Rhoades
Dated: 06-01-2020