F I L E D
05/27/2020
*Shirley Faust*
CLERK
Missoula County District Court
STATE OF MONTANA
By: Molly Reynolds
DV-32-2020-0000604-OC
Halligan, Leslie
1.00

Quentin M. Rhoades
State Bar No. 3969
Robert Erickson
State Bar No. 9966
Rhoades, Siefert & Erickson PLLC
430 Ryman Street
Missoula, Montana 59802
Telephone: (406) 721-9700
qmr@montanalaywer.com
erickson@montanalawyer.com

*Pro Querente*

### IN THE FOURTH JUDICIAL DISTRICT COURT OF MONTANA
### MISSOULA COUNTY

| | |
|---|---|
| **STEVE NELSON, MICHAEL BOEHME and BONNER PROPERTY DEVELOPMENT, LLC,** | Cause No. |
| Plaintiffs, | Dept. No. |
| **vs.** | |
| **PROJECT SPOKANE, LLC, and SEAN WALSH,** | ***COMPLAINT AND DEMAND FOR JURY TRIAL*** |
| Defendants. | |

Plaintiffs, Bonner Property Development, LLC, Steve Nelson, and

Micheal Boehme, for their complaint against Defendants, Project Spokane,

LLC, and Sean Walsh, allege as follows:

**INTRODUCTION**

1.      This is an action for a declaratory judgment and for a judgment (a) enjoining public sale of certain personal and real property, consisting of bitcoin mining equipment fixtures located on leased property in Bonner, Montana; (b) ordering specific performance of a promise to execute a subordination agreement as regards to the priorities of security interests in the equipment; or, in the alternative, (c) imposing of a constructive trust on the equipment and fixtures based equitable principles of unjust enrichment, promissory estoppel and equitable estoppel.

**PARTIES**

2.      Plaintiff Bonner Property Development, LLC, (BPD) is a Montana limited liability company with its principal place of business in Missoula County, Montana.

3.      Plaintiff Steve Nelson is a resident of Missoula, Montana, and member of BPD.

4.      Plaintiff Michael Boehme is a resident of Missoula, Montana, and member of BPD.

5.     Upon information and belief, Defendant Project Spokane, LLC (Project Spokane), is a Colorado limited liability company with its principal place of business in Colorado.

6.     Upon information and belief, Defendant Sean Walsh is a resident of Puerto Rico.

## JURISDICTION AND VENUE

7.     The Court, as a court of general jurisdiction, has authority to adjudicate the issues given rise to by this action.

8.     Venue is proper before this Court as the property upon which the Court is asked to exercise its authority is located in Missoula County, Montana

## GENERAL ALLEGATIONS

9.     On or about March 1, 2016, BPD, as landlord, and Project Spokane, as tenant, entered into a Commercial Lease Agreement.  The foregoing Commercial Lease Agreement, and all of its amendments, is hereinafter referred to as the "Commercial Lease."

10.    The Commercial Lease concerns the lease of real estate and improvements located at the Bonner Mill Site, the site of the former Stimson Lumber Mill in Bonner, Montana, as well as fixtures and personal

3

property, the latter of which consists of millions of dollars-worth of computer hardware used in a large bitcoin mining operation, located on the leased premises.[1]

11.    On or about December 23, 2016, BPD and Project Spokane entered into a First Amendment to Commercial Lease Agreement with an effective date of January 1, 2017.

12.    On or about July 13, 2017,  BPD and Project Spokane entered into a Second Amendment to Commercial Lease Agreement with an effective date of January 1, 2017.

13.    Hyperblock, LLC (Hyperblock), was formed on or about December 29, 2017. Hyperblock is a Delaware limited liability company with its principal place of business in Toronto, Ontario, Canada.

14.    Upon information and belief, the sole member (owner) of Hyperblock is Hyperblock, Inc (HBI).  HBI is incorporated in Ontario, Canada, and was a publicly traded company on the Canadian Securities Exchange.

---

[1] Bitcoin mining is performed by expensive high-powered computer hardware used to solve complex computational math problems (that is, so complex that they cannot be solved by hand, and indeed complicated enough to tax even incredibly powerful computers). For more background, see, e.g., https://www.investopedia.com/terms/b/bitcoin-mining.asp.

15.    Walsh served as the Chairman and CEO of HBI until his resignation recently on or about April 24, 2020.

16.    Walsh was and possibly remains a holder of a substantial amount of stock or stock equivalents in HBI.

17.    Walsh also functions as the Chief Executive Officer of Hyperblock.

18.    Walsh also serves as the controlling member and manager of Project Spokane.

19.    HBI and Hyperblock engage, or have engaged, in the business of bitcoin mining and related businesses, primarily at the old Bonner Mill Site, the site of the former Stimson Lumber Mill located in Bonner, Montana.  BPD is the landlord of Hyperblock and a secured creditor of Hyperblock.

20.    On or about July 10, 2018, the Commercial Lease was assigned by Project Spokane to Hyperblock, and Hyperblock assumed the Commercial Lease, pursuant to an Assignment, Assumption and Amendment of Lease executed effective July 10, 2018, all in conjunction with Hyperblock's acquisition of substantially all of the assets of Project Spokane.

5

21.    Walsh signed the Assignment, Assumption and Amendment of Lease for both assignor Project Spokane and assignee Hyperblock.  Thus, he served as chief executive officer for both the old tenant and the new one.

22.    On or about December 2018, Walsh decided he would expand the bitcoin mining operation on the leased premises by buying additional computer equipment to conduct more intense bitcoin mining.  He needed capital.  So, among other things, he requested that the landlord, BPD, and its principals make concessions, amend the Commercial Lease, and provide "credit enhancements," in the form of loan guarantees, to finance his ambitions for Hyperblock's expansion.

23.    In exchange, Walsh committed Hyperblock to confirm it would leave certain of the fixtures and other bitcoin mining assets on the leased premises at the termination of the lease.  To facilitate the scheme, without limitation, Walsh requested that BPD and its principals, Nelson and Boehme, put their credit at stake by guaranteeing bank financing in the amount of a maximum of over $3 million for the acquisition of additional bitcoin mining computer hardware and improvements included in the expansion, and Walsh committed to subordinate his interests and those of

6

Project Spokane to provide a priority security interest to BPD in the newly acquired bitcoin mining hardware and any other things so financed as consideration for the guarantees.

24.    Without the promise given by Walsh, BPD, Nelson and Boehme would not have executed the personal guarantees or the other agreements described below.

25.    On or about December 13, 2018, BPD and Hyperblock, through its officer Walsh, entered into three separate but related agreements:  (1) Third Amendment to Commercial Lease Agreement; (2) a Credit Enhancement Agreement; (3) a Security Agreement; and (4) Side Letter to Third Amendment to Commercial Lease Agreement.  All four were negotiated and executed by Walsh on behalf of Hyperblock and Project Spokane.

26.    On or about December 14, 2018, Hyperblock, as borrower, executed a Promissory Note in the principal amount of $2,625,000 payable to Bank of Montana, as lender (the BOM Loan).  Walsh signed the Promissory Note on behalf of the borrower.

27.    As a condition precedent to agreeing to the BOM Loan, Bank of Montana required BPD, the landlord, to pledge its real property and

improvements as collateral for the BOM Loan to its tenant, Hyperblock. Thus, by means of a Deed of Trust, BPD conveyed an interest in the leased premises to Bank of Montana as security for the BOM Loan—which Walsh eventually used, January and February of 2020, to expand the operations of the tenant, Hyperblock.

28.    As an additional condition precedent to agreeing to Walsh's proposal for the BOM Loan, Bank of Montana also required BPD's principals, Nelson and Boehme, to each individually guarantee Hyperblock's obligations under the BOM Loan.

29.    Both Nelson and Boehme consented in the condition precedent and executed personal guarantees for the BOM Loan.  Neither Nelson nor Boehme personally received any consideration, such as credit enhancement fee, in exchange for putting their personal credit at stake. Walsh's promise of the subordination of his interests and those of Project Spokane in collateral, to provide first priority to the lien rights arising under the Security Agreement with Hyperblock (i.e., the BOM Loan) constituted the key material inducement for the entry into these agreements, without which neither BPD nor Nelson nor Boehme would have provided the credit

enhancements which made possible Walsh's ambitious expansion of Hyperblock's bitcoin mining operations.

30.    Rather, both Nelson and Boehme relied on the promises of Walsh, on his own behalf and on behalf of the companies he managed and in which he owns a stake, directly or indirectly, Project Spokane and Hyperblock, that he and Project Spokane would subordinate any security interests they retained in the bitcoin mining equipment and anything else funded by the BOM Loan.   In the event of default on the BOM Loan, Nelson and Boehme would be free to liquidate the new bitcoin mining equipment and other assets financed—the purchase of which was made possible by their personal guarantees—to repay the BOM Loan.

31.    Without the promises by Walsh, made on his own behalf and on behalf of the company he ran, neither Nelson nor Boehme would have given their guarantees.  Without their guarantees, Walsh could not realize his ambition to greatly expand Hyperblock bitcoin mining operations.

32.    Upon closing of the BOM Loan, Hyperblock's obligations to Bank of Montana were (1) secured by the leased premises; and (2) personally guaranteed by BPD, by Nelson and by Boehme.

9

33.    At Walsh's request, the BOM Loan was later increased in its

principal balance to $3,540,000.00.  Walsh used the money to buy new

bitcoin mining equipment (the Equipment).

34.    Without limitation, the December 13, 2018, Security

Agreement, which Walsh executed for Hyperblock,  secures all obligations

arising out of the Credit Enhancement Agreement and the Commercial

Lease until such time as Hyperblock fully satisfies the BOM Loan.

35.    Without limitation, the Security Agreement grants a continuing

security interest in all personal property, including the bitcoin mining

hardware, among other personal and real property, to the extent acquired,

improved or built in part, directly or indirectly, with the proceeds of the bank

loan with Bank of Montana.

36.    On or about January 23, 2019, BPD and Hyperblock entered

into a Fourth Amendment to Commercial Lease Agreement.  Without

limitation, the Fourth Amendment to Commercial Lease Agreement

provides all fixtures "and personal property located on or about the

Property as of the Lease Commencement Date (defined below) shall be

considered part of the Property hereby leased and subject to all terms and

conditions hereof."  It continues: "Furthermore, however, whether or not

10

best legally described as Fixtures, all property relating to electrical supply and distribution shall remain with the Property and become the property of Landlord at the termination of the Lease, including but not limited to the property described in **Exhibit E-2**, attached hereto and incorporated herein by reference."  This list includes fans, electrical transformers and other specific items consisting of personal property and fixtures.

37.    By December 2019, it was determined that Walsh's grand expansion was not feasible and so, instead, Walsh proposed that the BOM Loan finance the acquisition of some very specific and leading-edge bitcoin mining equipment.

38.    On or about December 31, 2019, BPD and Hyperblock entered into a Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement.  Walsh negotiated, executed and delivered all documents on behalf of Hyperblock.  Hyperblock immediately purchased 1,493 state of the art bitcoin mining servers (the Equipment), financed under the BOM Loan. The Modification, among other things, expanded BPD's security interests in Hyperblock property to include all personal property.  The

11

Modification did not affect or negate the priority interest in the mining equipment financed by the proceeds of the BOM Loan.

39.    On or about January 31, 2019, Project Spokane and Hyperblock restructured a deferred obligation that Hyperblock owed to Project Spokane.  In exchange for Project Spokane's agreement to so, Hyperblock agreed to a collateral assignment of the Bonner Property Lease with Hyperblock.  Under the Lease Agreement, this assignment required the consent of the landlord.

40.    During these negotiations, Project Spokane acknowledged the promise to subordinate its interests in the leased premises to those of BPD and the guarantors as regards the BOM Loan, agreeing that in the event of default under the BOM Loan, if Project Spokane did not, under the assignment, step in as tenant and continue to run the bitcoin mine, its rights would be subject to those of Bonner Property Development, Nelson and Boehme.

41.    Walsh has refused on his own behalf or that of Project Spokane to execute a subordination agreement in favor of BPD's interests with respect to the 1,493 new servers acquired by Hyperblock through borrowings on the BOM Loan, which was procured as a result of the

corporate and personal guarantees of BPD and Nelson and Boehme, which guarantees were provided in reliance of Hyperblock's and Walsh's promises to subordinate his interests and those of Project Spokane to BPD's senior position security interest with respect to the BOM Loan.

42.    As of May 26, 2020, the BOM Loan has been declared by the Bank of Montana to be in default.  By allowing the BOM Loan to go into default, Hyperblock is also in default of the Lease Agreement.

43.    On or about May 19, 2020, Walsh (personally) and Project Spokane served a "Notice of Disposition of Collateral by Public Sale," in which Walsh and Project Spokane stated that they intend to conduct a public sale of certain collateral.

44.    The Notice of Disposition of Public Sale indicates that the collateral to be sold at the public sale by Walsh and Project Spokane includes collateral subject to BPD's security interest and fixtures which rightfully belongs to BPD as a result of the foregoing agreements.

45.    The sale described in the Notice of Disposition of Collateral by Public Sale is scheduled to occur on June 3, 2020, at 12:00 p.m. Eastern time.

46.     The Notice of Disposition of Collateral by Public Sale erroneously fails to acknowledge and provide notice to third-parties that portions of the fixtures that Walsh and Project Spokane intend to "sell" are actually owned by BPD as a result of the foregoing agreements, and of the provisions of real property law, is subject to BPD's first position security interest in such portions of the property.

47.     Upon information and belief, Walsh and Project Spokane have advertised the sale specified in the Notice of Disposition of Collateral by Public Sale.

48.     Plaintiffs had a meeting with Walsh and his counsel on May 26, 2020, and requested that Walsh either sign a subordination agreement, as he promised to do, or to at least postpone the public sale to allow the parties to attempt to negotiate a resolution.

49.     Walsh refused both requests.

50.     If the sale is not enjoined, property that is owned by BPD as a result of the foregoing agreements and/or property that is subject BPD's first position security interest, and BPD's lawful remedies related thereto, will be materially harmed or impaired.

## COUNT ONE

## (Unjust Enrichment)

51.    Plaintiffs reallege the foregoing.

52.    Plaintiffs allege that Defendants received benefits from Plaintiffs, in the form of Plaintiffs' guarantees for and BPD's agreement to convey a security interest in its own property, to secure the BOM Loan supply.

53.    Defendants knew about or appreciated the benefits they received.

54.    Defendants accepted or retained the benefits under circumstances where it was inequitable for Defendants to do so, specifically, Walsh and Project Spokane are attempting to assert lien priorities over collateral that Walsh promised, in his own name and in the name of Project Spokane, would be reserved to secure the BOM Loan.

55.    If the public sale is allowed to proceed, Plaintiffs will be deprived of collateral that was intended by all parties, including and in particular, Walsh, to serve as security for the BOM Loan.

## COUNT TWO

## (Promissory Estoppel)

15

56.    Plaintiffs reallege the foregoing.

57.    Walsh, on his own behalf and on behalf of both Hyperblock and Project Spokane, promised that the interests of all three would be subordinated and subject to the interests of Plaintiffs if Plaintiffs took the steps set forth herein to aid Walsh in obtaining capital to expand the bitcoin mining operations of Hyperblock.  Walsh made these promise in clear and unambiguous terms.

58.    Plaintiffs relied upon these promises in, among things, putting at risk their own credit and their own property in order to aid Walsh in obtaining millions of dollars in capital to buy the new bitcoin mining equipment.

59.    It was reasonable and foreseeable that Plaintiffs would take Walsh at his word and rely upon his promises.

60.    Plaintiffs have been injured in that Walsh and Project Spokane have asserted security interests in priority to Plaintiffs' and have given notice of a public sale in order to sell the Equipment and pocket the proceeds without paying toward satisfaction of the BOM Loan.

61.    In proceeding with a public sale of the Equipment, Defendants are doing exactly what they promised Plaintiffs they would not do.

16

## COUNT THREE

## (Equitable Estoppel)

62.     Plaintiffs reallege the foregoing.

63.     Walsh's conduct and language, on his own behalf and behalf of both Project Spokane and Hyperblock conduct, amounted to a representation of a material fact that his interests and Project Spokane's would be made subordinate to those of Plaintiffs if Plaintiffs, as set forth in this Complaint, assisted him in obtaining capital to expand Hyperblock's bitcoin mining operations.

64.     Defendants knew the facts at the time of Walsh's conduct and language or, at least, the circumstances were such that knowledge of facts is necessarily imputed to both Walsh and Project Spokane.

65.     Plaintiffs did not know the true facts, that Walsh did not intend to subordinate his or Project Spokane's interests to those of Plaintiffs at the time Plaintiffs acted to their detriment in aiding Walsh in obtaining the BOM Loan.

66.     Walsh's representations were made with the intent or expectation that they would be acted on by Plaintiffs.

67.     Walsh's representations were relied upon by Plaintiffs, leading them to act upon those representations.

68.     Plaintiffs did in fact rely on Walsh's representations so as to change its position for the worse.

69.     Given the circumstances, Walsh and Project Spokane are estopped from asserting priorities in the bitcoin mining equipment greater than those of Plaintiffs, to the extent the BOM Loan remains unsatisfied.

## COUNT FIVE

## (Declaratory Judgment)

70.     Plaintiffs reallege the foregoing.

71.     The Court retains the power and authority to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations under § 27-8-101, et seq., MCA.

72.     Any person under a deed, will, written contract, or other writings constituting a contract or whose rights, status or other relations are affected by statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

18

73.     Without limitation, Defendants have noticed and intend to conduct a sale of fixtures attached to real property owned by BPD and not included in the Equipment.

74.     Defendants do not have a security or other interest in these fixtures and, in any event, could never obtain a superior interest in these fixtures than BPD's interest in the fixtures as the owner of the property to which they are affixed.

75.     For the reasons specified above, Defendants are also estopped from asserting a first position lien against the Equipment with respect to some or all of the other Equipment Defendants intend to sell.

76.     For the reasons specified above, the bitcoin equipment obtained from the proceeds of the BOM Loan are subject to a constructive trust in favor of Plaintiffs.

77.     Under the circumstances, BPD is entitled to a judgment declaring and decreeing that:

a.     Defendants do not have a security or other interest in these fixtures and, in any event, could never obtain a superior interest in these fixtures than BPD's interest in the fixtures as the owner of the property to which they are affixed.

19

b.    Defendants are estopped from asserting a first position lien against the Equipment with respect to the property Equipment Defendants intend to sell.

c.    The bitcoin equipment obtained from the proceeds of the BOM Loan are subject to a constructive trust in favor of Plaintiffs.

78.    Under the circumstances described herein, the equities mandate further necessary and proper supplemental relief to BPD under § 27-8-313, MCA, including but not limited to an award of the expenses, costs and attorney's fees BPD has and will incur because:  (a) Defendants possess what BPD seeks in their declaratory judgment claim, namely priority lien on the Equipment; (b) it is necessary for Plaintiffs to seek this declaratory judgment in order to prevent a public sale of property, both the Equipment and fixtures, in which it has legal and equitable interests its right; and (c) this declaratory judgment proceeding is necessary to change the status quo.

**COUNT SIX**

**(Specific Performance)**

79.    Plaintiffs reallege the foregoing.

20

80.     In the alternative to the foregoing Counts, Plaintiffs allege Project Spokane and Walsh have a contractual duty, arising from an oral agreement, to subordinate their interests in the bitcoin mining equipment located on the leased premises of BPD (the Equipment).

81.     Project Spokane and Walsh refused to sign a subordination agreement or otherwise subordinate their interests in the Equipment, which consists of a breach of their contractual duties to BPD.

82.     The Equipment is unique and circumstances, including the location and present disposition of the equipment, otherwise make it proper to decree specific performance.

83.     In the alternative, Plaintiffs would suffer damages if specific performance were not decreed and if the Equipment were sold at public sale.

## REQUEST FOR RELIEF

Accordingly, Plaintiffs request the Court enter a judgment:

1.     Awarding damages in an amount to be determined at trial;

2.     Imposing a constructive trust on the Equipment obtained with the proceeds of the BOM Loan, and on any proceeds of sale if a public or other sale is conducted on the Equipment;

3.      An injunction order enjoining Defendants from conducting a

public sale or other disposition of the Equipment and fixtures included in

the notice of public sale;

4.       Reasonable attorney fees and costs of court; and

5.      Such other relief as the Court deems just.

DATED this 27th day of May 2020.

Respectfully Submitted,
RHOADES SIEFERT & ERICKSON PLLC


By:  */s/Quentin M. Rhoades*
        Quentin M. Rhoades
        Robert Erickson
        *Pro Querente*

**JURY DEMAND**

A jury trial is demanded on all counts so triable.

DATED this 27th day of May 2020.

Respectfully Submitted,
RHOADES SIEFERT & ERICKSON PLLC


By:  */s/Quentin M. Rhoades*
        Quentin M. Rhoades
        Robert Erickson
        *Pro Querente*

22