F I L E D
06/01/2020
*Shirley Faust*
CLERK
Missoula County District Court
STATE OF MONTANA
By: Laura Driscoll
DV-32-2020-0000604-OC
Deschamps, Robert L III
5.00

Quentin M. Rhoades
State Bar No. 3969
Robert Erickson
State Bar No. 9966
Rhoades, Siefert & Erickson PLLC
430 Ryman Street
Missoula, Montana 59802
Telephone: (406) 721-9700
qmr@montanalaywer.com
erickson@montanalawyer.com

*Pro Querente*

## IN THE FOURTH JUDICIAL DISTRICT COURT OF MONTANA MISSOULA COUNTY

| | |
|---|---|
| **STEVE NELSON, MICHAEL BOEHME, and BONNER PROPERTY DEVELOPMENT, LLC,** | Cause No. **DV-32-2020-604-OC** <br><br> Dept. No. **1** |
| Plaintiff, | |
| **vs.** | ***PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION*** |
| **PROJECT SPOKANE, LLC, and SEAN WALSH,** | |
| Defendants. | |

## ISSUE

The Court should enjoin the sale of millions of dollars of assets unilaterally scheduled by Defendants for Wednesday, June 3, 2020, at 10:00 a.m. Montana time (the Sale) because: (1) some of the assets belong to Plaintiff Bonner Property Development, LLC, and Defendants do not have a security or other interest in those assets; (2) all of the listed assets are

subject to a first position security interest in favor of Plaintiff BPD, which Defendants promised to deliver but later failed and refused to provide; (3) the remaining assets (except servers purchased prior to December 31, 2019) are subject to a nonpriority security interest not disclosed in the Notice of Sale; and (4) in the absence of a temporary restraining order enjoining the sale, all Plaintiffs will be irreparably harmed.

Sean Walsh was the HyperBlock, LLC CEO.  HyperBlock, LLC also owed Walsh and his other company, Project Spokane, LLC (Project Spokane), several million dollars on two promissory notes, which were secured by HyperBlock's computer equipment.  HyperBlock, acting through Walsh, agreed with Walsh to borrow some $2.6 million to buy new highly specialized computer equipment to which would attach Walsh and Project Spokane's liens—which loans are guaranteed by Plaintiffs Nelson and Boehme and secured by Plaintiff BPD's real estate. The purpose of the brand-new equipment, however, was not to serve the business purposes of HyperBlock, which was in such financial straits it could not pay its own electric bills.  Rather, the purpose of the brand-new equipment was for additional collateral for Walsh and Spokane to sell at a planned public sale to satisfy their notes.  Once the BOM Loan was drawn down and the new purchases completed with the loan proceeds, Walsh resigned from

2

HyperBlock, accelerated the two notes, and then issued a Notice of Public

Sale on the new equipment for the purpose of paying-off himself and his

company Project Spokane.

In this way, Walsh benefitted himself and Project Spokane by causing

HyperBlock to buy millions of dollars in equipment, with borrowed money

guaranteed by Plaintiffs, which they could both then turn around and sell to

satisfy the non-purchase money notes they held against HyperBlock.  If the

sale scheduled by Defendants is allowed to move forward, Defendants will

obtain an undeserved windfall of millions of dollars, and Plaintiffs will suffer a

catastrophic loss in a commensurate amount—all in violation of Defendants'

promises to Plaintiffs.

Under the circumstances, the Court should issue a TRO enjoining the

public sale, and a show cause hearing should be set for the parties to appear

and show cause why preliminary injunction should not be entered to prevent

the public sale of collateral until a final judgment on the merits can be entered

in this case.

## FACTUAL BACKGROUND
### Nelson, Boehme and BPD

Plaintiff Bonner Property Development, LLC (BPD) owns Lot 25A at the

Bonner Mill Site, which includes the largest building at the former Stimson

3

Lumber Mill in Bonner, Montana.  Plaintiffs Steve Nelson and Michael Boehme are the only members of BPD.  (Decl. of Steve Nelson, ¶ 2.)

## The Bitcoin Miners

Defendant Project Spokane is a Colorado limited liability company which started a large Bitcoin mining operation on BDP's Bonner Mill Site property.[1]  Defendant Sean Walsh claims to be a resident of Puerto Rico and serves as the controlling member and manager of Project Spokane.  Walsh wears a couple of other hats relevant in this case.  (Decl. of S. Nelson, ¶ 7.)  He served as the Chairman and CEO of a publicly traded Canadian Bitcoin mining firm called HyperBlock, Inc. (HBI), until his resignation in April 2020.  (*Id.*, ¶ 47.)  HyperBlock, the company of which Walsh was CEO until April, is a subsidiary of HBI. (*Id.*, ¶ 14.)   HyperBlock bought the Lot 25A Bitcoin operation from Project Spokane in 2018 and began operating its Bitcoin mining equipment.  (*Id.*, ¶ 10.)   The operations continued with the same equipment, in the same premises in Bonner, Montana, by Project Spokane for HyperBlock.

---

[1] Bitcoin mining is performed by expensive high-powered computer hardware used to solve complex computational math. For more background, *see, e.g.*, https://www.investopedia.com/terms/b/Bitcoin-mining.asp.

**The Bitcoin Mine**

On March 1, 2016, BPD and Project Spokane entered into a Commercial Lease Agreement (Commercial Lease) for the occupancy of the largest building at the Bonner Mill Site to house the Bitcoin mine.  (*Id.*, ¶ 4.) The Project Spokane mining equipment consists of millions of dollars of specialized computer hardware which is located on the leased premises. (*Id.*, ¶ 7.)

HyperBlock was formed in December 2017 as a Delaware limited liability company with its principal place of business in Toronto, Ontario, Canada.  (*Id.*, ¶ 7.)  In July 2018, HyperBlock bought the assets, including the mining operation, of Project Spokane, which assigned the Commercial Lease to HyperBlock.  (*Id.*, ¶ 10.)  The agreement was formalized in an Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.  (*Id.*) Walsh signed the Assignment, Assumption and Amendment of Lease for both assignor Project Spokane and assignee HyperBlock.  Thus, he served as chief executive officer / controlling management officer for both the old tenant and the new one.

**The Expansion Plan**

In December 2018, Walsh decided he would expand HyperBlock's Bitcoin mining operation. HyperBlock applied for a loan from Bank of Montana

5

(BOM) to finance the expansion through the construction of additional improvements and the acquisition of certain additional equipment.  (*Id.*, ¶ 13.) In need of capital,  Walsh requested that BPD and its principals, Nelson and Boehme, put their credit and BPD's property at stake by guaranteeing and collateralizing bank financing in the amount of over $3 million for the acquisition of additional Bitcoin mining computer hardware and improvements included in the expansion.  (*Id.*, ¶ 16.)  In exchange, Walsh promised that HyperBlock would leave certain fixtures and other Bitcoin mining assets on the leased premises at the termination of the lease and would lease additional space at the Mill Site.  (*Id.*, ¶¶ 18 and 20.)

The lynchpin of this plan was HyperBlock's promise, articulated expressly by Walsh, to provide a priority security interest to BPD in anything financed with the BOM Loan.  (*Id.*, ¶ 20.)  Absent that particular promise given expressly by Walsh, neither BPD nor Nelson nor Boehme would have executed the personal guaranties or the other agreements necessary to close the loan nor would BPD have pledged BPD's real estate. (*Id.*, ¶¶ 18 and 22.) These negotiations resulted in four separate but related agreements:  (1) Third Amendment to Commercial Lease Agreement; (2) a Credit Enhancement Agreement; (3) a Security Agreement; and (4) Side Letter to

Third Amendment to Commercial Lease Agreement.  All four were negotiated and executed by Walsh on behalf of HyperBlock.  (*Id.*, ¶¶ 17 and 24.)

**The BOM Loan**

On December 14, 2018, HyperBlock, as borrower, executed a Promissory Note in the principal amount of $2,625,000 payable to Bank of Montana, as lender (the BOM Loan).  (*Id.*, ¶ 15.)  Walsh signed the Promissory Note on behalf of the borrower.   Bank of Montana required BPD, the landlord, to pledge real property and improvements as collateral for the BOM Loan to its tenant, HyperBlock.  (*Id.*, ¶ 16.)  By means of a Deed of Trust, BPD conveyed an interest in real estate and improvements to Bank of Montana as security for the BOM Loan—which Walsh eventually used, in January and February of 2020, to expand the operations of the tenant, HyperBlock.  (*Id.*, ¶¶ 27-29.)  As an additional condition for the original Walsh-proposed BOM Loan in 2018, Bank of Montana required BPD's principals, Nelson and Boehme, to each individually guarantee HyperBlock's obligations under the BOM Loan. (*Id.*, ¶ 16.)  Upon the closing of the BOM Loan, HyperBlock's obligations to Bank of Montana were (1) secured BPD's real estate and improvements; and (2) personally guaranteed by BPD, by Nelson and by Boehme.

## The Walsh Promise

Both Nelson and Boehme consented in the condition precedent and executed personal guaranties for the BOM Loan.  (*Id.*, ¶ 16.)  Although BPD received a nominal credit enhance fee, neither Nelson nor Boehme personally received any consideration in exchange for putting their personal credit at stake.  To reiterate for emphasis, Walsh's promise to provide first priority to the lien rights arising under the Security Agreement between Plaintiffs and HyperBlock in relation to the BOM Loan constituted the key material inducement for entry into these agreements, without which neither BPD nor Nelson nor Boehme would have provided the credit enhancements which made possible Walsh's ambitious expansion of HyperBlock's Bitcoin mining operations.  (*Id.*, ¶¶ 18-22.)  In other words, both Nelson and Boehme relied on the promises of Walsh, on his own behalf and on behalf of the companies he managed and in which he owns a stake, directly or indirectly, Project Spokane and HyperBlock, that BPD would receive a lien position senior to those of Walsh and Project Spokane as regards to the Bitcoin mining equipment and anything else funded by the BOM Loan.  (*Id.*)  In the event of default on the BOM Loan, Nelson and Boehme would be free to exercise their rights as secured parties to liquidate the new Bitcoin mining equipment and any other assets financed—the purchase of which was made

possible by their personal guaranties—to repay any obligations they incurred

though their guaranties of the BOM Loan.

Without limitation, the December 13, 2018 Security Agreement, which

Walsh executed for HyperBlock, secures all obligations arising out of the

Credit Enhancement Agreement and the Commercial Lease until such time

as HyperBlock fully satisfies the BOM Loan.  (*Id.*, ¶ 17.)

On January 23, 2019, BPD and HyperBlock entered into a Fourth

Amendment to Commercial Lease Agreement.  (*Id.*, ¶ 24.)  The Fourth

Amendment to Commercial Lease Agreement provides all fixtures "and

personal property located on or about the Property as of the Lease

Commencement Date (defined below) shall be considered part of the

Property hereby leased and subject to all terms and conditions hereof."  (*Id*.)

It continues: "Furthermore, however, whether or not best legally described as

Fixtures, all property relating to electrical supply and distribution shall remain

with the Property and become the property of Landlord at the termination of

the Lease, including but not limited to the property described in **Exhibit E-2**,

attached hereto and incorporated herein by reference."  (*Id*.)  This list

includes fans, electrical transformers and other specific items consisting of

personal property and fixtures. (*Id*.)  Those items are listed specifically as

purportedly being subject to the Sale.

In January 2019, Project Spokane and HyperBlock restructured a deferred obligation that HyperBlock owed to Project Spokane for the purchase and sale of the Project Spokane business and assets.  (*Id.*, ¶ 25.) In exchange for Project Spokane's agreement to do so, HyperBlock agreed to a collateral assignment of the Bonner Property Lease with HyperBlock.  (*Id.*) Under the Lease Agreement, this assignment required the consent of the landlord.  During these negotiations, Project Spokane agreed that in the event of default under the BOM Loan, if Project Spokane did not under the assignment step in as tenant and continue to run the Bitcoin mine, its rights would be subject to those of BPD, Nelson and Boehme.  (*Id.*, ¶ 26.)

### The Financed Equipment

On December 31, 2019, BPD and HyperBlock entered into a Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement.  (*Id.*, ¶¶ 28-29.)  Walsh negotiated, executed, and delivered all documents on behalf of HyperBlock.  (*Id.*, ¶ 29.)  Walsh then immediately purchased the Equipment for HyperBlock, all financed with the BOM Loan.  The Modification, among other things, expanded BPD's security interests in HyperBlock property to include all personal property excluding only the servers owned by HyperBlock as of December 31, 2019.  The Modification

10

did not affect or negate the priority interest in the mining equipment financed by the proceeds of the BOM Loan. (*Id*.)

## The Public Sale

Walsh bought millions of dollars of computer hardware with borrowed BOM Loan money only a few short months ago, in January and February 2020.  Recently, however, on May 26, 2020, the BOM Loan was declared by the Bank of Montana to be in default.  (*Id.*, ¶ 43.)   (By allowing the BOM Loan to go into default, HyperBlock is also in default of the Lease Agreement and places Plaintiffs at risk under their guaranties. (*Id.*, ¶ 44.))  Meanwhile, on or about May 19, 2020, Walsh (personally) and Project Spokane served a "Notice of Disposition of Collateral by Public Sale," in which Walsh and Project Spokane stated that they intend to conduct a public sale of the very computer equipment Walsh just bought for HyperBlock with the borrowed money.  (*Id.*, ¶ 35.)

The Notice of Disposition of Public Sale indicates that the collateral to be sold at the public sale by Walsh and Project Spokane includes collateral subject to BPD's security interest as well as fixtures that are part of the structure of the building and belong to BPD—not HyperBlock—and in which neither Project Spokane nor Walsh have a security interest. (*Id.*, ¶¶  35-36 and 38.)  These include 467 industrial fans, 58 power transformers, 445

11

electrical breaker panels, and other items.  (*Id.*, ¶ 40.)  These are items that have become so related to the building and property that any interest in them would arise under real property law.  (*Id.*, ¶ 36.)  If the fans are removed there will be 467 gaping holes in the roof of the building, essentially destroying its utility.  (*Id.*)  HyperBlock, through Walsh, expressly promised that these items, and other items, would remain on the premises as fixtures and become part of the real property of the landlord.  In addition, BPD holds a fixture lien on them.  (*Id.,* ¶¶ 40 and 36.)  Now, Project Spokane and Walsh state that they intend to illegally sell them.

The public sale is scheduled to occur on June 3, 2020, at 12:00 p.m. Eastern daylight time.  (*Id.*, ¶ 35.)  Yet, the Notice erroneously fails to acknowledge and provide notice to third parties that portions of the fixtures that Walsh and Project Spokane intend to "sell" are actually owned by BPD, and that other portions of the property (if not all of it) is subject to BPD's first position security interest in such portions of the property.  Despite the deficiencies in the notice, of which Walsh and Project Spokane are aware, they have widely advertised the public sale and appear intent on carrying it out as noticed.[2]  (*Id.*, ¶ 47.)

---

[2] *See, e.g.*, Sean Walsh's Linkedin profile page.
https://www.linkedin.com/feed/update/urn:li:activity:6670041110028587008/

In the hope of achieving a mutually agreeable accommodation and hoping to get cooperation in making the most for everyone facing a very difficult situation, Plaintiffs met with Walsh and his counsel via telephone on May 26, 2020. (*Id.*, ¶ 42.)  They asked Walsh to fulfill his promise and honor the first lien security interest in the Notice and the Sale—as one means of addressing it, to sign a subordination agreement or to at least postpone the public sale to allow the parties to attempt to negotiate a resolution.  (*Id.*, ¶ 45.)  Walsh refused both requests.  Consequently, if the public sale is not enjoined, property that is owned by BPD and other property that is subject to Plaintiffs' first position security interest will be disposed of by Defendants.  Moreover, HyperBlock is closed down.  It lost its electricity contract with Energy Keepers, Inc. (EKI) in May, and now that entity is suing it for collection.  *See EKI v. HyperBlock*, Cause No. cv-00076-DWM, U.S. District Court for the District of Montana.

### The Scheme

In January and February, Walsh used some $2.6 million in BOM Loan proceeds to buy computer hardware for HyperBlock on which he personally and his company, Project Spokane, claimed to have a senior security interest. Less than 90 days later, Walsh resigned from HyperBlock, and he personally and on behalf of his company, Project Spokane, accelerated the debt

13

HyperBlock owes them, demanding immediate payment.  Since HyperBlock

cannot pay, Walsh has set a public sale to liquidate the same newly acquired

computer hardware he just bought for HyperBlock with the BOM Loan.

Worse, rather than use the proceeds to repay the BOM Loan, Walsh and

company instead intend to pocket the proceeds for themselves or take

ownership of the assets.  If they are allowed to do so, they would cause

sufficient material harm to the interests of Nelson, Boehme, and BPD.  Thus,

the Court should enjoin the Sale.

## DISCUSSION

**1.    Plaintiffs' request for injunctive relief is warranted under § 27-19-201, MCA.**

**A.    Plaintiffs need show only a likelihood of harm if disposition of the proceeds of the Public Sale is not enjoined.**

Under § 27-19-201(3), MCA, a preliminary injunction is properly granted

"when it appears during the litigation that the adverse party is . . . about to do

. . . some act in violation of the [plaintiff's] rights respecting the subject of the

action, and tendering to render the judgment ineffectual.  Alternatively, under

§ 27-19-201(4), MCA, an injunction is apt when "it appears that the adverse

party, during the pendency of the action, threatens or is about to remove or

dispose of the adverse party's property with the intent to defraud the

application, an injunction may be granted to restrain the removal or

14

disposition."  Interpreting § 27-19-201, MCA, the Montana Supreme Court has held that its subsections "are disjunctive, meaning that findings that satisfy one subsection are sufficient."  *Stark v. Borner*, 226 Mont. 356, 359-360, 735 P.2d 314, 317 (1987).  *See Sweet Grass Farms, Ltd. v. Board of County Commrs. of Sweet Grass County*, 2000 MT 147, ¶ 27, 300 Mont. 66, 2 P.3d 825. Thus, preliminary injunctive relief is appropriate to prevent repossession and preserve the status quo in the face of a prima facie case of wrongful repossession.  *See Sturdevant v. First Sec. Bank of Deer Lodge*, 186 Mont. 91, 92, 606 P.2d 525, 526 (1980) (district court enjoined repossession to adjudicate dispute over right of bank to repossess collateral aircraft).

Most recently, the Montana Supreme Court held it was no abuse of discretion where a district court fulfilled "the purpose of equitable injunctive relief" by enter a preliminary injunction to "'preserve the status quo and minimize the harm to all parties pending final resolution on the merits.'" *BAM Ventures, Ltd. Liab. Co. v. Schifferman*, 2019 MT 67, ¶ 18, 395 Mont. 160, 437 P.3d 142.  The "status quo" is "the last actual, peaceable, noncontested condition which preceded the pending controversy."  *Id.*  This was so even though in *BAM Ventures* the harm claimed was not considered great or irreparable.  Rather, Supreme Court precedents "correctly stand for the

15

principle" that, while requests for preliminary injunctive relief require some

demonstration of threatened harm or injury, it need not rise to the "'great or

irreparable injury' standard." *BAM Ventures*, ¶ 16.  Rather, "a lesser degree of

harm" is sufficient.  *Id.*

**B.     Plaintiffs have shown a likelihood of harm sufficient for public sale
to be enjoined pending entry of a final judgment.**

***i.      The Walsh conspiracy to defraud Plaintiffs is sufficient to enjoin
the public sale.***

Walsh caused HyperBlock to take disbursements from the BOM Loan to

buy the Equipment not for the legitimate purpose of Bitcoin mining, but for the

fraudulent purpose of obtaining new and valuable collateral that Walsh and

Project Spokane intended to liquidate at public sale. This damaged Plaintiffs,

who guaranteed the BOM Loan, by placing them at risk of having to satisfy

the BOM Loan, with HyperBlock closed down and in default on the BOM Loan

as well as its lease.  (Stephens Decl., ¶ 43.)

Walsh has contended to Plaintiffs that since he and Project Spokane

have filed senior UCC-1 lien notices of record (the former in July 2019, the

latter in June 2018), he is legally privileged to perform the public sale.  The

Uniform Commercial Code, however, was not adopted to allow a business

manager like Walsh to use his insider control of a corporate debtor to loot

creditors or guarantors.  Rather, fraud enjoys no protection under the UCC.

16

As it expressly provides: "Unless displaced by the particular provisions of this code, the principles of law and equity, . . . *estoppel*, *fraud*, *misrepresentation*, . . ., *or other validating or invalidating cause* shall supplement its provisions."  Section 30-1-103, MCA (emphasis added).  Thus, the UCC does not preempt remedies for wrongs committed in violation of common law defenses and causes of action.  For example, the Montana Supreme Court recently ruled that equitable estoppel supplements the UCC. *Kapor v. RJC Inv., Inc.*, 2019 MT 41, ¶ 33, 394 Mont. 311, 434 P.3d 869.

### ii.   *Defendants' unjust enrichment mandates enjoining the public sale.*

A constructive trust is a remedy for unjust enrichment and arises under statute "when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if he were permitted to retain it." Section 72-38-123, MCA; *Volk v. Goeser*, 2016 MT 61, ¶ 45, 382 Mont. 382, 367 P.3d 378. Additionally, Montana courts have "broad discretion afforded by the principles of equity to impose a constructive trust" regardless of any wrongdoing by the person holding the property.  *Volk*, ¶ 45 (citing *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶ 29, 368 Mont. 330, 296 P.3d 450).  To succeed on a claim for unjust enrichment, in the context of a constructive trust, the plaintiff must prove three elements: "(1) a benefit conferred upon a

17

defendant by another; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under such circumstances that would make it inequitable for the defendant to retain the benefit without payment of its value." *Volk*, ¶ 45.

In this case, the benefit conferred upon Walsh was the acquisition, through financing of collateral intended to benefit him and Project Spokane, as secured creditors. They never intended that collateral, bought with borrowed money, to be used in HyperBlock's long-term Bitcoin mining operations.  Walsh took advantage of the BOM Loan, which Plaintiffs had guaranteed, to acquire assets which, when he bought them, he intended to sell at public auction in satisfaction of his own receivables.  This is clear in hindsight, because within two months Walsh resigned from HyperBlock, called the two notes, and noticed up a public sale of the brand-new equipment.  He will either sell to the general public or win clear title to the Equipment with his own credit bid.  Either way, he used BOM Loan funds to benefit himself and his other company, Project Spokane, to the fraudulent detriment of the BOM Loan guarantors.

These circumstances fit the three elements of unjust enrichment perfectly.  First, a benefit in the form of new secured collateral was conferred upon Walsh and Project Spokane.  *Volk*, ¶ 45.  Second, Walsh and Project

18

Spokane appreciated the benefits of these new acquisitions by immediately accelerating their notes, demanding immediate payment, and setting a public sale to foreclose upon them.  Third, Walsh's abuse of his control of HyperBlock for the purpose of lining his own pockets and the pockets of his wholly owned company, at the expense of legitimate creditors, make it inequitable for him and his company, Project Spokane, to accept and retain of these benefits without payment of their value.

**2. Plaintiff's request for a TRO is warranted under MONT. CODE ANN. § 27-19-314 through 316.**

Montana law authorizes the court to temporarily restrain Defendants from conducting the sale of BPD's assets—and assets in which BPD rightfully has a first-position security interest—prior to the show cause hearing on the request for a preliminary injunction.  § 27-19-314, MCA.  Such a TRO may be issued without notice to the adverse party only if it clearly appears that delay would cause immediate and irreparable injury before the adverse party could be heard in opposition, and the applicant certifies to the court the efforts that have been made to notify the adverse party.  § 27-19-315, MCA.  In this case, the declaration of Steve Nelson demonstrates that further delay will cause immediate and irreparable injury to BPD's, Nelson's and Boehme's rights. Finally, the exigency of the circumstance satisfies the first requirement for a

19

TRO to be issued without notice, so long as the matter is then set for an evidentiary hearing.  *See* § 27-19-301, M.C.A.

## REQUEST FOR RELIEF

Accordingly, Plaintiffs, Bonner Property Development, LLC, Steven Nelson, and Michael Boehme, request that the Court issue a temporary restraining order enjoining Walsh's and Project Spokane's sale of assets, and for such other relief as the Court deems just.  A proposed Temporary Restraining Order and Order to Show Cause is submitted concurrently herewith for the Court's consideration.

DATED this 1st day of June 2020.

Respectfully Submitted,
RHOADES SIEFERT & ERICKSON PLLC

By:  */s/Quentin M. Rhoades*
        Quentin M. Rhoades
        Robert Erickson
        *Pro Querente*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June 2020, I served a true and correct copy of the foregoing on the following persons by depositing said copy overnight delivery by FedEx, prepaid, and by email, addressed as follows:

Peter Ito
Ito Law Group
1550 Larimer Street, Suite 667
Denver, CO  80202
*peter@itolawgroup.com*

By: /s/ Quentin M. Rhoades
Quentin M. Rhoades

21

## CERTIFICATE OF SERVICE

I, Quentin M. Rhoades, hereby certify that I have served true and accurate copies of the foregoing Answer/Brief - Brief In Support of Motion to the following on 06-01-2020:

Project Spokane, LLC (Defendant)
365-B Clinton Street
Costa Meas 92626
Service Method: Email

Sean Walsh (Defendant)
365-B Clinton Street
Costa Mesa 92626
Service Method: Email

Electronically Signed By: Quentin M. Rhoades
Dated: 06-01-2020