EXHIBIT 6.
PAGE 3

therefore greatly appreciate you not discussing the Transaction or this request with anyone other than the undersigned.

Please acknowledge your consent and agreement to the terms of this letter agreement by signing the duplicate copy of this letter in the signature blank below and return it to me in an envelope at your earliest convenience. We would appreciate it if you would return the signed consent no later than July 3, 2018.

If you have any questions regarding this request, please contact Kristen Martin at (720) 390-8023 or ea@projectspokane.co. We appreciate your assistance and cooperation in this matter.

Sincerely,

Project Spokane, LLC

By: PS Mgt LLC, its manager

Sean Walsh
Manager

**The undersigned hereby agrees to the foregoing this 3rd day of July, 2018.**

Bonner Property Development, LLC

By: _____
Name: Stephen K Nelson
Title: Member Manager

By: _____
Name: Michael D Boehme
Title: Member Manager

SMRH:486912564.3

-2-

EXHIBIT 6.
PAGE 4

## Exhibit A

### Payoff Letters

Please see attached.

EXHIBIT 6.
PAGE 5

## PAYOFF LETTER

June 30, 2018

Project Spokane, LLC
5619 DTC Parkway, #475
Greenwood Village, CO 80111
Attention: Sean Walsh

Re: Bonner Property Development, LLC Debt Payoff

Dear Mr. Walsh:

Reference is made to: (i) that certain Promissory Note, dated December 23, 2016 (the "Promissory Note"), by Project Spokane, LLC, a Colorado limited liability company ("Maker"), in favor of Bonner Property Development, LLC, a Montana limited liability company ("Payee"), in the original principal amount of One Million Two Hundred Thousand Dollars ($1,200,000.00) and (ii) that certain Security Agreement, dated December 23, 2016, by and between Maker and Payee (together with the Promissory Note and all related instruments, documents and agreements, the "Loan Documents").

This letter confirms that:

(1)    The outstanding balance as of the close of business on July 6, 2018 (the "Proposed Repayment Date") with regards to the Loan Documents (as adjusted per item (2) below, the "Pay-Off Amount") is as follows:

| | |
|---|---|
| Principal loan | **$867,170.87** |
| Accrued interest to July 6, 2018 | **$717.59** |
| **Total** | **$867,888.46** |

(2)    (2)    If Payee does not receive the Pay-Off Amount on the Proposed Repayment Date, interest will continue to accrue at the rate of **$119.60** per diem until the Pay-Off Amount is repaid.

(3)    Upon payment of the Pay-Off Amount, all obligations of Maker under the Loan Documents will be satisfied and the Loan Documents will be terminated and be of no further force or effect whatsoever.

Payee hereby agrees that effective upon payment of the Pay-Off Amount:

(a)    Payee hereby releases any and all mortgages, liens, charges, encumbrances, security interests, pledges, participations, guarantees, agreements and other rights of any kind and nature heretofore granted to Payee, or which Payee may have, in or to any assets, properties or equity interests heretofore pledged as collateral under the Loan Documents or securing any amounts owed to Payee thereunder or any obligations of Maker thereunder;

EXHIBIT 6.
PAGE 6

(b)     Payee hereby authorizes Maker or its designees to execute and deliver, or to cause to be executed and delivered all such documents, instruments and agreements, including UCC-3 termination statements, and to take, or cause to be taken, all actions as may be necessary or desirable, from time to time, to evidence the release of record of any mortgage, lien, charge, encumbrance, security interest, pledge, participation, guarantee, agreement and other right of any kind and nature, granted to Payee under the Loan Documents or securing any amounts owed to Payee thereunder or any obligations of Maker thereunder; and

(c)     Payee shall promptly deliver to Maker the original Promissory Note, marked "canceled."

Payment of the Pay-Off Amount should be made by ACH transfer of immediately available funds in accordance with the following instructions:

**Bonner Property Development**
**ABA No** 092901337
**Account No** 0591000003164

*[Signature Page Follows]*

EXHIBIT 6.
PAGE 7

Sincerely,

Bonner Property Development, LLC

Name:   Stephen R. Nelson
Title:      Member/manager

Michael O. Boehme
Member/ manager

*[Signature Page to Payoff Letter –Bonner Property Development, LLC]*

## Exhibit B

### Assignment and Assumption Agreement

Please see attached.

## ASSIGNMENT, ASSUMPTION AND AMENDMENT OF LEASE

**THIS ASSIGNMENT, ASSUMPTION AND AMENDMENT OF LEASE** (this "Assignment and Amendment") is made effective this __10th__ day of July, 2018 (the "Effective Date"), by and between **PROJECT SPOKANE, LLC**, a Colorado limited liability company, whose mailing address is 5619 DTC Parkway, #475, Greenwood Village, CA 80111 ("Assignor"), and **HYPERBLOCK LLC,** a Delaware limited liability company, whose mailing address is 120 Adelaide Street West, Suite 2210, Toronto, ON M5H 1T1 ("Assignee").

## RECITALS:

A.     Assignor currently owns certain real property located in the Bonner Millsite in Bonner, Montana (the "premises") which are currently leased pursuant to the terms and conditions of that certain Commercial Lease Agreement, dated March 1, 2016, as amended by that certain First Amendment, effective as of January 1, 2017, and that certain Second Amendment, dated July 13, 2017 (the "Lease"), by and between Assignor and **BONNER PROPERTY DEVELOPMENT, LLC**, a Montana limited liability company (herein referred to as "Lessor").

B.     Assignor has engaged in a transaction pursuant to which substantially all of the assets of Assignor have been acquired by Hyperblock LLC, a Delaware limited liability company (the "Transaction").

B.     Pursuant to the Transaction, Assignor desires to transfer all of its right, title and interest in the Lease to Assignee upon the terms and conditions hereinafter set forth.

C.     Also pursuant to the Transaction, Assignee desires to assume the Lease and all obligations thereunder upon the terms and conditions set forth below.

D.     Lessor consents to the assignment under the conditions set forth herein and agrees to amend the Lease to reflect Assignee as the tenant moving forward.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained herein and for valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the parties hereby agree as follows:

1.     **Assignment of Lease; Disclosure of Assignee's Information.**

A.     Assignor hereby grants, assigns and transfers to Assignee all of its right, title and interest in and to the Lease as amended by this Assignment and Amendment.

B.     Assignee hereby provides the following specific information to Lessor in connection with this Assignment and Amendment:

(i)     The name and contact information for Assignee is:

HYPERBLOCK, LLC
c/o HYPERBLOCK TECHNOLOGIES CORP.
388 Carlaw Avenue, Suite 300
Toronto, Ontario

EXHIBIT 6.
PAGE 10

M4M 2T4
Telephone Number: 416-551-7646
E-mail Address:  tim@hyperblock.co
Current Contact Name:  Tim Smart

**2.**     **Duties and Obligations.**   Assignor hereby assigns and delegates to Assignee only Assignor's duties and obligations under the Lease which both (i) first arising after the closing of the Transaction, and (ii) do not relate to or arise from pre-closing breaches or occurrences prior to the closing that may give rise to such a breach (the "Assumed Obligations"); and in consideration of the Lease herein being assigned to Assignee, Assignee hereby accepts this assignment and agrees to assume and perform, and hereby assumes, all of the Assumed Obligations contained in the Lease to be observed, kept, performed or complied with by Assignor under the Lease from and after the Effective Date (and the Assignor shall remain liable for all other duties, obligations, covenants, agreements, promises, terms, conditions and provisions contained in the Lease).

**3.**     **Amendments to Lease**.    The Lease shall be amended, effective as of the Effective Date, to reflect Assignee as the tenant thereunder, and Lessor hereby consents to the Assignment and Amendment subject to the representations, warranties and conditions reflected herein.

**4.**     **Representations, Warranties and Estoppel Certificate from Assignment Parties**.  Assignor acknowledges, represents and warrants as follows:

•     The Lease, as amended by this Assignment and Amendment (collectively, the "Amended Lease"), is in full force and effect against Assignor, and has been so since the execution of the Lease, and has not been modified, changed, altered, assigned, supplemented or amended in any respect except for the First Amendment and Second Amendment.  From the Tenant's perspective, the Lease is not in default and is valid and in full force and effect against Assignor on the date hereof.  The Lease represents the entire agreement between Assignor, as landlord, and Assignor, as tenant, with respect to the premises.

•     Assignor's interest therein is free and clear from all encumbrances, and Assignor has fully performed all covenants and obligations under the Lease and has not done or permitted any act in violation of the covenants contained in the Lease;

•     there are no attachments, executions, assignments for the benefit of creditors, receiverships, conservatorships, or voluntary or involuntary proceedings in bankruptcy or pursuant to any other laws for relief or debtors contemplated or filed by Assignor or pending against Assignor, or involving the premises;

•     Assignor has not subleased all or any portion of the leased premises or (prior to the date hereof) assigned any of its rights under the Lease, nor pledged any interest therein;

•     Assignor is in full and complete possession of the premises and prior to the date hereof commenced full occupancy and use thereof except as to expansion space not yet occupied. Assignor is operating at the premises under the name of Project Spokane.

•     The rent and other charges payable in connection with the Lease are paid currently through the date hereof, and:

Assignment, Assumption and Amendment of Lease

EXHIBIT 6.
PAGE 11

• no advance rent or other payment has been made in connection with the Lease, except rent for the current month;

• there is no "free rent" or other rent concession or adjustments to which Assignor is entitled under the remaining term of the Lease; and

• the Base Rent is set forth in Section 4(a) of the Lease.

• All obligations, commitments, space, payments, repairs, tenant improvements, build out, inducements, other sums and conditions under the Lease to be performed to date by Lessor have been satisfied, free of defenses and set-offs including any construction work on the premises.

• There is no existing default or unfulfilled obligations on the part of Assignor in any of the terms and conditions of the Lease, and no event has occurred or condition exists which, with the passing of time or giving of notice or both, would constitute an event of default on the part of Assignor under the Lease.

• Assignor claims no offsets, set-offs, rebates, adjustments, concessions, abatements or defenses against or with respect to rent, additional rent, security deposits or other sums payable under the terms of the Lease.

• Assignor has no option or right of first refusal to purchase the premises or any part thereof.

• Assignor has not committed any violation of any environmental law or regulation with respect to the premises.

• There are no unpaid or outstanding claims, bills or invoices for any labor performed upon or materials furnished to either Assignor or the premises on its behalf for which any lien or encumbrance including, without limitation, materialmen, suppliers and mechanic's liens, have been asserted or may be asserted against either Assignor or the premises.

• There are no existing, pending or threatened lawsuits affecting the premises or the Lease to which Assignor is a party.

• Assignor has all applicable permits, licenses, certificates of occupancy and other documentation required by the applicable governmental authorities in order to operate its business in full accordance with the law.

• Assignor and Assignee have notified their insurance carriers of the change in lessee under the Lease and owner of the operations conducted in the premises and owner of the personal property and/or fixtures in the premises for purposes of the insurance carrier naming Lessor under the Lease as additional insured, for liability and fire and casualty insurance coverages. Further, fully effective as of the Effective Date, Lessor is named as an additional insured in Assignee's policies and promptly following the closing of the Transaction Assignee will provide Lessor with such declaration pages and other certificates of insurance as are required to document such coverage to Lessor's satisfaction in its reasonable discretion.

• The Transaction has closed and, pursuant thereto, substantially all assets of Assignor have been assigned, conveyed and fully transferred to Assignee, including substantially all property and operations located in the premises.

Assignment, Assumption and Amendment of Lease

EXHIBIT 6.
PAGE 12

**5.** **Attorneys' Fees.**   Should any party incur any costs or expenses, including reasonable attorneys' fees, to enforce any of the provisions of this Agreement, the non-prevailing party shall reimburse the prevailing party upon demand.

**6.** **Counterparts.**   This Assignment and Amendment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  As used herein, "counterparts" shall include full copies of this Agreement signed and delivered by facsimile transmission or electronic mail ("e-mail") correspondence, as well as photocopies of such facsimile transmission or e-mail correspondence.

**7.** **Binding Effect.**   The provisions of this Assignment and Amendment shall be binding upon and inure to the benefit of the heirs, representatives, successors and assigns of the parties hereto.

*Signatures on the Following Page*

 **IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____

Sean Walsh
Manager

ASSIGNEE:

**HYPERBLOCK LLC**

By: _____
Eric So
Chairman

LESSOR:

**BONNER PROPERTY**
**DEVELOPMENT, LLC**

By: _____
Its:   Co-Manager

Assignment, Assumption and Amendment of Lease

EXHIBIT 6.
PAGE 14

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____
      Sean Walsh
      Manager

ASSIGNEE:

**HYPERBLOCK LLC**

By: _____
      Eric So
      Chairman

LESSOR:

**BONNER PROPERTY
DEVELOPMENT, LLC**

By: _____
Its:  Co-Manager

Assignment, Assumption and Amendment of Lease

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____
    Sean Walsh
    Manager

ASSIGNEE:

**HYPERBLOCK LLC**

By: _____
    Eric So
    Chairman

LESSOR:

**BONNER PROPERTY
DEVELOPMENT, LLC**

By: _____
Its:  Co-Manager

Stephen K. Nelson

EXHIBIT 7.
PAGE 1

## ASSIGNMENT, ASSUMPTION AND AMENDMENT OF LEASE

**THIS ASSIGNMENT, ASSUMPTION AND AMENDMENT OF LEASE** (this "Assignment and Amendment") is made effective this  10th  day of July, 2018 (the "Effective Date"), by and between **PROJECT SPOKANE, LLC**, a Colorado limited liability company, whose mailing address is 5619 DTC Parkway, #475, Greenwood Village, CA 80111 ("Assignor"), and **HYPERBLOCK LLC,** a Delaware limited liability company, whose mailing address is 120 Adelaide Street West, Suite 2210, Toronto, ON M5H 1T1 ("Assignee").

### RECITALS:

A.      Assignor currently owns certain real property located in the Bonner Millsite in Bonner, Montana (the "premises") which are currently leased pursuant to the terms and conditions of that certain Commercial Lease Agreement, dated March 1, 2016, as amended by that certain First Amendment, effective as of January 1, 2017, and that certain Second Amendment, dated July 13, 2017 (the "Lease"), by and between Assignor and **BONNER PROPERTY DEVELOPMENT, LLC**, a Montana limited liability company (herein referred to as "Lessor").

B.      Assignor has engaged in a transaction pursuant to which substantially all of the assets of Assignor have been acquired by Hyperblock LLC, a Delaware limited liability company (the "Transaction").

B.      Pursuant to the Transaction, Assignor desires to transfer all of its right, title and interest in the Lease to Assignee upon the terms and conditions hereinafter set forth.

C.      Also pursuant to the Transaction, Assignee desires to assume the Lease and all obligations thereunder upon the terms and conditions set forth below.

D.      Lessor consents to the assignment under the conditions set forth herein and agrees to amend the Lease to reflect Assignee as the tenant moving forward.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained herein and for valuable consideration, the receipt and sufficiency of which are hereby mutually acknowledged, the parties hereby agree as follows:

1.      **Assignment of Lease; Disclosure of Assignee's Information.**

A.      Assignor hereby grants, assigns and transfers to Assignee all of its right, title and interest in and to the Lease as amended by this Assignment and Amendment.

B.      Assignee hereby provides the following specific information to Lessor in connection with this Assignment and Amendment:

(i)      The name and contact information for Assignee is:

HYPERBLOCK, LLC
c/o HYPERBLOCK TECHNOLOGIES CORP.
388 Carlaw Avenue, Suite 300
Toronto, Ontario

EXHIBIT 7.
PAGE 2

M4M 2T4
Telephone Number: 416-551-7646
E-mail Address:  tim@hyperblock.co
Current Contact Name:  Tim Smart

**2.**     **Duties and Obligations.**   Assignor hereby assigns and delegates to Assignee only Assignor's duties and obligations under the Lease which both (i) first arising after the closing of the Transaction, and (ii) do not relate to or arise from pre-closing breaches or occurrences prior to the closing that may give rise to such a breach (the "Assumed Obligations"); and in consideration of the Lease herein being assigned to Assignee, Assignee hereby accepts this assignment and agrees to assume and perform, and hereby assumes, all of the Assumed Obligations contained in the Lease to be observed, kept, performed or complied with by Assignor under the Lease from and after the Effective Date (and the Assignor shall remain liable for all other duties, obligations, covenants, agreements, promises, terms, conditions and provisions contained in the Lease).

**3.**     **Amendments to Lease**.   The Lease shall be amended, effective as of the Effective Date, to reflect Assignee as the tenant thereunder, and Lessor hereby consents to the Assignment and Amendment subject to the representations, warranties and conditions reflected herein.

**4.**     **Representations, Warranties and Estoppel Certificate from Assignment Parties.**  Assignor acknowledges, represents and warrants as follows:

•      The Lease, as amended by this Assignment and Amendment (collectively, the "Amended Lease"), is in full force and effect against Assignor, and has been so since the execution of the Lease, and has not been modified, changed, altered, assigned, supplemented or amended in any respect except for the First Amendment and Second Amendment.  From the Tenant's perspective, the Lease is not in default and is valid and in full force and effect against Assignor on the date hereof.  The Lease represents the entire agreement between Assignor, as landlord, and Assignor, as tenant, with respect to the premises.

•      Assignor's interest therein is free and clear from all encumbrances, and Assignor has fully performed all covenants and obligations under the Lease and has not done or permitted any act in violation of the covenants contained in the Lease;

•      there are no attachments, executions, assignments for the benefit of creditors, receiverships, conservatorships, or voluntary or involuntary proceedings in bankruptcy or pursuant to any other laws for relief or debtors contemplated or filed by Assignor or pending against Assignor, or involving the premises;

•      Assignor has not subleased all or any portion of the leased premises or (prior to the date hereof) assigned any of its rights under the Lease, nor pledged any interest therein;

•      Assignor is in full and complete possession of the premises and prior to the date hereof commenced full occupancy and use thereof except as to expansion space not yet occupied. Assignor is operating at the premises under the name of Project Spokane.

•      The rent and other charges payable in connection with the Lease are paid currently through the date hereof, and:

• no advance rent or other payment has been made in connection with the Lease, except rent for the current month;

• there is no "free rent" or other rent concession or adjustments to which Assignor is entitled under the remaining term of the Lease; and

• the Base Rent is set forth in Section 4(a) of the Lease.

• All obligations, commitments, space, payments, repairs, tenant improvements, build out, inducements, other sums and conditions under the Lease to be performed to date by Lessor have been satisfied, free of defenses and set-offs including any construction work on the premises.

• There is no existing default or unfulfilled obligations on the part of Assignor in any of the terms and conditions of the Lease, and no event has occurred or condition exists which, with the passing of time or giving of notice or both, would constitute an event of default on the part of Assignor under the Lease.

• Assignor claims no offsets, set-offs, rebates, adjustments, concessions, abatements or defenses against or with respect to rent, additional rent, security deposits or other sums payable under the terms of the Lease.

• Assignor has no option or right of first refusal to purchase the premises or any part thereof.

• Assignor has not committed any violation of any environmental law or regulation with respect to the premises.

• There are no unpaid or outstanding claims, bills or invoices for any labor performed upon or materials furnished to either Assignor or the premises on its behalf for which any lien or encumbrance including, without limitation, materialmen, suppliers and mechanic's liens, have been asserted or may be asserted against either Assignor or the premises.

• There are no existing, pending or threatened lawsuits affecting the premises or the Lease to which Assignor is a party.

• Assignor has all applicable permits, licenses, certificates of occupancy and other documentation required by the applicable governmental authorities in order to operate its business in full accordance with the law.

• Assignor and Assignee have notified their insurance carriers of the change in lessee under the Lease and owner of the operations conducted in the premises and owner of the personal property and/or fixtures in the premises for purposes of the insurance carrier naming Lessor under the Lease as additional insured, for liability and fire and casualty insurance coverages. Further, fully effective as of the Effective Date, Lessor is named as an additional insured in Assignee's policies and promptly following the closing of the Transaction Assignee will provide Lessor with such declaration pages and other certificates of insurance as are required to document such coverage to Lessor's satisfaction in its reasonable discretion.

• The Transaction has closed and, pursuant thereto, substantially all assets of Assignor have been assigned, conveyed and fully transferred to Assignee, including substantially all property and operations located in the premises.

EXHIBIT 7.
PAGE 4

**5.**     **Attorneys' Fees.**     Should any party incur any costs or expenses, including reasonable attorneys' fees, to enforce any of the provisions of this Agreement, the non-prevailing party shall reimburse the prevailing party upon demand.

**6.**     **Counterparts.**     This Assignment and Amendment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.   As used herein, "counterparts" shall include full copies of this Agreement signed and delivered by facsimile transmission or electronic mail ("e-mail") correspondence, as well as photocopies of such facsimile transmission or e-mail correspondence.

**7.**     **Binding Effect.**     The provisions of this Assignment and Amendment shall be binding upon and inure to the benefit of the heirs, representatives, successors and assigns of the parties hereto.

***Signatures on the Following Page***

 **IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

    **PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____
    Sean Walsh
    Manager

ASSIGNEE:

    **HYPERBLOCK LLC**

By: _____
    Eric So
    Chairman

LESSOR:

    **BONNER PROPERTY
    DEVELOPMENT, LLC**

By:_____
Its:   Co-Manager

EXHIBIT 7.
PAGE 6

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager


By: _____
       Sean Walsh
       Manager



ASSIGNEE:

**HYPERBLOCK LLC**


By: _____
       Eric So
       Chairman


LESSOR:

**BONNER PROPERTY
DEVELOPMENT, LLC**


By: _____
Its:  Co-Manager

Assignment, Assumption and Amendment of Lease

**IN WITNESS WHEREOF**, the parties have executed this Assignment and Amendment as of the Effective Date.

ASSIGNOR:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _____
    Sean Walsh
    Manager

ASSIGNEE:

**HYPERBLOCK LLC**

By: _____
    Eric So
    Chairman

LESSOR:

**BONNER PROPERTY DEVELOPMENT, LLC**

By: _____
Its:  Co-Manager

Stephen K. Nelson

EXHIBIT 8.
PAGE 1

**Attachments:**       F Hyperblock Term Sheet 9-14-18 (003).docx

Term sheet regarding HyperBlock lease amendment.
Sent from Nelson to Bjornson and Jake Pelczar of BOM
on Friday, November 2, 2018 2:13:03 PM

EXHIBIT 8.
PAGE 2

## Term Sheet Hyperblock

- Create amendment to the Lease.
- New 10 year lease period.
- New lease begins 3/1/19
- Secure $2.625m loan at Bank of Montana.
- Clause to allow us if we have to put Hyperblock office on commercial power.  Only if no reasonable alternative. At worst case we would install a meter to determine Hyperblock's electrical costs & charge them as part of their rent the same cost as they would have paid with their power.  The only time this might be in effect is if we have a customer for the rest of the Sorter building that would not need a new electrical service.
- All leases maintain 2% annual increase.
- Accelerated payment schedule for the $2 + million loan payback.  Provide us with an example of the free cash flow statement, the % of payment, so we know what to ask for & be able to determine payments.  I think it will be 25% of free cash flow.  Dan Stivers can help define this.
- UCC filings & lien releases for each job & piece of equipment putting Bonner Property Development LLC in a first lien position.
- All funds will be used for infrastructure & permanent buildings on this new project only.

- Noise for the new expansion could be an issue & will need to be resolved in a satisfactory manner.

- Substation Lease Appx. 125' X 125' including an easement for the power pole structures along the river bank.   $5000.00 per month.
- Land lease:  See attached exhibit. 106,650 sq. ft.  $8,073.75 per month.  $96,885.00 annually.

Other Issues:

- Site Prep, relocate gravel & compact.  Estimated at $227,000, we split the cost $158,500 Hyperbloch and $68,500 Bonner Property Developmnt LLC.  This includes relocating the gravel. $205,000.  New gas line.  $8,000.00.  Relocate fire hydrant. $4,000.00.  Certify compaction. $10,000.00.  Total $227,000.00.
- Sprinklers:  Bonner Property Development replaces the new sprinkler heads & leases the appropriate lift at their sole cost, in the original leased area appx. 117,000 sq. ft. ASAP 60 days.  Approximately 1700 sprinkler heads at $8.29 each. This cost will not exceed $45,000.00.  Labor will be supplied by  Hyperblock.
- Bonner Property Development LLC will replace the sprinkler heads in the other half of the space at its sole cost, as time permits no later than April 30, 2019.

EXHIBIT 8.
PAGE 3

- BPD will & has installed a sump & gravel around the Pump house at its sole cost for the purpose of dust control.

- Hyperblock may install additional fans in the Planer building with approval of Landlord. Things to consider will be noise & the structural integrity of the building. The noise level from the existing large fans in the NE end of the planer building are excessive as noted in Big Sky Acoustics initial report on August 6, 2018.  Hyperblock at its sole cost will mitigate this noise to a reasonable level.

-

EXHIBIT 8.
PAGE 4

| | |
|---|---|
| **From:** | David Bjornson |
| **To:** | Jaymie Bowditch |
| **Subject:** | FW: Term Sheet for Hyperblock |
| **Date:** | Tuesday, December 11, 2018 5:21:53 PM |
| **Attachments:** | Hyperblock Term Sheet 9-14-18 (003).docx |

**From:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Sent:** Friday, November 02, 2018 2:13 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** mdbbpd@gmail.com; 'Jake Pelczar' <jpelczar@bankofmt.com>
**Subject:** Term Sheet for Hyperblock

David,  Attached is a term sheet for Hyperblock.  I was thinking an amendment to the lease. I have added Jake with Bank of Montana so if you need to review the loan documents or add something for us then here is the chance.  Jake, David Bjornson will probably need to look at the closing documents & maybe add some stuff for us. Thx Steve.

EXHIBIT 8.
PAGE 5

## Term Sheet Hyperblock

- Create amendment to the Lease.
- New 10 year lease period.
- New lease begins 3/1/19
- Secure $2.625m loan at Bank of Montana.
- Clause to allow us if we have to put Hyperblock office on commercial power.  Only if no reasonable alternative. At worst case we would install a meter to determine Hyperblock's electrical costs & charge them as part of their rent the same cost as they would have paid with their power.  The only time this might be in effect is if we have a customer for the rest of the Sorter building that would not need a new electrical service.
- All leases maintain 2% annual increase.
- Accelerated payment schedule for the $2 + million loan payback.  Provide us with an example of the free cash flow statement, the % of payment, so we know what to ask for & be able to determine payments.  I think it will be 25% of free cash flow.  Dan Stivers can help define this.
- UCC filings & lien releases for each job & piece of equipment putting Bonner Property Development LLC in a first lien position.
- All funds will be used for infrastructure & permanent buildings on this new project only.

- Noise for the new expansion could be an issue & will need to be resolved in a satisfactory manner.

-  Substation Lease Appx. 125' X 125' including an easement for the power pole structures along the river bank.   $5000.00 per month.
- Land lease:  See attached exhibit. 106,650 sq. ft.  $8,073.75 per month.  $96,885.00 annually.

Other Issues:

-  Site Prep, relocate gravel & compact.  Estimated at $227,000, we split the cost $158,500 Hyperbloch and $68,500 Bonner Property Developmnt LLC.  This includes relocating the gravel. $205,000.  New gas line.  $8,000.00.  Relocate fire hydrant. $4,000.00.  Certify compaction. $10,000.00.  Total $227,000.00.
-  Sprinklers:  Bonner Property Development replaces the new sprinkler heads & leases the appropriate lift at their sole cost, in the original leased area appx. 117,000 sq. ft.  ASAP 60 days.  Approximately 1700 sprinkler heads at $8.29 each. This cost will not exceed $45,000.00.  Labor will be supplied by  Hyperblock.
- Bonner Property Development LLC will replace the sprinkler heads in the other half of the space at its sole cost, as time permits no later than April 30, 2019.

EXHIBIT 8.
PAGE 6

- BPD will & has installed a sump & gravel around the Pump house at its sole cost for the purpose of dust control.

- Hyperblock may install additional fans in the Planer building with approval of Landlord. Things to consider will be noise & the structural integrity of the building. The noise level from the existing large fans in the NE end of the planer building are excessive as noted in Big Sky Acoustics initial report on August 6, 2018.  Hyperblock at its sole cost will mitigate this noise to a reasonable level.

-

EXHIBIT 9.
PAGE 1

**From:** David Bjornson
**To:** Jill Broughton
**Subject:** FW: $2.625 m loan conditions.
**Date:** Tuesday, November 27, 2018 2:40:04 PM
**Attachments:** Spokane Project lease 3-1-16.pdf
First Amendment to Comercial Lease Agreement - BPD- Project Spokane - Fully Executed 12-23-16.pdf
2017.07.13 Second Lease Amendment BPD - ProjectSpokane.EXECUTED.pdf

---

**From:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Sent:** Tuesday, November 27, 2018 12:46 PM
**To:** 'Jake Pelczar' <jpelczar@bankofmt.com>; 'Sean Walsh' <sean@hyperblock.co>
**Cc:** 'Dan Stivers' <dan@hyperblock.co>; mdbbpd@gmail.com; David Bjornson <david@bjornsonlaw.com>;
'Danny Day' <dday@bankofmt.com>
**Subject:** RE: $2.625 m loan conditions.

Jake,  Here are the amendments & the lease.  I will be talking to David shortly & have him finish up the lease amendment.  Let me know if you need anything else.  Thx Steve.

---

**From:** Jake Pelczar [mailto:jpelczar@bankofmt.com]
**Sent:** Tuesday, November 27, 2018 12:10 PM
**To:** Sean Walsh <sean@hyperblock.co>; bsmcorpmt@gmail.com
**Cc:** Dan Stivers <dan@hyperblock.co>; mdbbpd@gmail.com; David@bjornsonlaw.com; Danny Day
<dday@bankofmt.com>
**Subject:** RE: $2.625 m loan conditions.

Sounds good, Everyone!

David/Steve, if you guys could send us copies of the lease amendments, that would be great. Sean, we'll get docs to you guys as soon as possible.

Thanks guys,

Jake

**Jacob T. Pelczar**
Vice President
Phone: 406.829.2662  /  Fax: 406.829.2355
Bank of Montana
125 Bank Street, Suite 100
Missoula, MT 59802
NMLS: 944575

*The information contained in this message is proprietary and/or confidential.*
*If you are not the intended recipient, please: (i) delete the message and all copies;*
*(ii) do not disclose, distribute or use the message in any manner; and (iii) notify*
*the sender immediately. In addition, please be aware that any message addressed*
*to our domain is subject to archiving and review by persons other than the intended*
*recipient. Thank you.*

**From:** Sean Walsh <sean@hyperblock.co>
**Sent:** Tuesday, November 27, 2018 10:04 AM
**To:** bsmcorpmt@gmail.com
**Cc:** Dan Stivers <dan@hyperblock.co>; mdbbpd@gmail.com; Jake Pelczar <jpelczar@bankofmt.com>;
David@bjornsonlaw.com
**Subject:** Re: $2.625 m loan conditions.

This works, Steve.

Jake - please send us final loan docs asap, so we can pass by the Hyperblock Board of Directors for approval.

Thank you,
Sean

On Tue, Nov 27, 2018 at 11:58 AM Steve Nelson <bsmcorpmt@gmail.com> wrote:

> Gentlemen:  After a long night deliberating about our deal here is what we propose.
> We will close the loan with these conditions. David, you will need to incorporate these in the new lease.
> 1). Once the loan is closed we will authorize the use of funds to pay off Missouri River Contracting for the
> dirt work behind the Sorter building. $150,000. In addition any loan fees the bank has can be paid at
> closing.
> 2). Hyperblock agrees to sign the lease with the terms Dan & I have agreed to.
> 3). Before we authorize any further expenditures from the loan at least $3 m of capital must be injected
> into HyperBlock. Of this $3 m $1 m must be used for any of the following.
>     A. Build the 161,000 kva line across the river.
>     B. Construct the substation or buy equipment for the substation.
>     C. Complete additional infrastructure for the remainder of the 40 megawatt build out.
>
> The object here is to have a completed infrastructure ready for a 40 megawatt data center. I have heard
> estimates of $3.5 m to $3.8 m.
> When everything is complete  if there is a balance of the $2.625 loan it can be used for buildings or further
> infrastructure on site.
>
> If this is agreeable to everyone & after some editing we will get Jake & David to draw up some documents.
> Thanks everyone. Steve.
>
> Sent from my iPhone

--
Phone - 650.409.7326

Executive Assistant - Kristen Martin - kristen@hyperblock.co - 720.390.8023

LinkedIn

Confidentiality Note: This e-mail and any attachments are confidential and protected by legal privilege. Please be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete all copies from your system. Thank you for your cooperation.

<div align="center">

**RESOLUTIONS OF THE DIRECTORS**

**OF**

**HYPERBLOCK INC.**
(the "**Corporation**")

</div>

**LOAN FROM THE BANK OF MONTANA**

**WHEREAS:**

The Corporation, through its wholly owned subsidiary HyperBlock LLC wishes to take out a USD$2,625,000 loan from the Bank of Montana (the "**Loan**") with a maturity date of December 1, 2023 at a variable interest rate of 2.99% over the Prime Rate index published in the Wall Street Journal.

The terms and conditions of the Loan are detailed in draft loan documents (the "**Loan Documents**") that have been provided to the Directors of the Corporation and are attached hereto in Schedule A.

**NOW, THEREFORE, BE IT RESOLVED THAT:**

The entering into of the Loan by HyperBlock LLC on terms substantially similar to those set out in the Loan Documents is hereby approved and authorized.

**General**

Any one (1) officer or director of the Corporation is authorized, acting for, in the name of and on behalf of the Corporation, to execute or cause to be executed, and to deliver or to cause to be delivered, all such agreements, documents and other instruments, all in such form and containing such terms and conditions as any one of them shall consider necessary or desirable in connection with the foregoing resolutions and shall approve, such approval to be conclusively evidenced by the execution thereof by the Corporation, and to do or cause to be done all such other acts and things as any one of them shall consider necessary or desirable in order to give effect to the intent of the foregoing resolutions.

This resolution may be executed in as many counterparts as are necessary and all counterparts together shall constitute the same resolution. Facsimile, pdf and electronic signatures shall and do hereby constitute valid approval of this resolution.

<div align="center">

*[execution page follows]*

</div>

EXHIBIT 10.(i)
PAGE 2

These resolutions are consented to by all of the directors of the Corporation, pursuant to Section 129 of the *Business Corporations Act* (Ontario), as evidenced by the signatures below.

DATED the 3₀th day of November, 2018.

_____
Eric So

_____
Tony Gaffney

_____
Dayna Gibbs

_____
Rob Segal

_____
Ronald R. Spoehel

_____
Sean Walsh

EXHIBIT 10.(i)
PAGE 3

These resolutions are consented to by all of the directors of the Corporation, pursuant to Section 129 of the *Business Corporations Act* (Ontario), as evidenced by the signatures below.

DATED the 3rd day of November, 2018.

_____
Eric So

_____
Tony Gaffney

_____
Dayna Gibbs

_____
Rob Segal

_____
Ronald R. Spoehel

_____
Sean Walsh

EXHIBIT 10.(i)
PAGE 4

## SCHEDULE A

## LOAN DOCUMENTS

EXHIBIT 10.(ii)
PAGE 1

# RESOLUTION OF CORPORATE LLC MEMBER

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

**Corporation:** HyperBlock, Inc.
388 Carlaw Avenue, Suite 300
Toronto, ON M4M 2T4

**I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:**

**ORGANIZATION.** The Corporation is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the Province of Ontario. The Corporation is duly authorized to transact business in the State of Montana and all other states in which the Corporation is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Corporation is doing business. Specifically, the Corporation is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Corporation has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Corporation maintains an office at 388 Carlaw Avenue, Suite 300, Toronto, ON M4M 2T4. Unless the Corporation has designated otherwise in writing, the principal office is the office at which the Corporation keeps its books and records including its records concerning the Collateral. The Corporation will notify Lender prior to any change in the location of the Corporation's state of organization or any change in the Corporation's name. The Corporation shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Corporation and the Corporation's business activities.

**RELATIONSHIP TO BORROWER AND GRANTOR.** The Corporation is a Member in **HyperBlock, LLC. HyperBlock, LLC** has applied or will be applying to **Bank of Montana ("Lender")** for a loan or loans and other financial accommodations from Lender and has agreed to grant collateral for a loan or loans and other financial accommodations from Lender to **HyperBlock, LLC**, including those which may be described on any exhibit or schedule attached to this Resolution. The Corporation has considered the value of **HyperBlock, LLC** obtaining the financial accommodations described above and granting the collateral.

**AUTHORIZATION TO BE A MEMBER.** The Corporation is authorized to be and become a Member in the Limited Liability Company named **HyperBlock, LLC**, whose office is at 5619 DTC Parkway #475, Greenwood Village, CO 80111.

**RESOLUTIONS ADOPTED.** At a meeting of the Directors of the Corporation, or if the Corporation is a close corporation having no Board of Directors then at a meeting of the Corporation's shareholders, duly called and held on **November 30, 2018**, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**OFFICER.** The following named person is an officer of HyperBlock, Inc.:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| **Sean M. Walsh** | **Chief Executive Officer** | Y | X [signature] |

**ACTIONS AUTHORIZED.** The authorized person listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Corporation. Specifically, but without limitation, the authorized person is authorized, empowered, and directed to do the following for and on behalf of the Corporation:

**Execute Documents.** As Member of HyperBlock, LLC, to execute and deliver to Lender the form of Limited Liability Company Resolution and other loan documents submitted by Lender, confirming the nature and existence of HyperBlock, LLC, including the Corporation's participation in HyperBlock, LLC as a Member, and evidencing the terms of the loan from Lender to HyperBlock, LLC.

**Authorize Officers.** To authorize other officers or employees of the Corporation, from time to time, to act in his or her stead or as his or her successors on behalf of the Corporation as Member in HyperBlock, LLC.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, **including agreements waiving the right to a trial by jury,** as the officer may in his or her discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**NOTICES TO LENDER.** The Corporation will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Corporation's name; (B) change in the Corporation's assumed business name(s); (C) change in the management of the Corporation; (D) change in the authorized signer(s); (E) change in the Corporation's principal office address; (F) change in the Corporation's state of organization; (G) conversion of the Corporation to a new or different type of business entity; or (H) change in any other aspect of the Corporation that directly or indirectly relates to any agreements between the Corporation and Lender. No change in the Corporation's name or state of organization will take effect until after Lender has received notice.

**PARTICIPATION AUTHORIZED.** The Corporation's participation in HyperBlock, LLC as a Member and the execution, delivery, and performance of the documents described herein have been duly authorized by all necessary action by the Corporation and do not conflict with, result in a violation of, or constitute a default under (A) any provision of its articles of incorporation, bylaws, or any agreement or other instrument binding upon the Corporation or (B) any law, governmental regulation, court decree, or order applicable to the Corporation.

**CERTIFICATION CONCERNING OFFICERS AND RESOLUTIONS.** The officer named above is duly elected, appointed, or employed by or for the Corporation, as the case may be, and occupies the position set opposite his or her respective name. This Resolution now stands of record on the books of the Corporation, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**NO CORPORATE SEAL.** The Corporation has no corporate seal, and therefore, no seal is affixed to this Resolution.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written

EXHIBIT 10.(ii)
PAGE 2

**RESOLUTION OF CORPORATE LLC MEMBER**
**(Continued)**

Loan No: 2018004200                                                                                           Page 2

notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Corporation's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF, I have hereunto set my hand and attest that the signature set opposite the name listed above is his or her genuine signature.**

I have read all the provisions of this Resolution, and I personally and on behalf of the Corporation certify that all statements and representations made in this Resolution are true and correct. This Resolution of Corporate LLC Member is dated _Dec. 14, 2018_

CERTIFIED TO AND ATTESTED BY:

X _____

Sean   M.   Walsh,   Chief   Executive   Officer   of
HyperBlock, Inc.

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - MT  L:\OP\LPL\C17.FC  TR-1284  PR-4

EXHIBIT 10.(iii)
PAGE 1

# LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL / SUBORDINATE DEBT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Company:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT:

**THE COMPANY'S EXISTENCE.** The complete and correct name of the Company is HyperBlock, LLC ("Company"). The Company is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware. The Company is duly authorized to transact business in the State of Montana and all other states in which the Company is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which the Company is doing business. Specifically, the Company is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. The Company has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. The Company maintains an office at 5619 DTC Parkway #475, Greenwood Village, CO 80111. Unless the Company has designated otherwise in writing, the principal office is the office at which the Company keeps its books and records. The Company will notify Lender prior to any change in the location of the Company's state of organization or any change in the Company's name. The Company shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to the Company and the Company's business activities.

**RESOLUTIONS ADOPTED.** At a meeting of the members of the Company, duly called and held on **December 3, 2018**, at which a quorum was present and voting, or by other duly authorized action in lieu of a meeting, the resolutions set forth in this Resolution were adopted.

**MANAGER.** The following named entity is a manager of HyperBlock, LLC:

| NAMES | TITLES | AUTHORIZED | ACTUAL SIGNATURES |
|---|---|---|---|
| HyperBlock, Inc. | Sole Member | Y | |

**ACTIONS AUTHORIZED.** The authorized entity listed above may enter into any agreements of any nature with Lender, and those agreements will bind the Company. Specifically, but without limitation, the authorized entity is authorized, empowered, and directed to do the following for and on behalf of the Company:

**Borrow Money.** To borrow, as a cosigner or otherwise, from time to time from Lender, on such terms as may be agreed upon between the Company and Lender, such sum or sums of money as in its judgment should be borrowed, without limitation.

**Execute Notes.** To execute and deliver to Lender the promissory note or notes, or other evidence of the Company's credit accommodations, on Lender's forms, at such rates of interest and on such terms as may be agreed upon, evidencing the sums of money so borrowed or any of the Company's indebtedness to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancings, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations.

**Grant Security.** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Company or in which the Company now or hereafter may have an interest, including without limitation all of the Company's real property and all of the Company's personal property (tangible or intangible), as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed (including any amendments to or modifications, renewals, and extensions of such promissory notes), or any other or further indebtedness of the Company to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated or encumbered.

**Execute Security Documents.** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge agreement, hypothecation agreement, and other security agreements and financing statements which Lender may require and which shall evidence the terms and conditions under and pursuant to which such liens and encumbrances, or any of them, are given; and also to execute and deliver to Lender any other written instruments, any chattel paper, or any other collateral, of any kind or nature, which Lender may deem necessary or proper in connection with or pertaining to the giving of the liens and encumbrances.

**Subordination.** To subordinate, in all respects, any and all present and future indebtedness, obligations, liabilities, claims, rights, and demands of any kind which may be owed, now or hereafter, from any person or entity to the Company to all present and future indebtedness, obligations, liabilities, claims, rights, and demands of any kind which may be owed, now or hereafter, from such person or entity to Lender ("Subordinated Indebtedness"), together with subordination by the Company of any and all security interests of any kind, whether now existing or hereafter acquired, securing payment or performance of the Subordinated Indebtedness; all on such subordination terms as may be agreed upon between the Company's Managers and Lender and in such amounts as in its judgment should be subordinated.

**Negotiate Items.** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Company or in which the Company may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the Company's account with Lender, or to cause such other disposition of the proceeds derived therefrom as it may deem advisable.

**Further Acts.** In the case of lines of credit, to designate additional or alternate individuals as being authorized to request advances under such lines, and in all cases, to do and perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, **including agreements waiving the right to a trial by jury,** as the manager may in its discretion deem reasonably necessary or proper in order to carry into effect the provisions of this Resolution.

**ASSUMED BUSINESS NAMES.** The Company has filed or recorded all documents or filings required by law relating to all assumed business names used by the Company. Excluding the name of the Company, the following is a complete list of all assumed business names under which the Company does business: **None.**

# LIMITED LIABILITY COMPANY RESOLUTION TO BORROW / GRANT COLLATERAL / SUBORDINATE DEBT
## (Continued)

Loan No: 2018004200                                                                                                    Page 2

---

**NOTICES TO LENDER.** The Company will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (A) change in the Company's name; (B) change in the Company's assumed business name(s); (C) change in the management or in the Managers of the Company; (D) change in the authorized signer(s); (E) change in the Company's principal office address; (F) change in the Company's state of organization; (G) conversion of the Company to a new or different type of business entity; or (H) change in any other aspect of the Company that directly or indirectly relates to any agreements between the Company and Lender. No change in the Company's name or state of organization will take effect until after Lender has received notice.

**CERTIFICATION CONCERNING MANAGERS AND RESOLUTIONS.** The manager named above is duly elected, appointed, or employed by or for the Company, as the case may be, and occupies the position set opposite its respective name. This Resolution now stands of record on the books of the Company, is in full force and effect, and has not been modified or revoked in any manner whatsoever.

**CONTINUING VALIDITY.** Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Company's agreements or commitments in effect at the time notice is given.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and attest that the signature set opposite the name listed above is its genuine signature.

I have read all the provisions of this Resolution, and I personally and on behalf of the Company certify that all statements and representations made in this Resolution are true and correct. This Limited Liability Company Resolution to Borrow / Grant Collateral / Subordinate Debt is dated _____
*December 14, 2018.*

**THIS RESOLUTION IS DELIVERED UNDER SEAL AND IT IS INTENDED THAT THIS RESOLUTION IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

CERTIFIED TO AND ATTESTED BY:


HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By: _____(Seal)
    Sean M. Walsh, Chief Executive Officer of
    HyperBlock, Inc.


NOTE: If the manager signing this Resolution is designated by the foregoing document as one of the managers authorized to act on the Company's behalf, it is advisable to have this Resolution signed by at least one non-authorized manager of the Company.

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,625,000.00 | 12 -14-2018 | 12-14-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO  80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

**Principal Amount:  $2,625,000.00**                    **Date of Note:** Dec. 14_____, 2018

**PROMISE TO PAY.  HyperBlock, LLC ("Borrower") promises to pay to Bank of Montana ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Million Six Hundred Twenty-five Thousand & 00/100 Dollars ($2,625,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance.  Interest shall be calculated from the date of each advance until repayment of each advance.**

**DRAW PERIOD. If the loan is not in Default, Borrower may draw down loan funds until December 1, 2019 or until the principal has been fully advanced (the "Draw Period"). Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note, as well as directions for payment from Borrower's accounts, must be requested in writing by Borrower or by an authorized person, as described in the Business Loan Agreement. Borrower agrees to be liable for all sums either:  (A)  advanced in accordance with the instructions of an authorized person or   (B)   credited to any of Borrower's accounts with Lender.**

**PAYMENT.   During the Draw Period, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 1, 2019, with all subsequent interest payments to be due on the same day of each month after that.**

**Beginning on the 1st day of the month immediately following the end of the Draw Period, Borrower is to begin making principal and interest payments. The principal and interest payment amount is to be calculated based on the then outstanding balance, amortized over the remaining number of months until Maturity. The payment is subject to change based on changes to the Index. Monthly payments are due on the 1st day of the month with all outstanding principal, accrued interest, and costs due to Lender to be paid in full at Maturity. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.**

**PROMISE TO PAY ADDITIONAL PROVISION.** Each party comprising Borrower is jointly and severally liable with regards to this Promissory Note (this "Note") and all obligations hereunder.  This means Lender can require any party comprising Borrower to pay all amounts due under this Note, including future advances made to or for the benefit of any Borrower.  The liability of each party comprising Borrower shall be primary, direct, immediate, absolute, continuing, and unlimited and Lender may, at its sole option, proceed against any one of the parties comprising Borrower without having commenced any action, having obtained any judgment, or otherwise having pursued performance by any other party comprising Borrower. Lender can release any Borrower from responsibility under this Note, and the others will remain responsible, but no Borrower shall be discharged or released for any reason, including bankruptcy, receivership or other proceeding, unless required by law or applicable regulation.  Each time the term "Borrower" appears herein, including in the section entitled DEFAULT, it shall refer to each and every Borrower, applied on an individual and a collective basis.

**INTEREST RATE AND PAYMENT CHANGES.** The interest rate and payment may change under the terms and conditions defined in the LATE CHARGE section, AUTOMATIC PAYMENT section, DISHONORED ITEM FEE section, and/or INTEREST AFTER DEFAULT section herein.

**VARIABLE INTEREST RATE.**  The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as Published in The Wall Street Journal (the "Index").  The Index is not necessarily the lowest rate charged by Lender on its loans.  If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower.  Lender will tell Borrower the current index rate upon Borrower's request.  The interest rate change will not occur more often than each day.  Borrower understands that Lender may make loans based on other rates as well.  **The Index currently is 5.250% per annum.**  Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.990 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 8.240% per annum based on a year of 360 days. NOTICE:  Under no circumstances will the interest rate on this Note be less than 8.240% per annum or more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.   Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.   All interest payable under this Note is computed using this method.**

**PREPAYMENT; MINIMUM INTEREST CHARGE.**  Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.    In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a **minimum interest charge of $0.00**.  Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest.  Rather, early payments will reduce the principal balance due.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Bank of Montana, 125 Bank Street, Suite 100, Missoula, MT  59802.**

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000% of the regularly scheduled payment or $200.00, whichever is greater.** If three or more late payments are made to Lender beyond the grace period during the life of this Loan, the Interest rate and spread will be permanently increased 50 basis points effective as of the date the third regularly scheduled payment is not made on or before the grace period ends. This automatic increase does not limit Lender's other remedies related to Default, including, but not limited to, applying the "INTEREST AFTER DEFAULT."

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the Interest rate on this Note shall be increased to 18.000% per annum based on a year of 360 days or the Prime Offer Rate as published in the Wall Street Journal plus 8.000% fully variable based on a year of 360 days, whichever is greater. However, in no event will the Interest rate exceed the maximum Interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**CURE PROVISIONS.** If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, paralegal fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Montana.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $200.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored. If three or more dishonored items are presented to Lender during the life of this Note, the Interest rate and spread will be permanently increased 50 basis points effective as of the date the third item is dishonored. This automatic increase does not limit Lender's other remedies related to Default, including, but not limited to, applying the "INTEREST AFTER DEFAULT".

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE. THIS NOTE MAY BE EXECUTED IN ANY NUMBER OF COUNTERPARTS, INCLUDING BY ELECTRONIC MEANS, WHICH TOGETHER SHALL CONSTITUTE AND BE DEEMED AN ORIGINAL DOCUMENT.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC
By: _____
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

LENDER:

BANK OF MONTANA
X _____
Jacob T. Pelczar, Vice President

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF Puerto Rico                          )
                                              ) SS
COUNTY OF Puerto Rico                         )

This instrument was acknowledged before me on December 14, th Sean M. Walsh, 20 18 by **Sean M. Walsh.**

_____
Linnette M Vázquez Rivera
RUA (Notary) # 16913
[Type or Print Name]

Notary Public for the State of Puerto Rico
Residing at Puerto Rico

My commission expires not expire
Affidavit # 863

RECIBO
18-B4157961

Linnette M. Vázquez Rivera
Sello
Notario

9397
12/06/2018
$5.00
Sello de Asistencia Legal
80011-2018-1206-40569029

863

authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.**   Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

    (A)   a Deed of Trust dated _Dec. 14_ , 2018, to a trustee in favor of Lender on real property located in Missoula County, State of Montana.

    (B)   an Assignment of All Rents to Lender on real property located in Missoula County, State of Montana.

**ADDITIONAL LEGAL COSTS.**   Attorneys' Fees; Expenses defined herein shall be amended to also include paralegal fees and costs.

**SUCCESSOR INTERESTS.**   The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTICES.**   Any notice required to be given under this Note shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the address shown near the beginning of this Note.   Any person may change his or her address for notices under this Note by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address.   For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address.   Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.   It will be Borrower's responsibility to tell the others of the notice from the Lender.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.**   Borrower may notify Lender if Lender reports any inaccurate information about Borrower's account(s) to a consumer reporting agency.   Borrower's written notice describing the specific inaccuracy(ies) should be sent to Lender at the following address: Bank of Montana 125 Bank Street Missoula, MT 59802.

**GENERAL PROVISIONS.**   If any part of this Note cannot be enforced, this fact will not affect the rest of the Note.   Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this loan, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this loan than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Montana (as applicable).   Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this loan, and when the principal has been paid in full, be refunded to Borrower.   Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.   Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor.   Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.   All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.   All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.   The obligations under this Note are joint and several.



EXHIBIT 11.(ii)
PAGE 1

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12 - 14 -2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO  80111

**Lender:**  Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

THIS BUSINESS LOAN AGREEMENT dated _Dec. 14_, 2018, is made and executed between HyperBlock, LLC ("Borrower") and Bank of Montana  ("Lender") on the following terms and conditions.  Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement.  Borrower understands and agrees that:  (A)  in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement;  (B)  the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and  (C)  all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.**  This Agreement shall be effective as of _Dec. 14_, 2018, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.**  Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.**  Borrower shall provide to Lender the following documents for the Loan:  (1)  the Note;  (2)  Security Agreements granting to Lender security interests in the Collateral;  (3)  financing statements and all other documents perfecting Lender's Security Interests;  (4)  evidence of insurance as required below;  (5)  guaranties;  (6)  together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.**  Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents.  In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.**  Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.**  The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.**  There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**Advance Documentation.**  Advances are subject to Borrower providing Lender with a written Advance Request (attached as Exhibit A) and acceptable invoices, evidencing costs specifically related to electrical infrastructure or other Guarantor approved improvements to the Bonner Mill Site. All Advances are subject to Lender's sole discretion. Without limiting the foregoing, Lender's obligation to make an Advance is subject to Lender's receipt of the prior written consent to such Advance by each Guarantor, such consents to be in form and substance satisfactory to Lender.

**Advances.**  Lender's obligation to disburse an Advance requested by Borrower is subject to Lender's receipt of the prior written consent to such Advance by each Guarantor, such consents to be in form and substance satisfactory to Lender. Unless otherwise consented to in writing by Lender, Borrower and Guarantors, all Advances shall be funded to a title company for further payment or release under escrow instructions or similar instructions reasonably acceptable to Lender.  Loan disbursements for payments due Lender or for Lender Expenditures (as provided below) are not subject to Borrower or Guarantor consent and may be disbursed to Lender or as Lender may otherwise determine in its discretion.

**REPRESENTATIONS AND WARRANTIES.**  Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.**  Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Delaware.  Borrower is duly authorized to transact business in the State of Montana and all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business.  Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition.  Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage.  Borrower maintains an office at 5619 DTC Parkway #475, Greenwood Village, CO  80111.  Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral.  Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name.  Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.**  Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by

Borrower.  Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.**  Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under  (1)  any provision of  (a)  Borrower's articles of organization or membership agreements, or  (b)  any agreement or other instrument binding upon Borrower or  (2)  any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.**  Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender.  Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.**  This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.**  Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Litigation and Claims.**  No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.**  To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.**  Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.**  This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.**  Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.**  Promptly inform Lender in writing of  (1)  all material adverse changes in Borrower's financial condition, and  (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.**  Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.**  Furnish Lender with the following:

**Annual Statements.**  As soon as available, but in no event later than contemporaneous with Borrower providing said statements to applicable regulatory authorities, Borrower's balance sheet and income statement for the year ended, audited by a certified public accountant satisfactory to Lender.

**Interim Statements.**  Unless waived by Lender, as soon as available, but in no event later than contemporaneous with Borrower providing said statements to applicable regulatory authorities, Borrower's quarterly balance sheet and profit and loss statement for the period ended, prepared by Borrower.

**Tax Returns.**  As soon as available, but in no event later than 180 days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.**  Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.**  Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender.  Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender.  Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person.  In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.**  Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following:  (1)  the name of the insurer;  (2)  the risks insured;  (3)  the amount of the policy; (4)  the properties insured;  (5)  the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and  (6)  the expiration date of the policy.  In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral.  The cost of such appraisal shall be paid by Borrower.

**Guaranties.**  Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

EXHIBIT 11.(ii)
PAGE 3

| Names of Guarantors | Amounts |
|---|---|
| Stephen K. Nelson | $2,625,000.00 |
| Michael D. Boehme | $2,625,000.00 |
| Bonner Property Development, LLC | $2,625,000.00 |

**Other Agreements.**  Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.**  Use all Loan proceeds solely for the following specific purposes:  **Improvements to electrical infrastructure and/or other improvements authorized by Guarantor/Grantor at the Bonner Mill Site.**

**Taxes, Charges and Liens.**  Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.  Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as  (1)  the legality of the same shall be contested in good faith by appropriate proceedings, and  (2)  Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.**  Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender.  Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.**  Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Operating Accounts.**  Maintain through the life of the loan, primary deposit accounts affiliated with the operations of its Montana facilities with Lender. Bitcoin denominated accounts are specifically excluded from this provision.

**Environmental Studies.**  Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.**  Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act.  Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized.  Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.**  Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records.  If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.**  Borrower shall comply in all respects with any and all covenants, terms, conditions and provisions set forth in the Hazardous Substances Certificate and Indemnity Agreement executed in connection with the Loan.

**Additional Assurances.**  Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**Lease and Credit Enhancement.**  Lender is not bound by any provision of the Lease Agreement dated March 1, 2016 with Project Spokane, LLC as Tenant or any provision of the Credit Enhancement Agreement dated _____, 2018.

**LENDER'S EXPENDITURES.**  If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral.  All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower.  All such expenses will become a part of the Indebtedness and, at Lender's option, will (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.**  Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.**  (1)  Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases,  (2)  sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or  (3)  sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.**  (1)  Engage in any business activities substantially different than those in which Borrower is presently engaged,  (2)  cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or  (3)  make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.**  (1)  Loan, invest in or advance money or assets to any other person, enterprise or entity,  (2)  purchase, create or acquire any interest in any other enterprise or entity, or  (3)  incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.**  Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.**  If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if:  (A)  Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender;  (B)  Borrower or any Guarantor dies, becomes insolvent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt;  (C)  there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or  (D)  any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or  (E)  Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.**  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.**  Borrower fails to make any payment when due under the Loan.

**Other Defaults.**  Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.**  Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

**Default in Favor of Third Parties.**  Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.**  The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.**  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan.  This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.**  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.**  Lender in good faith believes itself insecure.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHT TO CURE.**  If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after Lender sends written notice to Borrower or Grantor, as the case may be, demanding cure of such default:  (1)  cure the default within thirty (30) days; or  (2)  if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.**  If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency"

subsection above, such acceleration shall be automatic and not optional.  In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise.  Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement.  Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.**  Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender.  Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters.  Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests.  Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests.  Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan.  Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.   This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of Montana.**

**Choice of Venue.**  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement.  No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.**  Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement.  Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address.  Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.**  If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.**  To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates.  Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.**  All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns.  Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.**  Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents.  Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be

continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made,   and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.**   Time is of the essence in the performance of this Agreement.

**Waive Jury.   All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.**   The following capitalized words and terms shall have the following meanings when used in this Agreement.   Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.   Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.   Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code.   Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.**   The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.**   The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.**   The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**   The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Event of Default.**   The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.**   The word "GAAP" means generally accepted accounting principles.

**Grantor.**   The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.**   The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.**   The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.**   The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.**   The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.**   The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.**   The word "Note" means the Note dated _____, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.**   The words "Permitted Liens" mean   (1)   liens and security interests securing Indebtedness owed by Borrower to Lender;   (2)   liens for taxes, assessments, or similar charges either not yet due or being contested in good faith;   (3)   liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent;   (4)   purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens";   (5)   liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and   (6)   those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.**   The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.**   The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.**   The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

EXHIBIT 11.(ii)
PAGE 7

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS.   THIS BUSINESS LOAN AGREEMENT IS DATED Dec. 14                , 2018.

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By: _____
Sean   M.   Walsh,   Chief   Executive   Officer   of
HyperBlock, Inc.

LENDER:

BANK OF MONTANA

By: _____
Jacob T. Pelczar, Vice President

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - MT   L:\CFI\LPL\C40.FC  TR-1284  PR-4 (M)

EXHIBIT 11.(ii)
PAGE 8