EXHIBIT 11.(iii)
PAGE 1

# LANDLORD'S CONSENT TO ASSIGNMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | 12 - 14-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO   80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT   59802

**THIS LANDLORD'S CONSENT TO ASSIGNMENT is entered into among HyperBlock, LLC ("Borrower"), whose address is 5619 DTC Parkway #475, Greenwood Village, CO   80111; Bank of Montana ("Lender"), whose address is 125 Bank Street, Suite 100, Missoula, MT   59802; and Bonner Property Development, LLC ("Landlord"), whose address is 224 N. Higgins Avenue, Missoula, MT   59802.** Borrower and Lender have entered into, or are about to enter into, an agreement whereby Lender has acquired or will acquire a security interest or other interest in the Collateral. Some or all of the Collateral may be affixed or otherwise become located on the Premises. To induce Lender to extend the Loan to Borrower against such security interest in the Collateral and for other valuable consideration, Landlord hereby agrees with Lender and Borrower as follows.

**COLLATERAL DESCRIPTION.** The word "Collateral" means certain of Borrower's personal property in which Lender has acquired or will acquire a security interest, including without limitation the following specific property:

  None.

**BORROWER'S ASSIGNMENT OF LEASE.** Borrower hereby assigns to Lender all of Borrower's rights in the Lease, as partial security for the Loan. The parties intend that this assignment will be a present transfer to Lender of all of Borrower's rights under the Lease, subject to Borrower's rights to use the Premises and enjoy the benefits of the Lease while not in default on the Loan or Lease. Upon full performance by Borrower under the Loan, this assignment shall be ended, without the necessity of any further action by any of the parties. This assignment includes all renewals of and amendments to the Lease or the Loan, until the Loan is paid in full. No amendments may be made to the Lease without Lender's prior written consent, which shall not be unreasonably withheld or delayed.

**CONSENT OF LANDLORD.** Landlord consents to the above assignment. If Borrower defaults under the Loan or the Lease, Lender may reassign the Lease, and Landlord agrees that Landlord's consent to any such reassignment will not be unreasonably withheld or delayed. So long as Lender has not entered the Premises for the purpose of operating a business, Lender will have no liability under the Lease, including without limitation liability for rent. Whether or not Lender enters into possession of the Premises for any purpose, Borrower will remain fully liable for all obligations of Borrower as lessee under the Lease. While Lender is in possession of the Premises, Lender will cause all payments due under the Lease and attributable to that period of time to be made to Landlord. If Lender later reassigns the Lease or vacates the Premises, Lender will have no further obligation to Landlord.

**LEASE DEFAULTS.** Both Borrower and Landlord agree and represent to Lender that, to the best of their knowledge, there is no breach or offset existing under the Lease or under any other agreement between Borrower and Landlord. Landlord agrees not to terminate the Lease, despite any default by Borrower, without giving Lender written notice of the default and an opportunity to cure the default within a period of sixty (60) days from the receipt of the notice. If the default is one that cannot reasonably be cured by Lender (such as insolvency, bankruptcy, or other judicial proceedings against Borrower), then Landlord will not terminate the Lease so long as Landlord receives all sums due under the Lease for the period during which Lender is in possession of the Premises, or so long as Lender reassigns the Lease to a new lessee reasonably satisfactory to Landlord.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement: This Agreement shall extend to and bind the respective heirs, personal representatives, successors and assigns of the parties to this Agreement. The covenants of Borrower and Landlord respecting subordination of the claim or claims of Landlord in favor of Lender shall extend to, include, and be enforceable by any transferee or endorsee to whom Lender may transfer any claim or claims to which this Agreement shall apply. Lender need not accept this Agreement in writing or otherwise to make it effective. This Agreement shall be governed by and construed in accordance with the laws of the State of Montana. If Landlord is other than an individual, any agent or other person executing this Agreement on behalf of Landlord represents and warrants to Lender that he or she has full power and authority to execute this Agreement on Landlord's behalf. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is in writing and signed by Lender. Without notice to Landlord and without affecting the validity of this Consent, Lender may do or not do anything it deems appropriate or necessary with respect to the Loan, any obligors on the Loan, or any Collateral for the Loan; including without limitation extending, renewing, rearranging, or accelerating any of the Loan indebtedness.

**AMENDMENTS.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**NO WAIVER BY LENDER.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Landlord, shall constitute a waiver of any of Lender's rights or of any of Landlord's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**SEVERABILITY.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall

be considered modified so that it becomes legal, valid and enforceable.   If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.   Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.**   The following capitalized words and terms shall have the following meanings when used in this Agreement.   Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.   Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.   Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.**   The word "Agreement" means this Landlord's Consent to Assignment, as this Landlord's Consent to Assignment may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Consent to Assignment from time to time.

**Borrower.**   The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**   The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Landlord.**   The word "Landlord" means Bonner Property Development, LLC, and is used for convenience purposes only.   Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

**Lease.**   The word "Lease" means that certain lease of the Premises, dated March 1, 2016, between Landlord and Borrower..

**Lender.**   The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.**   The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

**Note.**   The word "Note" means the Note dated _Dec. 14_, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Premises.**   The word "Premises" means the real property located in Missoula County, State of Montana, commonly known as 9214 Bonner Mill Road, Bonner , MT  59823.

**Related Documents.**   The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S CONSENT TO ASSIGNMENT, AND BORROWER AND LANDLORD AGREE TO ITS TERMS.   THIS AGREEMENT IS DATED _Dec. 14_, 2018.


**BORROWER:**


**HYPERBLOCK, LLC**


**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**
By: _____
Sean M. Walsh, Chief Executive Officer of
HyperBlock, Inc.


**LANDLORD:**


**BONNER PROPERTY DEVELOPMENT, LLC**
By: _____
Stephen K. Nelson, Co-Manager and Member
of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member
of Bonner Property Development, LLC


**LENDER:**


**BANK OF MONTANA**
X _____
Jacob T. Pelczar, Vice President

be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.**   The following capitalized words and terms shall have the following meanings when used in this Agreement.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.**   The word "Agreement" means this Landlord's Consent to Assignment, as this Landlord's Consent to Assignment may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Consent to Assignment from time to time.

**Borrower.**   The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**   The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Landlord.**   The word "Landlord" means Bonner Property Development, LLC, and is used for convenience purposes only.  Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

**Lease.**   The word "Lease" means that certain lease of the Premises, dated March 1, 2016, between Landlord and Borrower..

**Lender.**   The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.**   The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

**Note.**   The word "Note" means the Note dated *December 14*, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Premises.**   The word "Premises" means the real property located in Missoula County, State of Montana, commonly known as 9214 Bonner Mill Road, Bonner , MT  59823.

**Related Documents.**   The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S CONSENT TO ASSIGNMENT, AND BORROWER AND LANDLORD AGREE TO ITS TERMS.  THIS AGREEMENT IS DATED *December 14*, 2018.


BORROWER:


HYPERBLOCK, LLC


HYPERBLOCK, INC., Sole Member of HyperBlock, LLC
By: _____
Sean M. Walsh, Chief Executive Officer of
HyperBlock, Inc.


LANDLORD:


BONNER PROPERTY DEVELOPMENT, LLC
By: _____
Stephen K. Nelson, Co-Manager and Member
of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member
of Bonner Property Development, LLC


LENDER:


BANK OF MONTANA
X _____
Jacob T. Pelczar, Vice President

EXHIBIT 11.(iii)
PAGE 4

EXHIBIT 11.(iii)
PAGE 5

be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Agreement.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Agreement.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.**  The word "Agreement" means this Landlord's Consent to Assignment, as this Landlord's Consent to Assignment may be amended or modified from time to time, together with all exhibits and schedules attached to this Landlord's Consent to Assignment from time to time.

**Borrower.**  The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.**  The word "Collateral" means all of Borrower's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Landlord.**  The word "Landlord" means Bonner Property Development, LLC, and is used for convenience purposes only.  Landlord's interest in the Premises may be that of a fee owner, lessor, sublessor or lienholder, or that of any other holder of an interest in the Premises which may be, or may become, prior to the interest of Lender.

**Lease.**  The word "Lease" means that certain lease of the Premises, dated March 1, 2016, between Landlord and Borrower..

**Lender.**  The word "Lender" means Bank of Montana, its successors and assigns.

**Loan.**  The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced.

**Note.**  The word "Note" means the Note dated *December 14*, 2018 and executed by HyperBlock, LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Premises.**  The word "Premises" means the real property located in Missoula County, State of Montana, commonly known as 9214 Bonner Mill Road, Bonner , MT  59823.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

BORROWER AND LANDLORD ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS LANDLORD'S CONSENT TO ASSIGNMENT, AND BORROWER AND LANDLORD AGREE TO ITS TERMS.  THIS AGREEMENT IS DATED *December 14*, 2018.

BORROWER:


HYPERBLOCK, LLC


HYPERBLOCK, INC., Sole Member of HyperBlock, LLC
By: _____
Sean M. Walsh, Chief Executive Officer of
HyperBlock, Inc.

LANDLORD:


BONNER PROPERTY DEVELOPMENT, LLC
By: _____
Stephen K. Nelson, Co-Manager and Member
of Bonner Property Development, LLC
By: _____
Michael D. Boehme, Co-Manager and Member
of Bonner Property Development, LLC

LENDER:


BANK OF MONTANA
X _____
Jacob T. Pelczar, Vice President

EXHIBIT 11.(iii)
PAGE 6

EXHIBIT 11.(iv)
PAGE 1

**WHEN RECORDED MAIL TO:**
  Bank of Montana
  125 Bank Street
  Suite 100
  Missoula, MT  59802

**RECORDATION REQUESTED BY:**
  Bank of Montana
  125 Bank Street
  Suite 100
  Missoula, MT  59802

**SEND TAX NOTICES TO:**
  Bonner  Property  Development,
  LLC
  224 N. Higgins Avenue
  Missoula, MT  59802

```
201822089  B:1006 P:1305  Pages:6  Fee:$42.00
12/18/2018 03:05:34 PM  Subordination Agreement
Tyler R. Gernant, Missoula County Clerk & Recorder
```

**FOR RECORDER'S USE ONLY**

**NOTICE:  THIS  SUBORDINATION AGREEMENT - LEASE RESULTS IN YOUR SECURITY INTEREST IN THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

## SUBORDINATION AGREEMENT - LEASE

THIS  SUBORDINATION AGREEMENT - LEASE dated December 14     , 2018, is made and executed between HyperBlock, LLC (referred to herein sometimes as "Lessee" and sometimes as "Borrower"); and Bank of Montana ("Lender").

**SUBORDINATED LEASE.**  Lessee has executed a lease dated March 1, 2016 of the property described herein (the "Subordinated Lease").   The following information is the summary of the basic terms and conditions of the Subordinated Lease:  Lease dated March 1, 2016 between Bonner Property Development, LLC and Project Spokane, LLC, including any amendments.

**REAL PROPERTY DESCRIPTION.**  The Lease covers a portion of the following described real property located in Missoula County, State of Montana:

Tract 25A, Certificate of Survey No. 06487; a Tract of land located in the East One-Half (E1/2) of Section 21 and the West One-Half (W1/2) of Section 22, Township 13 North, Range 18 West, P.M.M., Missoula County, Montana.

The Real Property or its address is commonly known as  9214 Bonner Mill Road, Bonner, MT  59823.

**SUPERIOR INDEBTEDNESS.**  Lender has extended or has agreed to extend the following described financial accommodations to Borrower, secured by the Real Property (the "Superior Indebtedness"):

**Note in the amount $2,625,000.**

**LENDER'S LIEN.**  The Superior Indebtedness is or will be secured by the Real Property and evidenced by a mortgage, deed of trust, or other lien instrument, dated  Dec. 14   , 2018, from Bonner Property Development, LLC to Lender (the "Lender's Lien").   As a condition to the granting of the requested financial accommodations, Lender has required that the Lender's Lien be and remain superior to the Subordinated Lease.

**REQUESTED FINANCIAL ACCOMMODATIONS.**   Lessee wants Lender to provide financial accommodations to Lessee in the form of the Superior Indebtedness.  Lessee represents and acknowledges to Lender that Lessee will benefit as a result of these financial accommodations from Lender to Lessee, and Lessee acknowledges receipt of valuable consideration for entering into this Subordination.

**NOW THEREFORE THE PARTIES TO THIS SUBORDINATION HEREBY AGREE AS FOLLOWS:**

**SUBORDINATION.**  All of Lessee's right, title, and interest in and to the Subordinated Lease and the Real Property is and shall be subordinated in all respects to Lender's Lien and the Superior Indebtedness, and it is agreed that Lender's Lien shall be and remain, at all times, prior and superior to Lessee's interests in the Subordinated Lease and the Real Property.  Lessee also subordinates to Lender's Lien all other Security Interests in the Real Property held by Lessee, whether now existing or hereafter acquired.

**LESSEE'S REPRESENTATIONS AND WARRANTIES.**  Lessee hereby represents and warrants to Lender that Lessee has heretofore delivered to Lender a true, correct and complete copy of the Lease, which constitutes the entire agreement between the parties thereto and Lessee further acknowledges that the Lease is in full force and effect and that no default by Lessee or, to Lessee's knowledge, by other party under the terms and provisions of the Lease exists as of the date hereof.

**LESSEE WAIVERS.**  Lessee waives any right to require Lender:  (A)  to make, extend, renew, or modify any loan to Lessee or to grant any other financial accommodations to Lessee whatsoever;  (B)  to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of any  secured by Lender's Lien, or notice of any action or nonaction on the part of Lessee, Lender, any surety, endorser, or other guarantor in connection with the Superior Indebtedness, or in connection with the creation of new or additional indebtedness;  (C)  to resort for payment or to proceed directly or at once against any person, including Lessee;  (D)  to proceed directly against or exhaust any collateral held by Lender from Lessee, any other guarantor, or any other person;  (E)  to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Lessee or to comply with any other applicable provisions of the Uniform Commercial Code;  (F)  to pursue any other remedy within Lender's power; or (G)  to commit any act or omission of any kind, at any time, with respect to any matter whatsoever.

**LENDER'S RIGHTS.**  Lender may take or omit any and all actions with respect to Lender's Lien without affecting whatsoever any of Lender's rights under this Subordination.  In particular, without limitation, Lender may  (A)  make one or more additional secured or unsecured loans to Lessee;  (B)  repeatedly alter, compromise, renew, extend, accelerate, or otherwise change the time for payment or other terms of the Superior Indebtedness or any part of it, including increases and decreases of the rate of interest on the Superior Indebtedness; extensions may be repeated and may be for longer than the original loan term;  (C)  take and hold collateral for the payment of the Superior Indebtedness, and exchange, enforce, waive, and release any such collateral, with or without the substitution of new collateral;  (D)  release, substitute, agree not to sue, or deal with any one or more of Lessee's sureties, endorsers, or guarantors on any terms or manner Lender chooses;  (E)  determine how, when and what application of payments and credits, shall be made on the Superior Indebtedness;  (F)  apply such security and direct the order or manner of sale of the security, as Lender in its discretion may determine; and  (G)  transfer this Subordination to another party.

**DEFAULT BY LESSEE.**  If Lessee becomes insolvent or bankrupt, this Subordination shall remain in full force and effect.  Any default by Lessee under the terms of the Subordinated Lease also shall constitute an event of default under the terms of the Superior Indebtedness in favor of Lender.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Subordination:

**Amendments.**   This Subordination, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Subordination.   No alteration of or amendment to this Subordination shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  If Lender institutes any suit or action to enforce any of the terms of this Subordination, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal.  Whether or not any court action is involved, and to the

extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Lessee also will pay any court costs, in addition to all other sums provided by law.

**Authority.** The person who signs this Subordination as or on behalf of Lessee represents and warrants that he or she has authority to execute this Subordination and to subordinate the Subordinated Indebtedness and the Lessee's security interests in Lessee's property, if any.

**Caption Headings.** Caption headings in this Subordination are for convenience purposes only and are not to be used to interpret or define the provisions of this Subordination.

**Governing Law. This Subordination will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions. This Subordination has been accepted by Lender in the State of Montana.**

**Choice of Venue.** If there is a lawsuit, Lessee agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Subordination unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Subordination shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Subordination. No prior waiver by Lender, nor any course of dealing between Lender and Lessee, shall constitute a waiver of any of Lender's rights or of any of Lessee's obligations as to any future transactions. Whenever the consent of Lender is required under this Subordination, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors.** This Subordination shall extend to and bind the respective heirs, personal representatives, successors and assigns of the parties to this Subordination, and the covenants of Lessee herein in favor of Lender shall extend to, include, and be enforceable by any transferee or endorsee to whom Lender may transfer any or all of the Superior Indebtedness.

**Waive Jury. All parties to this Subordination hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Subordination. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Subordination shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Lender.** The word "Lender" means Bank of Montana, its successors and assigns.

**Note.** The word "Note" means the Note dated Dec - 14 , 2018 and executed by HyperBlock,

LLC in the principal amount of $2,625,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Subordination.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**EACH PARTY TO THIS SUBORDINATION ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS SUBORDINATION, AND EACH PARTY AGREES TO ITS TERMS.  THIS SUBORDINATION IS DATED** _Dec. 14_____, **2018.**

**LESSEE:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**
By: _____
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

**LENDER:**

**BANK OF MONTANA**
X _____
Jacob T. Pelczar, Vice President

_____

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF Puerto Rico _____          )
                                                                    ) SS
COUNTY OF Puerto Rico _____         )

                                                    December 14th ꝶ
This record was acknowledged before me on Sean M. Walsh ____, 20 18 by **Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc., Sole Member of HyperBlock, LLC.**

_____
**(Signature of notarial officer)**

Notary # 16913
_____
**Title of officer (if not shown in stamp)**
Commission not expire
Affidavit # 862

## LENDER ACKNOWLEDGMENT

STATE OF _MT_ )
) SS
COUNTY OF _Missoula_ )

This record was acknowledged before me on _Dec 17_____, 20_18_ by **Jacob T. Pelczar** as **Vice President** of **Bank of Montana**.

_alex peayton_
(Signature of notarial officer)

_Assistant Operations Officer_
**Title of officer (if not shown in stamp)**

ALEXANDRA DRAYTON
Notary Public for the
State of Montana
Residing at MISSOULA, MT
(Official stamp)Commission Expires
April 26, 2022

Notarial Seal

---

LaserPro, Ver. 18.3.11.003   Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - MT
L:\CFI\LPL\G215.FC   TR-1284   PR-4 (M)

EXHIBIT 11.(v)
PAGE 1

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

**LOAN TYPE.** This is a Variable Rate Nondisclosable Draw Down Line of Credit Loan to a Limited Liability Company for $2,625,000.00 due on December 1, 2023.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☐ **Personal, Family, or Household Purposes or Personal Investment.**

☒ **Business (Including Real Estate Investment).**

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Purchase Electrical Infrastructure.

**REAL ESTATE DOCUMENTS.** If any party to this transaction is granting a security interest in any real property to Lender and Borrower is not also a party to the real estate document or documents (the "Real Estate Documents") granting such security interest, Borrower agrees to perform and comply with the Real Estate Documents just as if Borrower has signed as a direct and original party to the Real Estate Documents. This means Borrower agrees to all the representations and warranties made in the Real Estate Documents. In addition, Borrower agrees to perform and comply strictly with all the terms, obligations and covenants to be performed by either Borrower or any Grantor or Trustor, or both, as those words are defined in the Real Estate Documents. Lender need not tell Borrower about any action or inaction Lender takes in connection with the Real Estate Documents. Borrower assumes the responsibility for being and keeping informed about the property. Borrower also waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the property, or any delay by Lender in realizing upon the property.

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $2,625,000.00 as follows:

| | |
|---|---|
| **Other Disbursements:** | $2,523,296.50 |
| $2,523,296.50 Loan Funds Available to Borrower | |
| **Other Charges Financed:** | $8,046.00 |
| $5,301.00 Lender's Title Insurance Cost to Stewart Title of Missoula County, Inc. | |
| $245.00 Recording Costs to Stewart Title of Missoula County, Inc. | |
| $2,500.00 Legal Costs to Bank of Montana | |
| **Total Financed Prepaid Finance Charges:** | $93,657.50 |
| $12.00 Flood Certification to Partners Credit & Verification Solutions | |
| $93,000.00 Bank Fee to Bank of Montana | |
| $250.00 Express Mail/Remote Signing Costs to Bank of Montana | |
| $350.00 Settlement Cost to Stewart Title of Missoula County, Inc. | |
| $45.50 Credit Report to Partners Credit & Verification Solutions | |
| **Note Principal:** | $2,625,000.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| **Prepaid Finance Charges Paid in Cash:** | $20,000.00 |
| $20,000.00 Bank Fee to Bank of Montana | |
| **Other Charges Paid in Cash:** | $7,500.00 |
| $7,500.00 Appraisal Cost to Kembel Kosena & Co. | |
| **Total Charges Paid in Cash:** | $27,500.00 |

**FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED** Dec. 14.

EXHIBIT 11.(v)
PAGE 2

## DISBURSEMENT REQUEST AND AUTHORIZATION
### (Continued)

**Loan No: 2018004200**

**BORROWER:**

**HYPERBLOCK, LLC**

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By: _____
    Seán  M.  Walsh,  Chief  Executive  Officer  of
    HyperBlock, Inc.

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - MT  L:\CFIR.PL\020.FC  TR-1284  PR-4

EXHIBIT 11.(vi)
PAGE 1

# ERRORS AND OMISSIONS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

---

**LOAN NO.:** 2018004200

The undersigned Borrower for and in consideration of the above-referenced Lender funding the closing of this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, any or all loan closing documentation if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Federal Housing Authority or the Department of Veterans Affairs.

The undersigned Borrower does hereby so agree and covenant in order to assure that this loan documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in and to said loan documentation.

DATED effective this December 14, 2018.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

**By:** [signature]
**Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.**

---

LaserPro, Ver. 18.3.11.003 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - MT L:\CFI\LPL\I26.FC TR-1284 PR-4

# GENERAL AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

I hereby authorize **Bank of Montana** to verify my past and present employment, earnings records, bank accounts, stock holdings, and any other asset balances needed to process or update my application or current account.

I further authorize **Bank of Montana** to order credit reports and verify all other credit information, including past and present mortgage and land lord references.

Additionally, I agree to provide **Bank of Montana** annually or as requested:

(i.) Tax Returns and/or Tax Return Extension Notices as soon as available, but in no event later than one hundred eighty (180) days after the end of each fiscal year;
(ii.) An updated Personal Financial Statement in a format acceptable to Bank of Montana; and
(iii.) Any other pertinent financial materials that support the foregoing items.

I agree to provide any requested financial information to **Bank of Montana** within ten (10) days of the date of the request.

It is understood that a photocopy or digital copy of this document presented to a third party shall serve as sufficient authorization to provide **Bank of Montana** the requested information.

This General Authorization is valid for a period of one (1) year, or for the duration of my banking and/or loan relationship with **Bank of Montana,** whichever is longer.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

By: ______________________
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

**GUARANTOR:**

X ______________________
Stephen K. Nelson, Individually

X ______________________
Michael D. Boehme, Individually

**BONNER PROPERTY DEVELOPMENT, LLC**

By: ______________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: ______________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

**GRANTOR:**

**BONNER PROPERTY DEVELOPMENT, LLC**

By: ______________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: ______________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

LaserPro, Ver. 18.3.11.003 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - MT L:\CFI\LPL\G80.FC TR-1284 PR-4

EXHIBIT 11.(vii)
PAGE 2

# GENERAL AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

I hereby authorize **Bank of Montana** to verify my past and present employment, earnings records, bank accounts, stock holdings, and any other asset balances needed to process or update my application or current account.

I further authorize **Bank of Montana** to order credit reports and verify all other credit information, including past and present mortgage and land lord references.

Additionally, I agree to provide **Bank of Montana** annually or as requested:

(i.) Tax Returns and/or Tax Return Extension Notices as soon as available, but in no event later than one hundred eighty (180) days after the end of each fiscal year;
(ii.) An updated Personal Financial Statement in a format acceptable to Bank of Montana; and
(iii.) Any other pertinent financial materials that support the foregoing items.

I agree to provide any requested financial information to **Bank of Montana** within ten (10) days of the date of the request.

It is understood that a photocopy or digital copy of this document presented to a third party shall serve as sufficient authorization to provide **Bank of Montana** the requested information.

This General Authorization is valid for a period of one (1) year, or for the duration of my banking and/or loan relationship with **Bank of Montana**, whichever is longer.

BORROWER:

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By:______________________
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

GUARANTOR:

X______________________
Stephen K. Nelson, Individually

X______________________
Michael D. Boehme, Individually

BONNER PROPERTY DEVELOPMENT, LLC

By:______________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By:______________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By:______________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By:______________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

LaserPro, Ver. 18.3.11.003 Copr. Finastra USA Corporation 1997, 2018. All Rights Reserved. - MT L:\CFI\LPL\G60.FC TR-1284 PR-4

# GENERAL AUTHORIZATION

EXHIBIT 11.(vii)
PAGE 3

| Principal $2,625,000.00 | Loan Date 12-03-2018 | Maturity 12-01-2023 | Loan No 2018004200 | Call / Coll | Account | Officer *** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO  80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

I hereby authorize **Bank of Montana** to verify my past and present employment, earnings records, bank accounts, stock holdings, and any other asset balances needed to process or update my application or current account.

I further authorize **Bank of Montana** to order credit reports and verify all other credit information, including past and present mortgage and land lord references.

Additionally, I agree to provide **Bank of Montana** annually or as requested:

(i.) Tax Returns and/or Tax Return Extension Notices as soon as available, but in no event later than one hundred eighty (180) days after the end of each fiscal year;
(ii.) An updated Personal Financial Statement in a format acceptable to Bank of Montana; and
(iii.) Any other pertinent financial materials that support the foregoing items.

I agree to provide any requested financial information to **Bank of Montana** within ten (10) days of the date of the request.

It is understood that a photocopy or digital copy of this document presented to a third party shall serve as sufficient authorization to provide **Bank of Montana** the requested information.

This General Authorization is valid for a period of one (1) year, or for the duration of my banking and/or loan relationship with **Bank of Montana**, whichever is longer.

**BORROWER:**

HYPERBLOCK, LLC

HYPERBLOCK, INC., Sole Member of HyperBlock, LLC

By: _____
Sean  M.  Walsh,  Chief  Executive  Officer  of HyperBlock, Inc.

**GUARANTOR:**

X_____
Stephen K. Nelson, Individually

X_____
Michael D. Boehme, Individually

BONNER PROPERTY DEVELOPMENT, LLC

By: _____
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

**GRANTOR:**

BONNER PROPERTY DEVELOPMENT, LLC

By: _____
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: _____
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

EXHIBIT 11.(viii)
PAGE 1

# CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

Federal law requires this consent form be provided to you. Unless authorized by law, your tax return preparer cannot disclose, without your consent, your tax return information to third parties for purposes other than the preparation and filing of your tax return. If you consent to the disclosure of your tax return information, Federal law may not protect your tax return information from further use or distribution.

You are not required to complete this form. If we obtain your signature on this form by conditioning our services on your consent, your consent will not be valid. If you agree to disclosure of your tax return information, your consent is valid for the amount of time you specify. If you do not specify the duration of your consent, your consent is valid for one (1) year.

Please initial by **one** of the following options:

______ I **grant** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

______ I **deny** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

By executing this release, I hereby authorize Bank of Montana and such individuals as they designate, to disclose my tax return information for the following purpose:

Annual Updates, As Requested by Regulators, or as otherwise required by Bank of Montana

Authorization Valid Through: **December 1, 2023**

I, ________________________________, authorize

(preparer) ________________________________ to disclose to **Bank of Montana** any current and historical tax return information requested by Bank of Montana related to my personal and business entities.

**Signature:** ________________________________ **Date:** ________________

**Company Name(s) (if applicable):**

________________________________

________________________________

If you believe your tax return information has been disclosed or used improperly in a manner unauthorized by law without your permission, you may contact the Treasury Inspector General for Tax Administration (TIGTA) by telephone at 1-800-366-4484, or by email to: complaints@tigta.treas.gov.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

By: ________________________________
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

**GUARANTOR:**

X________________________________
Stephen K. Nelson, Individually

X________________________________
Michael D. Boehme, Individually

**BONNER PROPERTY DEVELOPMENT, LLC**

By: ________________________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By: ________________________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

# CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

Federal law requires this consent form be provided to you. Unless authorized by law, your tax return preparer cannot disclose, without your consent, your tax return information to third parties for purposes other than the preparation and filing of your tax return. If you consent to the disclosure of your tax return information, Federal law may not protect your tax return information from further use or distribution.

You are not required to complete this form. If we obtain your signature on this form by conditioning our services on your consent, your consent will not be valid. If you agree to disclosure of your tax return information, your consent is valid for the amount of time you specify. If you do not specify the duration of your consent, your consent is valid for one (1) year.

Please initial by **one** of the following options:

_______ I **grant** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

_______ I **deny** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

By executing this release, I hereby authorize Bank of Montana and such individuals as they designate, to disclose my tax return information for the following purpose:

Annual Updates, As Requested by Regulators, or as otherwise required by Bank of Montana

Authorization Valid Through: **December 1, 2023**

I, ________________________________________________, authorize

(preparer) ________________________________________________________ to disclose to **Bank of Montana** any current and historical tax return information requested by Bank of Montana related to my personal and business entities.

**Signature:** ________________________________________________ **Date:** ____________________

**Company Name(s) (if applicable):**

______________________________________________________________________

______________________________________________________________________

If you believe your tax return information has been disclosed or used improperly in a manner unauthorized by law without your permission, you may contact the Treasury Inspector General for Tax Administration (TIGTA) by telephone at 1-800-366-4484, or by email to: complaints@tigta.treas.gov.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

**By:** ______________________________
**Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.**

**GUARANTOR:**

**X** ______________________________
**Stephen K. Nelson, Individually**

**X** ______________________________
**Michael D. Boehme, Individually**

**BONNER PROPERTY DEVELOPMENT, LLC**

**By:** ______________________________
**Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC**

**By:** ______________________________
**Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC**

EXHIBIT 11.(viii)
PAGE 3

# CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION

Loan No: 2018004200         **(Continued)**         Page 2

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____
    Stephen K. Nelson, Co-Manager and Member of
    Bonner Property Development, LLC

By: _____
    Michael D. Boehme, Co-Manager and Member of
    Bonner Property Development, LLC

# CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO 80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT 59802

Federal law requires this consent form be provided to you. Unless authorized by law, your tax return preparer cannot disclose, without your consent, your tax return information to third parties for purposes other than the preparation and filing of your tax return. If you consent to the disclosure of your tax return information, Federal law may not protect your tax return information from further use or distribution.

You are not required to complete this form. If we obtain your signature on this form by conditioning our services on your consent, your consent will not be valid. If you agree to disclosure of your tax return information, your consent is valid for the amount of time you specify. If you do not specify the duration of your consent, your consent is valid for one (1) year.

Please initial by **one** of the following options:

______ **I grant** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

______ **I deny** Bank of Montana permission to contact my accountant to receive and discuss my tax returns.

By executing this release, I hereby authorize Bank of Montana and such individuals as they designate, to disclose my tax return information for the following purpose:

Annual Updates, As Requested by Regulators, or as otherwise required by Bank of Montana

Authorization Valid Through: **December 1, 2023**

I, ________________________________, authorize

(preparer) ________________________________ to disclose to **Bank of Montana** any current and historical tax return information requested by Bank of Montana related to my personal and business entities.

**Signature:** ________________________________ **Date:** ______________

**Company Name(s) (if applicable):**

________________________________

________________________________

If you believe your tax return information has been disclosed or used improperly in a manner unauthorized by law without your permission, you may contact the Treasury Inspector General for Tax Administration (TIGTA) by telephone at 1-800-366-4484, or by email to: complaints@tigta.treas.gov.

**BORROWER:**

**HYPERBLOCK, LLC**

**HYPERBLOCK, INC., Sole Member of HyperBlock, LLC**

By:________________________________
Sean M. Walsh, Chief Executive Officer of HyperBlock, Inc.

**GUARANTOR:**

X________________________________
Stephen K. Nelson, Individually

X________________________________
Michael D. Boehme, Individually

**BONNER PROPERTY DEVELOPMENT, LLC**

By:________________________________
Stephen K. Nelson, Co-Manager and Member of Bonner Property Development, LLC

By:________________________________
Michael D. Boehme, Co-Manager and Member of Bonner Property Development, LLC

**CONSENT TO DISCLOSE INCOME TAX RETURN INFORMATION**
**(Continued)**

Loan No: 2018004200                                                                                             Page 2

GRANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____              By: _____
    Stephen K. Nelson, Co-Manager and Member of          Michael D. Boehme, Co-Manager and Member of
    Bonner Property Development, LLC                      Bonner Property Development, LLC

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - MT  L:\CFI\LPL\G60.FC  TR-1284  PR-4

| Form **W-9**<br>(Rev. November 2017)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification**<br>▶ Go to www.irs.gov/FormW9 for instructions and the latest information. | **Give Form to the**<br>**requester. Do not**<br>**send to the IRS.** |
|---|---|---|

**Print or type**
**See Specific Instructions on page 3.**

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.
**HyperBlock, LLC**

2 Business name/disregarded entity name, if different from above

3 Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☐ Individual/sole proprietor or ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate
single-member LLC

☒ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ _____

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

(Applies to accounts maintained outside the U.S.)

5 Address (number, street, and apt. or suite no.) See instructions.
**5619 DTC Parkway #475**

6 City, state, and ZIP code
**Greenwood Village, CO  80111**

Requester's name and address (optional)
**Bank of Montana**
**125 Bank Street**
**Suite 100**
**Missoula, MT  59802**

7 List account number(s) here (optional)
**2018004200**

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN, later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see What Name and Number To Give the Requester for guidelines on whose number to enter.

Social security number

**or**

Employer identification number
**OMITTED FOR PRIVACY**

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

| Sign<br>Here | Signature of<br>U.S. person ▶ | Date ▶ 12/14/2018 |
|---|---|---|

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to www.irs.gov/FormW9.

## Purpose of Form

An individual or entity (Form W-9) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See What is FATCA reporting, later, for further information.

Cat. No. 10231X

Form **W-9** (Rev. 11-2017)

EXHIBIT 11.(x)
PAGE 1

# BANK OF MONTANA®
### YOUR BUSINESS BANK

# BENEFICIAL OWNERSHIP
# CERTIFICATION FORM

## WHAT IS THIS FORM?

To help the government fight financial crime, Federal regulation requires certain financial institutions to obtain, verify and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e. the beneficial owners) helps law enforcement investigate and prosecute these crimes.

## WHO HAS TO COMPLETE THIS FORM?

This form must be completed by the person opening an account on behalf of a legal entity with any of the following U.S. financial institutions: (i) a bank or credit union; (ii) a broker or dealer in securities; (iii) a mutual fund; (iv) a futures commission merchant; or (v) an introducing broker in commodities.

For the purposes of this form a **legal entity** includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States or a foreign country. **Legal entity** does not include sole proprietorships, unincorporated associations or natural persons opening accounts on their own behalf.

## WHAT INFORMATION DO I HAVE TO PROVIDE?

This form requires you to provide the name, address, date of birth and Social Security Number (or passport number or other similar information, in the case of foreign persons) for the following individuals (i.e. the **beneficial owners**):

    (i)        Each individual, if any, who owns, directly or indirectly, 25% or more of the equity interests of the legal entity customer (e.g. each natural person who owns 25% or more of the shares of the corporation;     and

    (ii)      An individual with significant responsibility for managing the legal entity customer (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President or Treasurer)

The number of individuals that satisfy this definition of "beneficial owner" may vary. Under Section (i), depending on the factual circumstances, up to four individuals (but as few as zero) may need to be identified. Regardless of the number of individuals identified under Section (i), you must provide the identifying information of one individual under Section (ii). It is possible that in some circumstances the same individual may be identified in both sections (e.g. the President of Acme, Inc. who also holds a 30% equity interest). Thus, a completed form will contain the identifying information of at least one individual under Section (ii) and up to five individuals (i.e. one individual under Section (ii) and four 25% equity holders under Section (i)).

The financial institution may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

EXHIBIT 11.(x)
PAGE 2

# BENEFICIAL OWNERSHIP
# CERTIFICATION FORM

Persons opening an account on behalf of a legal entity must provide the following information[1].

| | |
|---|---|
| Name and Title of Natural Person Opening Account | *Sean M. Walsh, CEO* |
| Name, Type, and Address of Legal Entity for which the Account is being Opened | *HyperBlock, LLC* *5619 DTC Parkway 475,* *Greenwood Village Colorado 80111* |

Please provide the following information[2] for **each** individual, if any, who directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, **owns 25% or more** in the equity interests of the legal entity listed above.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number[3] | Ownership % |
|---|---|---|---|---|---|
| *HyperBlock, Inc.* | *N/A* | *388 Carlaw Ave Suite 300 Toronto, ON m4m2t4* | | **OMITTED FOR PRIVACY** | *100%* |
| | | | | | |
| | | | | | |
| | | | | | |

*…Continued on the following page*

**IMPORTANT:** If there is a legal entity that owns 25% or more of this legal entity customer, please complete the **Beneficial Ownership Addendum** located on Page 4.

---

[1] Modeled from FinCEN Appendix A, Certification Regarding Beneficial Owners of Legal Entity Customers.
[2] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[3] In lieu of a passport number, foreign persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

# BENEFICIAL OWNERSHIP
# CERTIFICATION FORM

Please provide the following information[4] for **one** individual with **significant responsibility for managing the legal entity listed above**, such as:

[X] An executive officer or senior manager (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President or Treasurer); OR

[ ] Any other individual who regularly performs similar functions.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number[5] |
|---|---|---|---|---|
| Sean M. Walsh | 5/24/1972 | 151 Calle San Francisco Suite 200 San Juan, PR 00901-1607 | **OMITTED FOR PRIVACY** | |
| | | | | |
| | | | | |
| | | | | |

I, _Sean M. Walsh_____, hereby certify, to the best of my knowledge, that the information provided above is complete and correct. I also agree to notify Bank of Montana in the event of any ownership change.

_____
Signature                                        Date
Legal Entity Identifier: _____ (Optional)
_____

[4] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[5] In lieu of a passport number, foreign persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

# BENEFICIAL OWNERSHIP ADDENDUM

This addendum should be used when there are one or more legal entities
that own 25% or more of the legal entity customer opening this account.

| Legal Entity Name[6] | HyperBlock, Inc. |
|---|---|
| % Ownership in Customer Opening the Account | 100% |

Please provide the following information[7] for **each** individual, if any, who directly or indirectly,
through any contract, arrangement, understanding, relationship or otherwise, **owns 25% or more** in
the equity interests of the legal entity listed above.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number[8] | Ownership % |
|---|---|---|---|---|---|
| Please note, HyperBlock, Inc. is a Canadian, publically traded company listed on the Toronto stock exchange. | | | | | |
| | | | | | |

Are any of the individuals listed above also owners in the legal entity
opening the account?

YES ☐          NO ☐

---

[6] Name of the legal entity that has ownership in the customer seeking to open the account.

[7] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

[8] In lieu of a passport number, foreign persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

EXHIBIT 11.(x)
PAGE 5

If you answered "YES", please comment on whether any of the individuals listed above own, in the aggregate[9], 25% or more of the legal entity opening the account.

---

[9] Add ownership percentages for each individual listed on Page 2 and Page 4 to determine whether they own 25% or more of the legal entity opening the account.

EXHIBIT 12.(i)
PAGE 1

# COMMERCIAL GUARANTY

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO  80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

**Guarantor:** Stephen K. Nelson
733 Anglers Bend Way
Missoula, MT  59802

**GUARANTEE OF PAYMENT AND PERFORMANCE.**  For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents.  This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.**  The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.**  THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.**  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty.  A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.**  Guarantor authorizes Lender, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:**  (A)   to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower;  (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term;  (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral;  (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness;  (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine;  (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and  (H)  to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.**  Guarantor represents and warrants to Lender that  (A)  no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty;  (B)  this Guaranty is executed at Borrower's request and not at the request of Lender;  (C)  Guarantor has full power, right and authority to enter into this Guaranty;  (D)  the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor;  (E)  Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein;  (F)  upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided;  (G)  no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition;  (H)  no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened;  (I)  Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and  (J)  Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition.  Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor  any information or documents acquired by Lender in the course of  its relationship with Borrower.

**GUARANTOR'S WAIVERS.**  Except as prohibited by applicable law, Guarantor waives any right to require Lender  (A)  to continue lending money or to extend other credit to Borrower;  (B)  to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations;  (C)  to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor;  (D)  to proceed directly against or exhaust any collateral

held by Lender from Borrower, any other guarantor, or any other person;  (E)  to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code;  (F)  to pursue any other remedy within Lender's power; or  (G)  to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of  (A)  any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale;  (B)  any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness;  (C)  any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness;  (D)  any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness;  (E)  any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or  (F)  any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.  If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.**  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.**  Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower.  In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness.  Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness.  If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender.  Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Guaranty:

**Amendments.**  This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty.  No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.**  Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty.  Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.  This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.**

**Choice of Venue.**  If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**Integration.**  Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty.  Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.**  In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them.  The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them.  If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.  If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed

under this Guaranty.

**Notices.**   Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty.   Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.   For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.   Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.**   Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender.   No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.   A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty.   No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions.   Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.**   Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.**   **Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.**

**DEFINITIONS.**   The following capitalized words and terms shall have the following meanings when used in this Guaranty.   Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.   Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.   Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.**   The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.**   The word "Guarantor" means everyone signing this Guaranty, including without limitation Stephen K. Nelson, and in each case, any signer's successors and assigns.

**Guaranty.**   The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.**   The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.**   The word "Lender" means Bank of Montana, its successors and assigns.

**Note.**   The word "Note" means the promissory note dated *December 14*, 2018, **in the original principal amount of $2,625,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.**   The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.   IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".   NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.   THIS GUARANTY IS DATED *December 14*, 2018.**

GUARANTOR:

X _____

Stephen K. Nelson

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - MT   L:\CFI\LPL\E20.FC   TR-1284   PR-4 (M)

# COMMERCIAL GUARANTY

**Borrower:**  HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO  80111

**Lender:**  Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

**Guarantor:**  Bonner Property Development, LLC
224 N. Higgins Avenue
Missoula, MT  59802

**Whereas, Guarantor leases certain real property to Borrower under a Lease Agreement dated as of March 1, 2016 (the "Lease"); and**

**Whereas, Lender has agreed, on even date with this Commercial Guaranty, to extend a loan to Borrower to fund, in whole or in part, certain improvements for the benefit of the property that is the subject of the Lease; and**

**Whereas, the improvement to the property provides a direct benefit to Guarantor; and**

**Whereas, Lender would not agree to extend the loan to Borrower without Guarantor's execution and delivery of this Commercial Guaranty and the Guarantor's grant of a Deed of Trust to Lender as Beneficiary and encumbering, among other things, the property that is subject to the Lease; and**

**Whereas, Guarantor executes and delivers this Commercial Guaranty to induce Lender to make the loan to Borrower;**

**In Consideration of the Above, the parties agree as follows:**

**GUARANTEE OF PAYMENT AND PERFORMANCE.**  For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents.  This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.

**INDEBTEDNESS.**  The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations that Borrower individually or collectively or interchangeably with others, owes or will owe Lender under the Note and Related Documents and any renewals, extensions, modifications, refinancings, consolidations and substitutions of the Note and Related Documents.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.**  THIS GUARANTY ENCOMPASSES A LINE OF CREDIT AND GUARANTOR UNDERSTANDS AND AGREES THAT THIS GUARANTY SHALL BE OPEN AND CONTINUOUS UNTIL THE INDEBTEDNESS IS PAID IN FULL AND THE LENDER DECLARES THAT THE LINE OF CREDIT IS FULLY SATISFIED, PERFORMED AND TERMINATED.

**DURATION OF GUARANTY.**  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty.  A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.

**GUARANTOR'S AUTHORIZATION TO LENDER.**  Guarantor authorizes Lender, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:**  (A)  to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower;  (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term;  (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral;  (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose;  (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness;  (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine;  (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and  (H)  to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.**  Guarantor represents and warrants to Lender that  (A)  no representations or agreements

of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty;  (B)  this Guaranty is executed at Borrower's request and not at the request of Lender;  (C)  Guarantor has full power, right and authority to enter into this Guaranty;  (D)  the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor;  (E)  Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein;  (F)  upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided;  (G)  no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition;  (H)  no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened;  (I)  Lender has made no representation to Guarantor as to the creditworthiness of Borrower;  (J)  Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition; and (k) Lender is not bound by any provision of the Lease Agreement dated March 1, 2016 with Project Spokane, LLC as Tenant or any provision of the Credit Enhancement Agreement dated _____, 2018.  Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.**  Except as prohibited by applicable law, Guarantor waives any right to require Lender  (A)  to continue lending money or to extend other credit to Borrower;  (B)  to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations;  (C)  to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor;  (D)  to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person;  (E)  to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code;  (F)  to pursue any other remedy within Lender's power; or  (G)  to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of  (A)  any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale;  (B)  any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness;  (C)  any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness;  (D)  any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness;  (E)  any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or  (F)  any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.  If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.**  Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**COLLATERAL.**  This Guaranty is secured by real property legally described as:  Tract 25A, Certificate of Survey No. 06487; a Tract of land located in the East One-Half (E1/2) of Section 21 and the West One-Half (W1/2) of Section 22, Township 13 North, Range 18 West, P.M.M., Missoula County, Montana.  The real property is commonly known as 9214 Bonner Mill Road, Bonner, MT 59823.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.**  Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent.  Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower.  In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness.  Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness.  If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender.  Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Guaranty:

  **Amendments.**  This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty.  No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

  **Attorneys' Fees; Expenses.**  Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty.  Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal

EXHIBIT 12.(ii)
PAGE 3

expenses whether or not there is a lawsuit, including attorneys' fees, paralegal fees, and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.**  Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law.   This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Montana without regard to its conflicts of law provisions.**

**Choice of Venue.**  If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Missoula County, State of Montana.

**Integration.**  Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty.  Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.**  In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them.  The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them.  If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced.  Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.  If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.**  Any notice required to be given under this Guaranty shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty.  Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.  Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.**  Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender.  No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right.  A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty.  No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions.  Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.**  Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.**  Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings when used in this Guaranty.  Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America.  Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require.  Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.**  The word "Borrower" means HyperBlock, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.**  The word "Guarantor" means everyone signing this Guaranty, including without limitation Bonner Property Development, LLC, and in each case, any signer's successors and assigns.

**Guaranty.**  The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.**  The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.**  The word "Lender" means Bank of Montana, its successors and assigns.

**Note.**  The word "Note" means the promissory note dated _December 14_, 2018, **in the original principal amount of $2,625,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Related Documents.**  The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED _December 14_, 2018.

GUARANTOR:

BONNER PROPERTY DEVELOPMENT, LLC

By: _____          By: _____
Stephen K. Nelson, Co-Manager and Member of          Michael D. Boehme, Co-Manager and Member of
Bonner Property Development, LLC          Bonner Property Development, LLC

LaserPro, Ver. 18.3.11.003  Copr. Finastra USA Corporation 1997, 2018.  All Rights Reserved.  - MT  L:\CFI\LPL\E20.FC  TR-1284  PR-4 (M)