# SECURITY AGREEMENT

FOR VALUE RECEIVED,

| Debtor: | Secured Party: |
|---|---|
| **Hyperblock LLC,**<br>**a Delaware limited liability company**<br><br>**120 Adelaide Street West, Suite 2210**<br>**Toronto, ON M5H 1T1.** | **Bonner Property Development, LLC,**<br>**a Montana limited liability company**<br><br>**224 North Higgins Ave**<br>**Missoula, MT 59802** |

The Debtor hereby grants to Secured Party a continuing security interest on the terms and conditions set forth in this Agreement, in all of Debtor's right, title and interest in and to the Debtor's assets as set forth below, whether now owned or hereafter acquired and whether now existing or hereafter arising (collectively the "Collateral"):

**To the extent acquired, improved or built in part and directly or indirectly with proceeds of the "Bank Loan" from Bank of Montana, as that term is defined in that certain Credit Enhancement Agreement executed by the Debtor and Secured Party concurrently herewith, the following:**

**Furniture, equipment, fixtures, and other articles of personal property now or hereafter owned by Debtor; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of any such property.**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any

of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(F)  All proceeds, including without limitation, any equipment purchased with proceeds, as well as all accessories, attachments, accessions, replacements and additions, whether added now or later, together with all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, whether due to judgment, settlement or other process.

 

**Section 1. <u>Obligations Secured by this Agreement</u>.** This Agreement secures the payment and performance by the Debtor of the following obligations:

(i) All obligations owed by the Debtor to Secured Party arising out of the provision of guarantee and collateral generally described in that certain Credit Enhancement Agreement executed concurrently herewith, and that certain Lease Agreement dated March 1, 2016, as amended, including that certain Third Amendment to Commercial Lease, which amendment is executed concurrently herewith (the "Agreements"), of which Agreements the Debtor and the Secured Party are parties; provided, however, that this Agreement shall cease to secure any obligations Debtor, as tenant, may owe to Secured Party, as landlord, under said Lease Agreement dated March 1, 2016, as amended, including that certain Third Amendment to Commercial Lease once Debtor has fully repaid all principal and interest owing under a loan with principal balance of $2,625,000 between Debtor and the Bank of Montana (the "Bank Loan");

(ii) All renewals, extensions, refinancing, modifications, substitutions, or consolidations of the Agreements; and

(iii) The performance of all of the Debtor's obligations under this Agreement or the Agreements (collectively the "Secured Obligations").

 

**Section 2.     <u>Maintenance of Security Interest</u>.** The Debtor agrees to take all reasonable actions and execute instruments which the Secured Party may reasonably request in order to create, perfect, evidence, determine the priority of, protect, enforce, continue, or terminate the security interest created by this Agreement. The Debtor agrees to perform such

EXHIBIT 14.
PAGE 3

actions at no cost to the Secured Party. The Secured Party may, but is not obligated to file any document or agreement to put third parties on notice of its security interest.

**Section 3.**     **Release of Security Interest**. Subject to Section 1(i), this Agreement will remain in full force and effect until the Debtor satisfies all of its obligations under the Agreements in full, performs all of the Debtor's obligations under this Agreement, and otherwise satisfies the Secured Obligations. Upon such performance, the Secured Party will deliver a U.C.C. termination statement to the Debtor or other instruments the Debtor reasonable requests. The Debtor will be responsible for recording and filing all such releases at the Debtor's own expense.

**Section 4.**     **Possession of Collateral**. The Debtor will have the right to retain possession of the Collateral and to use it in any lawful manner not inconsistent with the provisions of this Agreement for so long as it complies with all requirements of this Agreement. The Debtor expressly waives all right to possession of the Collateral after the occurrence of an event of default, and agrees to deliver possession of the Collateral to the Secured Party promptly upon demand after the occurrence of an event of default.

**Section 5.**     **Protection of Collateral**. The Debtor (i) will pay promptly when due all taxes, assessments, fees, and other charges levied on the ownership or use of the Collateral, and (ii) will not do anything or permit anything to be done that would materially impair the value of the Collateral or the security interest granted by this Agreement (this shall include, but not be limited to, the disposing of any of the Collateral if not in the normal course of business).

**Section 6.**     **Inspection of Collateral**. Upon 48 hours' notice, the Secured Party or its agent has the right to inspect and examine the Collateral at any reasonable time during normal business hours on reasonable advance written notice, wherever it is located. The Debtor agrees to assist the Secured Party in making such inspections, and to assemble the Collateral for the Secured Party when the Secured Party asks it to do so, to the extent that it is reasonably able to do so.

**Section 7.**     **Notification of Changes**. The Debtor agrees to notify the Secured Party immediately in writing of (i) any change in the jurisdiction of organization, or the name, address, ownership, or place of business of the Debtor, (ii) any change in the location of the Collateral, unless otherwise allowed by this Agreement, (iii) any loss of or damage to the Collateral, (iv) any sale, exchange, lease, encumbrance, or other transfer of any of the Collateral or any interest in the Collateral, except in the normal course of business, and (v) any other material change in the business or financial condition of the Debtor, in the Collateral, or in the security provided by this Agreement.

**Section 8.**     __Events of Default__. The Debtor will be in default under this Agreement if any of the following events or conditions occur:

　　　　(i)     An event of default occurs under the Agreements or with regard to any documents or agreements related or connected to the Secured Obligations;

　　　　(ii)     The Commercial Lease for the property which is served by the Collateral, located in Bonner, Montana between Secured Party, as Landlord, and Debtor, as Tenant, is terminated for any reason;

　　　　(iii)     The Debtor files a petition in bankruptcy, takes any action under any other law relating to the relief of debtors, makes a general assignment for the benefit of creditors, or consents to the appointment of a receiver or trustee for any substantial part of the Debtor's property;

　　　　(iv)     An involuntary petition in bankruptcy is filed against the Debtor or a receiver or trustee is appointed to take possession of any substantial part of the property of the Debtor, and the petition or appointment is not withdrawn within 60 days;

　　　　(v)     Any substantial part of the property of the Debtor is seized, attached or garnished and not dismissed within 60 days;

　　　　(vi)     The Debtor fails to perform any obligation or comply with any requirement of this Agreement and does not cure such failure within 30 days of written notice from the Secured Party; or

　　　　(vii)     There is a default under any document or agreement related or connected to the Agreements.

**Section 9.**     __Remedies on Default__. (a) Upon the occurrence of any of the events of default listed in the previous section of this Agreement the Secured Party may, at its election, exercise any or all of the following rights and remedies:

　　　　(i)     The Secured Party may require the Debtor to assemble the Collateral and make it available to the Secured Party at a place designated by the Secured Party which is reasonably convenient to both parties to the extent it can reasonably be so assembled. The Debtor agrees to use reasonable efforts to comply promptly with any such demand.

　　　　(ii)     The Secured Party may, with legal process, enter the premises where the Collateral is located and take possession of and remove it.

　　　　(iii)     The Secured Party may sell all or any part of the Collateral in any commercially reasonable manner, at public or private sale, in one or more sales or lots, and at any price and on any terms that the Secured Party considers reasonable. The Secured Party may be a purchaser at any such sale unless it is prohibited from being a

purchaser by law. The sale may be made without any demand for performance, notice of intention to sell, or notice of the time or place of sale, except to the extent that such notice is required by the Montana enactment of Article 9 of the Uniform Commercial Code and cannot be waived. The Secured Party will apply the net proceeds of any sale, after deducting its expenses in taking, storing, insuring, repairing, and selling the Collateral, including reasonable attorneys' fees, to payment or reduction of the Secured Obligations in any order and amount chosen by the Secured Party.  The Debtor will remain liable to the Secured Party for any deficiency, and the Secured Party will pay any excess proceeds to the Debtor.

(iv)     The Secured Party may exercise any and all other remedies available to it at law or in equity.

(b) The rights and remedies of the Secured Party under this Agreement are cumulative and not alternative, and may be exercised concurrently or successively.

**Section 10.     Successors Bound by Agreement**. This Agreement is binding upon and will inure to the benefit of the parties and their heirs, executors, representatives, successors and assigns.

**Section 11.     Assignment by Secured Party**. The Secured Party may assign, transfer or deliver any or all of the Secured Obligations, and any or all of its rights under this Agreement without the prior written consent of Debtor. Debtor may not assign it rights or obligations hereunder without the prior written consent of the Secured Party, which may be withheld in the Secured Party's sole discretion.

**Section 12.     Modification of Agreement**. No modification of this Agreement will be valid or binding unless the modification is in writing, signed by all parties to this Agreement.

**Section 13.     Waiver**. No waiver of any provision of this Agreement will be valid or binding unless the waiver is in writing, signed by the party waiving the provision. The failure of any party to this Agreement to exercise any right or remedy provided for in this Agreement or to insist upon the strict performance of any provision of this Agreement will not be a waiver of that party's right to exercise that right or remedy or insist upon the strict performance of that provision in the future.

**Section 14.     Notice**. Any notice that this Agreement requires or permits to be delivered to any person will be in writing and will be effective when delivered. Such notices shall be sent the addresses first listed above, as may be changes from time to time by written notice.

**Section 15.**     <u>**Attorneys' Fees**</u>. If either of the parties to this Agreement institute legal proceedings to enforce the terms of this Agreement, the parties agree that the prevailing party in the proceedings will be entitled to recover the reasonable attorney's fees and legal costs it incurs prior to and at trial and on any appeal or discretionary review, as they may be approved by the court having jurisdiction over the proceedings, with a limit of $40,000.

**Section 16.**     <u>**Time of Essence**</u>. Time will be of the essence in complying with the terms and conditions of this Agreement.

**Section 17.**     <u>**Headings**</u>. The headings, titles and subtitles in this Agreement are inserted for convenience of reference only, do not in any way limit or amplify the terms and provisions of this Agreement, and are to be ignored in any construction of the provisions of this Agreement.

**Section 18.**     <u>**Applicable Law**</u>. This Agreement will be governed by and construed in accordance with the laws of the State of Montana applicable to agreements entered into and performed in the State of Montana.

**Section 19.**     <u>**Counterpart Signatures.**</u> This Agreement may be executed in any number of counterparts and when taken together shall constitute one original document.

SIGNATURE APPEARS ON FOLLOWING PAGE

EXHIBIT 14.
PAGE 7

This Agreement is effective as of December __13__, 2018.


**DEBTOR:**

**Hyperblock LLC**


By: _____

‎ ‎ ‎ ‎ ‎ ‎ ‎ Sean Walsh
_____

Its: ___Chief Executive Officer___

EXHIBIT 15.
PAGE 1

# THIRD AMENDMENT
## TO
## COMMERCIAL LEASE AGREEMENT

THIS THIRD AMENDMENT TO LEASE AGREEMENT ("Third Amendment") is entered into effective as of December 13, 2018, by and between **Bonner Property Development, LLC**, a Montana limited liability company ("Landlord"), and **Hyperblock LLC**, a Delaware limited liability company ("Tenant").

## Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017, and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Lease Amendments").

C.      The Lease was assigned to and assumed by Hyperblock LLC pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Tenant wishes to expand and improve its space within the Bonner Mill Site in Bonner, Montana, to undertake some improvements and to extend the term of the Lease.

E.      As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 (USD) and from additional borrowing of $2,625,000.00 (USD) from the Bank of Montana (the "New Loan" as defined below).  Tenant has committed to the expenditure of certain of the new equity proceeds and all of the proceeds of the New Loan to improvements to be located on the Property (as that term is defined in the Lease as amended by the Lease Amendments and this Third Amendment).

F.      The parties wish to amend the Lease to reflect the additional premises, the commitment of Tenant to the improvements and for various other agreements between them.  All dollar figures in this Agreement are U.S. Dollars.

## Amendments

Landlord and Tenant agree as follows:

1.    Property.

    a.      Revised Description of "Property".  New third and fourth paragraphs of **Section 1.a.** shall be added to the Lease, as follows:

        iii.    Bare land located behind the Sorter building of approximately 106,650

---

EXHIBIT 15.
PAGE 2

square feet, as reflected on the site plan on **Exhibit E.**

    iv.   Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit F.** In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

    b.  **Section 1.b.I.** shall be amended to add new subsections iii) and iv), to read as follows:

    iii)   Respecting the land described in Section 1.a.iii, Landlord will cause the gas lines to be moved, fire hydrant to be relocated and for gravel to be relocated and compacted in the manner already agreed by Landlord and Tenant, at a total cost of $227,000, to be shared 30% by Landlord and 70% by Tenant (with estimated totals of $68,500 and $158,500, respectively), Tenant's portion to be funded by Tenant from the initial disbursement of the New Loan.

    iv)   Sprinkler replacement:   Landlord will provide sprinkler heads in the area originally leased by Tenant under the original Lease Agreement in the Planer Building (approximately 1,700 heads) and will provide the use of a lift for use by Tenant in replacing such sprinkler heads; provided, however, the total cost to Landlord shall not exceed $45,000.00.  All labor is to be provided by Tenant or at Tenant's cost.  The sprinkler heads in the other half of the space in the Planer Building (the "Expansion Space" as referenced in the Lease and Lease Amendments) which Landlord is solely obligated to maintain and replace pursuant to the Lease and Lease Amendments, will be replaced by Landlord no later than April 30, 2019.

    c.  The following new **subsections ix)** shall be added to **Section 1.b.II.**

    ix)   As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 ("New Equity") and from additional borrowing of $2,625,000.00 from the Bank of Montana ("New Loan").  Tenant has committed to the expenditure of no less than $1,000,000 of the New Equity proceeds and all of the proceeds of the New Loan to improvements on the Property including a 40 megawatt substation and related improvements.  In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of this Third Amendment and that certain Credit Enhancement Agreement between Tenant and Landlord executed concurrently herewith.  Concerning the administration of the New Loan, Tenant agrees and Landlord approves and authorizes as follows:

A. The New Loan will be closed within 30 days of the date hereof.

B. From the closing of the New Loan shall be paid the Tenant's share of the cost of those certain improvements described in Section 1.B.I.iii) in the amount of $158,500 plus any bank loan fees and other charges as set forth in the Bank of Montana Disbursement Request and Authorization form.

C. Landlord shall not be obligated to approve further disbursements by Lender under the New Loan except and until as follows:

  i. Tenant has provided Landlord reasonable evidence that Tenant raised at least $3,000,000.00 in New Equity proceeds; and

  ii. Tenant has provided Landlord reasonable evidence that Tenant spent, or irrevocably committed to spend in a manner expressly approved by Landlord in writing, at least $1,000,000.00 of the New Equity to:

     1. Build the 161,000 kva power line across the river; and/or

     2. Construct a 40 megawatt power substation on the Property to provide additional power supply to the operation of Tenant's business on the Property (the "new Substation"); and/or

     3. Acquire the equipment for said New Substation; and/or

     4. Complete additional infrastructure for the remainder of buildout of said New Substation.

  iii. After full satisfaction of i. and ii. above, Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate documentation that the disbursements are appropriate, and within the scope of and in accordance with plans and specifications approved in writing by Landlord.

2. Term; Occupancy.

   a. Section 2.a. **Section 2.a.** of the Lease shall be amended to provide that the term of the Lease, as amended and extended, shall extend through February 28, 2029.

Additionally, the Renewal Periods shall be amended so that Tenant shall have the option to renew the Lease for two (2) additional periods of ten (10) years each.

3. Rent.

    a. Base Rent. **Sections 4.a.(i), (ii) and (iii)** shall be amended and restated in their entirety, beginning effective March 1, 2019, to read as follows:

        (i)    The Base Rent payable hereunder shall initially be as follows:

            A.    $75,506.85 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months; plus

            B.    $96,885.00 per year, or $8,073.75 per month, for the approximately 106,650 square feet of bare land as set forth in Section 1.a.iii and reflected on the site plan on **Exhibit E**; plus

            C.    $60,000.00 per year, or $5,000.00, for the approximately 15,625 square feet (125' x 125') of land for the power substation as set forth in Section 1.a.iv and reflected on the site plan on **Exhibit F**,

        The Base Rent for the buildings as set forth in Section 4.a.(i).A, above, shall be referred to herein as the "Building Base Rent". The Base Rent for the bare land as set forth in Section 4.a.(i).B and 4.a.(i).C, above, shall be referred to herein as the "Land Base Rent". The Building base Rent and the Land Base Rent shall be collectively referred to herein as the "Base Rent". The Base Rent as set forth above shall continue at this rate for through February 28, 2020. On March 1st, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

        (ii)    If Tenant exercises the Expansion Space Option, the Building Base Rent payable shall be increased proportionally based on the increased square footage for the "Planer Building" and Sorter Building" portions of the Property and the Expansion Space that will be leased by Tenant. Specifically, if Tenant exercises the Expansion Space Option the new square footage of "Planer Building" and Sorter Building" space being leased by Tenant upon which Building Base Rent will be based will be 243,949 square feet currently comprising the Building Base Rent plus 59,000 square feet (the Expansion Space) for total of 302,949 square feet.

        (iii)    Beginning January 1, 2017, Tenant shall transfer two Bitcoins per month to the wallet(s) or other destination directed by Landlord from time to time

for sixty (60) consecutive months; <u>provided that</u> should the value of a Bitcoin exceed $5,000.00 each at the time of any transfer, the number of Bitcoin required to be transferred shall be limited to a total value of $10,000.00 per month, with any partial Bitcoins not capable of being so transferred carrying over to be transferred in the next succeeding month in addition to any Bitcoin required to be transferred in such succeeding month.   Any fractional Bitcoin remaining untransferred after 60 months pursuant to this limitation shall be paid in cash in the month succeeding the 60th month.

4.   <u>Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements</u>. Landlord has agreed, subject to certain terms and conditions, to pledge certain of its property to the Bank of Montana to secure the New Loan to Tenant, under which Tenant will construct certain infrastructure and improvements on the Property.   The terms and conditions of this arrangement is set forth in that certain Credit Enhancement Agreement negotiated and executed by the parties contemporaneously with this Third Amendment.   Execution of this Third Amendment is conditioned upon execution of the Credit Enhancement Agreement and vice versa.

5.   <u>Commercial Power</u>.   In Landlord's discretion at any time during the term of the Lease, it shall have the right to cause Tenant's power needs relating to Tenant's use of the Sorter Building portion of the Property currently occupied by Tenant to be serviced through a commercial power service, with Tenant's power to be separately metered and billed.   All costs of the equipment, lines and any increase in the cost of power relating to servicing the Sorter Building occupied by Tenant through a commercial power service shall be borne by Landlord.

6.   <u>Noise – Expansion</u>.   The parties mutually acknowledge that noise caused by Tenant's operations has been an issue in the Bonner, Montana locale.   Relative to the installation and operation of any new equipment, including servers and fans, Tenant shall make a good faith effort to address noise levels, mitigation steps and limits that may be related to said new equipment.

7.   <u>Remaining Provisions of Lease</u>.   To the extent not modified herein, all remaining provisions of the Lease and Lease Amendments shall remain in full force and effect, and are hereby reaffirmed.

8.   <u>Counterparts</u>.   This Third Amendment may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

- SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 15.
PAGE 6

IN WITNESS WHEREOF this Third Amendment to Lease has been executed effective the date and year first above written.

LANDLORD:                                          TENANT:

Bonner Property Development, LLC                   Hyperblock LLC

By: _____                      By: _____
Stephen Nelson, Co-Manager                         Print name: Sean Walsh
                                                   Its: Chief Executive Officer

By: _____
Michael Boehme, Co-Manager

EXHIBIT 15.
PAGE 7

EXHIBIT E

Bare Land located behind the Sorter building



PRELIMINARY

| | | | | | | |
|---|---|---|---|---|---|---|
| PROJECT NO. | PROJECT NAME | | LOCATION: | DESIGNED | REVISIONS | DATE |
| 11-2896 | BONNER MILL SUBDIVISION | | BONNER MILL SEC.21, T.13N., R.18W., P.M.M. MISSOULA COUNTY, MONTANA | DRAFTED | | |
| SHEET | SHEET TITLE | | PREPARED FOR: | CHECKED | | |
| 1 OF 1 | HYPERBLOCK SITE LAYOUT | | BONNER PROPERTY DEVELOPMENT, LLC | | | |

TERRITORIAL LANDWORKS, INC.
CIVIL ENGINEERING • SURVEYING • LAND USE CONSULTING
www.TerritorialLandworks.com
Ph: 406/721-0142
Fax: 406/721-0224
P.O. Box 3851
Missoula, MT 59806

EXHIBIT 15.
PAGE 9

EXHIBIT F

Land for the power substation consisting of 15,625 square feet (125 x 125)



EXHIBIT 15.
PAGE 10



| | |
|---|---|
| **From:** | David Bjornson |
| **To:** | |
| **Cc:** | |
| **Subject:** | |
| **Date:** | FW: Small Amendment to Third Lease Amendment |
| **Attachments:** | Third Lease Amendment (JAB Revisions 12-6-2018) (00649148-3).docx |
| **Importance:** | High |

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Tuesday, December 11, 2018 5:46 PM
**To:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; David Bjornson <david@bjornsonlaw.com>
**Cc:** Dan Stivers <dan@hyperblock.co>; Kristen Martin <ea@projectspokane.co>
**Subject:** Small Amendment to Third Lease Amendment
**Importance:** High

Sean/Eric,

I spoke to David Bjornson (copied here) after our call this afternoon.  Concerning the lease amendment Dave wanted a minor clarification to the language concerning draw requests set forth in Section 1.c. of the attached (bottom of page 3).  In the interest of expediency I am sending this to David for him to review at the same time.  In the attached I have accepted all of my changes I had proposed last Friday afternoon so the only thing in redline is the additional change Dave has requested.

The change clarifies that once HB has satisfied the $3MM equity and $1MM expenditure requirements, BPD will approve and authorize any draw requests provided said requests as submitted to Bank of Montana are detailed and supported by documentation to show that the draw requests are to be used to pay for improvements related to the 40 MW substation.

ASAP Please let me know if this this acceptable to Hyperblock.  Once I have obtained everyone's consent to the documents I will send clean copies out for execution.

I will also be sending you one small change to the Security Agreement in a separate email.  However, the changes I proposed to the Credit Enhancement Agreement are all acceptable to BPD.

-- Jaymie

**James A. Bowditch**

EXHIBIT 17.
PAGE 2

**President**

Boone Karlberg P.C.

201 West Main St., Suite 300

PO Box 9199

Missoula, MT 59807-9199

Phone: 406.543.6646

Fax: 406.532.5752

[www.boonekarlberg.com](www.boonekarlberg.com)

---

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

# THIRD AMENDMENT
## TO
## COMMERCIAL LEASE AGREEMENT

THIS THIRD AMENDMENT TO LEASE AGREEMENT ("Third Amendment") is entered into effective as of November _____, 2018, by and between **Bonner Property Development, LLC**, a Montana limited liability company ("Landlord"), and **Hyperblock LLC**, a Delaware limited liability company ("Tenant").

### Recitals

A.     Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.     The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017, and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Lease Amendments").

C.     The Lease was assigned to and assumed by Hyperblock LLC pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.     Tenant wishes to expand and improve its space within the Bonner Mill Site in Bonner, Montana, to undertake some improvements and to extend the term of the Lease.

E.     As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 (USD) and from additional borrowing of $2,625,000.00 (USD) from the Bank of Montana (the "New Loan" as defined below).  Tenant has committed to the expenditure of certain of the new equity proceeds and all of the proceeds of the New Loan to improvements to be located on the Property (as that term is defined in the Lease as amended by the Lease Amendments and this Third Amendment).

F.     The parties wish to amend the Lease to reflect the additional premises, the commitment of Tenant to the improvements and for various other agreements between them.  All dollar figures in this Agreement are U.S. Dollars.

### Amendments

Landlord and Tenant agree as follows:

1.     Property.

a.     Revised Description of "Property".  New third and fourth paragraphs of **Section 1.a.** shall be added to the Lease, as follows:

iii.     Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit E.**

iv. Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit F.**   In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

b. **Section 1.b.I.** shall be amended to add new subsections iii) and iv), to read as follows:

iii) Respecting the land described in Section 1.a.iii, Landlord will cause the gas lines to be moved, fire hydrant to be relocated and for gravel to be relocated and compacted in the manner already agreed by Landlord and Tenant, at a total cost of $227,000, to be shared 30% by Landlord and 70% by Tenant (with estimated totals of $68,500 and $158,500, respectively), Tenant's portion to be funded by Tenant from the initial disbursement of the NewLoan.

iv) Sprinkler replacement:   Landlord will provide sprinkler heads in the area originally leased by Tenant under the original Lease Agreement in the Planer Building (approximately 1,700 heads) and will provide the use of a lift for use by Tenant in replacing such sprinkler heads; provided, however, the total cost to Landlord shall not exceed $45,000.00. All labor is to be provided by Tenant or at Tenant's cost. The sprinkler heads in the other half of the space in the Planer Building (the "Expansion Space" as referenced in the Lease and Lease Amendments) which Landlord is solely obligated to maintain and replace pursuant to the Lease and Lease Amendments, will be replaced by Landlord no later than April 30, 2019.

c. The following new **subsections ix)** shall be added to **Section 1.b.II.**

ix)    As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 ("New Equity") and from additional borrowing of $2,625,000.00 from the Bank of Montana ("New Loan"). Tenant has committed to the expenditure of no less than $1,000,000 of the New Equity proceeds and all of the proceeds of the New Loan to improvements on the Property including a 40 megawatt substation and related improvements. In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of this Third Amendment and that certain Credit Enhancement Agreement between Tenant and Landlord executed concurrently herewith. Concerning the administration of the New Loan, Tenant agrees and Landlord approves and authorizes as follows:

A. The New Loan will be closed within 30 days of the date hereof.

B. From the closing of the New Loan shall be paid the Tenant's share of the cost of those certain improvements described in Section 1.B.I.iii) in the amount of $158,500 plus any bank loan fees and other charges as set forth in the Bank of Montana Disbursement Request and Authorization form.

C. Landlord shall not be obligated to approve further disbursements by Lender under the New Loan except and until as follows:

    i. Tenant has provided Landlord reasonable evidence that Tenant raised at least $3,000,000.00 in New Equity proceeds; and

    ii. Tenant has provided Landlord reasonable evidence that Tenant spent, or irrevocably committed to spend in a manner expressly approved by Landlord in writing, at least $1,000,000.00 of the New Equity to:

        1. Build the 161,000 kva power line across the river; and/or

        2. Construct a 40 megawatt power substation on the Property to provide additional power supply to the operation of Tenant's business on the Property (the "new Substation"); and/or

        3. Acquire the equipment for said New Substation; and/or

        4. Complete additional infrastructure for the remainder of buildout of said New Substation.

    iii. After full satisfaction of i. and ii. above, Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for disbursements on the New Loan provided Borrower submits to the Bank of Montana fully detailed draw requests for disbursements supported by documentation in accordance with plans and specifications approved in writing by Landlord.

2. Term; Occupancy.

    a. Section 2.a. **Section 2.a.** of the Lease shall be amended to provide that the term of the Lease, as amended and extended, shall extend through February 28, 2029. Additionally, the Renewal Periods shall be amended so that Tenant shall have the option to renew the Lease for two (2) additional periods of ten (10) years each.

3. Rent.

a. <u>Base Rent</u>.  **Sections 4.a.(i), (ii) and (iii)** shall be amended and restated in their entirety, beginning effective March 1, 2019, to read as follows:

(i)      The Base Rent payable hereunder shall initially be as follows:

A.   $75,506.85 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months; plus

B.   $96,885.00 per year, or $8,073.75 per month, for the approximately 106,650 square feet of bare land as set forth in Section 1.a.iii and reflected on the site plan on **Exhibit E**; plus

C.   $60,000.00 per year, or $5,000.00, for the approximately 15,625 square feet (125' x 125') of land for the power substation as set forth in Section 1.a.iv and reflected on the site plan on **Exhibit F**,

The Base Rent for the buildings as set forth in Section 4.a.(i).A, above, shall be referred to herein as the "Building Base Rent".  The Base Rent for the bare land as set forth in Section 4.a.(i).B and 4.a.(i).C, above, shall be referred to herein as the "Land Base Rent".  The Building base Rent and the Land Base Rent shall be collectively referred to herein as the "Base Rent".  The Base Rent as set forth above shall continue at this rate for through February 28, 2020.   On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

(ii)      If Tenant exercises the Expansion Space Option, the Building Base Rent payable shall be increased proportionally based on the increased square footage for the "Planer Building" and Sorter Building" portions of the Property and the Expansion Space that will be leased by Tenant.  Specifically, if Tenant exercises the Expansion Space Option the new square footage of "Planer Building" and Sorter Building" space being leased by Tenant upon which Building Base Rent will be based will be 243,949 square feet currently comprising the Building Base Rent plus 59,000 square feet (the Expansion Space) for total of 302,949 square feet.

(iii)      Beginning January 1, 2017, Tenant shall transfer two Bitcoins per month to the wallet(s) or other destination directed by Landlord from time to time for sixty (60) consecutive months; <u>provided that</u> should the value of a Bitcoin exceed $5,000.00 each at the time of any transfer, the number of Bitcoin required to be transferred shall be limited to a total value of $10,000.00 per month, with any partial Bitcoins not capable of being so transferred carrying over to be transferred in the next succeeding month in addition to any Bitcoin required to be transferred in such succeeding month.   Any fractional Bitcoin remaining

untransferred after 60 months pursuant to this limitation shall be paid in cash in the month succeeding the 60th month.

4.   Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements. Landlord has agreed, subject to certain terms and conditions, to pledge certain of its property to the Bank of Montana to secure the New Loan to Tenant, under which Tenant will construct certain infrastructure and improvements on the Property.  The terms and conditions of this arrangement is set forth in that certain Credit Enhancement Agreement negotiated and executed by the parties contemporaneously with this Third Amendment.  Execution of this Third Amendment is conditioned upon execution of the Credit Enhancement Agreement and vice versa.

5.   Commercial Power.  In Landlord's discretion at any time during the term of the Lease, it shall have the right to cause Tenant's power needs relating to Tenant's use of the Sorter Building portion of the Property currently occupied by Tenant to be serviced through a commercial power service, with Tenant's power to be separately metered and billed.   All costs of the equipment, lines and any increase in the cost of power relating to servicing the Sorter Building occupied by Tenant through a commercial power service shall be borne by Landlord.

6.   Noise – Expansion.  The parties mutually acknowledge that noise caused by Tenant's operations has been an issue in the Bonner, Montana locale.  Relative to the installation and operation of any new equipment, including servers and fans, Tenant shall make a good faith effort to address noise levels, mitigation steps and limits that may be related to said new equipment.

7.   Remaining Provisions of Lease.   To the extent not modified herein, all remaining provisions of the Lease and Lease Amendments shall remain in full force and effect, and are hereby reaffirmed.

8.   Counterparts.   This Third Amendment may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 17.
PAGE 8

     IN WITNESS WHEREOF this Third Amendment to Lease has been executed effective the date and year first above written.

LANDLORD:                                           TENANT:

Bonner Property Development, LLC                    Hyperblock LLC


By: _____              By:_____
Stephen Nelson, Co-Manager                          Print name:_____
                                                     Its: _____


By: _____
Michael Boehme, Co-Manager

EXHIBIT 17.
PAGE 9

EXHIBIT E

Bare Land located behind the Sorter building

EXHIBIT 17.
PAGE 10

EXHIBIT F

Land for the power substation consisting of 15,625 square feet (125 x 125)

EXHIBIT 17.
PAGE 11

| | |
|---|---|
| **From:** | Jaymie Bowditch |
| **To:** | Sean Walsh; Eric So; David Bjornson |
| **Cc:** | Dan Stivers; Kristen Martin |
| **Subject:** | Security Agreement |
| **Date:** | Tuesday, December 11, 2018 6:14:43 PM |
| **Attachments:** | Security Agreement (JAB Revisions 12-7-2018) (00649422-2).docx |
| **Importance:** | High |

Sean/Eric,

Concerning the Security Agreement, David wants to be certain that the obligations imposed on HB in the Third Amendment to Lease concerning the Credit Enhancement BPD is providing are secured by the 40 MW substation improvements.  However, I do not want the security agreement to secure all obligations under the lease since the lease will be in effect well after the Bank of Montana loan is paid.  I have therefore agreed to retain the language in Section 1 of the attached Security Agreement stating that said agreement secures obligation HB owes under the lease but have added language to clarify that the 40 MW substation only serves as collateral under the lease until the BoM loan is paid.  Once the loan is paid, BPD can no longer look to the collateral as security for any other obligations owed by HB under the lease (e.g. the payment of rent).

I am again sending this to David for him to review at the same time.  In the attached I have accepted all of my changes I had proposed last Friday afternoon so the only thing in redline is the change to address the foregoing – which is in redline.

ASAP Please let me know if this this acceptable to Hyperblock.  Once I have obtained everyone's consent to the documents I will send clean copies out for execution.


-- Jaymie


**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless*

EXHIBIT 17.
PAGE 12

*otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

EXHIBIT 17.
PAGE 13

# SECURITY AGREEMENT

FOR VALUE RECEIVED,

| Debtor: | Secured Party: |
|---|---|
| **Hyperblock LLC,**<br>**a Delaware limited liability company**<br><br>**120 Adelaide Street West, Suite 2210**<br>**Toronto, ON M5H 1T1.** | **Bonner Property Development, LLC,**<br>**a Montana limited liability company**<br><br>**224 North Higgins Ave**<br>**Missoula, MT 59802** |

The Debtor hereby grants to Secured Party a continuing security interest on the terms and conditions set forth in this Agreement, in all of Debtor's right, title and interest in and to the Debtor's assets as set forth below, whether now owned or hereafter acquired and whether now existing or hereafter arising (collectively the "Collateral"):

> **To the extent acquired, improved or built in part and directly or indirectly with proceeds of the "Bank Loan" from Bank of Montana, as that term is defined in that certain Credit Enhancement Agreement executed by the Debtor and Secured Party concurrently herewith, the following:**

> **Furniture, equipment, fixtures, and other articles of personal property now or hereafter owned by Debtor; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of any such property.**

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B)  All products and produce of any of the property described in this Collateral section.

(C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any

EXHIBIT 17.
PAGE 14

of the property described in this Collateral section.

(D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(F)  All proceeds, including without limitation, any equipment purchased with proceeds, as well as all accessories, attachments, accessions, replacements and additions, whether added now or later, together with all insurance proceeds and refunds of insurance premiums, if any, and all sums that may be due from third parties who may cause damage to any of the foregoing, whether due to judgment, settlement or other process.

**Section 1.  <u>Obligations Secured by this Agreement</u>.** This Agreement secures the payment and performance by the Debtor of the following obligations:

(i) All obligations owed by the Debtor to Secured Party arising out of the provision of guarantee and collateral generally described in that certain Credit Enhancement Agreement executed concurrently herewith, and that certain Lease Agreement dated March 1, 2016, as amended, including that certain Third Amendment to Commercial Lease, which amendment is executed concurrently herewith (the "Agreements"), of which Agreements the Debtor and the Secured Party are parties; provided, however, that this Agreement shall cease to secure any obligations Debtor, as tenant, may owe to Secured Party, as landlord, under said Lease Agreement dated March 1, 2016, as amended, including that certain Third Amendment to Commercial Lease**.** once Debtor has fully repaid all principal and interest owing under a loan with principal balance of $2,625,000 between Debtor and the Bank of Montana (the "Bank Loan");

(ii) All renewals, extensions, refinancing, modifications, substitutions, or consolidations of the Agreements; and

(iii) The performance of all of the Debtor's obligations under this Agreement or the Agreements (collectively the "Secured Obligations").

**Section 2.    <u>Maintenance of Security Interest</u>**. The Debtor agrees to take all reasonable actions and execute instruments which the Secured Party may reasonably request in order to create, perfect, evidence, determine the priority of, protect, enforce, continue, or terminate the security interest created by this Agreement. The Debtor agrees to perform such

EXHIBIT 17.
PAGE 15

actions at no cost to the Secured Party. The Secured Party may, but is not obligated to file any document or agreement to put third parties on notice of its security interest.

**Section 3.** **Release of Security Interest**. Subject to Section 1(i), this Agreement will remain in full force and effect until the Debtor satisfies all of its obligations under the Agreements in full, performs all of the Debtor's obligations under this Agreement, and otherwise satisfies the Secured Obligations. Upon such performance, the Secured Party will deliver a U.C.C. termination statement to the Debtor or other instruments the Debtor reasonable requests. The Debtor will be responsible for recording and filing all such releases at the Debtor's own expense.

**Section 4.** **Possession of Collateral**. The Debtor will have the right to retain possession of the Collateral and to use it in any lawful manner not inconsistent with the provisions of this Agreement for so long as it complies with all requirements of this Agreement. The Debtor expressly waives all right to possession of the Collateral after the occurrence of an event of default, and agrees to deliver possession of the Collateral to the Secured Party promptly upon demand after the occurrence of an event of default.

**Section 5.** **Protection of Collateral**. The Debtor (i) will pay promptly when due all taxes, assessments, fees, and other charges levied on the ownership or use of the Collateral, and (ii) will not do anything or permit anything to be done that would materially impair the value of the Collateral or the security interest granted by this Agreement (this shall include, but not be limited to, the disposing of any of the Collateral if not in the normal course of business).

**Section 6.** **Inspection of Collateral**. Upon 48 hours' notice, the Secured Party or its agent has the right to inspect and examine the Collateral at any reasonable time during normal business hours on reasonable advance written notice, wherever it is located. The Debtor agrees to assist the Secured Party in making such inspections, and to assemble the Collateral for the Secured Party when the Secured Party asks it to do so, to the extent that it is reasonably able to do so.

**Section 7.** **Notification of Changes**. The Debtor agrees to notify the Secured Party immediately in writing of (i) any change in the jurisdiction of organization, or the name, address, ownership, or place of business of the Debtor, (ii) any change in the location of the Collateral, unless otherwise allowed by this Agreement, (iii) any loss of or damage to the Collateral, (iv) any sale, exchange, lease, encumbrance, or other transfer of any of the Collateral or any interest in the Collateral, except in the normal course of business, and (v) any other material change in the business or financial condition of the Debtor, in the Collateral, or in the security provided by this Agreement.

**Section 8.**     **Events of Default**. The Debtor will be in default under this Agreement if any of the following events or conditions occur:

(i)     An event of default occurs under the Agreements or with regard to any documents or agreements related or connected to the Secured Obligations;

(ii)     The Commercial Lease for the property which is served by the Collateral, located in Bonner, Montana between Secured Party, as Landlord, and Debtor, as Tenant, is terminated for any reason;

(iii)     The Debtor files a petition in bankruptcy, takes any action under any other law relating to the relief of debtors, makes a general assignment for the benefit of creditors, or consents to the appointment of a receiver or trustee for any substantial part of the Debtor's property;

(iv)     An involuntary petition in bankruptcy is filed against the Debtor or a receiver or trustee is appointed to take possession of any substantial part of the property of the Debtor, and the petition or appointment is not withdrawn within 60 days;

(v)     Any substantial part of the property of the Debtor is seized, attached or garnished and not dismissed within 60 days;

(vi)     The Debtor fails to perform any obligation or comply with any requirement of this Agreement and does not cure such failure within 30 days of written notice from the Secured Party; or

(vii)     There is a default under any document or agreement related or connected to the Agreements.


**Section 9.**     **Remedies on Default**. (a) Upon the occurrence of any of the events of default listed in the previous section of this Agreement the Secured Party may, at its election, exercise any or all of the following rights and remedies:

(i)     The Secured Party may require the Debtor to assemble the Collateral and make it available to the Secured Party at a place designated by the Secured Party which is reasonably convenient to both parties to the extent it can reasonably be so assembled. The Debtor agrees to use reasonable efforts to comply promptly with any such demand.

(ii)     The Secured Party may, with legal process, enter the premises where the Collateral is located and take possession of and remove it.

(iii)     The Secured Party may sell all or any part of the Collateral in any commercially reasonable manner, at public or private sale, in one or more sales or lots, and at any price and on any terms that the Secured Party considers reasonable. The Secured Party may be a purchaser at any such sale unless it is prohibited from being a

EXHIBIT 17.
PAGE 17

purchaser by law. The sale may be made without any demand for performance, notice of intention to sell, or notice of the time or place of sale, except to the extent that such notice is required by the Montana enactment of Article 9 of the Uniform Commercial Code and cannot be waived. The Secured Party will apply the net proceeds of any sale, after deducting its expenses in taking, storing, insuring, repairing, and selling the Collateral, including reasonable attorneys' fees, to payment or reduction of the Secured Obligations in any order and amount chosen by the Secured Party.  The Debtor will remain liable to the Secured Party for any deficiency, and the Secured Party will pay any excess proceeds to the Debtor.

(iv)    The Secured Party may exercise any and all other remedies available to it at law or in equity.

(b) The rights and remedies of the Secured Party under this Agreement are cumulative and not alternative, and may be exercised concurrently or successively.

**Section 10.    Successors Bound by Agreement**. This Agreement is binding upon and will inure to the benefit of the parties and their heirs, executors, representatives, successors and assigns.

**Section 11.    Assignment by Secured Party**. The Secured Party may assign, transfer or deliver any or all of the Secured Obligations, and any or all of its rights under this Agreement without the prior written consent of Debtor. Debtor may not assign it rights or obligations hereunder without the prior written consent of the Secured Party, which may be withheld in the Secured Party's sole discretion.

**Section 12.    Modification of Agreement**. No modification of this Agreement will be valid or binding unless the modification is in writing, signed by all parties to this Agreement.

**Section 13.    Waiver**. No waiver of any provision of this Agreement will be valid or binding unless the waiver is in writing, signed by the party waiving the provision. The failure of any party to this Agreement to exercise any right or remedy provided for in this Agreement or to insist upon the strict performance of any provision of this Agreement will not be a waiver of that party's right to exercise that right or remedy or insist upon the strict performance of that provision in the future.

**Section 14.    Notice**. Any notice that this Agreement requires or permits to be delivered to any person will be in writing and will be effective when delivered. Such notices shall be sent the addresses first listed above, as may be changes from time to time by written notice.

EXHIBIT 17.
PAGE 18

**Section 15.** **Attorneys' Fees**. If either of the parties to this Agreement institute legal proceedings to enforce the terms of this Agreement, the parties agree that the prevailing party in the proceedings will be entitled to recover the reasonable attorney's fees and legal costs it incurs prior to and at trial and on any appeal or discretionary review, as they may be approved by the court having jurisdiction over the proceedings, with a limit of $40,000.

**Section 16.** **Time of Essence**. Time will be of the essence in complying with the terms and conditions of this Agreement.

**Section 17.** **Headings**. The headings, titles and subtitles in this Agreement are inserted for convenience of reference only, do not in any way limit or amplify the terms and provisions of this Agreement, and are to be ignored in any construction of the provisions of this Agreement.

**Section 18.** **Applicable Law**. This Agreement will be governed by and construed in accordance with the laws of the State of Montana applicable to agreements entered into and performed in the State of Montana.

**Section 19.** **Counterpart Signatures.** This Agreement may be executed in any number of counterparts and when taken together shall constitute one original document.

SIGNATURE APPEARS ON FOLLOWING PAGE

EXHIBIT 17.
PAGE 19

This Agreement is effective as of December _____, 2018.

**DEBTOR:**

**Hyperblock LLC**


By:_____


_____
Its: _____

**Exhibit 18.** *[Dec. #19]*: Emails with Bowditch, Walsh, Nelson, Bjornson, Stivers, et. al., from December 2018 related to agreements, revisions, and Walsh's participation in negotiations process:

   (i)     Emails between Bjornson and Bowditch on 12/7/2018-12/11/2018 with comments to revised drafts (attachments omitted for brevity);

   (ii)    Emails between Bjornson and Bowditch on 12/12/2018-12/13/2018 (CC Walsh) (Requesting final executed documents);

   (iii)   Email from Kristen Martin (Walsh's executive assistant) to group (including Bowditch and Walsh) on 12/13/2018 at 11:42 AM (with documents executed by Sean - attachments omitted for brevity);

   (iv)    Emails between Walsh and Bowditch (including Stivers) on 12/11/2018 (regarding approval to BPD's security interest and language for Security Amendment); 914 and 630 pm

| | |
|---|---|
| **From:** | David Bjornson |
| **To:** | jbowditch@boonekarlberg.com |
| **Cc:** | Jill Broughton |
| **Subject:** | RE: HYPERBLOCK documents |
| **Date:** | Tuesday, December 11, 2018 2:38:23 PM |
| **Attachments:** | Third Lease Amendment (JAB Revisions 12-6-2018) DHB COMMENTS.docx |
| | Credit Enhancement Agreement (JAB Revisions 12-6-2018).DHB COMMENTS.docx |
| | Security Agreement (JAB Revisions 12-7-2018) (00649422).DHB COMMENTS.docx |

Exhibit
18(i)
(attachments omitted
for brevity)

Jaymie –

I have been through all of your comments, and have reviewed issues with our clients.
Many of your changes were beneficial clean up, so thank you. The attached reflect
just a few remaining issues for us to discuss and resolve. Feel free to give me a call
this afternoon. I have a conference call at 3 which will be around 30 minutes or so.
David

_____

## David H. Bjornson

**Bjornson Jones Mungas, PLLC**

**2809 Great Northern Loop, Suite 100**

**Missoula, Montana  59808**

**(406) 721-8896**

**(406) 541-8037--fax**

http://www.bjornsonlaw.com/attorneys/david-h-bjornson/

**Email:  david@bjornsonlaw.com**

*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential
information and is intended only for the use of the individual or entity named above.  If you have received this
communication in error, please notify us immediately by telephone and delete the message from your system.*

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Friday, December 07, 2018 4:59 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Subject:** Security Agreement

David,

I also have a few minor changes to the Security Agreement as set forth in the attached.

I'll likely be in the office tomorrow and am around all of next week if you want to chat.

-- Jaymie

EXHIBIT 18.
PAGE 3

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

| From: | David Bjornson |
|---|---|
| To: | Jaymie Bowditch; Kristen Martin |
| Cc: | Sean Walsh; Eric So; Dan Stivers; Denise Cooper; Jill Broughton |
| Subject: | RE: Final Hyperblock/BPD Documents |
| Date: | Thursday, December 13, 2018 1:55:16 PM |

Received.  Thank you. David

**Exhibit 18(ii)**

## David H. Bjornson

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
**Email:  david@bjornsonlaw.com**
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

---

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Thursday, December 13, 2018 11:59 AM
**To:** Kristen Martin <ea@projectspokane.co>
**Cc:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; Dan Stivers <dan@hyperblock.co>; David Bjornson <david@bjornsonlaw.com>; Denise Cooper <dcooper@boonekarlberg.com>
**Subject:** RE: Final Hyperblock/BPD Documents

Also to Dave, if you have them can you attach exhibits to the final fully executed documents before you send to me?

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** Jaymie Bowditch
**Sent:** Thursday, December 13, 2018 11:55 AM
**To:** 'Kristen Martin' <ea@projectspokane.co>
**Cc:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; Dan Stivers <dan@hyperblock.co>; david@bjornsonlaw.com; Denise Cooper <dcooper@boonekarlberg.com>
**Subject:** RE: Final Hyperblock/BPD Documents

Will do once BPD signs.

David, can you please obtain signatures from Steve and/or Mike and send me fully executed copies for our files?

Thanks.

P.S. to all – I suspect the bank would appreciate a copy of at least the Credit Enhancement Agreement but do not know whether Bank of Montana requires a copy.  Does anyone think I should (or should not) provide a copy of this document (or all documents) to Jake at B of M?

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another*

*party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** Kristen Martin <ea@projectspokane.co>
**Sent:** Thursday, December 13, 2018 11:42 AM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; Dan Stivers <dan@hyperblock.co>; david@bjornsonlaw.com; Denise Cooper <dcooper@boonekarlberg.com>
**Subject:** Re: Final Hyperblock/BPD Documents

Jaymie,

Please find attached the final Credit Enhancement Letter, Security Agreement and Third Lease Amendment as executed by Sean.  Can you please send through a fully executed copy for our records?

Best,

Kristen

On Wed, Dec 12, 2018 at 8:21 PM Jaymie Bowditch <jbowditch@boonekarlberg.com> wrote:

Sean,

Attached are clean execution copies of the Credit Enhancement Agreement, Third Amendment to Lease and Security Agreement.  If you prefer that we send these to you via DocuSign, please let us know and my paralegal will do so tomorrow.

-- Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or*

EXHIBIT 18.
PAGE 7

*recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

--
Kristen M. Martin
Executive Assistant to Sean M. Walsh
Mobile: 720.390.8023

| | |
|---|---|
| **From:** | David Bjornson |
| **To:** | Big Sky Mobile Catering; mdbbpd@gmail.com |
| **Cc:** | Jill Broughton |
| **Subject:** | FW: Final Hyperblock/BPD Documents |
| **Date:** | Thursday, December 13, 2018 11:47:45 AM |
| **Attachments:** | 2018.12.13 - Credit Enhancement Agreement (Final) - SW Executed.pdf |
| | 2018.12.13 - Security Agreement - Final - SW Executed.pdf |
| | 2018.12.13 - Third Lease Amendment - Final - SW Executed.pdf |

Exhibit 18(iii) (attachments omitted for brevity)

**From:** Kristen Martin <ea@projectspokane.co>
**Sent:** Thursday, December 13, 2018 11:42 AM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Sean Walsh <sean@hyperblock.co>; Eric So <eric@hyperblock.co>; Dan Stivers <dan@hyperblock.co>; David Bjornson <david@bjornsonlaw.com>; Denise Cooper <dcooper@boonekarlberg.com>
**Subject:** Re: Final Hyperblock/BPD Documents

Jaymie,

Please find attached the final Credit Enhancement Letter, Security Agreement and Third Lease Amendment as executed by Sean.  Can you please send through a fully executed copy for our records?

Best,

Kristen

On Wed, Dec 12, 2018 at 8:21 PM Jaymie Bowditch <jbowditch@boonekarlberg.com> wrote:

> Sean,
>
> Attached are clean execution copies of the Credit Enhancement Agreement, Third Amendment to Lease and Security Agreement.  If you prefer that we send these to you via DocuSign, please let us know and my paralegal will do so tomorrow.
>
> -- Jaymie
>
>
> **James A. Bowditch**
> **President**
> Boone Karlberg P.C.
> 201 West Main St., Suite 300
> PO Box 9199
> Missoula, MT 59807-9199
> Phone: 406.543.6646

EXHIBIT 18.
PAGE 9

Fax: 406.532.5752

www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

--
Kristen M. Martin
Executive Assistant to Sean M. Walsh
Mobile: 720.390.8023

| | |
|---|---|
| **From:** | Sean Walsh |
| **To:** | jbowditch@boonekarlberg.com |
| **Cc:** | Eric So; David Bjornson; Dan Stivers; Kristen Martin |
| **Subject:** | Re: Security Agreement |
| **Date:** | Tuesday, December 11, 2018 6:30:27 PM |

Exhibit
18(iv)

Hi Jaymie,

That sounds reasonable to me.

Thank you,
Sean

On Tue, Dec 11, 2018 at 9:14 PM Jaymie Bowditch <jbowditch@boonekarlberg.com> wrote:

Sean/Eric,

Concerning the Security Agreement, David wants to be certain that the obligations imposed on HB in the Third Amendment to Lease concerning the Credit Enhancement BPD is providing are secured by the 40 MW substation improvements.  However, I do not want the security agreement to secure all obligations under the lease since the lease will be in effect well after the Bank of Montana loan is paid.  I have therefore agreed to retain the language in Section 1 of the attached Security Agreement stating that said agreement secures obligation HB owes under the lease but have added language to clarify that the 40 MW substation only serves as collateral under the lease until the BoM loan is paid.  Once the loan is paid, BPD can no longer look to the collateral as security for any other obligations owed by HB under the lease (e.g. the payment of rent).

I am again sending this to David for him to review at the same time.  In the attached I have accepted all of my changes I had proposed last Friday afternoon so the only thing in redline is the change to address the foregoing – which is in redline.

ASAP Please let me know if this this acceptable to Hyperblock.  Once I have obtained everyone's consent to the documents I will send clean copies out for execution.

-- Jaymie

**James A. Bowditch**

**President**

EXHIBIT 18.
PAGE 11

Boone Karlberg P.C.

201 West Main St., Suite 300

PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646

Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

--
Phone - 650.409.7326

Executive Assistant - Kristen Martin - kristen@hyperblock.co - 720.390.8023

LinkedIn

Confidentiality Note: This e-mail and any attachments are confidential and protected by legal privilege. Please be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete all copies from your system. Thank you for your cooperation.

EXHIBIT 19.(i)
PAGE 1

# FOURTH AMENDMENT
## TO
## COMMERCIAL LEASE AGREEMENT

THIS FOURTH AMENDMENT TO LEASE AGREEMENT ("Fourth Amendment") is entered into effective as of January 23, 2019, by and between **Bonner Property Development, LLC**, a Montana limited liability company ("Landlord"), and **Hyperblock LLC**, a Delaware limited liability company ("Tenant").

## Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.      The Lease was assigned to and assumed by Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").  The First Amendment, Second Amendment and Third Amendment are collectively referred to herein as the "Lease Amendments".

E.      As part of certain expansions and improvements Tenant is conducting at the Bonner Mill Site in Bonner, Montana, Landlord has provided certain benefits to Tenant in exchange for which Tenant is agreeable to a modification of the revised description of the "Property" to provide that certain Tenant improvements to the Property are to remain on the Property upon a termination or expiration of the Lease.

F.      The parties wish to amend the Lease, as previously modified by the Second Amendment, as set forth in this Fourth Amendment.

//

//

//

//

//

## Amendments

Landlord and Tenant agree as follows:

1. <u>Property</u>.

    a.    <u>Revised Description of "Property"</u>.  The first paragraph of **Section 1.a.** shall be amended and restated in its entirety to read as follows:

The following premises located within various improvements located within the Bonner Mill Site in the City of Bonner Missoula County, Montana (collectively, the "Property"):

    i.    A portion of the total square footage of the "Planer Building" for a total of 234,949 square feet as shown on the site plan attached as **Exhibit A**.  The Planer Building in which the Property is located is approximately 300,715 square feet in total.

    ii.    A portion of the total square footage of the "Sorter Building" for a total of 9,000 square feet as shown on the site plan attached as **Exhibit B** (the "Property").  The Sorter Building in which the Property is located is approximately 68,000 square feet in total.

Any fixtures and personal property located on or about the Property as of the Lease Commencement Date (defined below) shall be considered part of the Property hereby leased and subject to all terms and conditions hereof.  The term "Fixture" shall refer to those items so permanently attached or embedded to as to be considered part of the premises, as defined in Section 70-15-103, MCA.  Upon termination or expiration of this Lease for any reason, Tenant shall be entitled to remove from the Property any improvements that Tenant has made to the Property and that are not considered "Fixtures."  As used herein the term "Fixture" shall not include unattached personal property, furniture, or trade fixtures of Tenant including those set forth in **Exhibit E-1**, attached hereto and incorporated herein by reference.  Furthermore, however, whether or not best legally described as Fixtures, all property relating to electrical supply and distribution shall remain with the Property and become the property of Landlord at the termination of the Lease, including but not limited to the property described in **Exhibit E-2**, attached hereto and incorporated herein by reference.

Landlord acknowledges and agrees that an important inducement to Tenant's agreement to expand the Property leased by Tenant is Landlord's agreement to lend to Tenant $1,200,000.00 pursuant to the terms of that certain Promissory Note between Landlord as lender and tenant as Borrower, dated December 23, 2016.

land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

2. <u>Remaining Provisions of Lease</u>. To the extent not modified herein, all remaining provisions of the Lease and Lease Amendments shall remain in full force and effect, and are hereby reaffirmed.

3. <u>Counterparts</u>. This Fourth Amendment may be signed in counterparts and the counterparts assembled into one or more originals. The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

IN WITNESS WHEREOF this Fourth Amendment to Lease has been executed effective the date and year first above written.

LANDLORD:                                          TENANT:

Bonner Property Development, LLC                   Hyperblock LLC

By: _____                        By: _____
Stephen Nelson, Co-Manager                         Print name:  Sean Walsh
                                                   Its:  Chief Executive Officer

By: _____
Michael Boehme, Co-Manager

EXHIBIT 19.(i)
PAGE 4

EXHIBIT E-1

Items not to Remain with Property or be Treated as Fixtures

- All servers
- All network equipment

EXHIBIT E-2

Items to Remain with Property and Landlord Whether or not Fixtures

- All electrical supply and distribution related property of any kind, including but not limited to substations, distribution lines, poles, switching gear, fans, panels, fans, wire, fuse systems
- 5,000 KVA substations with associated switch gear
- 225A distribution panels with main breaker
- 500 KVA transformers 480Vto 208V
- 36" Tubeaxial 3HP fans
- 60" Tubeaxial 20Hp fans
- 2500 feet of cable tray
- 2500 feet of pallet racking
- 150,000 feet of 10 gauge wire
- 5 section 15KV fuse disconnect (outdoor)

EXHIBIT 19.(i)
PAGE 6

EXHIBIT F

Bare Land located behind the Sorter building



EXHIBIT 19.(i)
PAGE 8

EXHIBIT G

Land for the power substation consisting of 15,625 square feet (125 x 125)

EXHIBIT 19.(i)
PAGE 9



# SIDE AGREEMENT

THIS SIDE AGREEMENT (this "**Agreement**") is entered into as of January 23, 2019, by and between **Bonner Property Development, LLC**, a Montana limited liability company ("Landlord") and **Hyperblock LLC**, a Delaware limited liability company ("Tenant").

# RECITALS

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease. Capitalized terms not otherwise defined herein shall be as defined in the Lease and/or Lease Amendments.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017, and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (which together with the Third Amendment, defined below, are herein collectively referred to as the "Lease Amendments").

C.      The Lease was assigned to and assumed by Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed the Third Amendment to Commercial Lease Agreement, effective December 13, 2018 (the "Third Amendment") to allow Tenant to expand and improve its space within the Bonner Mill Site in Bonner, Montana, to undertake some improvements and to extend the term of the Lease.

E.      As part of the expansion and further improvements, Tenant is engaging in fundraising through equity contributions of a minimum of $3,000,000.00 (USD) and from additional borrowing of $2,625,000.00 (USD) pursuant to the New Loan from the Bank of Montana (as defined in the Third Amendment).  Tenant has committed to the expenditure of certain of the new equity proceeds and all of the proceeds of the New Loan to improvements to be located on the Property (as that term is defined in the Lease as amended by the Lease Amendments).

F.      In connection with the New Loan, Landlord agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Third Amendment and that certain Credit Enhancement Agreement between Tenant and Landlord executed December 13, 2018, including that Landlord shall not be obligated to approve further disbursements by the Bank of Montana under the New Loan except and until Tenant has provided reasonable evidence to

Landlord that Tenant has raised at least $3,000,000.00 in New Equity proceeds, among other obligations.

      G.      Although Tenant continues its efforts to raise New Equity proceeds, Tenant has not yet raised at least $3,000.000.00.

      H.      The parties wish to move forward to construct the New Substation despite New Equity proceeds not yet being contributed, and to document their agreements herein.

All dollar figures in this Agreement are U.S. Dollars.


### AGREEMENT

      NOW, THEREFORE, in consideration of the foregoing recitals, which are hereby incorporated into this Agreement as if fully set forth herein, and the following terms and conditions, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

      **1.**      Tenant shall deposit $1,000,000.00 into its account at the Bank of Montana.

      **2.**      Such funds shall only be used for improvements on the Property as further described in the Third Amendment, and as drawn and disbursed under the procedures provided therein.

      **3.**      Once $1,000,000.00 has been deposited and disbursed in accordance with the terms and conditions of the Third Amendment, Landlord shall provide Landlord's approval and authorization to Bank of Montana and/or the applicable title company for advances on and disbursements from the New Loan in the amount of up to $1,000,000.00, which shall also be disbursed through title and applied in accordance with the terms of the Third Amendment.  In this regard, Landlord and Tenant agree that while Tenant shall diligently continue its efforts to raise New Equity proceeds, Tenant shall not be obligated to provide Landlord evidence that Tenant has raised at least $3,000,000.00 in New Equity proceeds as condition to Landlord approving up to (but no more than) $1,000,000.00 in disbursements by Lender under the New Loan, and that subsection 1.b.II.ix) of the Lease (as set forth in subsection 1.c. of the Third Amendment) is modified accordingly.

      **4.**      All remaining provisions of the Lease and Lease Amendments shall remain in full force and effect, and are hereby reaffirmed.

EXHIBIT 19.(ii)
PAGE 3

**5.**      This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute and be construed as one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**[*Signature pages follow*]**

**TENANT:**

Hyperblock LLC, a Delaware limited liability company

By: _____

Sean Walsh

Its Chief Executive Officer

**LANDLORD:**

Bonner Property Development, LLC., a Montana limited liability company

By: _____

Stephen Nelson

Co-Manager

By: _____

Michael Boehme

Co-Manager

**Exhibit 20.**      *[Dec. #25]* Emails RE restructuring:

(i)      Email from Bowditch to DHB on 01/18/2019 at 2:51 PM (with statement by Jaymie regarding Walsh's approval of revisions: "I think Sean is okay with the revisions to Exhibit E that Steve has proposed.")

(ii)      Email from Bowditch to DHB (CC to Walsh) on 01/31/2019 at 9:37 AM with attached "Collateral Lease Assignment that both HB and PS have approved";

| From: | Jaymie Bowditch |
|---|---|
| To: | David Bjornson |
| Cc: | Jill Broughton |
| Subject: | RE: Side Agreement |
| Date: | Friday, January 18, 2019 3:08:26 PM |
| Attachments: | Second Lease Amendment.BPD - Project Spokane - 2.10.17 (00512248-2).docx |

David,

I think Sean is okay with the revisions to Exhibit E that Steve has proposed.  As to the changes to the second lease amendment itself, attached is what I think is the final version in Word. Could you please modify the language at the top of Page 2 you think needs to be modified so I can review?

Also, as I mentioned the other day Project Spokane is in the process of "restructuring" the debt Hyperblock still owes under the APA.  One of the things we will be requesting is a collateral assignment of Hyperblock, LLC's interest as a tenant under the lease with BPD.  We will likely need some consent to this from BPD (e.g. BPD agreeing to copy PS on any lease default notices).  I am telling you this because Sean thinks he is okay with removing the substation equipment from Exhibit E if BPD will be reasonable in consenting to whatever may be needed for this collateral assignment.  I am certain BPD will be since it does not detrimentally affect BPD (and in fact is likely a benefit to BPD) but Sean asked that I confirm.

Therefore, please do and I think we can put this one to bed.

-- Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

EXHIBIT 20.
PAGE 3

*The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

---

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Friday, January 18, 2019 2:26 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

Then yes we are good I think with that.   In addition to the revision of Exhibit E, the flush language in the paragraph at the top of page 2 will need to be revised.   David

_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
**Email:  david@bjornsonlaw.com**

*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

---

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Friday, January 18, 2019 2:23 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

That is my understanding.

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199

EXHIBIT 20.
PAGE 4

Phone: 406.543.6646

Fax: 406.532.5752

www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Friday, January 18, 2019 2:22 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

I think the answer is yes.   The network equipment is related to the servers, correct? David

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Friday, January 18, 2019 2:16 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

Dave,

Just so I am clear, if we back everything out of Exhibit E in the attached except for "all servers" and "all network equipment" is that okay with Steve and Mike?

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752

www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Friday, January 18, 2019 2:10 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

He looked it over and communicated that the servers would not be included but all else would.   Thanks.  David

_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
**Email:  david@bjornsonlaw.com**
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Thursday, January 17, 2019 11:50 AM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

I understand.  Have Steve look at that second amendment and let you know, as soon as he can, what items he wants to remain upon a lease termination or expiration.  I'll then get that

info to Sean and Dan for their review.

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Thursday, January 17, 2019 10:09 AM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

Will do.   I think they will be good with it.   I know they will want to do the other part now also.   David
_____

## David H. Bjornson

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
Email:  david@bjornsonlaw.com
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Thursday, January 17, 2019 10:01 AM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

David,

I just got off the phone with Sean and Dan.  Both are fine with the Side Agreement with the changes I made to clarify loan proceeds are capped at $1MM without proof of $3MM in new equity raised.  Let me know when BPD approves and I'll get Sean to sign and then deposit the $1MM with B of M.

--Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** Jaymie Bowditch
**Sent:** Wednesday, January 16, 2019 3:54 PM
**To:** 'David Bjornson' <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>

**Subject:** RE: Side Agreement

Looks good.  Let me know when BPD approves and I'll get Sean to sign.

> [ ]

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Wednesday, January 16, 2019 3:42 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

That looks good to me.  Forwarding now.  Here is how I saved them.  David

_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
Email:  david@bjornsonlaw.com
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this*

EXHIBIT 20.
PAGE 9

*communication in error, please notify us immediately by telephone and delete the message from your system.*

---

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Wednesday, January 16, 2019 2:49 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

David,

Sorry for the confusion.  Take a look at Section 3 now.

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

---

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

---

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Wednesday, January 16, 2019 2:24 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Side Agreement

Jaymie – it was not my understanding that the $3M item was waived except as to the $1M and $1M.  Did you have input to the contrary?  David

---

## David H. Bjornson

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
**Email:  david@bjornsonlaw.com**
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

---

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Wednesday, January 16, 2019 1:50 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Subject:** RE: Side Agreement

David,

I actually think what your associate drafted is quite good and not overkill.  In fact, I have made a couple of minor change and added some language to Para. 3, all in redline in the attached.

I will be speaking to Sean this afternoon at 3:00.  I think he will be fine with this document so please let me know if you and BPD are okay with what is attached.

-- Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

---

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.*

**From:** David Bjornson <david@bjornsonlaw.com>
**Sent:** Monday, January 14, 2019 7:01 PM
**To:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Subject:** Side Agreement

This is probably overkill for the situation – an associate in our firm drafted it up for consideration.   I am sending it to you before our clients have reviewed and commented.  Also, we should consider modifying Exhibit E to 2nd Amendment in relation to the issues raised about the power installations.

David

---

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
**Email:  david@bjornsonlaw.com**
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

EXHIBIT 20.
PAGE 12

| | |
|---|---|
| **From:** | Jaymie Bowditch |
| **To:** | David Bjornson |
| **Cc:** | Sean Walsh; Kristen Martin |
| **Subject:** | Collateral Assignment of Lease |
| **Date:** | Thursday, January 31, 2019 9:37:21 AM |
| **Attachments:** | Collateral Assignment of Lease (00663112-3).docx |

David,

As you may recall, Project Spokane, LLC and Hyperblock LLC are restructuring some aspects of the deferred obligation that HB owes to PS pursuant to the asset sale last summer.  In exchange for PS agreeing to do so, PS has requested and HB has agreed to a collateral assignment of the lease between HB and BPD.

In that regard attached is a Collateral Lease Assignment that both HB and PS have approved. Could you review on behalf of BPD and let me know if you have any concerns?  The HB board is meeting today at 12:30 to (hopefully) approve this restructuring.  While I don't expect you to be able to look at this prior to the board meeting, any urgency you can place on reviewing this would be appreciated.  I don't expect you'll have any concern since all we're asking for from BPD is consent to PS stepping into the lease as Tenant if needed and for BPD to copy PS on any lease default notices to HB.

Thanks David.  Please call if you have questions.


-- Jaymie


**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646
Fax: 406.532.5752
www.boonekarlberg.com

_____

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, please be informed that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

*The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that*

## COLLATERAL ASSIGNMENT OF LEASE

THIS COLLATERAL ASSIGNMENT OF LEASE (this "Assignment") dated as of **February 1**, **2019**, is entered into by and between Hyperblock LLC, a Delaware limited liability company (the "Assignor"), and Project Spokane, LLC, a Colorado limited liability company (the "Assignee").

### Recitals

A.      Effective March 1, 2016, Bonner Property Development, LLC ("Lessor") and Assignee entered into that certain Commercial Lease Agreement, as amended (the "Lease"), for certain real property located in the Bonner Mill Site in Bonner, Montana as further described in the Lease (the "Subject Property").

B.      The Lease was assigned to and assumed by Assignor pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018 executed in conjunction with Assignor's acquisition of substantially all of the assets of Assignee pursuant to an Asset Purchase Agreement between Assignor as buyer and Assignee as seller (the "Purchase Agreement").

C.      Pursuant to the terms of the Purchase Agreement as subsequently modified by a Secured Promissory Note (the "Note"), dated as of February 1, 2019 , executed by Assignor and Hyperblock Inc, an Ontario company that is the parent of Assignor (the "Parent") in conjunction herewith, Assignor and Parent are indebted to Assignee in the amount of $5,000,000 CAD.

D.      The Note is secured by those certain Security Agreements dated as of  February 1 , 2019, by and between Assignor and Assignee (the "Assignor Security Agreement") and by and between the Parent and the Assignee (the "Parent Security Agreement").  The Assignor Security Agreement, the Parent Security Agreement and the Note are collectively referred to herein as the "Note Documents".

E.      To further secure the Note, Assignor has agreed to assign to Assignee, and Assignee has agreed to take from Assignor, an assignment of the Lease for collateral purposes, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and in order to induce Assignee to extend accommodations to Assignor and Parent as evidenced by the Note, Assignor hereby agrees with the Assignee for the benefit of Assignee as follows:

1.      **Assignment**.  Assignor, in consideration of the Note and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby absolutely and unconditionally grant, convey, assign, transfer and set over unto Assignee all rights, interests and estates of Assignor in, to and under the Lease, together with all renewals and extensions of the Lease and other agreements and all other leases or agreements that may hereafter be entered into which cover all or any portion of the Subject Property and together with all of Assignor's rights to collect and receive any rents and charges that it may receive from approved users, operators, sublessees and permitees (the "Rents"). This assignment is for the purpose of securing payment and performance of Assignor under the Note Documents.  Assignee, by acceptance hereof, agrees not to take any action to assert its rights to possession of the Subject Property or Assignor's rights to collect and receive the Rents unless and until there shall exist or occur an Event of Default (as defined in the Note).  Assignee acknowledges and agrees that Assignee's rights to the Rents upon an Event of Default under the Note and a default under the Lease shall be subject and subordinate to the rights of Lessor to said Rents, if any.

**2.     Representations and Warranties of Assignor**. Assignor hereby represents and warrants to Assignee that:

      **a.**     Assignor has the right to assign the Lease and the Rents hereby assigned and no other person or entity has any right, title or interest therein;

      **b.**     Assignor has performed and will duly and punctually perform all of the material terms, covenants, conditions and warranties of the Lease;

      **c.**     Assignor has not at any time prior to the date hereof exercised any right to subordinate any Lease to any deed of trust or mortgage or any other encumbrance of any kind;

      **d.**     Assignor has not executed any prior assignments of the Lease or the Rents;

      **e.**     Assignor has performed no act or executed any other instrument which might prevent Assignee from enjoying and exercising any of its rights and privileges evidenced hereby;

      **f.**     The Lease is valid and subsisting and in full force and effect and unmodified; and

      **g.**     There are no defaults now existing under the Lease and no event has occurred which with the passage of time or the giving of notice, or both, would constitute such a default.

**3.     Limitation of Assignee's Liability**.  Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder.  Assignor shall and does hereby agree to indemnify, defend and hold Assignee harmless from and against any and all liability, loss or damage incurred under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, and from any and all claims and demands whatsoever that may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease, other than claims and demands that arise in connection with the gross negligence or willful misconduct of the Assignee.  Should Assignee incur any such liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, or in defense of any such claims or demands, the amount thereof, including reasonable and documented out-of-pocket costs, expenses and attorney fees, shall be secured hereby and Assignor shall reimburse Assignee therefor promptly upon written demand, failing which Assignee may, at its option, declare all indebtedness secured hereby and by the Note Documents to be immediately due and payable.  This Assignment shall not operate to place responsibility upon Assignee for the control, care, management or repair of the Subject Property, nor for the carrying out of any of the terms and conditions of the Lease; nor shall it operate to make Assignee responsible or liable for any waste committed on the Subject Property or for any dangerous or defective condition of the Subject Property, or for any negligence in the management, upkeep, repair, or control of the Subject Property resulting in loss or injury or death to any tenant, licensee, employee, or stranger.

**4.     Assignee's Remedies**. This Assignment is primary in nature to the obligation evidenced and secured by the Note.  Assignor agrees that Assignee may enforce this Assignment without first resorting to or exhausting any other security or collateral; provided, however, that nothing herein contained shall prevent Assignee from suing on the Note or exercising any other right under any document securing the payment of the Note.

**5.     No Waiver**.  Nothing contained herein and no act done or omitted by Assignee pursuant to the powers and rights granted hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note or a waiver or curing of any default hereunder or under the Note, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of the Note. The right of Assignee to collect the interest and indebtedness

evidenced by the Note and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

6. **Term of Assignment**. If the Note and all other indebtedness secured hereby are paid as the same become due and payable and if all of the covenants, warranties, undertakings and agreements made in the Note and in this Assignment are kept and performed, this Assignment shall become null and void and of no further force and effect but the affidavit, certificate, letter or statement of any officer, agent or attorney of Assignee showing any portion of the Note or such other indebtedness to remain unpaid or any of such covenants, warranties, undertakings and agreements not to be kept or performed shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon.

7. **Survival; Attornment**. Upon fourteen (14) days' notice from Assignee to Lessor of the occurrence and continuation of any Events of Default (as that term is defined in the Note) under the Note, then Lessor, Assignor and Assignee do hereby agree that the Lease and all terms, provisions, covenants and agreements thereof shall survive the occurrence and continuation of any such Events of Default, and the Lease shall remain in full force and effect, in accordance with and subject to all of its terms, provisions, agreements and covenants as a direct lease between Lessor (as lessor) and Assignee or any assignee of Assignee (as tenant). Lessor shall, in such event, exercise and undertake all of the rights and obligations of the lessor in and under the Lease and Assignee or such assignee, as lessee, shall keep, observe and perform as to Lessor all of the terms, covenants and conditions to be kept by the lessee pursuant to the Lease, and Lessor shall have the same remedies for nonperformance or default of any agreement or term of the Lease as it would had or would have had as lessor under the Lease if no such Event of Default had occurred and was continuing. Such notices to Landlord shall be given to Landlord in the manner provided in the Lease at the following address:

> Bonner Property Development, LLC
> 224 N. Higgins Avenue
> Missoula, Montana  59802

or at such other address as Lessor shall provide Assignee in writing in the same manner.

8. **Notice of Default**. For and so long as any obligations remain outstanding under any Note Document, Lessor agrees that, prior to terminating the Lease or taking any proceedings to enforce any such termination thereof for any reason other than the expiration of the term of the Lease, Lessor shall give Assignee, at the same time it gives Assignor notice thereof, prior notice in writing of any default under the Lease, specifying the reason for such default. Such notice shall be given to Assignee in the same manner provided in the Lease at the following address:

| | |
|---|---|
| for Holder: | Project Spokane, LLC |
| | 5619 DTC Parkway #475 |
| | Greenwood Village, Colorado 80111 |
| | Attn:  Sean Walsh |
| | Email:  sean@redwoodcityventures.com |
| | |
| with a copy to: | Boone Karlberg P.C. |
| | 201 West Main St., Suite 300 |
| | PO Box 9199 |
| | Missoula, MT 59807-9199 |
| | Attn:  James A. Bowditch |
| | Email: jbowditch@boonekarlberg.com |

or at such other address as Assignee shall provide Lessor in writing in the same manner.

**9.**     **Additional Rights of Assignee**.

**a.**     Assignee may take or release other security for the payment of the Note and other indebtedness secured by the Note, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the satisfaction of the Note and such other indebtedness without prejudice to any of its rights under this Assignment.

**b.**     Assignee may at any time and from time to time in writing: (i) waive compliance by Assignor with any covenant herein made by Assignor to the extent and in the manner specified in such writing; (ii) consent to Assignor doing any act that hereunder Assignor is prohibited from doing, or consent to Assignor failing to do any act which hereunder Assignor is required to do, to the extent and in the manner specified in such writing; or (iii) release any portion of the Subject Property and/or the Lease, or any interest therein, from this Assignment. No such act shall in any way impair the rights of Assignee hereunder except to the extent specifically agreed to by Assignee in such writing.

**c.**     The rights and remedies of Assignee hereunder shall not be impaired by any indulgence, including, but not limited to, (i) any renewal, extension, or modification that Assignee may grant with respect to any indebtedness secured hereby; (ii) any surrender, compromise, release, renewal, extension, exchange, or substitution that Assignee may grant in respect of any item of the Subject Property and/or the Lease or any part thereof or any interest therein; or (iii) any release or indulgence granted to any endorser, guarantor or surety of any indebtedness secured hereby.

**10.**     **Severability**.  A determination that any provision of this Assignment is unenforceable or invalid shall not affect the enforceability or validity of any other provision and any determination that the application of any provision of this Assignment to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

**11.**     **No Merger**.  Notwithstanding (a) the fact that any Lease or the leasehold estate created thereby may be held, directly or indirectly, by or for the account of any person or entity that shall have an interest in the fee estate of the Subject Property; (b) the operation of law; or (c) any other event, the lessee's leasehold estate under such Lease shall not merge into the fee estate and the lessee shall remain obligated under such Lease as assigned by this Assignment.

**12.**     **Binding**.  The terms, provisions, representations, and warranties herein contained shall inure to the benefit of, and bind, the parties hereto and their respective heirs, representatives, successors and assigns, all Lessor approved subtenants and assigns of this Lease, and subsequent holders of the Note. All references in this Assignment to Assignor or Assignee shall be deemed to include all such heirs, representatives, successors and assigns of such respective party.

**13.**     **Additional Documentation**.  Assignor agrees to and shall promptly execute or cause to be executed and deliver to Assignee a specific assignment of each and every lease hereafter executed and covering all or a portion of the Subject Property, such specific assignment to be in the form of this Assignment.

**14.**     **Construction**.  Within this Assignment, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural, unless the context otherwise requires. The provisions of this Assignment are intended to supplement the provisions contained in the Note. In the event of any conflict between the terms of this

Assignment and the terms of the Note, the terms of this Assignment shall prevail insofar as the Lease is concerned, but the terms of the Note shall prevail in all other respects.

**15.**     **Counterparts**.  This Assignment may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute one instrument.

**16.**     **No Third Party Beneficiaries**.  It is expressly agreed by the parties hereto that this Assignment shall not be construed or deemed made for the benefit of any third party or parties.

**17.**     **Entire Agreement**.  This Assignment and the Note contain the entire agreement concerning the assignment of the Lease between the parties hereto. No variations, modifications or changes herein or hereof shall be binding upon any party hereto, unless set forth in a document duly executed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first written above.

**ASSIGNOR:**

Hyperblock, LLC

By: _Inder Sarwi_

Title: _Interim CFO_

**ASSIGNEE:**

PROJECT SPOKANE, LLC
         By: PS Mgt LLC, its Manager

By: _Sean Walsh_
         Sean Walsh, Manager

EXHIBIT 21.
PAGE 6

## LESSOR'S CONSENT

The undersigned, being the Lessor under the Lease described above, does hereby consent to the terms and conditions of the foregoing Assignment. Further, Lessor covenants to Assignee that Lessor shall give notice to Assignee as specified in Section 8, above, and Assignee, at its option, shall have the right to correct any condition or to cure any default. Nothing in this instrument shall relieve Assignor of its obligations under the Lease. This Consent is given as of the date first written above.

**LESSOR:**

Bonner Property Development, LLC

By: _____
Stephen Nelson, Co-Manager

By: _____
Michael Boehme, Co-Manager

**Exhibit 22**   *[Dec. #26]* Emails between Bowditch, Walsh, Nelson, Bjornson, regarding Collateral Assignment

(i)     Email from Bowditch to Bjornson on 01/31/2019 at 5:57 PM, regarding BPD's rights on default;

(ii)    Emails between Bjornson and Bowditch on 01/31/2019 at 9:11-9:25 PM RE priority of BPD's interests

(iii)   Email from Bowditch to Bjornson on 02/01/2019 at 11:10 AM regarding changes to Collateral Assignment with attached revised Collateral Assignment;

(iv)    Email from Bowditch to Bjornson 02/07/2019 at 6:38 PM with Collateral Assignment executed by HyperBlock and Project Spokane and requesting Nelson execute on behalf of BPD

(v)     Email from Bowditch to Bjornson 02/20/2019 at 12:36 PM regarding advising Walsh on status of Collateral Assignment

EXHIBIT 22
PAGE 2

Collateral Assignment of Lease
(00663112-4).docx

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Thursday, January 31, 2019 5:57 PM
22(i) **To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Sean Walsh <sean@redwoodcityventures.com>; Kristen Martin <ea@projectspokane.co>; Jill
Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Collateral Assignment of Lease

David,

1. I agree with you.  Section 8 really is a notice for default that may result in a termination
   but is poorly worded.  I have changed the language.  Let me know if the changes I make
   to Section 8 work for you and BPD.

2. I agree that in the event of a default and termination of the Lease PS's right to any rents
   from subtenants would be subject to BPD's rights because the lease would be
   terminated and PS would have no such rights.  However, if the only default of
   Hyperblock is under the Note, PS would have the right to step in as tenant and, if it did,
   would have the right to those rents that would be superior to BPD (because the lease
   remains in effect).  I have made some changes to Section 1.  Please let me know if this
   addresses any concerns you have.

 Please take a look at let me know if this works.

 Thanks David.

 -- Jaymie

**James A. Bowditch**
**President**
Boone Karlberg P.C.
201 West Main St., Suite 300
PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646

EXHIBIT 22
PAGE 3

# COLLATERAL ASSIGNMENT OF LEASE

THIS COLLATERAL ASSIGNMENT OF LEASE (this "Assignment") dated as of **January ____, 2019**, is entered into by and between Hyperblock LLC, a Delaware limited liability company (the "Assignor"), and Project Spokane, LLC, a Colorado limited liability company (the "Assignee").

## Recitals

A.     Effective March 1, 2016, Bonner Property Development, LLC ("Lessor") and Assignee entered into that certain Commercial Lease Agreement, as amended (the "Lease"), for certain real property located in the Bonner Mill Site in Bonner, Montana as further described in the Lease (the "Subject Property").

B.     The Lease was assigned to and assumed by Assignor pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018 executed in conjunction with Assignor's acquisition of substantially all of the assets of Assignee pursuant to an Asset Purchase Agreement between Assignor as buyer and Assignee as seller (the "Purchase Agreement").

C.     Pursuant to the terms of the Purchase Agreement as subsequently modified by a Secured Promissory Note (the "Note"), dated as of _____, 2018, executed by Assignor and Hyperblock Inc, an Ontario company that is the parent of Assignor (the "Parent") in conjunction herewith, Assignor and Parent are indebted to Assignee in the amount of $5,000,000 CAD.

D.     The Note is secured by those certain Security Agreements dated as of _____, 2019, by and between Assignor and Assignee (the "Assignor Security Agreement") and by and between the Parent and the Assignee (the "Parent Security Agreement").  The Assignor Security Agreement, the Parent Security Agreement and the Note are collectively referred to herein as the "Note Documents".

E.     To further secure the Note, Assignor has agreed to assign to Assignee, and Assignee has agreed to take from Assignor, an assignment of the Lease for collateral purposes, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and in order to induce Assignee to extend accommodations to Assignor and Parent as evidenced by the Note, Assignor hereby agrees with the Assignee for the benefit of Assignee as follows:

1.     **Assignment**.  Assignor, in consideration of the Note and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby absolutely and unconditionally grant, convey, assign, transfer and set over unto Assignee all rights, interests and estates of Assignor in, to and under the Lease, together with all renewals and extensions of the Lease and other agreements and all other leases or agreements that may hereafter be entered into which cover all or any portion of the Subject Property and together with all of Assignor's rights to collect and receive any rents and charges that it may receive from approved users, operators, sublessees and permitees (the "Rents").  This <u>assignment is for the purpose of securing payment and performance of Assignor under the Note Documents.  Assignee, by acceptance hereof, agrees not to take any action to assert its rights to possession of the Subject Property or</u> Assignor's rights to collect and receive the Rents unless and until there shall exist or occur an Event of Default (as defined in the Note).

2.     **Representations and Warranties of Assignor**. Assignor hereby represents and warrants to Assignee that:

a.     Assignor has the right to assign the Lease and the Rents hereby assigned and no other person or entity has any right, title or interest therein;

b.     Assignor has performed and will duly and punctually perform all of the material terms, covenants, conditions and warranties of the Lease;

c.     Assignor has not at any time prior to the date hereof exercised any right to subordinate any Lease to any deed of trust or mortgage or any other encumbrance of any kind;

d.     Assignor has not executed any prior assignments of the Lease or the Rents;

e.     Assignor has performed no act or executed any other instrument which might prevent Assignee from enjoying and exercising any of its rights and privileges evidenced hereby;

f.     The Lease is valid and subsisting and in full force and effect and unmodified; and

g.     There are no defaults now existing under the Lease and no event has occurred which with the passage of time or the giving of notice, or both, would constitute such a default.

3.     **Limitation of Assignee's Liability**.  Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder.  Assignor shall and does hereby agree to indemnify, defend and hold Assignee harmless from and against any and all liability, loss or damage incurred under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, and from any and all claims and demands whatsoever that may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease, other than claims and demands that arise in connection with the gross negligence or willful misconduct of the Assignee.  Should Assignee incur any such liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, or in defense of any such claims or demands, the amount thereof, including reasonable and documented out-of-pocket costs, expenses and attorney fees, shall be secured hereby and Assignor shall reimburse Assignee therefor promptly upon written demand, failing which Assignee may, at its option, declare all indebtedness secured hereby and by the Note Documents to be immediately due and payable.  This Assignment shall not operate to place responsibility upon Assignee for the control, care, management or repair of the Subject Property, nor for the carrying out of any of the terms and conditions of the Lease; nor shall it operate to make Assignee responsible or liable for any waste committed on the Subject Property or for any dangerous or defective condition of the Subject Property, or for any negligence in the management, upkeep, repair, or control of the Subject Property resulting in loss or injury or death to any tenant, licensee, employee, or stranger.

4.     **Assignee's Remedies**. This Assignment is primary in nature to the obligation evidenced and secured by the Note.  Assignor agrees that Assignee may enforce this Assignment without first resorting to or exhausting any other security or collateral; provided, however, that nothing herein contained shall prevent Assignee from suing on the Note or exercising any other right under any document securing the payment of the Note.

5.     **No Waiver**.  Nothing contained herein and no act done or omitted by Assignee pursuant to the powers and rights granted hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note or a waiver or curing of any default hereunder or under the Note, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of the Note. The right of Assignee to collect the interest and indebtedness

evidenced by the Note and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

      **6.**      <u>**Term of Assignment**</u>.  If the Note and all other indebtedness secured hereby are paid as the same become due and payable and if all of the covenants, warranties, undertakings and agreements made in the Note and in this Assignment are kept and performed, this Assignment shall become null and void and of no further force and effect but the affidavit, certificate, letter or statement of any officer, agent or attorney of Assignee showing any portion of the Note or such other indebtedness to remain unpaid or any of such covenants, warranties, undertakings and agreements not to be kept or performed shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon.

      **7.**      <u>**Survival; Attornment**</u>.  Upon fourteen (14) days' notice from Assignee to Lessor of the occurrence and continuation of any Events of Default (as that term is defined in the Note) under the Note, then Lessor, Assignor and Assignee do hereby agree that the Lease and all terms, provisions, covenants and agreements thereof shall survive the occurrence and continuation of any such Events of Default, and the Lease shall remain in full force and effect, in accordance with and subject to all of its terms, provisions, agreements and covenants as a direct lease between Lessor (as lessor) and Assignee or any assignee of Assignee (as tenant).  Lessor shall, in such event, exercise and undertake all of the rights and obligations of the lessor in and under the Lease and Assignee or such assignee, as lessee, shall keep, observe and perform as to Lessor all of the terms, covenants and conditions to be kept by the lessee pursuant to the Lease, and Lessor shall have the same remedies for nonperformance or default of any agreement or term of the Lease as it would had or would have had as lessor under the Lease if no such Event of Default had occurred and was continuing. Such notices to Landlord shall be given to Landlord in the manner provided in the Lease at the following address:

            Bonner Property Development, LLC
            224 N. Higgins Avenue
            Missoula, Montana  59802

or at such other address as Lessor shall provide Assignee in writing in the same manner.

      **8.**      <u>**Notice of Default**</u>.  For and so long as any obligations remain outstanding under any Note Document, Lessor agrees that, prior to terminating the Lease or taking any proceedings to enforce any such termination thereof for any reason other than the expiration of the term of the Lease, Lessor shall give Assignee, at the same time it gives Assignor notice thereof, prior notice in writing of any default under the Lease, specifying the reason for such default.  Such notice shall be given to Assignee in the same manner provided in the Lease at the following address:

      for Holder:          Project Spokane, LLC
                        5619 DTC Parkway #475
                        Greenwood Village, Colorado 80111
                        Attn:  Sean Walsh
                        Email:  <u>sean@redwoodcityventures.com</u>

      with a copy to:        Boone Karlberg P.C.
                        201 West Main St., Suite 300
                        PO Box 9199
                        Missoula, MT 59807-9199
                        Attn:  James A. Bowditch
                        Email: <u>jbowditch@boonekarlberg.com</u>

or at such other address as Assignee shall provide Lessor in writing in the same manner.

9.      **Additional Rights of Assignee**.

    **a.**      Assignee may take or release other security for the payment of the Note and other indebtedness secured by the Note, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the satisfaction of the Note and such other indebtedness without prejudice to any of its rights under this Assignment.

    **b.**      Assignee may at any time and from time to time in writing: (i) waive compliance by Assignor with any covenant herein made by Assignor to the extent and in the manner specified in such writing; (ii) consent to Assignor doing any act that hereunder Assignor is prohibited from doing, or consent to Assignor failing to do any act which hereunder Assignor is required to do, to the extent and in the manner specified in such writing; or (iii) release any portion of the Subject Property and/or the Lease, or any interest therein, from this Assignment. No such act shall in any way impair the rights of Assignee hereunder except to the extent specifically agreed to by Assignee in such writing.

    **c.**      The rights and remedies of Assignee hereunder shall not be impaired by any indulgence, including, but not limited to, (i) any renewal, extension, or modification that Assignee may grant with respect to any indebtedness secured hereby; (ii) any surrender, compromise, release, renewal, extension, exchange, or substitution that Assignee may grant in respect of any item of the Subject Property and/or the Lease or any part thereof or any interest therein; or (iii) any release or indulgence granted to any endorser, guarantor or surety of any indebtedness secured hereby.

10.      **Severability**.  A determination that any provision of this Assignment is unenforceable or invalid shall not affect the enforceability or validity of any other provision and any determination that the application of any provision of this Assignment to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

11.      **No Merger**.  Notwithstanding (a) the fact that any Lease or the leasehold estate created thereby may be held, directly or indirectly, by or for the account of any person or entity that shall have an interest in the fee estate of the Subject Property; (b) the operation of law; or (c) any other event, the lessee's leasehold estate under such Lease shall not merge into the fee estate and the lessee shall remain obligated under such Lease as assigned by this Assignment.

12.      **Binding**.  The terms, provisions, representations, and warranties herein contained shall inure to the benefit of, and bind, the parties hereto and their respective heirs, representatives, successors and assigns, all Lessor approved subtenants and assigns of this Lease, and subsequent holders of the Note. All references in this Assignment to Assignor or Assignee shall be deemed to include all such heirs, representatives, successors and assigns of such respective party.

13.      **Additional Documentation**.  Assignor agrees to and shall promptly execute or cause to be executed and deliver to Assignee a specific assignment of each and every lease hereafter executed and covering all or a portion of the Subject Property, such specific assignment to be in the form of this Assignment.

14.      **Construction**.  Within this Assignment, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural, unless the context otherwise requires. The provisions of this Assignment are intended to supplement the provisions contained in the Note. In the event of any conflict between the terms of this

Assignment and the terms of the Note, the terms of this Assignment shall prevail insofar as the Lease is concerned, but the terms of the Note shall prevail in all other respects.

      **15.**    <u>**Counterparts**</u>.  This Assignment may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute one instrument.

      **16.**    <u>**No Third Party Beneficiaries**</u>.  It is expressly agreed by the parties hereto that this Assignment shall not be construed or deemed made for the benefit of any third party or parties.

      **17.**    <u>**Entire Agreement**</u>.  This Assignment and the Note contain the entire agreement concerning the assignment of the Lease between the parties hereto. No variations, modifications or changes herein or hereof shall be binding upon any party hereto, unless set forth in a document duly executed by both parties.

      IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first written above.

**ASSIGNOR:**

Hyperblock, LLC

By: _____
Title: _____

**ASSIGNEE:**

Project Spokane, LLC

By: _____
Title: _____

EXHIBIT 22
PAGE 8

## <u>LESSOR'S CONSENT</u>

The undersigned, being the Lessor under the Lease described above, does hereby consent to the terms and conditions of the foregoing Assignment. Further, Lessor covenants to Assignee that Lessor shall give notice to Assignee as specified in Section 8, above, and Assignee, at its option, shall have the right to correct any condition or to cure any default.  Nothing in this instrument shall relieve Assignor of its obligations under the Lease.  This Consent is given as of the date first written above.

**LESSOR:**

Bonner Property Development, LLC


By: _____
Stephen Nelson, Co-Manager


By: _____
Michael Boehme, Co-Manager

EXHIBIT 22
PAGE 9

22(ii)

-----Original Message-----
From: Jaymie Bowditch
Sent: Thursday, January 31, 2019 9:25 PM
To: David Bjornson
Cc: Sean Walsh ; Kristen Martin ; Jill Broughton
Subject: Re: Collateral Assignment of Lease

David,

Maybe we should chat. But why would a lessor have a right to sub-rents prior to a lease termination? Until termination the tenant is still in lawful possession of the property with the right to cure the default.

James A. Bowditch

Boone Karlberg P.C.

Sent from my Pixel 2

On Thu, Jan 31, 2019 at 9:11 PM -0700, "David Bjornson" > wrote:

Jaymie –

22(ii)   I will review this, but in the meantime, let me clarify the issue about priority. I was concerned about a situation where there is a default under the Lease, but the Lease is not terminated. Whether or not PS steps into the lease as tenant, BPD should have priority to the rents and other revenues during those times and until PS steps in and cures, e.g. I hope I am not missing something on this train of thought. It happens.

Please consider this and reply before I review the attached. Thank you. David
_____
David H. Bjornson

Bjornson Jones Mungas, PLLC
2809 Great Northern Loop, Suite 100
Missoula, Montana 59808
(406) 721-8896
(406) 541-8037--fax
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
Email: david@bjornsonlaw.com
CONFIDENTIALITY NOTICE: The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above. If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.

Exhibit
22(iii)

EXHIBIT 22
PAGE 11

Collateral Assignment of Lease (00663112-4).docx

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Friday, February 01, 2019 11:10 AM
**To:** David Bjornson <david@bjornsonlaw.com>
**Subject:** RE: Collateral Assignment of Lease

David,

Thanks for the chat today.  Take a look at my changes to Section 1 – specifically the last sentence I just added – to see if that will work.

As reminder I also made some changes to Section 8 yesterday to clarify things.

-- Jaymie

Attachment to 22(iii)

EXHIBIT 22
PAGE 12

## COLLATERAL ASSIGNMENT OF LEASE

THIS COLLATERAL ASSIGNMENT OF LEASE (this "Assignment") dated as of **January ____, 2019**, is entered into by and between Hyperblock LLC, a Delaware limited liability company (the "Assignor"), and Project Spokane, LLC, a Colorado limited liability company (the "Assignee").

### Recitals

A.      Effective March 1, 2016, Bonner Property Development, LLC ("Lessor") and Assignee entered into that certain Commercial Lease Agreement, as amended (the "Lease"), for certain real property located in the Bonner Mill Site in Bonner, Montana as further described in the Lease (the "Subject Property").

B.      The Lease was assigned to and assumed by Assignor pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018 executed in conjunction with Assignor's acquisition of substantially all of the assets of Assignee pursuant to an Asset Purchase Agreement between Assignor as buyer and Assignee as seller (the "Purchase Agreement").

C.      Pursuant to the terms of the Purchase Agreement as subsequently modified by a Secured Promissory Note (the "Note"), dated as of _____, 2018, executed by Assignor and Hyperblock Inc, an Ontario company that is the parent of Assignor (the "Parent") in conjunction herewith, Assignor and Parent are indebted to Assignee in the amount of $5,000,000 CAD.

D.      The Note is secured by those certain Security Agreements dated as of _____, 2019, by and between Assignor and Assignee (the "Assignor Security Agreement") and by and between the Parent and the Assignee (the "Parent Security Agreement").  The Assignor Security Agreement, the Parent Security Agreement and the Note are collectively referred to herein as the "Note Documents".

E.      To further secure the Note, Assignor has agreed to assign to Assignee, and Assignee has agreed to take from Assignor, an assignment of the Lease for collateral purposes, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and in order to induce Assignee to extend accommodations to Assignor and Parent as evidenced by the Note, Assignor hereby agrees with the Assignee for the benefit of Assignee as follows:

1.      **Assignment**.  Assignor, in consideration of the Note and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby absolutely and unconditionally grant, convey, assign, transfer and set over unto Assignee all rights, interests and estates of Assignor in, to and under the Lease, together with all renewals and extensions of the Lease and other agreements and all other leases or agreements that may hereafter be entered into which cover all or any portion of the Subject Property and together with all of Assignor's rights to collect and receive any rents and charges that it may receive from approved users, operators, sublessees and permitees (the "Rents").  This <u>assignment is for the purpose of securing payment and performance of Assignor under the Note Documents.  Assignee, by acceptance hereof, agrees not to take any action to assert its rights to possession of the Subject Property or</u> Assignor's rights to collect and receive the Rents unless and until there shall exist or occur an Event of Default (as defined in the Note).  Assignee acknowledges and agrees that Assignee's rights to the Rents upon an Event of Default under the Note <u>and</u> a default under the Lease shall be subject and subordinate to the rights of Lessor to said Rents, if any .

**2.** **Representations and Warranties of Assignor**. Assignor hereby represents and warrants to Assignee that:

**a.** Assignor has the right to assign the Lease and the Rents hereby assigned and no other person or entity has any right, title or interest therein;

**b.** Assignor has performed and will duly and punctually perform all of the material terms, covenants, conditions and warranties of the Lease;

**c.** Assignor has not at any time prior to the date hereof exercised any right to subordinate any Lease to any deed of trust or mortgage or any other encumbrance of any kind;

**d.** Assignor has not executed any prior assignments of the Lease or the Rents;

**e.** Assignor has performed no act or executed any other instrument which might prevent Assignee from enjoying and exercising any of its rights and privileges evidenced hereby;

**f.** The Lease is valid and subsisting and in full force and effect and unmodified; and

**g.** There are no defaults now existing under the Lease and no event has occurred which with the passage of time or the giving of notice, or both, would constitute such a default.

**3.** **Limitation of Assignee's Liability**.  Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder.  Assignor shall and does hereby agree to indemnify, defend and hold Assignee harmless from and against any and all liability, loss or damage incurred under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, and from any and all claims and demands whatsoever that may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease, other than claims and demands that arise in connection with the gross negligence or willful misconduct of the Assignee.  Should Assignee incur any such liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, or in defense of any such claims or demands, the amount thereof, including reasonable and documented out-of-pocket costs, expenses and attorney fees, shall be secured hereby and Assignor shall reimburse Assignee therefor promptly upon written demand, failing which Assignee may, at its option, declare all indebtedness secured hereby and by the Note Documents to be immediately due and payable.  This Assignment shall not operate to place responsibility upon Assignee for the control, care, management or repair of the Subject Property, nor for the carrying out of any of the terms and conditions of the Lease; nor shall it operate to make Assignee responsible or liable for any waste committed on the Subject Property or for any dangerous or defective condition of the Subject Property, or for any negligence in the management, upkeep, repair, or control of the Subject Property resulting in loss or injury or death to any tenant, licensee, employee, or stranger.

**4.** **Assignee's Remedies**. This Assignment is primary in nature to the obligation evidenced and secured by the Note.  Assignor agrees that Assignee may enforce this Assignment without first resorting to or exhausting any other security or collateral; provided, however, that nothing herein contained shall prevent Assignee from suing on the Note or exercising any other right under any document securing the payment of the Note.

**5.** **No Waiver**.  Nothing contained herein and no act done or omitted by Assignee pursuant to the powers and rights granted hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note or a waiver or curing of any default hereunder or under the Note, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of the Note. The right of Assignee to collect the interest and indebtedness

EXHIBIT 22
PAGE 14

evidenced by the Note and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

6.    **Term of Assignment**.  If the Note and all other indebtedness secured hereby are paid as the same become due and payable and if all of the covenants, warranties, undertakings and agreements made in the Note and in this Assignment are kept and performed, this Assignment shall become null and void and of no further force and effect but the affidavit, certificate, letter or statement of any officer, agent or attorney of Assignee showing any portion of the Note or such other indebtedness to remain unpaid or any of such covenants, warranties, undertakings and agreements not to be kept or performed shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon.

7.    **Survival; Attornment**.  Upon fourteen (14) days' notice from Assignee to Lessor of the occurrence and continuation of any Events of Default (as that term is defined in the Note) under the Note, then Lessor, Assignor and Assignee do hereby agree that the Lease and all terms, provisions, covenants and agreements thereof shall survive the occurrence and continuation of any such Events of Default, and the Lease shall remain in full force and effect, in accordance with and subject to all of its terms, provisions, agreements and covenants as a direct lease between Lessor (as lessor) and Assignee or any assignee of Assignee (as tenant).  Lessor shall, in such event, exercise and undertake all of the rights and obligations of the lessor in and under the Lease and Assignee or such assignee, as lessee, shall keep, observe and perform as to Lessor all of the terms, covenants and conditions to be kept by the lessee pursuant to the Lease, and Lessor shall have the same remedies for nonperformance or default of any agreement or term of the Lease as it would had or would have had as lessor under the Lease if no such Event of Default had occurred and was continuing. Such notices to Landlord shall be given to Landlord in the manner provided in the Lease at the following address:

> Bonner Property Development, LLC
> 224 N. Higgins Avenue
> Missoula, Montana  59802

or at such other address as Lessor shall provide Assignee in writing in the same manner.

8.    **Notice of Default**.  For and so long as any obligations remain outstanding under any Note Document, Lessor agrees that, prior to terminating the Lease or taking any proceedings to enforce any such termination thereof for any reason other than the expiration of the term of the Lease, Lessor shall give Assignee, at the same time it gives Assignor notice thereof, prior notice in writing of any default under the Lease, specifying the reason for such default.  Such notice shall be given to Assignee in the same manner provided in the Lease at the following address:

| | |
|---|---|
| for Holder: | Project Spokane, LLC |
| | 5619 DTC Parkway #475 |
| | Greenwood Village, Colorado 80111 |
| | Attn:  Sean Walsh |
| | Email:  sean@redwoodcityventures.com |
| | |
| with a copy to: | Boone Karlberg P.C. |
| | 201 West Main St., Suite 300 |
| | PO Box 9199 |
| | Missoula, MT 59807-9199 |
| | Attn:  James A. Bowditch |
| | Email: jbowditch@boonekarlberg.com |

EXHIBIT 22
PAGE 15

or at such other address as Assignee shall provide Lessor in writing in the same manner.

9. **Additional Rights of Assignee**.

a. Assignee may take or release other security for the payment of the Note and other indebtedness secured by the Note, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the satisfaction of the Note and such other indebtedness without prejudice to any of its rights under this Assignment.

b. Assignee may at any time and from time to time in writing: (i) waive compliance by Assignor with any covenant herein made by Assignor to the extent and in the manner specified in such writing; (ii) consent to Assignor doing any act that hereunder Assignor is prohibited from doing, or consent to Assignor failing to do any act which hereunder Assignor is required to do, to the extent and in the manner specified in such writing; or (iii) release any portion of the Subject Property and/or the Lease, or any interest therein, from this Assignment. No such act shall in any way impair the rights of Assignee hereunder except to the extent specifically agreed to by Assignee in such writing.

c. The rights and remedies of Assignee hereunder shall not be impaired by any indulgence, including, but not limited to, (i) any renewal, extension, or modification that Assignee may grant with respect to any indebtedness secured hereby; (ii) any surrender, compromise, release, renewal, extension, exchange, or substitution that Assignee may grant in respect of any item of the Subject Property and/or the Lease or any part thereof or any interest therein; or (iii) any release or indulgence granted to any endorser, guarantor or surety of any indebtedness secured hereby.

10. **Severability**. A determination that any provision of this Assignment is unenforceable or invalid shall not affect the enforceability or validity of any other provision and any determination that the application of any provision of this Assignment to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

11. **No Merger**. Notwithstanding (a) the fact that any Lease or the leasehold estate created thereby may be held, directly or indirectly, by or for the account of any person or entity that shall have an interest in the fee estate of the Subject Property; (b) the operation of law; or (c) any other event, the lessee's leasehold estate under such Lease shall not merge into the fee estate and the lessee shall remain obligated under such Lease as assigned by this Assignment.

12. **Binding**. The terms, provisions, representations, and warranties herein contained shall inure to the benefit of, and bind, the parties hereto and their respective heirs, representatives, successors and assigns, all Lessor approved subtenants and assigns of this Lease, and subsequent holders of the Note. All references in this Assignment to Assignor or Assignee shall be deemed to include all such heirs, representatives, successors and assigns of such respective party.

13. **Additional Documentation**. Assignor agrees to and shall promptly execute or cause to be executed and deliver to Assignee a specific assignment of each and every lease hereafter executed and covering all or a portion of the Subject Property, such specific assignment to be in the form of this Assignment.

14. **Construction**. Within this Assignment, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural, unless the context otherwise requires. The provisions of this Assignment are intended to supplement the provisions contained in the Note. In the event of any conflict between the terms of this

Assignment and the terms of the Note, the terms of this Assignment shall prevail insofar as the Lease is concerned, but the terms of the Note shall prevail in all other respects.

**15.** **Counterparts**.  This Assignment may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute one instrument.

**16.** **No Third Party Beneficiaries**.  It is expressly agreed by the parties hereto that this Assignment shall not be construed or deemed made for the benefit of any third party or parties.

**17.** **Entire Agreement**.  This Assignment and the Note contain the entire agreement concerning the assignment of the Lease between the parties hereto. No variations, modifications or changes herein or hereof shall be binding upon any party hereto, unless set forth in a document duly executed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first written above.

**ASSIGNOR:**

Hyperblock, LLC

By: _____
Title: _____


**ASSIGNEE:**

Project Spokane, LLC

By: _____
Title: _____

EXHIBIT 22
PAGE 17

## <u>LESSOR'S CONSENT</u>

The undersigned, being the Lessor under the Lease described above, does hereby consent to the terms and conditions of the foregoing Assignment. Further, Lessor covenants to Assignee that Lessor shall give notice to Assignee as specified in Section 8, above, and Assignee, at its option, shall have the right to correct any condition or to cure any default.  Nothing in this instrument shall relieve Assignor of its obligations under the Lease.  This Consent is given as of the date first written above.

**LESSOR:**

Bonner Property Development, LLC


By: _____
Stephen Nelson, Co-Manager


By: _____
Michael Boehme, Co-Manager

Collateral Lease Assignment (Lessor Signature Page).pdf

Collateral Assignment - Company Signed.pdf

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Thursday, February 07, 2019 6:38 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Kristen Martin <ea@projectspokane.co>; Sean Walsh <sean@redwoodcityventures.com>
**Subject:** RE: Collateral Assignment of Lease

22(iv)

David,

Were you able to get BPD to sign the attached?
_____

It has been fully signed by Project Spokane and Hyperblock per the second attachment.

**James A. Bowditch**

**President**

Boone Karlberg P.C.

201 West Main St., Suite 300

PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646

Fax: 406.532.5752
www.boonekarlberg.com

## COLLATERAL ASSIGNMENT OF LEASE

THIS COLLATERAL ASSIGNMENT OF LEASE (this "Assignment") dated as of **February 1 , 2019**, is entered into by and between Hyperblock LLC, a Delaware limited liability company (the "Assignor"), and Project Spokane, LLC, a Colorado limited liability company (the "Assignee").

### Recitals

A.      Effective March 1, 2016, Bonner Property Development, LLC ("Lessor") and Assignee entered into that certain Commercial Lease Agreement, as amended (the "Lease"), for certain real property located in the Bonner Mill Site in Bonner, Montana as further described in the Lease (the "Subject Property").

B.      The Lease was assigned to and assumed by Assignor pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018 executed in conjunction with Assignor's acquisition of substantially all of the assets of Assignee pursuant to an Asset Purchase Agreement between Assignor as buyer and Assignee as seller (the "Purchase Agreement").

C.      Pursuant to the terms of the Purchase Agreement as subsequently modified by a Secured Promissory Note (the "Note"), dated as of February 1, 2019 , executed by Assignor and Hyperblock Inc, an Ontario company that is the parent of Assignor (the "Parent") in conjunction herewith, Assignor and Parent are indebted to Assignee in the amount of $5,000,000 CAD.

D.      The Note is secured by those certain Security Agreements dated as of February 1 , 2019, by and between Assignor and Assignee (the "Assignor Security Agreement") and by and between the Parent and the Assignee (the "Parent Security Agreement").  The Assignor Security Agreement, the Parent Security Agreement and the Note are collectively referred to herein as the "Note Documents".

E.      To further secure the Note, Assignor has agreed to assign to Assignee, and Assignee has agreed to take from Assignor, an assignment of the Lease for collateral purposes, on the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and in order to induce Assignee to extend accommodations to Assignor and Parent as evidenced by the Note, Assignor hereby agrees with the Assignee for the benefit of Assignee as follows:

1.      **Assignment**.  Assignor, in consideration of the Note and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby absolutely and unconditionally grant, convey, assign, transfer and set over unto Assignee all rights, interests and estates of Assignor in, to and under the Lease, together with all renewals and extensions of the Lease and other agreements and all other leases or agreements that may hereafter be entered into which cover all or any portion of the Subject Property and together with all of Assignor's rights to collect and receive any rents and charges that it may receive from approved users, operators, sublessees and permitees (the "Rents").  This assignment is for the purpose of securing payment and performance of Assignor under the Note Documents.  Assignee, by acceptance hereof, agrees not to take any action to assert its rights to possession of the Subject Property or Assignor's rights to collect and receive the Rents unless and until there shall exist or occur an Event of Default (as defined in the Note).  Assignee acknowledges and agrees that Assignee's rights to the Rents upon an Event of Default under the Note <u>and</u> a default under the Lease shall be subject and subordinate to the rights of Lessor to said Rents, if any.

**2.     Representations and Warranties of Assignor**. Assignor hereby represents and warrants to Assignee that:

**a.**     Assignor has the right to assign the Lease and the Rents hereby assigned and no other person or entity has any right, title or interest therein;

**b.**     Assignor has performed and will duly and punctually perform all of the material terms, covenants, conditions and warranties of the Lease;

**c.**     Assignor has not at any time prior to the date hereof exercised any right to subordinate any Lease to any deed of trust or mortgage or any other encumbrance of any kind;

**d.**     Assignor has not executed any prior assignments of the Lease or the Rents;

**e.**     Assignor has performed no act or executed any other instrument which might prevent Assignee from enjoying and exercising any of its rights and privileges evidenced hereby;

**f.**     The Lease is valid and subsisting and in full force and effect and unmodified; and

**g.**     There are no defaults now existing under the Lease and no event has occurred which with the passage of time or the giving of notice, or both, would constitute such a default.

**3.     Limitation of Assignee's Liability**.  Assignee shall not be obligated to perform or discharge any obligation, duty or liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder.  Assignor shall and does hereby agree to indemnify, defend and hold Assignee harmless from and against any and all liability, loss or damage incurred under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, and from any and all claims and demands whatsoever that may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Lease, other than claims and demands that arise in connection with the gross negligence or willful misconduct of the Assignee.  Should Assignee incur any such liability under the Lease by reason of this Assignment or the exercise of rights or remedies hereunder, or in defense of any such claims or demands, the amount thereof, including reasonable and documented out-of-pocket costs, expenses and attorney fees, shall be secured hereby and Assignor shall reimburse Assignee therefor promptly upon written demand, failing which Assignee may, at its option, declare all indebtedness secured hereby and by the Note Documents to be immediately due and payable.  This Assignment shall not operate to place responsibility upon Assignee for the control, care, management or repair of the Subject Property, nor for the carrying out of any of the terms and conditions of the Lease; nor shall it operate to make Assignee responsible or liable for any waste committed on the Subject Property or for any dangerous or defective condition of the Subject Property, or for any negligence in the management, upkeep, repair, or control of the Subject Property resulting in loss or injury or death to any tenant, licensee, employee, or stranger.

**4.     Assignee's Remedies**. This Assignment is primary in nature to the obligation evidenced and secured by the Note.  Assignor agrees that Assignee may enforce this Assignment without first resorting to or exhausting any other security or collateral; provided, however, that nothing herein contained shall prevent Assignee from suing on the Note or exercising any other right under any document securing the payment of the Note.

**5.     No Waiver**.  Nothing contained herein and no act done or omitted by Assignee pursuant to the powers and rights granted hereunder shall be deemed to be a waiver by Assignee of its rights and remedies under the Note or a waiver or curing of any default hereunder or under the Note, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Assignee under the terms of the Note. The right of Assignee to collect the interest and indebtedness

evidenced by the Note and to enforce any other security therefor held by it may be exercised by Assignee either prior to, simultaneously with, or subsequent to any action taken by it hereunder.

6.      **Term of Assignment**.  If the Note and all other indebtedness secured hereby are paid as the same become due and payable and if all of the covenants, warranties, undertakings and agreements made in the Note and in this Assignment are kept and performed, this Assignment shall become null and void and of no further force and effect but the affidavit, certificate, letter or statement of any officer, agent or attorney of Assignee showing any portion of the Note or such other indebtedness to remain unpaid or any of such covenants, warranties, undertakings and agreements not to be kept or performed shall be and constitute conclusive evidence of the validity, effectiveness and continuing force of this Assignment and any person may, and is hereby authorized to, rely thereon.

7.      **Survival; Attornment**.  Upon fourteen (14) days' notice from Assignee to Lessor of the occurrence and continuation of any Events of Default (as that term is defined in the Note) under the Note, then Lessor, Assignor and Assignee do hereby agree that the Lease and all terms, provisions, covenants and agreements thereof shall survive the occurrence and continuation of any such Events of Default, and the Lease shall remain in full force and effect, in accordance with and subject to all of its terms, provisions, agreements and covenants as a direct lease between Lessor (as lessor) and Assignee or any assignee of Assignee (as tenant).  Lessor shall, in such event, exercise and undertake all of the rights and obligations of the lessor in and under the Lease and Assignee or such assignee, as lessee, shall keep, observe and perform as to Lessor all of the terms, covenants and conditions to be kept by the lessee pursuant to the Lease, and Lessor shall have the same remedies for nonperformance or default of any agreement or term of the Lease as it would had or would have had as lessor under the Lease if no such Event of Default had occurred and was continuing. Such notices to Landlord shall be given to Landlord in the manner provided in the Lease at the following address:

> Bonner Property Development, LLC
> 224 N. Higgins Avenue
> Missoula, Montana  59802

or at such other address as Lessor shall provide Assignee in writing in the same manner.

8.      **Notice of Default**.  For and so long as any obligations remain outstanding under any Note Document, Lessor agrees that, prior to terminating the Lease or taking any proceedings to enforce any such termination thereof for any reason other than the expiration of the term of the Lease, Lessor shall give Assignee, at the same time it gives Assignor notice thereof, prior notice in writing of any default under the Lease, specifying the reason for such default.  Such notice shall be given to Assignee in the same manner provided in the Lease at the following address:

> for Holder:          Project Spokane, LLC
>                      5619 DTC Parkway #475
>                      Greenwood Village, Colorado 80111
>                      Attn:  Sean Walsh
>                      Email:  sean@redwoodcityventures.com
>
> with a copy to:      Boone Karlberg P.C.
>                      201 West Main St., Suite 300
>                      PO Box 9199
>                      Missoula, MT 59807-9199
>                      Attn:  James A. Bowditch
>                      Email: jbowditch@boonekarlberg.com

*COLLATERAL ASSIGNMENT OF LEASE – Page 3*
{F:\Files\001017\001001\00663112.DOCX 5}

or at such other address as Assignee shall provide Lessor in writing in the same manner.

9. **Additional Rights of Assignee**.

a. Assignee may take or release other security for the payment of the Note and other indebtedness secured by the Note, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the satisfaction of the Note and such other indebtedness without prejudice to any of its rights under this Assignment.

b. Assignee may at any time and from time to time in writing: (i) waive compliance by Assignor with any covenant herein made by Assignor to the extent and in the manner specified in such writing; (ii) consent to Assignor doing any act that hereunder Assignor is prohibited from doing, or consent to Assignor failing to do any act which hereunder Assignor is required to do, to the extent and in the manner specified in such writing; or (iii) release any portion of the Subject Property and/or the Lease, or any interest therein, from this Assignment. No such act shall in any way impair the rights of Assignee hereunder except to the extent specifically agreed to by Assignee in such writing.

c. The rights and remedies of Assignee hereunder shall not be impaired by any indulgence, including, but not limited to, (i) any renewal, extension, or modification that Assignee may grant with respect to any indebtedness secured hereby; (ii) any surrender, compromise, release, renewal, extension, exchange, or substitution that Assignee may grant in respect of any item of the Subject Property and/or the Lease or any part thereof or any interest therein; or (iii) any release or indulgence granted to any endorser, guarantor or surety of any indebtedness secured hereby.

10. **Severability**. A determination that any provision of this Assignment is unenforceable or invalid shall not affect the enforceability or validity of any other provision and any determination that the application of any provision of this Assignment to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

11. **No Merger**. Notwithstanding (a) the fact that any Lease or the leasehold estate created thereby may be held, directly or indirectly, by or for the account of any person or entity that shall have an interest in the fee estate of the Subject Property; (b) the operation of law; or (c) any other event, the lessee's leasehold estate under such Lease shall not merge into the fee estate and the lessee shall remain obligated under such Lease as assigned by this Assignment.

12. **Binding**. The terms, provisions, representations, and warranties herein contained shall inure to the benefit of, and bind, the parties hereto and their respective heirs, representatives, successors and assigns, all Lessor approved subtenants and assigns of this Lease, and subsequent holders of the Note. All references in this Assignment to Assignor or Assignee shall be deemed to include all such heirs, representatives, successors and assigns of such respective party.

13. **Additional Documentation**. Assignor agrees to and shall promptly execute or cause to be executed and deliver to Assignee a specific assignment of each and every lease hereafter executed and covering all or a portion of the Subject Property, such specific assignment to be in the form of this Assignment.

14. **Construction**. Within this Assignment, words of any gender shall be held and construed to include any other gender, and words in the singular number shall be held and construed to include the plural, unless the context otherwise requires. The provisions of this Assignment are intended to supplement the provisions contained in the Note. In the event of any conflict between the terms of this

Assignment and the terms of the Note, the terms of this Assignment shall prevail insofar as the Lease is concerned, but the terms of the Note shall prevail in all other respects.

**15.      Counterparts**.  This Assignment may be executed in any number of counterparts with the same effect as if all parties hereto had signed the same document. All such counterparts shall be construed together and shall constitute one instrument.

**16.      No Third Party Beneficiaries**.  It is expressly agreed by the parties hereto that this Assignment shall not be construed or deemed made for the benefit of any third party or parties.

**17.      Entire Agreement**.  This Assignment and the Note contain the entire agreement concerning the assignment of the Lease between the parties hereto. No variations, modifications or changes herein or hereof shall be binding upon any party hereto, unless set forth in a document duly executed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the date first written above.

**ASSIGNOR:**

Hyperblock, LLC

By: _____Inder Sarwi_____
Title: __Interim CFO_____

**ASSIGNEE:**

PROJECT SPOKANE, LLC
     By: PS Mgt LLC, its Manager

By: _____
          Sean Walsh, Manager

*COLLATERAL ASSIGNMENT OF LEASE – Page 5*
{F:/Files/001017/001001/00663112.DOCX 5}

## LESSOR'S CONSENT

The undersigned, being the Lessor under the Lease described above, does hereby consent to the terms and conditions of the foregoing Assignment. Further, Lessor covenants to Assignee that Lessor shall give notice to Assignee as specified in Section 8, above, and Assignee, at its option, shall have the right to correct any condition or to cure any default. Nothing in this instrument shall relieve Assignor of its obligations under the Lease. This Consent is given as of the date first written above.

**LESSOR:**

Bonner Property Development, LLC

By: _____
Stephen Nelson, Co-Manager

By: _____
Michael Boehme, Co-Manager

EXHIBIT 22
PAGE 25

## LESSOR'S CONSENT

The undersigned, being the Lessor under the Lease described above, does hereby consent to the terms and conditions of the foregoing Assignment. Further, Lessor covenants to Assignee that Lessor shall give notice to Assignee as specified in Section 8, above, and Assignee, at its option, shall have the right to correct any condition or to cure any default.  Nothing in this instrument shall relieve Assignor of its obligations under the Lease.  This Consent is given as of the date first written above.

**LESSOR:**

Bonner Property Development, LLC

By: _____
Stephen Nelson, Co-Manager

By: _____
Michael Boehme, Co-Manager

EXHIBIT 22
PAGE 26

**From:** Jaymie Bowditch <jbowditch@boonekarlberg.com>
**Sent:** Wednesday, February 20, 2019 12:36 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** RE: Collateral Assignment of Lease

22.(v)

Okay.  Just so I can advise Sean, is the delay related to Steve being out of the country or are there some substantive issues with the agreement?

**James A. Bowditch**

**President**

Boone Karlberg P.C.

201 West Main St., Suite 300

PO Box 9199
Missoula, MT 59807-9199
Phone: 406.543.6646

EXHIBIT 23.
PAGE 1

**Exhibit 23.** *[Dec. #27]* [Emails with Nelson, Stivers, et. al. from December 2019 regarding HyperBlock's desire to use the funds for the acquisition of new servers, modification of lease, and request that BPD and its principals consent to HyperBlock's use of the BOM Loan to acquire the Financed Equipment, including changes to Modification Section 5.b. regarding negotiated language regarding equipment in place on 12/31/2019 not included in BPD's first-priority security interest]:

    (i)     Email from Stivers on 12/30/2019 at 10:25 PM with revised draft modification of lease and prior emails in chain regarding BPD's security interest;

    (ii)    Email from Nelson to Stivers on 12/24/19 at 8:48 AM with revised Modification, including changes to Section 5.b. regarding negotiated language regarding equipment in place on 12/31/2019 not included in BPD's first-priority security interest

EXHIBIT 23.
PAGE 2

Exhibit 23(i)

| | |
|---|---|
| **From:** | Dan Stivers |
| **To:** | David Bjornson |
| **Cc:** | Big Sky Mobile Catering; Mike Boehme; mikeh@bonnerproperty.com; Jill Broughton; Sean Walsh; Kristen Martin |
| **Subject:** | Re: FW: Revised version 4 |
| **Date:** | Monday, December 30, 2019 10:25:17 PM |
| **Attachments:** | Modification of Lease Agreement Credit Enhancement Agreement et al. 12.30.19. REDLINED.docx |

Hi David,

The correct number is 0.005714286 or 0.5714286% which will equal the $15,000 credit enhancement fee for an advance of $2.625M. I updated in the redline word doc version and attached a copy for your review. Everything else looks good and I forwarded to Hannah Stone for review first thing in the morning.

Thanks
Dan

On Mon, Dec 30, 2019 at 9:54 PM Dan Stivers <dan@hyperblock.co> wrote:
  Thanks David. Reviewing now

  On Mon, Dec 30, 2019 at 9:49 PM David Bjornson <david@bjornsonlaw.com> wrote:

    Attached is a revised draft of the Modification.   One comment – the credit enhancement fee is somewhat less than the $15,000 communicated by Steve and Dan, so please check the math on that.  Perhaps that needs to be adjusted slightly. Also, the amount of the warrants is different than in Dan's email due to what I understand is a full total of $3,540,000 not $3,554,000.  Again, please check me on that.

    Please review and comment.  David

    _____

    **David H. Bjornson**

    **Bjornson Jones Mungas, PLLC**

    **2809 Great Northern Loop, Suite 100**

    **Missoula, Montana  59808**

    **(406) 721-8896**

EXHIBIT 23.
PAGE 3

(406) 541-8037--fax

http://www.bjornsonlaw.com/attorneys/david-h-bjornson/

Email:  david@bjornsonlaw.com

*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Monday, December 30, 2019 1:51 PM
**To:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Cc:** Mike Boehme <mikeb@bonnerproperty.com>; mikeh@bonnerproperty.com; David Bjornson <david@bjornsonlaw.com>
**Subject:** Re: FW: Revised version 4


stock warrants


On Mon, Dec 30, 2019 at 1:38 PM Dan Stivers <dan@hyperblock.co> wrote:

> Also please add language regarding the issuance of warrants to Bonner Property as part of the credit enhancement agreement.
>
> 15% of loan amount ($3,554,000 * .15 = $533,100) in warrants with a strike price to be determined by the volume weighted average price (VWAP) with an expiration date of five years.


On Mon, Dec 30, 2019 at 1:22 PM Dan Stivers <dan@hyperblock.co> wrote:

> Hi All,
>
> Attached is the agreement with our comments.
>
> Thanks

Dan

On Tue, Dec 24, 2019 at 8:48 AM Big Sky Mobile Catering
<bsmcorpmt@gmail.com> wrote:

> Dan,  This is the final version.  David made some improvements.  Thx Steve.  Let
> me know your thoughts.
>
>
> _____
>
> **From:** David Bjornson [mailto:david@bjornsonlaw.com]
> **Sent:** Monday, December 23, 2019 10:24 PM
> **To:** Big Sky Mobile Catering (bsmcorpmt@gmail.com)
> <bsmcorpmt@gmail.com>; Michael Boehme <mikeb@bonnerproperty.com>
> **Cc:** Jill Broughton <jill@bjornsonlaw.com>
> **Subject:** Revised version 4
>
>
> Steve and Mike -   I am finally able to access my computer.  I have modified
> the version you sent to me earlier today in some important regards.  Please
> see the redline between your revision and my v4 attached.   David
>
>
> _____
>
> **David H. Bjornson**
>
>
> **Bjornson Jones Mungas, PLLC**
>
> **2809 Great Northern Loop, Suite 100**
>
> **Missoula, Montana  59808**
>
> **(406) 721-8896**
>
> **(406) 541-8037--fax**
>
> **http://www.bjornsonlaw.com/attorneys/david-h-bjornson/**
>
> **Email:  david@bjornsonlaw.com**
>
> ***CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or***

EXHIBIT 23.
PAGE 5

| | |
|---|---|
| **From:** | Big Sky Mobile Catering |
| **To:** | dan@hyperblock.co |
| **Cc:** | Mike Boehme; mikeh@bonnerproperty.com; David Bjornson |
| **Subject:** | FW: Revised version 4 |
| **Date:** | Tuesday, December 24, 2019 8:48:28 AM |
| **Attachments:** | Modification of Lease Agreement Credit Enhancement Agreement et al. 12.23.19.v4.docx |
| | Modification of Lease Agreement Credit Enhancement Agreement et al. 12.23.19.v4 REDLINED FROM CLIENT |
| | REVISED v3.docx |

Exhibit
23(ii)

Dan,  This is the final version.  David made some improvements.  Thx Steve.  Let me know your thoughts.

**From:** David Bjornson [mailto:david@bjornsonlaw.com]
**Sent:** Monday, December 23, 2019 10:24 PM
**To:** Big Sky Mobile Catering (bsmcorpmt@gmail.com) <bsmcorpmt@gmail.com>; Michael Boehme <mikeb@bonnerproperty.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** Revised version 4

Steve and Mike -   I am finally able to access my computer.  I have modified the version you sent to me earlier today in some important regards.  Please see the redline between your revision and my v4 attached.   David

_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
**Email:  david@bjornsonlaw.com**
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

EXHIBIT 23.
PAGE 6

### MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT

**THIS MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT ("Modification")** is dated as of the 31st day of December, 2019, by and between Bonner Property Development, LLC, a Montana limited liability company ("Landlord"), and Hyperblock LLC, a Delaware limited liability company ("Tenant" and sometimes "Hyperblock").

### Recitals

A.     Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.     The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.     The Lease was assigned by Project Spokane to, and assumed by, Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.     Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").

E.     Landlord and Tenant executed that certain Fourth Amendment to Commercial Lease Agreement dated and effective January 23, 2019 (the "Fourth Amendment").

F.     The First Amendment, Second Amendment, Third Amendment and Fourth Amendment are collectively referred to herein as the "Lease Amendments".

G.     As part of a change in plans as to certain expansion and improvements at the Property, Tenant will not be occupying certain parts of the Property and Landlord has agreed to remove them from the Lease.

H.     A certain financing arrangement designed to fund infrastructure and improvements was created through a line of credit arrangement undertaken by Landlord with Bank of Montana for the benefit of Tenant, and the parties entered into certain agreements in that certain Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement")

and that certain Security Agreement dated December 13, 2018 (the "Security Agreement") (the Lease, Side Agreement, Credit Enhancement Agreement and Security Agreement, sometimes referred to as the "Agreements"). As part of the change in plans, this financing line will be increased from $2,625,000 to $3,540,000, and will instead be used for the acquisition of new servers (instead of real property improvements).

       H.     The parties wish to amend the Lease, as previously modified by the prior Amendments, and also to amend the terms of the Side Agreement, the Credit Enhancement Agreement, and the Security Agreement, all as set forth in this Modification.

## Amendments

The parties agree as follows:

1. <u>Property</u>.

      a.     <u>Revised Description of "Property"</u>. Subsections iii. and iv. of the first paragraph of **Section 1.a.,** added to the Lease pursuant to the Third Amendment, shall be deleted in their entirety. They formerly read:

        iii.  Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit F.**

        iv.  Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit G.** In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

The accompanying **Exhibits F** and **G** are also deleted in their entirety.

      2.  <u>Equity and Loan Financing of Improvements</u>. **Subsection 1.b.II.ix**, added to the Lease pursuant to the Third Amendment, and relating to additional equity and loan financing of various improvements, shall be amended in its entirety to read as follows:

ix)    As part of an expansion of operations, Tenant is engaging in fundraising through additional borrowing of $3,540,000 from the Bank of Montana ("New Loan"). The New Loan shall consist of two separate portions: $2,625,000.00 (the "Original Amount") and the remainder of $915,000 (the "New Amount"). Tenant has committed to the expenditure of all of the proceeds of the New Loan to the acquisition of new servers ("New Servers") which will be held and operated on the Property. In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Lease, as amended, Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement") and that certain Security Agreement dated December 13, 2018. Landlord shall not be obligated to approve disbursements by Lender under the New Loan except for purchases of New Servers as provided herein. Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for

disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate invoices, purchase orders and other documentation that the disbursements are appropriate, and within the scope of and in accordance with specifications for New Servers approved in writing by Landlord. Notwithstanding anything provided herein, no advances shall be made in excess of the Original Amount without the establishment of the account for security for the New Amount provided in Section 5.c. of that certain Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement dated December 31, 2019 (the "Modification") and unless the payments under Sections 5.d. and 5.e. of the Modification are current at such time.

3. <u>Base Rent</u>. **Sections 4.a.(i) and (ii)**, relating to rent for bare land and for land for a power substation are deleted in their entirety. **Section 4.a.(i)** shall be amended and restated in its entirety, beginning effective December 1, 2019, to read as follows:

> (i) The Base Rent payable hereunder shall initially be as follows:
>
>> A. $75,420.90 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months.
>
>> The Base Rent as set forth above shall continue at this rate for through February 28, 2020. On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

4. <u>Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements</u>. Section 4 of the Third Amendment, regarding a pledge by Landlord for a loan at Bank of Montana is hereby modified to reflect that, instead of infrastructure and improvements, the New Loan will be used for the acquisition of New Servers.

5. <u>Credit Enhancement Agreement, Side Letter and Security Agreement</u>. The Credit Enhancement Agreement shall be amended to reflect the following new and modified provisions:

> a. The concepts of "New Equity" and "New Improvements" are eliminated from the Agreements and the proceeds of the "Bank Loan" (also referred to sometimes as "New Loan") from Bank of Montana will be used to acquire New Servers instead of real property improvements
>
> b. The Security Agreement is modified to include the Lease being amended by the Fourth Amendment to Commercial Lease Agreement dated January 23, 2019, and property described in this Modification, and is modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification.

c.   At some time prior to any advances to be made in excess of the Original Amount. Hyperblock shall place into an account with Bank of Montana, an amount of cash in the full amount of the New Amount, which shall partially secure Hyperblock's obligations under the Agreements.  Hyperblock will execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code, including a Deposit Account Control Agreement. Alternatively, with Landlord's advance written consent, this obligation may be satisfied with alternative deposits or pledges, including cryptocurrency, in a manner satisfactory to Landlord and its legal counsel.

d.   Consistent with loan documents with Bank of Montana for the New Loan, payment by Hyperblock will commence as provided hereinafter.   Notwithstanding the minimum payment requirements of the New Loan, including interest only for 6 months ("BOM Minimum Payment") or the timing of such payments, Hyperblock shall also make an additional payment amount calculated and administered as follows:

-   the amount advanced under the New Loan shall be amortized in level payments of interest and principal over a 36-month term at the greater of (i) Wall Street Prime Rate plus 299 basis points, or (ii) 8.24% (the "BPD Payment Amount"), with the payment being adjusted from time to time for additional advances as approved and made;

-   the excess of the BPD Payment Amount over the BOM Minimum Payment (whether or not interest only) (the excess is estimated at approximately $24,474 per month) shall be paid into another special account maintained at Bank of Montana, which shall further secure the obligations of Hyperblock under the Agreements.  Hyperblock shall execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code including a Deposit Account Control Agreement.  Further application of the balance of this account shall be only with the express written agreement of both parties.

These payments shall commence on the date which is the 30th day after installation and operation of the first servers ordered to arrive at the Property, even if such first arrival does not consist of all servers ordered, or, if a weekend or holiday, the first business day thereafter.

e.   In addition to all payments due under the Lease and the New Loan, Hyperblock shall make monthly payments to Landlord of a credit enhancement fee for Landlord's securing of the New Loan for the entire term of the New Loan, on the final day of the month, commencing in January 2020.  The credit enhancement fee shall be  0.5714286% of the amount advanced on the New Loan.  For example, if the amount advanced is only the Original Amount, the fee would be $ $15,000.00, and if the full amount is advanced, the fee would be  $20,228.57.

f.   As additional consideration for the credit enhancement, Hyperblock shall issue

within 30 days of the date hereof stock warrants in form and content acceptable to Landlord and its counsel for shares of its publicly trading common shares, calculated as follows:  the number of shares of common stock subject to the warrant is the number which is calculated by dividing the number which is 15% of the total amount of the New Loan, whether fully advanced or not ($3,540,000 * .15 = $531,000) by a strike price to be determined on the first day that public trading is allowed by relevant regulatory authorities at the volume weighted average price (VWAP).  The warrants shall have a term of 5 years.

6.  <u>Renewable Energy Credits</u>.    On or before the execution hereof, Tenant shall supply Landlord with copies of all correspondence with Missoula County regarding the potential of applying renewable energy credits to satisfy some of the requirements imposed by the Missoula County Commissioners affecting Tenant.

7.  <u>Not a Precedent; Future Expansion</u>.  Landlord's agreement pursuant to this Modification to remove Property from the scope of the Lease does not bind Landlord to agree to any future amendments reducing the leased Property, or the amount of Rent.  Should Tenant revise its expansion plans to reincorporate the portions of the Property hereby removed from the Lease, the terms shall be the same as what was negotiated in the Third Amendment to the Lease.

8.  <u>Remaining Provisions of Agreements</u>.  To the extent not modified herein, all remaining provisions of the Agreements shall remain in full force and effect, and are hereby reaffirmed.

9.  <u>Counterparts</u>.  This Modification may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 23.
PAGE 11

-

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                                      TENANT:

Bonner Property Development, LLC               Hyperblock LLC


By: _____               By:_____
Stephen Nelson, Co-Manager                     Print name:_____
                                               Its: _____


By: _____
Michael Boehme, Co-Manager

EXHIBIT 23.
PAGE 12

## MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT

**THIS MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT ("Modification")** is dated as of the 23rd day of December, 2019, by and between Bonner Property Development, LLC, a Montana limited liability company ("Landlord"), and Hyperblock LLC, a Delaware limited liability company ("Tenant" and sometimes "Hyperblock").

### Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.      The Lease was assigned by Project Spokane to, and assumed by, Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").

E.      Landlord and Tenant executed that certain Fourth Amendment to Commercial Lease Agreement dated and effective January 23, 2019 (the "Fourth Amendment").

F.      The First Amendment, Second Amendment, Third Amendment and Fourth Amendment are collectively referred to herein as the "Lease Amendments".

G.      As part of a change in plans as to certain expansion and improvements at the Property, Tenant will not be occupying certain parts of the Property and Landlord has agreed to remove them from the Lease.

H.      A certain financing arrangement designed to fund infrastructure and improvements was created through a line of credit arrangement undertaken by Landlord with Bank of Montana for the benefit of Tenant, and the parties entered into certain agreements in that certain Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement")

and that certain Security Agreement dated December 13, 2018 (the "Security Agreement") (the Lease, Side Agreement, Credit Enhancement Agreement and Security Agreement, sometimes referred to as the "Agreements"). As part of the change in plans, this financing line will be increased from $2,625,000 to $3,536,000, and will instead be used for the acquisition of new servers (instead of real property improvements).

H.    The parties wish to amend the Lease, as previously modified by the prior Amendments, and also to amend the terms of the Side Agreement, the Credit Enhancement Agreement, and the Security Agreement, all as set forth in this Modification.

## Amendments

The parties agree as follows:

1.    Property.

a.        Revised Description of "Property".  Subsections iii. and iv. of the first paragraph of **Section 1.a.,** added to the Lease pursuant to the Third Amendment, shall be deleted in their entirety.  They formerly read:

iii.   Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit F.**

iv.   Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit G.**   In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

The accompanying **Exhibits F** and **G** are also deleted in their entirety.

2.    Equity and Loan Financing of Improvements.  **Subsection 1.b.II.ix**, added to the Lease pursuant to the Third Amendment, and relating to additional equity and loan financing of various improvements, shall be amended in its entirety to read as follows:

ix)    As part of an expansion of operations, Tenant is engaging in fundraising through additional borrowing of $3,536,000 from the Bank of Montana ("New Loan").  The New Loan shall consist of two separate portions: $2,625,000.00 (the "Original Amount") and the remainder of $911,000 (the "New Amount").  Tenant has committed to the expenditure of all of the proceeds of the New Loan to the acquisition of new servers ("New Servers") which will be held and operated on the Property.  In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Lease, as amended, Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement") and that certain Security Agreement dated December 13, 2018.  Landlord shall not be obligated to approve disbursements by Lender under the New Loan except for purchases of New Servers as provided herein.  Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for

disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate invoices, purchase orders and other documentation that the disbursements are appropriate, and within the scope of and in accordance with specifications for New Servers approved in writing by Landlord. Notwithstanding anything provided herein, no advances shall be made in excess of the Original Amount without the establishment of the account for security for the New Amount provided in Section 5.c. and unless the payments under Sections 5.d. and 5.e. are current at such time.

3.   Base Rent.  **Sections 4.a.(i) and (ii)**, relating to rent for bare land and for land for a power substation are deleted in their entirety.   **Section 4.a.(i)** shall be amended and restated in its entirety, beginning effective December 1, 2019, to read as follows:

(i)   The Base Rent payable hereunder shall initially be as follows:

A.   $75,420.90 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months.

The Base Rent as set forth above shall continue at this rate for through February 28, 2020.  On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

4.   Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements. Section 4 of the Third Amendment, regarding a pledge by Landlord for a loan at Bank of Montana is hereby modified to reflect that, instead of infrastructure and improvements, the New Loan will be used for the acquisition of New Servers.

5.   Credit Enhancement Agreement, Side Letter and Security Agreement.   The Credit Enhancement Agreement shall be amended to reflect the following new and modified provisions:

a.   The concepts of "New Equity" and "New Improvements" are eliminated from the Agreements and the proceeds of the "Bank Loan" (also referred to sometimes as "New Loan") from Bank of Montana will be used to acquire New Servers instead of real property improvements

b.   The Security Agreement is modified to include the Lease being amended by the Fourth Amendment to Commercial Lease Agreement dated January 23, 2019, and property described in this Modification, and is modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification.

EXHIBIT 23.
PAGE 15

c.   Hyperblock shall place into an account with Bank of Montana, an amount of cash in the full amount of the New Amount, which shall partially secure Hyperblock's obligations under the Agreements.  Hyperblock will execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code, including a Deposit Account Control Agreement. Alternatively, with Landlord's advance written consent, this obligation may be satisfied with alternative deposits or pledges, including cryptocurrency, in a manner satisfactory to Landlord and its legal counsel.

d.   Consistent with loan documents with Bank of Montana for the New Loan, payment by Hyperblock will commence at the end of January 2020.   Notwithstanding the minimum payment requirements of the New Loan, including interest only for 6 months ("BOM Minimum Payment") or the timing of such payments, Hyperblock shall also make an additional payment amount calculated and administered as follows:

-   the full amount ($3,536,000) of the New Loan shall be amortized in level payments of interest and principal over a 36-month term at 8.24%, which is approximately $111,197 (the "BPD Payment Amount");

-   the excess of the BPD Payment Amount over the BOM Minimum Payment (whether or not interest only) (the excess is estimated at approximately $24,474 per month) shall be paid into another special account maintained at Bank of Montana, which shall further secure the obligations of Hyperblock under the Agreements.  Hyperblock shall execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code including a Deposit Account Control Agreement.  Further application of the balance of this account shall be only with the express written agreement of both parties.

These payments shall commence on the date which is the 45th day after arrival of the first servers to the Property, even if such first arrival does not consist of all servers ordered, or, if a weekend or holiday, the first business day thereafter.

e.   In addition to all payments due under the Lease and the New Loan, Hyperblock shall make monthly payments to Landlord of $19,815.00 as a credit enhancement fee for Landlord's securing of the New Loan for the entire term of the New Loan, on the final day of the month, commencing in January 2020.

6.   Renewable Energy Credits.   On or before the execution hereof, Tenant shall supply Landlord with copies of all correspondence with Missoula County regarding the potential of applying renewable energy credits to satisfy some of the requirements imposed by the Missoula County Commissioners affecting Tenant.

7.   Not a Precedent; Future Expansion.  Landlord's agreement pursuant to this Modification to remove Property from the scope of the Lease does not bind Landlord to agree to any future amendments reducing the leased Property, or the amount of Rent.  Should Tenant revise its

EXHIBIT 23.
PAGE 16

expansion plans to reincorporate the portions of the Property hereby removed from the Lease, the terms shall be the same as what was negotiated in the Third Amendment to the Lease.

8.   <u>Remaining Provisions of Agreements</u>.  To the extent not modified herein, all remaining provisions of the Agreements shall remain in full force and effect, and are hereby reaffirmed.

9.   <u>Counterparts</u>.  This Modification may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 23.
PAGE 17

-

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                                    TENANT:

Bonner Property Development, LLC             Hyperblock LLC


By: _____          By:_____
Stephen Nelson, Co-Manager                    Print name:_____
                                              Its: _____


By: _____
Michael Boehme, Co-Manager

EXHIBIT 24.
PAGE 1

**Exhibit 24.**    *[Dec. #28] : Emails among Walsh, Stivers, Bowditch, Bjornson, Nelson, etc. regarding negotiations and revisions to Modification*

(i)     Email from Stivers to Walsh on 12/29/19 at 7:13 PM with draft modification (attachment);

(ii)    Email from Stivers on 12/30/2019 at 1:22 PM with "our comments" to revised draft modification; (attachment);

(iii)   Email from Bjornson on 12/30/2019 at 11:49 EST PM with revised draft modification; (attachment);

(iv)    Email from Stivers on 12/30/2019 at 10:25 PM with revised draft modification of lease;

(v)     Emails between Stivers and Bjornson regarding revisions to Modification;

(vi)    Emails between Stivers and Nelson on 12/30/2019 regarding revisions to Modification;

EXHIBIT 24.
PAGE 2

Exhibit
24(i)

| | |
|---|---|
| **From:** | Big Sky Mobile Catering |
| **To:** | |
| **Subject:** | FW: Modification of Lease Agreement Credit Enhancement |
| **Date:** | |
| **Attachments:** | Modification of Lease Agreement Credit Enhancement Agreement et al. 12.23.19.v4.docx |

**From:** Dan Stivers [mailto:dan@hyperblock.co]
**Sent:** Sunday, December 29, 2019 7:13 PM
**To:** Sean Walsh <sean@hyperblock.co>
**Cc:** Steve Nelson <bsmcorpmt@gmail.com>
**Subject:** Modification of Lease Agreement Credit Enhancement

Hi Sean,

Attached in a copy of the Modification of Lease Agreement Credit Enhancement Agreement which I have provided comments for your review and comments.

@Steve: please review comments and let me know if your in agreement. We will have Jaymie modify accordingly and review.

Thanks
Dan

**From:** David Bjornson
**To:**
**Subject:** FW: FW: FW: Revised version 4
**Date:**
**Attachments:** Modification of Lease Agreement Credit Enhancement Agreement et al. 12.23.19.v4 - Comments SW.docx

Exhibit
24(ii)

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Monday, December 30, 2019 1:22 PM
**To:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Cc:** Mike Boehme <mikeb@bonnerproperty.com>; mikeh@bonnerproperty.com; David
Bjornson <david@bjornsonlaw.com>
**Subject:** Re: FW: Revised version 4

Hi All,

Attached is the agreement with our comments.

Thanks

Dan

On Tue, Dec 24, 2019 at 8:48 AM Big Sky Mobile Catering <bsmcorpmt@gmail.com> wrote:

Dan,  This is the final version.  David made some improvements.  Thx Steve.  Let me know
your thoughts.

EXHIBIT 24.
PAGE 4

**From:** David Bjornson [mailto:david@bjornsonlaw.com]
**Sent:** Monday, December 23, 2019 10:24 PM
**To:** Big Sky Mobile Catering (bsmcorpmt@gmail.com) <bsmcorpmt@gmail.com>;
Michael Boehme <mikeb@bonnerproperty.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** Revised version 4


Steve and Mike -   I am finally able to access my computer.  I have modified the
version you sent to me earlier today in some important regards.  Please see the
redline between your revision and my v4 attached.   David


_____


**David H. Bjornson**


**Bjornson Jones Mungas, PLLC**

**2809 Great Northern Loop, Suite 100**

**Missoula, Montana  59808**

**(406) 721-8896**

**(406) 541-8037--fax**

**http://www.bjornsonlaw.com/attorneys/david-h-bjornson/**

**Email:  david@bjornsonlaw.com**

*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or
confidential information and is intended only for the use of the individual or entity named above.  If you have
received this communication in error, please notify us immediately by telephone and delete the message from
your system.*


This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

EXHIBIT 24.
PAGE 5

Exhibit
24(iii)

| | |
|---|---|
| **From:** | David Bjornson |
| **To:** | |
| **Subject:** | FW: RE: FW: Revised version 4 |
| **Date:** | |
| **Attachments:** | Modification of Lease Agreement Credit Enhancement Agreement et al. 12.30.19.docx |
| | Modification of Lease Agreement Credit Enhancement Agreement et al. 12.30.19. REDLINED.docx |

**From:** "David Bjornson" <david@bjornsonlaw.com>
**Date:** Mon Dec 30 23:48:58 EST 2019
**To:** "Dan Stivers" <dan@hyperblock.co>,"Big Sky Mobile Catering"
<bsmcorpmt@gmail.com>
**Cc:** "Mike Boehme" <mikeb@bonnerproperty.com>,"mikeh@bonnerproperty.com"
<mikeh@bonnerproperty.com>,"Jill Broughton" <jill@bjornsonlaw.com>
**Subject:** RE: FW: Revised version 4

Attached is a revised draft of the Modification.   One comment – the credit
enhancement fee is somewhat less than the $15,000 communicated by Steve and Dan,
so please check the math on that.  Perhaps that needs to be adjusted slightly.  Also, the
amount of the warrants is different than in Dan's email due to what I understand is a
full total of $3,540,000 not $3,554,000.  Again, please check me on that.


Please review and comment.  David


_____


**David H. Bjornson**


**Bjornson Jones Mungas, PLLC**

**2809 Great Northern Loop, Suite 100**

**Missoula, Montana  59808**

**(406) 721-8896**

**(406) 541-8037--fax**

http://www.bjornsonlaw.com/attorneys/david-h-bjornson/

**Email:  david@bjornsonlaw.com**

EXHIBIT 24.
PAGE 6

**CONFIDENTIALITY NOTICE:** *The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Monday, December 30, 2019 1:51 PM
**To:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Cc:** Mike Boehme <mikeb@bonnerproperty.com>; mikeh@bonnerproperty.com; David Bjornson <david@bjornsonlaw.com>
**Subject:** Re: FW: Revised version 4

stock warrants

On Mon, Dec 30, 2019 at 1:38 PM Dan Stivers <dan@hyperblock.co> wrote:

Also please add language regarding the issuance of warrants to Bonner Property as part of the credit enhancement agreement.

15% of loan amount ($3,554,000 * .15 = $533,100) in warrants with a strike price to be determined by the volume weighted average price (VWAP) with an expiration date of five years.

On Mon, Dec 30, 2019 at 1:22 PM Dan Stivers <dan@hyperblock.co> wrote:

Hi All,

Attached is the agreement with our comments.

Thanks

Dan

On Tue, Dec 24, 2019 at 8:48 AM Big Sky Mobile Catering <bsmcorpmt@gmail.com>

wrote:

> Dan,  This is the final version.  David made some improvements.  Thx Steve.  Let me know your thoughts.

---

**From:** David Bjornson [mailto:david@bjornsonlaw.com]
**Sent:** Monday, December 23, 2019 10:24 PM
**To:** Big Sky Mobile Catering (bsmcorpmt@gmail.com) <bsmcorpmt@gmail.com>;
Michael Boehme <mikeb@bonnerproperty.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** Revised version 4

Steve and Mike -   I am finally able to access my computer.  I have modified the version you sent to me earlier today in some important regards.  Please see the redline between your revision and my v4 attached.   David

---

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**

**2809 Great Northern Loop, Suite 100**

**Missoula, Montana  59808**

**(406) 721-8896**

**(406) 541-8037--fax**

http://www.bjornsonlaw.com/attorneys/david-h-bjornson/

**Email:  david@bjornsonlaw.com**

*CONFIDENTIALITY NOTICE:*  *The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

EXHIBIT 24.
PAGE 8

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

| From: | David Bjornson |
| To: | |
| Subject: | FW: FW: Revised version 4 |
| Date: | |
| Attachments: | Modification of Lease Agreement Credit Enhancement Agreement et al. 12.30.19. REDLINED.docx |

Exhibit
24(iv)

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Monday, December 30, 2019 10:25 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>; Mike Boehme
<mikeb@bonnerproperty.com>; mikeh@bonnerproperty.com; Jill Broughton
<jill@bjornsonlaw.com>; Sean Walsh <sean@hyperblock.co>; Kristen Martin
<kristen@hyperblock.co>
**Subject:** Re: FW: Revised version 4

Hi David,

The correct number is 0.005714286 or 0.5714286% which will equal the $15,000 credit
enhancement fee for an advance of $2.625M. I updated in the redline word doc version and
attached a copy for your review. Everything else looks good and I forwarded to Hannah
Stone for review first thing in the morning.

Thanks
Dan

On Mon, Dec 30, 2019 at 9:54 PM Dan Stivers <dan@hyperblock.co> wrote:

Thanks David. Reviewing now

On Mon, Dec 30, 2019 at 9:49 PM David Bjornson <david@bjornsonlaw.com> wrote:

Attached is a revised draft of the Modification.   One comment – the credit
enhancement fee is somewhat less than the $15,000 communicated by Steve and
Dan, so please check the math on that.  Perhaps that needs to be adjusted
slightly.  Also, the amount of the warrants is different than in Dan's email due to
what I understand is a full total of $3,540,000 not $3,554,000.  Again, please
check me on that.

Please review and comment.  David

_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**

**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
Email:  david@bjornsonlaw.com
*CONFIDENTIALITY NOTICE:*  *The information contained in this email message may be privileged or*
*confidential information and is intended only for the use of the individual or entity named above.  If you have*
*received this communication in error, please notify us immediately by telephone and delete the message*
*from your system.*

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Monday, December 30, 2019 1:51 PM
**To:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Cc:** Mike Boehme <mikeb@bonnerproperty.com>; mikeh@bonnerproperty.com; David
Bjornson <david@bjornsonlaw.com>
**Subject:** Re: FW: Revised version 4

stock warrants

On Mon, Dec 30, 2019 at 1:38 PM Dan Stivers <dan@hyperblock.co> wrote:

Also please add language regarding the issuance of warrants to Bonner Property as part of
the credit enhancement agreement.

15% of loan amount ($3,554,000 * .15 = $533,100) in warrants with a strike price to be
determined by the volume weighted average price (VWAP) with an expiration date of five
years.

On Mon, Dec 30, 2019 at 1:22 PM Dan Stivers <dan@hyperblock.co> wrote:

Hi All,

Attached is the agreement with our comments.

Thanks
Dan

On Tue, Dec 24, 2019 at 8:48 AM Big Sky Mobile Catering <bsmcorpmt@gmail.com>
wrote:

Dan,  This is the final version.  David made some improvements.  Thx Steve.  Let me
know your thoughts.

**From:** David Bjornson [mailto:david@bjornsonlaw.com]
**Sent:** Monday, December 23, 2019 10:24 PM

**To:** Big Sky Mobile Catering (bsmcorpmt@gmail.com) <bsmcorpmt@gmail.com>;
Michael Boehme <mikeb@bonnerproperty.com>
**Cc:** Jill Broughton <jill@bjornsonlaw.com>
**Subject:** Revised version 4

Steve and Mike -   I am finally able to access my computer.  I have modified
the version you sent to me earlier today in some important regards.  Please
see the redline between your revision and my v4 attached.   David

_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**
**2809 Great Northern Loop, Suite 100**
**Missoula, Montana  59808**
**(406) 721-8896**
**(406) 541-8037--fax**
http://www.bjornsonlaw.com/attorneys/david-h-bjornson/
Email:  david@bjornsonlaw.com
*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged*
*or confidential information and is intended only for the use of the individual or entity named above.  If*
*you have received this communication in error, please notify us immediately by telephone and*
*delete the message from your system.*

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

EXHIBIT 24.
PAGE 12

| | |
|---|---|
| **From:** | Dan Stivers |
| **To:** | David Bjornson |
| **Cc:** | bsmcorpmt@gmail.com; mikeb@bonnerproperty.com; mikeh@bonnerproperty.com; Jill Broughton; sean@hyperblock.co; kristen@hyperblock.co |
| **Subject:** | Re: FW: Revised version 4 |
| **Date:** | Monday, December 30, 2019 10:32:23 PM |

Exhibit 24(*v)

Done.  Thanks David

On Mon, Dec 30, 2019 at 10:28 PM David Bjornson <david@bjornsonlaw.com> wrote:

Great – let's consider your redline the current version as we move forward.   David

_____

**David H. Bjornson**

**Bjornson Jones Mungas, PLLC**

**2809 Great Northern Loop, Suite 100**

**Missoula, Montana  59808**

**(406) 721-8896**

**(406) 541-8037--fax**

http://www.bjornsonlaw.com/attorneys/david-h-bjornson/

**Email:  david@bjornsonlaw.com**

*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Monday, December 30, 2019 10:25 PM
**To:** David Bjornson <david@bjornsonlaw.com>
**Cc:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>; Mike Boehme <mikeb@bonnerproperty.com>; Mike Hobbs <mikeh@bonnerproperty.com>; Jill Broughton <jill@bjornsonlaw.com>; Sean Walsh <sean@hyperblock.co>; Kristen Martin <kristen@hyperblock.co>
**Subject:** Re: FW: Revised version 4

EXHIBIT 24.
PAGE 13

Hi David,

The correct number is 0.005714286 or 0.5714286% which will equal the $15,000 credit enhancement fee for an advance of $2.625M. I updated in the redline word doc version and attached a copy for your review. Everything else looks good and I forwarded to Hannah Stone for review first thing in the morning.

Thanks

Dan

On Mon, Dec 30, 2019 at 9:54 PM Dan Stivers <dan@hyperblock.co> wrote:

> Thanks David. Reviewing now
>
> On Mon, Dec 30, 2019 at 9:49 PM David Bjornson <david@bjornsonlaw.com> wrote:
>
>> Attached is a revised draft of the Modification.   One comment – the credit enhancement fee is somewhat less than the $15,000 communicated by Steve and Dan, so please check the math on that.  Perhaps that needs to be adjusted slightly.  Also, the amount of the warrants is different than in Dan's email due to what I understand is a full total of $3,540,000 not $3,554,000.  Again, please check me on that.
>>
>> Please review and comment.  David
>>
>> _____
>>
>> **David H. Bjornson**
>>
>> **Bjornson Jones Mungas, PLLC**

EXHIBIT 24.
PAGE 14

**2809 Great Northern Loop, Suite 100**

**Missoula, Montana  59808**

**(406) 721-8896**

**(406) 541-8037--fax**

http://www.bjornsonlaw.com/attorneys/david-h-bjornson/

**Email:  david@bjornsonlaw.com**

*CONFIDENTIALITY NOTICE:  The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Monday, December 30, 2019 1:51 PM
**To:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Cc:** Mike Boehme <mikeb@bonnerproperty.com>; mikeh@bonnerproperty.com; David Bjornson <david@bjornsonlaw.com>
**Subject:** Re: FW: Revised version 4

stock warrants

On Mon, Dec 30, 2019 at 1:38 PM Dan Stivers <dan@hyperblock.co> wrote:

Also please add language regarding the issuance of warrants to Bonner Property as part of the credit enhancement agreement.

15% of loan amount ($3,554,000 * .15 = $533,100) in warrants with a strike price to be determined by the volume weighted average price (VWAP) with an expiration date of five years.

On Mon, Dec 30, 2019 at 1:22 PM Dan Stivers <dan@hyperblock.co> wrote:

Hi All,

EXHIBIT 24.
PAGE 15

Attached is the agreement with our comments.


Thanks

Dan



On Tue, Dec 24, 2019 at 8:48 AM Big Sky Mobile Catering
<bsmcorpmt@gmail.com> wrote:

> Dan,  This is the final version.  David made some improvements.  Thx Steve.
> Let me know your thoughts.
>
>
> _____
>
>
> **From:** David Bjornson [mailto:david@bjornsonlaw.com]
> **Sent:** Monday, December 23, 2019 10:24 PM
> **To:** Big Sky Mobile Catering (bsmcorpmt@gmail.com)
> <bsmcorpmt@gmail.com>; Michael Boehme <mikeb@bonnerproperty.com>
> **Cc:** Jill Broughton <jill@bjornsonlaw.com>
> **Subject:** Revised version 4
>
>
> Steve and Mike -   I am finally able to access my computer.  I have
> modified the version you sent to me earlier today in some important
> regards.  Please see the redline between your revision and my v4
> attached.   David
>
>
> _____
>
>
> **David H. Bjornson**
>
>
> **Bjornson Jones Mungas, PLLC**
>
> **2809 Great Northern Loop, Suite 100**
>
> **Missoula, Montana  59808**
>
> **(406) 721-8896**

**(406) 541-8037--fax**

http://www.bjornsonlaw.com/attorneys/david-h-bjornson/

Email:  david@bjornsonlaw.com

***CONFIDENTIALITY NOTICE:***  *The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

**From:** David Bjornson
**To:**
**Subject:** FW: FW: Revised version 4
**Date:**

---

Exhibit 24(vi)

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Monday, December 30, 2019 1:39 PM
**To:** Big Sky Mobile Catering <bsmcorpmt@gmail.com>
**Cc:** Mike Boehme <mikeb@bonnerproperty.com>; mikeh@bonnerproperty.com; David Bjornson <david@bjornsonlaw.com>
**Subject:** Re: FW: Revised version 4

Also please add language regarding the issuance of warrants to Bonner Property as part of the credit enhancement agreement.

15% of loan amount ($3,554,000 * .15 = $533,100) in warrants with a strike price to be determined by the volume weighted average price (VWAP) with an expiration date of five years.

On Mon, Dec 30, 2019 at 1:22 PM Dan Stivers <dan@hyperblock.co> wrote:

> Hi All,
>
> Attached is the agreement with our comments.
>
> Thanks
> Dan
>
>
> On Tue, Dec 24, 2019 at 8:48 AM Big Sky Mobile Catering <bsmcorpmt@gmail.com> wrote:
>
> > Dan,  This is the final version.  David made some improvements.  Thx Steve.  Let me know your thoughts.
> >
> > ---
> > **From:** David Bjornson [mailto:david@bjornsonlaw.com]
> > **Sent:** Monday, December 23, 2019 10:24 PM
> > **To:** Big Sky Mobile Catering (bsmcorpmt@gmail.com) <bsmcorpmt@gmail.com>; Michael Boehme <mikeb@bonnerproperty.com>
> > **Cc:** Jill Broughton <jill@bjornsonlaw.com>
> > **Subject:** Revised version 4
> >
> > Steve and Mike -   I am finally able to access my computer.  I have modified the version you sent to me earlier today in some important regards.  Please see the redline between your revision and my v4 attached.   David

EXHIBIT 24.
PAGE 18

## David H. Bjornson

**Bjornson Jones Mungas, PLLC**

**2809 Great Northern Loop, Suite 100**

**Missoula, Montana  59808**

**(406) 721-8896**

**(406) 541-8037--fax**

http://www.bjornsonlaw.com/attorneys/david-h-bjornson/

**Email:  david@bjornsonlaw.com**

***CONFIDENTIALITY NOTICE:***  *The information contained in this email message may be privileged or confidential information and is intended only for the use of the individual or entity named above.  If you have received this communication in error, please notify us immediately by telephone and delete the message from your system.*

This email has been scanned for email related threats and delivered safely by Mimecast. For more information please visit http://www.mimecast.com

EXHIBIT 24.
PAGE 19

## MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT

**THIS MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT ("Modification")** is dated as of the 23rd day of December, 2019, by and between Bonner Property Development, LLC, a Montana limited liability company ("Landlord"), and Hyperblock LLC, a Delaware limited liability company ("Tenant" and sometimes "Hyperblock").

### Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.      The Lease was assigned by Project Spokane to, and assumed by, Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").

E.      Landlord and Tenant executed that certain Fourth Amendment to Commercial Lease Agreement dated and effective January 23, 2019 (the "Fourth Amendment").

F.      The First Amendment, Second Amendment, Third Amendment and Fourth Amendment are collectively referred to herein as the "Lease Amendments".

G.      As part of a change in plans as to certain expansion and improvements at the Property, Tenant will not be occupying certain parts of the Property and Landlord has agreed to remove them from the Lease.

H.      A certain financing arrangement designed to fund infrastructure and improvements was created through a line of credit arrangement undertaken by Landlord with Bank of Montana for the benefit of Tenant, and the parties entered into certain agreements in that certain Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement")

and that certain Security Agreement dated December 13, 2018 (the "Security Agreement") (the Lease, Side Agreement, Credit Enhancement Agreement and Security Agreement, sometimes referred to as the "Agreements"). As part of the change in plans, this financing line will be increased from $2,625,000 to $3,536,000, and will instead be used for the acquisition of new servers (instead of real property improvements).

       H.    The parties wish to amend the Lease, as previously modified by the prior Amendments, and also to amend the terms of the Side Agreement, the Credit Enhancement Agreement, and the Security Agreement, all as set forth in this Modification.

## Amendments

The parties agree as follows:

1. <u>Property</u>.

      a.    <u>Revised Description of "Property"</u>. Subsections iii. and iv. of the first paragraph of **Section 1.a.,** added to the Lease pursuant to the Third Amendment, shall be deleted in their entirety. They formerly read:

          iii.  Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit F.**

          iv.  Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit G.** In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

The accompanying **Exhibits F** and **G** are also deleted in their entirety.

    2.  <u>Equity and Loan Financing of Improvements</u>. **Subsection 1.b.II.ix**, added to the Lease pursuant to the Third Amendment, and relating to additional equity and loan financing of various improvements, shall be amended in its entirety to read as follows:

ix)    As part of an expansion of operations, Tenant is engaging in fundraising through additional borrowing of $3,536,000 from the Bank of Montana ("New Loan"). The New Loan shall consist of two separate portions: $2,625,000.00 (the "Original Amount") and the remainder of $911,000 (the "New Amount"). Tenant has committed to the expenditure of all of the proceeds of the New Loan to the acquisition of new servers ("New Servers") which will be held and operated on the Property. In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Lease, as amended, Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement") and that certain Security Agreement dated December 13, 2018. Landlord shall not be obligated to approve disbursements by Lender under the New Loan except for purchases of New Servers as provided herein. Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for

EXHIBIT 24.
PAGE 21

disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate invoices, purchase orders and other documentation that the disbursements are appropriate, and within the scope of and in accordance with specifications for New Servers approved in writing by Landlord. Notwithstanding anything provided herein, no advances shall be made in excess of the Original Amount without the establishment of the account for security for the New Amount provided in Section 5.c. and unless the payments under Sections 5.d. and 5.e. are current at such time.

3.   Base Rent.   **Sections 4.a.(i) and (ii)**, relating to rent for bare land and for land for a power substation are deleted in their entirety.   **Section 4.a.(i)** shall be amended and restated in its entirety, beginning effective December 1, 2019, to read as follows:

(i)   The Base Rent payable hereunder shall initially be as follows:

A.   $75,420.90 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months.

The Base Rent as set forth above shall continue at this rate for through February 28, 2020.  On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

4.   Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements. Section 4 of the Third Amendment, regarding a pledge by Landlord for a loan at Bank of Montana is hereby modified to reflect that, instead of infrastructure and improvements, the New Loan will be used for the acquisition of New Servers.

5.   Credit Enhancement Agreement, Side Letter and Security Agreement.   The Credit Enhancement Agreement shall be amended to reflect the following new and modified provisions:

a.   The concepts of "New Equity" and "New Improvements" are eliminated from the Agreements and the proceeds of the "Bank Loan" (also referred to sometimes as "New Loan") from Bank of Montana will be used to acquire New Servers instead of real property improvements

b.   The Security Agreement is modified to include the Lease being amended by the Fourth Amendment to Commercial Lease Agreement dated January 23, 2019, and property described in this Modification, and is modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification.

EXHIBIT 24.
PAGE 22

    c.   Hyperblock shall place into an account with Bank of Montana, an amount of cash in the full amount of the New Amount, which shall partially secure Hyperblock's obligations under the Agreements. Hyperblock will execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code, including a Deposit Account Control Agreement. Alternatively, with Landlord's advance written consent, this obligation may be satisfied with alternative deposits or pledges, including cryptocurrency, in a manner satisfactory to Landlord and its legal counsel.

    d.   Consistent with loan documents with Bank of Montana for the New Loan, payment by Hyperblock will commence at the end of January 2020. Notwithstanding the minimum payment requirements of the New Loan, including interest only for 6 months ("BOM Minimum Payment") or the timing of such payments, Hyperblock shall also make an additional payment amount calculated and administered as follows:

-    the full amount ($3,536,000) of the New Loan shall be amortized in level payments of interest and principal over a 36-month term at 8.24%, which is approximately $111,197 (the "BPD Payment Amount");

-    the excess of the BPD Payment Amount over the BOM Minimum Payment (whether or not interest only) (the excess is estimated at approximately $24,474 per month) shall be paid into another special account maintained at Bank of Montana, which shall further secure the obligations of Hyperblock under the Agreements. Hyperblock shall execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code including a Deposit Account Control Agreement. Further application of the balance of this account shall be only with the express written agreement of both parties.

These payments shall commence on the date which is the 45th day after arrival of the first servers to the Property, even if such first arrival does not consist of all servers ordered, or, if a weekend or holiday, the first business day thereafter.

    e.   In addition to all payments due under the Lease and the New Loan, Hyperblock shall make monthly payments to Landlord of $19,815.00 as a credit enhancement fee for Landlord's securing of the New Loan for the entire term of the New Loan, on the final day of the month, commencing in January 2020.

   6.   <u>Renewable Energy Credits</u>. On or before the execution hereof, Tenant shall supply Landlord with copies of all correspondence with Missoula County regarding the potential of applying renewable energy credits to satisfy some of the requirements imposed by the Missoula County Commissioners affecting Tenant.

   7.   <u>Not a Precedent; Future Expansion</u>. Landlord's agreement pursuant to this Modification to remove Property from the scope of the Lease does not bind Landlord to agree to any future amendments reducing the leased Property, or the amount of Rent. Should Tenant revise its

expansion plans to reincorporate the portions of the Property hereby removed from the Lease, the terms shall be the same as what was negotiated in the Third Amendment to the Lease.

8.   <u>Remaining Provisions of Agreements</u>.  To the extent not modified herein, all remaining provisions of the Agreements shall remain in full force and effect, and are hereby reaffirmed.

9.   <u>Counterparts</u>.  This Modification may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 24.
PAGE 24

-

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                                TENANT:

Bonner Property Development, LLC          Hyperblock LLC


By: _____        By:_____
Stephen Nelson, Co-Manager                Print name:_____
                                          Its: _____


By: _____
Michael Boehme, Co-Manager

## MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT

**THIS MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT ("Modification")** is dated as of the 23rd day of December, 2019, by and between Bonner Property Development, LLC, a Montana limited liability company ("Landlord"), and Hyperblock LLC, a Delaware limited liability company ("Tenant" and sometimes "Hyperblock").

### Recitals

A.     Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.     The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.     The Lease was assigned by Project Spokane to, and assumed by, Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.     Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").

E.     Landlord and Tenant executed that certain Fourth Amendment to Commercial Lease Agreement dated and effective January 23, 2019 (the "Fourth Amendment").

F.     The First Amendment, Second Amendment, Third Amendment and Fourth Amendment are collectively referred to herein as the "Lease Amendments".

G.     As part of a change in plans as to certain expansion and improvements at the Property, Tenant will not be occupying certain parts of the Property and Landlord has agreed to remove them from the Lease.

H.     A certain financing arrangement designed to fund infrastructure and improvements was created through a line of credit arrangement undertaken by Landlord with Bank of Montana for the benefit of Tenant, and the parties entered into certain agreements in that certain Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement")

and that certain Security Agreement dated December 13, 2018 (the "Security Agreement") (the Lease, Side Agreement, Credit Enhancement Agreement and Security Agreement, sometimes referred to as the "Agreements"). As part of the change in plans, this financing line will be increased from $2,625,000 to $3,536,000, and will instead be used for the acquisition of new servers (instead of real property improvements).

       H.    The parties wish to amend the Lease, as previously modified by the prior Amendments, and also to amend the terms of the Side Agreement, the Credit Enhancement Agreement, and the Security Agreement, all as set forth in this Modification.

## Amendments

    The parties agree as follows:

1. <u>Property</u>.

       a.    <u>Revised Description of "Property"</u>. Subsections iii. and iv. of the first paragraph of **Section 1.a.,** added to the Lease pursuant to the Third Amendment, shall be deleted in their entirety. They formerly read:

        iii.  Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit F.**

        iv.  Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit G.** In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

The accompanying **Exhibits F** and **G** are also deleted in their entirety.

    2. <u>Equity and Loan Financing of Improvements</u>. **Subsection 1.b.II.ix**, added to the Lease pursuant to the Third Amendment, and relating to additional equity and loan financing of various improvements, shall be amended in its entirety to read as follows:

ix)    As part of an expansion of operations, Tenant is engaging in fundraising through additional borrowing of $3,536,000 from the Bank of Montana ("New Loan"). The New Loan shall consist of two separate portions: $2,625,000.00 (the "Original Amount") and the remainder of $911,000 (the "New Amount"). Tenant has committed to the expenditure of all of the proceeds of the New Loan to the acquisition of new servers ("New Servers") which will be held and operated on the Property. In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Lease, as amended, Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement") and that certain Security Agreement dated December 13, 2018. Landlord shall not be obligated to approve disbursements by Lender under the New Loan except for purchases of New Servers as provided herein. Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for

disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate invoices, purchase orders and other documentation that the disbursements are appropriate, and within the scope of and in accordance with specifications for New Servers approved in writing by Landlord. Notwithstanding anything provided herein, no advances shall be made in excess of the Original Amount without the establishment of the account for security for the New Amount provided in Section 5.c. and unless the payments under Sections 5.d. and 5.e. are current at such time.

3. <u>Base Rent</u>. **Sections 4.a.(i) and (ii)**, relating to rent for bare land and for land for a power substation are deleted in their entirety. **Section 4.a.(i)** shall be amended and restated in its entirety, beginning effective December 1, 2019, to read as follows:

    (i)    The Base Rent payable hereunder shall initially be as follows:

    A.    $75,420.90 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months.

The Base Rent as set forth above shall continue at this rate for through February 28, 2020. On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

4. <u>Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements</u>. Section 4 of the Third Amendment, regarding a pledge by Landlord for a loan at Bank of Montana is hereby modified to reflect that, instead of infrastructure and improvements, the New Loan will be used for the acquisition of New Servers.

5. <u>Credit Enhancement Agreement, Side Letter and Security Agreement</u>. The Credit Enhancement Agreement shall be amended to reflect the following new and modified provisions:

a. The concepts of "New Equity" and "New Improvements" are eliminated from the Agreements and the proceeds of the "Bank Loan" (also referred to sometimes as "New Loan") from Bank of Montana will be used to acquire New Servers instead of real property improvements

b. The Security Agreement is modified to include the Lease being amended by the Fourth Amendment to Commercial Lease Agreement dated January 23, 2019, and property described in this Modification, and is modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification.

EXHIBIT 24.
PAGE 28

    c. Hyperblock shall place into an account with Bank of Montana, an amount of cash in the full amount of the New Amount, which shall partially secure Hyperblock's obligations under the Agreements. Hyperblock will execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code, including a Deposit Account Control Agreement. Alternatively, with Landlord's advance written consent, this obligation may be satisfied with alternative deposits or pledges, including cryptocurrency, in a manner satisfactory to Landlord and its legal counsel.

    d. Consistent with loan documents with Bank of Montana for the New Loan, payment by Hyperblock will commence at the end of January 2020.   Notwithstanding the minimum payment requirements of the New Loan, including interest only for 6 months ("BOM Minimum Payment") or the timing of such payments, Hyperblock shall also make an additional payment amount calculated and administered as follows:

        - the full amount ($3,536,000) of the New Loan shall be amortized in level payments of interest and principal over a 36-month term at 8.24%, which is approximately $111,197 (the "BPD Payment Amount");

        - the excess of the BPD Payment Amount over the BOM Minimum Payment (whether or not interest only) (the excess is estimated at approximately $24,474 per month) shall be paid into another special account maintained at Bank of Montana, which shall further secure the obligations of Hyperblock under the Agreements. Hyperblock shall execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code including a Deposit Account Control Agreement.  Further application of the balance of this account shall be only with the express written agreement of both parties.

    These payments shall commence on the date which is the 45th day after arrival of the first servers to the Property, even if such first arrival does not consist of all servers ordered, or, if a weekend or holiday, the first business day thereafter.

    e. In addition to all payments due under the Lease and the New Loan, Hyperblock shall make monthly payments to Landlord of $19,815.00 as a credit enhancement fee for Landlord's securing of the New Loan for the entire term of the New Loan, on the final day of the month, commencing in January 2020.

    6. _Renewable Energy Credits_.   On or before the execution hereof, Tenant shall supply Landlord with copies of all correspondence with Missoula County regarding the potential of applying renewable energy credits to satisfy some of the requirements imposed by the Missoula County Commissioners affecting Tenant.

    7. _Not a Precedent; Future Expansion_.  Landlord's agreement pursuant to this Modification to remove Property from the scope of the Lease does not bind Landlord to agree to any future amendments reducing the leased Property, or the amount of Rent.  Should Tenant revise its

EXHIBIT 24.
PAGE 29

expansion plans to reincorporate the portions of the Property hereby removed from the Lease, the terms shall be the same as what was negotiated in the Third Amendment to the Lease.

8.   <u>Remaining Provisions of Agreements</u>.  To the extent not modified herein, all remaining provisions of the Agreements shall remain in full force and effect, and are hereby reaffirmed.

9.   <u>Counterparts</u>.  This Modification may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 24.
PAGE 30

-

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                                         TENANT:

Bonner Property Development, LLC          Hyperblock LLC


By: _____   By:_____
Stephen Nelson, Co-Manager                  Print name:_____
                                                            Its: _____


By: _____
Michael Boehme, Co-Manager

EXHIBIT 24.
PAGE 31

## MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT

**THIS MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT ("Modification")** is dated as of the 31st day of December, 2019, by and between Bonner Property Development, LLC, a Montana limited liability company ("Landlord"), and Hyperblock LLC, a Delaware limited liability company ("Tenant" and sometimes "Hyperblock").

### Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.      The Lease was assigned by Project Spokane to, and assumed by, Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").

E.      Landlord and Tenant executed that certain Fourth Amendment to Commercial Lease Agreement dated and effective January 23, 2019 (the "Fourth Amendment").

F.      The First Amendment, Second Amendment, Third Amendment and Fourth Amendment are collectively referred to herein as the "Lease Amendments".

G.      As part of a change in plans as to certain expansion and improvements at the Property, Tenant will not be occupying certain parts of the Property and Landlord has agreed to remove them from the Lease.

H.      A certain financing arrangement designed to fund infrastructure and improvements was created through a line of credit arrangement undertaken by Landlord with Bank of Montana for the benefit of Tenant, and the parties entered into certain agreements in that certain Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement")

EXHIBIT 24.
PAGE 32

and that certain Security Agreement dated December 13, 2018 (the "Security Agreement") (the Lease, Side Agreement, Credit Enhancement Agreement and Security Agreement, sometimes referred to as the "Agreements"). As part of the change in plans, this financing line will be increased from $2,625,000 to $3,540,000, and will instead be used for the acquisition of new servers (instead of real property improvements).

H.     The parties wish to amend the Lease, as previously modified by the prior Amendments, and also to amend the terms of the Side Agreement, the Credit Enhancement Agreement, and the Security Agreement, all as set forth in this Modification.

### Amendments

The parties agree as follows:

1.  Property.

    a.          Revised Description of "Property". Subsections iii. and iv. of the first paragraph of **Section 1.a.,** added to the Lease pursuant to the Third Amendment, shall be deleted in their entirety. They formerly read:

    > iii.   Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit F.**

    > iv.   Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit G.**   In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

The accompanying **Exhibits F** and **G** are also deleted in their entirety.

2.   Equity and Loan Financing of Improvements. **Subsection 1.b.II.ix**, added to the Lease pursuant to the Third Amendment, and relating to additional equity and loan financing of various improvements, shall be amended in its entirety to read as follows:

ix)     As part of an expansion of operations, Tenant is engaging in fundraising through additional borrowing of $3,540,000 from the Bank of Montana ("New Loan"). The New Loan shall consist of two separate portions: $2,625,000.00 (the "Original Amount") and the remainder of $915,000 (the "New Amount"). Tenant has committed to the expenditure of all of the proceeds of the New Loan to the acquisition of new servers ("New Servers") which will be held and operated on the Property. In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Lease, as amended, Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement") and that certain Security Agreement dated December 13, 2018. Landlord shall not be obligated to approve disbursements by Lender under the New Loan except for purchases of New Servers as provided herein. Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for

disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate invoices, purchase orders and other documentation that the disbursements are appropriate, and within the scope of and in accordance with specifications for New Servers approved in writing by Landlord. Notwithstanding anything provided herein, no advances shall be made in excess of the Original Amount without the establishment of the account for security for the New Amount provided in Section 5.c. of that certain Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement dated December 31, 2019 (the "Modification") and unless the payments under Sections 5.d. and 5.e. of the Modification are current at such time.

3.  Base Rent.  **Sections 4.a.(i) and (ii)**, relating to rent for bare land and for land for a power substation are deleted in their entirety.  **Section 4.a.(i)** shall be amended and restated in its entirety, beginning effective December 1, 2019, to read as follows:

(i)      The Base Rent payable hereunder shall initially be as follows:

A.  $75,420.90 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months.

The Base Rent as set forth above shall continue at this rate for through February 28, 2020.  On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

4.  Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements. Section 4 of the Third Amendment, regarding a pledge by Landlord for a loan at Bank of Montana is hereby modified to reflect that, instead of infrastructure and improvements, the New Loan will be used for the acquisition of New Servers.

5.  Credit Enhancement Agreement, Side Letter and Security Agreement.  The Credit Enhancement Agreement shall be amended to reflect the following new and modified provisions:

a.  The concepts of "New Equity" and "New Improvements" are eliminated from the Agreements and the proceeds of the "Bank Loan" (also referred to sometimes as "New Loan") from Bank of Montana will be used to acquire New Servers instead of real property improvements

b.  The Security Agreement is modified to include the Lease being amended by the Fourth Amendment to Commercial Lease Agreement dated January 23, 2019, and property described in this Modification, and is modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification.

EXHIBIT 24.
PAGE 34

c.  At some time prior to any advances to be made in excess of the Original Amount. Hyperblock shall place into an account with Bank of Montana, an amount of cash in the full amount of the New Amount, which shall partially secure Hyperblock's obligations under the Agreements.  Hyperblock will execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code, including a Deposit Account Control Agreement.  Alternatively, with Landlord's advance written consent, this obligation may be satisfied with alternative deposits or pledges, including cryptocurrency, in a manner satisfactory to Landlord and its legal counsel.

d.  Consistent with loan documents with Bank of Montana for the New Loan, payment by Hyperblock will commence as provided hereinafter.   Notwithstanding the minimum payment requirements of the New Loan, including interest only for 6 months ("BOM Minimum Payment") or the timing of such payments, Hyperblock shall also make an additional payment amount calculated and administered as follows:

-   the amount advanced under the New Loan shall be amortized in level payments of interest and principal over a 36-month term at the greater of (i) Wall Street Prime Rate plus 299 basis points, or (ii) 8.24% (the "BPD Payment Amount"), with the payment being adjusted from time to time for additional advances as approved and made;

-   the excess of the BPD Payment Amount over the BOM Minimum Payment (whether or not interest only) (the excess is estimated at approximately $24,474 per month) shall be paid into another special account maintained at Bank of Montana, which shall further secure the obligations of Hyperblock under the Agreements.  Hyperblock shall execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code including a Deposit Account Control Agreement.  Further application of the balance of this account shall be only with the express written agreement of both parties.

These payments shall commence on the date which is the 30th day after installation and operation of the first servers ordered to arrive at the Property, even if such first arrival does not consist of all servers ordered, or, if a weekend or holiday, the first business day thereafter.

e.  In addition to all payments due under the Lease and the New Loan, Hyperblock shall make monthly payments to Landlord of a credit enhancement fee for Landlord's securing of the New Loan for the entire term of the New Loan, on the final day of the month, commencing in January 2020.  The credit enhancement fee shall be 0.566038% of the amount advanced on the New Loan.  For example, if the amount advanced is only the Original Amount, the fee would be $14,858.50, and if the full amount is advanced, the fee would be $20,037.75.

f.  As additional consideration for the credit enhancement, Hyperblock shall issue

EXHIBIT 24.
PAGE 35

within 30 days of the date hereof stock warrants in form and content acceptable to Landlord and its counsel for shares of its publicly trading common shares, calculated as follows:  the number of shares of common stock subject to the warrant is the number which is calculated by dividing the number which is 15% of the total amount of the New Loan, whether fully advanced or not ($3,540,000 * .15 = $531,000) by a strike price to be determined on the first day that public trading is allowed by relevant regulatory authorities at the volume weighted average price (VWAP).  The warrants shall have a term of 5 years.

6.  <u>Renewable Energy Credits</u>.   On or before the execution hereof, Tenant shall supply Landlord with copies of all correspondence with Missoula County regarding the potential of applying renewable energy credits to satisfy some of the requirements imposed by the Missoula County Commissioners affecting Tenant.

7.  <u>Not a Precedent; Future Expansion</u>.  Landlord's agreement pursuant to this Modification to remove Property from the scope of the Lease does not bind Landlord to agree to any future amendments reducing the leased Property, or the amount of Rent.  Should Tenant revise its expansion plans to reincorporate the portions of the Property hereby removed from the Lease, the terms shall be the same as what was negotiated in the Third Amendment to the Lease.

8.  <u>Remaining Provisions of Agreements</u>.  To the extent not modified herein, all remaining provisions of the Agreements shall remain in full force and effect, and are hereby reaffirmed.

9.  <u>Counterparts</u>.  This Modification may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 24.
PAGE 36

-

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                                    TENANT:

Bonner Property Development, LLC              Hyperblock LLC


By: _____        By:_____
Stephen Nelson, Co-Manager                    Print name:_____
                                              Its: _____


By: _____
Michael Boehme, Co-Manager

EXHIBIT 24.
PAGE 37

## MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT

**THIS MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT ("Modification")** is dated as of the 31st day of December, 2019, by and between Bonner Property Development, LLC, a Montana limited liability company ("Landlord"), and Hyperblock LLC, a Delaware limited liability company ("Tenant" and sometimes "Hyperblock").

### Recitals

A.     Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.     The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.     The Lease was assigned by Project Spokane to, and assumed by, Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.     Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").

E.     Landlord and Tenant executed that certain Fourth Amendment to Commercial Lease Agreement dated and effective January 23, 2019 (the "Fourth Amendment").

F.     The First Amendment, Second Amendment, Third Amendment and Fourth Amendment are collectively referred to herein as the "Lease Amendments".

G.     As part of a change in plans as to certain expansion and improvements at the Property, Tenant will not be occupying certain parts of the Property and Landlord has agreed to remove them from the Lease.

H.     A certain financing arrangement designed to fund infrastructure and improvements was created through a line of credit arrangement undertaken by Landlord with Bank of Montana for the benefit of Tenant, and the parties entered into certain agreements in that certain Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement")

and that certain Security Agreement dated December 13, 2018 (the "Security Agreement") (the Lease, Side Agreement, Credit Enhancement Agreement and Security Agreement, sometimes referred to as the "Agreements").   As part of the change in plans, this financing line will be increased from $2,625,000 to $3,540,000, and will instead be used for the acquisition of new servers (instead of real property improvements).

H.   The parties wish to amend the Lease, as previously modified by the prior Amendments, and also to amend the terms of the Side Agreement, the Credit Enhancement Agreement, and the Security Agreement, all as set forth in this Modification.

## Amendments

The parties agree as follows:

1.   Property.

a.   Revised Description of "Property".   Subsections iii. and iv. of the first paragraph of **Section 1.a.,** added to the Lease pursuant to the Third Amendment, shall be deleted in their entirety.   They formerly read:

iii.   Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit F.**

iv.   Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit G.**   In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

The accompanying **Exhibits F** and **G** are also deleted in their entirety.

2.   Equity and Loan Financing of Improvements.   **Subsection 1.b.II.ix**, added to the Lease pursuant to the Third Amendment, and relating to additional equity and loan financing of various improvements, shall be amended in its entirety to read as follows:

ix)   As part of an expansion of operations, Tenant is engaging in fundraising through additional borrowing of $3,540,000 from the Bank of Montana ("New Loan").   The New Loan shall consist of two separate portions: $2,625,000.00 (the "Original Amount") and the remainder of $915,000 (the "New Amount").   Tenant has committed to the expenditure of all of the proceeds of the New Loan to the acquisition of new servers ("New Servers") which will be held and operated on the Property.   In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Lease, as amended, Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement") and that certain Security Agreement dated December 13, 2018.   Landlord shall not be obligated to approve disbursements by Lender under the New Loan except for purchases of New Servers as provided herein.   Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for

disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate invoices, purchase orders and other documentation that the disbursements are appropriate, and within the scope of and in accordance with specifications for New Servers approved in writing by Landlord. Notwithstanding anything provided herein, no advances shall be made in excess of the Original Amount without the establishment of the account for security for the New Amount provided in Section 5.c. of that certain Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement dated December 31, 2019 (the "Modification") and unless the payments under Sections 5.d. and 5.e. of the Modification are current at such time.

3.  <u>Base Rent</u>.  **Sections 4.a.(i) and (ii)**, relating to rent for bare land and for land for a power substation are deleted in their entirety.  **Section 4.a.(i)** shall be amended and restated in its entirety, beginning effective December 1, 2019, to read as follows:

(i)    The Base Rent payable hereunder shall initially be as follows:

A.  $75,420.90 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months.

The Base Rent as set forth above shall continue at this rate for through February 28, 2020.  On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

4.  <u>Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements</u>. Section 4 of the Third Amendment, regarding a pledge by Landlord for a loan at Bank of Montana is hereby modified to reflect that, instead of infrastructure and improvements, the New Loan will be used for the acquisition of New Servers.

5.  <u>Credit Enhancement Agreement, Side Letter and Security Agreement</u>.  The Credit Enhancement Agreement shall be amended to reflect the following new and modified provisions:

a.  The concepts of "New Equity" and "New Improvements" are eliminated from the Agreements and the proceeds of the "Bank Loan" (also referred to sometimes as "New Loan") from Bank of Montana will be used to acquire New Servers instead of real property improvements

b.  The Security Agreement is modified to include the Lease being amended by the Fourth Amendment to Commercial Lease Agreement dated January 23, 2019, and property described in this Modification, and is modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification.

EXHIBIT 24.
PAGE 40

c.   At some time prior to any advances to be made in excess of the Original Amount. Hyperblock shall place into an account with Bank of Montana, an amount of cash in the full amount of the New Amount, which shall partially secure Hyperblock's obligations under the Agreements.  Hyperblock will execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code, including a Deposit Account Control Agreement. Alternatively, with Landlord's advance written consent, this obligation may be satisfied with alternative deposits or pledges, including cryptocurrency, in a manner satisfactory to Landlord and its legal counsel.

d.   Consistent with loan documents with Bank of Montana for the New Loan, payment by Hyperblock will commence as provided hereinafter.   Notwithstanding the minimum payment requirements of the New Loan, including interest only for 6 months ("BOM Minimum Payment") or the timing of such payments, Hyperblock shall also make an additional payment amount calculated and administered as follows:

-        the amount advanced under the New Loan shall be amortized in level payments of interest and principal over a 36-month term at the greater of (i) Wall Street Prime Rate plus 299 basis points, or (ii) 8.24% (the "BPD Payment Amount"), with the payment being adjusted from time to time for additional advances as approved and made;

-        the excess of the BPD Payment Amount over the BOM Minimum Payment (whether or not interest only) (the excess is estimated at approximately $24,474 per month) shall be paid into another special account maintained at Bank of Montana, which shall further secure the obligations of Hyperblock under the Agreements.  Hyperblock shall execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code including a Deposit Account Control Agreement.  Further application of the balance of this account shall be only with the express written agreement of both parties.

These payments shall commence on the date which is the 30th day after installation and operation of the first servers ordered to arrive at the Property, even if such first arrival does not consist of all servers ordered, or, if a weekend or holiday, the first business day thereafter.

e.   In addition to all payments due under the Lease and the New Loan, Hyperblock shall make monthly payments to Landlord of a credit enhancement fee for Landlord's securing of the New Loan for the entire term of the New Loan, on the final day of the month, commencing in January 2020.  The credit enhancement fee shall be  0.5714286% of the amount advanced on the New Loan.  For example, if the amount advanced is only the Original Amount, the fee would be $ $15,000.00, and if the full amount is advanced, the fee would be  $20,228.57.

f.   As additional consideration for the credit enhancement, Hyperblock shall issue

within 30 days of the date hereof stock warrants in form and content acceptable to Landlord and its counsel for shares of its publicly trading common shares, calculated as follows:  the number of shares of common stock subject to the warrant is the number which is calculated by dividing the number which is 15% of the total amount of the New Loan, whether fully advanced or not ($3,540,000 * .15 = $531,000) by a strike price to be determined on the first day that public trading is allowed by relevant regulatory authorities at the volume weighted average price (VWAP).  The warrants shall have a term of 5 years.

6.   Renewable Energy Credits.    On or before the execution hereof, Tenant shall supply Landlord with copies of all correspondence with Missoula County regarding the potential of applying renewable energy credits to satisfy some of the requirements imposed by the Missoula County Commissioners affecting Tenant.

7.   Not a Precedent; Future Expansion.  Landlord's agreement pursuant to this Modification to remove Property from the scope of the Lease does not bind Landlord to agree to any future amendments reducing the leased Property, or the amount of Rent.  Should Tenant revise its expansion plans to reincorporate the portions of the Property hereby removed from the Lease, the terms shall be the same as what was negotiated in the Third Amendment to the Lease.

8.   Remaining Provisions of Agreements.  To the extent not modified herein, all remaining provisions of the Agreements shall remain in full force and effect, and are hereby reaffirmed.

9.   Counterparts.  This Modification may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 24.
PAGE 42

-

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                                      TENANT:

Bonner Property Development, LLC               Hyperblock LLC


By: _____           By:_____
Stephen Nelson, Co-Manager                     Print name:_____
                                               Its: _____


By: _____
Michael Boehme, Co-Manager

**MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT**

**THIS MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT ("Modification")** is dated as of the 31st day of December, 2019, by and between Bonner Property Development, LLC, a Montana limited liability company ("Landlord"), and Hyperblock LLC, a Delaware limited liability company ("Tenant" and sometimes "Hyperblock").

### Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.      The Lease was assigned by Project Spokane to, and assumed by, Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").

E.      Landlord and Tenant executed that certain Fourth Amendment to Commercial Lease Agreement dated and effective January 23, 2019 (the "Fourth Amendment").

F.      The First Amendment, Second Amendment, Third Amendment and Fourth Amendment are collectively referred to herein as the "Lease Amendments".

G.      As part of a change in plans as to certain expansion and improvements at the Property, Tenant will not be occupying certain parts of the Property and Landlord has agreed to remove them from the Lease.

H.      A certain financing arrangement designed to fund infrastructure and improvements was created through a line of credit arrangement undertaken by Landlord with Bank of Montana for the benefit of Tenant, and the parties entered into certain agreements in that certain Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement")

and that certain Security Agreement dated December 13, 2018 (the "Security Agreement") (the Lease, Side Agreement, Credit Enhancement Agreement and Security Agreement, sometimes referred to as the "Agreements"). As part of the change in plans, this financing line will be increased from $2,625,000 to $3,540,000, and will instead be used for the acquisition of new servers (instead of real property improvements).

      H.    The parties wish to amend the Lease, as previously modified by the prior Amendments, and also to amend the terms of the Side Agreement, the Credit Enhancement Agreement, and the Security Agreement, all as set forth in this Modification.

## Amendments

The parties agree as follows:

1. Property.

      a.    Revised Description of "Property". Subsections iii. and iv. of the first paragraph of **Section 1.a.,** added to the Lease pursuant to the Third Amendment, shall be deleted in their entirety. They formerly read:

      iii.   Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit F.**

      iv.   Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit G.** In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

The accompanying **Exhibits F** and **G** are also deleted in their entirety.

2. Equity and Loan Financing of Improvements. **Subsection 1.b.II.ix**, added to the Lease pursuant to the Third Amendment, and relating to additional equity and loan financing of various improvements, shall be amended in its entirety to read as follows:

ix) As part of an expansion of operations, Tenant is engaging in fundraising through additional borrowing of $3,540,000 from the Bank of Montana ("New Loan"). The New Loan shall consist of two separate portions: $2,625,000.00 (the "Original Amount") and the remainder of $915,000 (the "New Amount"). Tenant has committed to the expenditure of all of the proceeds of the New Loan to the acquisition of new servers ("New Servers") which will be held and operated on the Property. In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Lease, as amended, Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement") and that certain Security Agreement dated December 13, 2018. Landlord shall not be obligated to approve disbursements by Lender under the New Loan except for purchases of New Servers as provided herein. Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for

disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate invoices, purchase orders and other documentation that the disbursements are appropriate, and within the scope of and in accordance with specifications for New Servers approved in writing by Landlord. Notwithstanding anything provided herein, no advances shall be made in excess of the Original Amount without the establishment of the account for security for the New Amount provided in Section 5.c. of that certain Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement dated December 31, 2019 (the "Modification") and unless the payments under Sections 5.d. and 5.e. of the Modification are current at such time.

3. <u>Base Rent</u>.  **Sections 4.a.(i) and (ii)**, relating to rent for bare land and for land for a power substation are deleted in their entirety.  **Section 4.a.(i)** shall be amended and restated in its entirety, beginning effective December 1, 2019, to read as follows:

    (i)     The Base Rent payable hereunder shall initially be as follows:

        A.    $75,420.90 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months.

        The Base Rent as set forth above shall continue at this rate for through February 28, 2020.  On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

4. <u>Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements</u>. Section 4 of the Third Amendment, regarding a pledge by Landlord for a loan at Bank of Montana is hereby modified to reflect that, instead of infrastructure and improvements, the New Loan will be used for the acquisition of New Servers.

5. <u>Credit Enhancement Agreement, Side Letter and Security Agreement</u>.  The Credit Enhancement Agreement shall be amended to reflect the following new and modified provisions:

    a.    The concepts of "New Equity" and "New Improvements" are eliminated from the Agreements and the proceeds of the "Bank Loan" (also referred to sometimes as "New Loan") from Bank of Montana will be used to acquire New Servers instead of real property improvements

    b.    The Security Agreement is modified to include the Lease being amended by the Fourth Amendment to Commercial Lease Agreement dated January 23, 2019, and property described in this Modification, and is modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification.

EXHIBIT 25.
PAGE 4

c.   At some time prior to any advances to be made in excess of the Original Amount. Hyperblock shall place into an account with Bank of Montana, an amount of cash in the full amount of the New Amount, which shall partially secure Hyperblock's obligations under the Agreements. Hyperblock will execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code, including a Deposit Account Control Agreement. Alternatively, with Landlord's advance written consent, this obligation may be satisfied with alternative deposits or pledges, including cryptocurrency, in a manner satisfactory to Landlord and its legal counsel.

d.   Consistent with loan documents with Bank of Montana for the New Loan, payment by Hyperblock will commence as provided hereinafter.   Notwithstanding the minimum payment requirements of the New Loan, including interest only for 6 months ("BOM Minimum Payment") or the timing of such payments, Hyperblock shall also make an additional payment amount calculated and administered as follows:

-   the amount advanced under the New Loan shall be amortized in level payments of interest and principal over a 36-month term at the greater of (i) Wall Street Prime Rate plus 299 basis points, or (ii) 8.24% (the "BPD Payment Amount"), with the payment being adjusted from time to time for additional advances as approved and made;

-   the excess of the BPD Payment Amount over the BOM Minimum Payment (whether or not interest only) (the excess is estimated at approximately $24,474 per month) shall be paid into another special account maintained at Bank of Montana, which shall further secure the obligations of Hyperblock under the Agreements. Hyperblock shall execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code including a Deposit Account Control Agreement. Further application of the balance of this account shall be only with the express written agreement of both parties.

-   For one example, if the interest rate is 8.24% and the loan balance is $2,625,000, then the BOM Minimum Payment would be approximately $64,380 per month, and the 36-month amortized payment would be approximately $82,549 per month, resulting in an excess payment of approximately $18,168 per month and a Credit Enhancement Fee of $15,000 per month.

-   For another example, if the interest rate is 8.24% and the loan balance is $3,540,000, then the BOM Minimum Payment would be approximately $86,821 per month, and the 36-month amortized payment would be approximately $111,323 per month, resulting in an excess payment of approximately $24,502 and a Credit Enhancement Fee of approximately $20,229 per month.

These payments shall commence on the date which is the 30th day after installation and operation of the first servers ordered to arrive at the Property, even if such first arrival does not consist of all servers ordered, or, if a weekend or holiday, the first business day thereafter.

e.  In addition to all payments due under the Lease and the New Loan, Hyperblock shall make monthly payments to Landlord of a credit enhancement fee for Landlord's securing of the New Loan for the entire term of the New Loan, on the final day of the month, commencing in January 2020.  The credit enhancement fee shall be 0.5714286% of the amount advanced on the New Loan.  For example, if the amount advanced is only the Original Amount, the fee would be $ 15,000.00, and if the full amount is advanced, the fee would be $20,228.57.

f.  As additional consideration for the credit enhancement, Hyperblock shall issue within 60 days of the date that Hyperblock stock resumes active trading, stock warrants in form and content acceptable to Landlord and its counsel for shares of its publicly trading common shares, calculated as follows:  the number of shares of common stock subject to the warrant is the number which is calculated by dividing the number which is 15% of the total amount of the New Loan, whether fully advanced or not ($3,540,000 * .15 = $531,000) by a strike price to be determined on the first day that public trading is allowed by relevant regulatory authorities at the volume weighted average price (VWAP).  The warrants shall have a term of 5 years.

6.  <u>Renewable Energy Credits</u>.   On or before the execution hereof, Tenant shall supply Landlord with copies of all correspondence with Missoula County regarding the potential of applying renewable energy credits to satisfy some of the requirements imposed by the Missoula County Commissioners affecting Tenant.

7.  <u>Not a Precedent; Future Expansion</u>.  Landlord's agreement pursuant to this Modification to remove Property from the scope of the Lease does not bind Landlord to agree to any future amendments reducing the leased Property, or the amount of Rent.  Should Tenant revise its expansion plans to reincorporate the portions of the Property hereby removed from the Lease, the terms shall be the same as what was negotiated in the Third Amendment to the Lease.

8.  <u>Remaining Provisions of Agreements</u>.  To the extent not modified herein, all remaining provisions of the Agreements shall remain in full force and effect, and are hereby reaffirmed.

9.  <u>Counterparts</u>.  This Modification may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                                    TENANT:

Bonner Property Development LLC              Hyperblock LLC

By: _____
Stephen Nelson, Co-Manager                  By: _____
                                            Print name: _____
                                            Its: _____

By: _____
Michael Boehme, Co-Manager

-

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                              TENANT:

Bonner Property Development, LLC        Hyperblock LLC


By: _____          By: _____
Stephen Nelson, Co-Manager             Print name:__ Sean M. Walsh ____
                                       Its: ___ Chief Executive Officer ___


By: _____
Michael Boehme, Co-Manager

EXHIBIT 26.
PAGE 1

Modification of Lease Agreement Credit Enhancement Agreement et al. 12.30.19 V4.docx

---

---

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Thursday, January 02, 2020 12:45 PM
**To:** David Bjornson <david@bjornsonlaw.com>; Steve Nelson <bsmcorpmt@gmail.com>
**Subject:** For Review - Modification of Lease Agreement and Credit Enhancement Fee

Hi David and Steve,

Our review is complete. Please review the two examples added in section 5 d for the purpose of clarification. If you are ok with these, then this version of the agreement is final.

Thanks

Dan

EXHIBIT 26.
PAGE 2

| | |
|---|---|
| **From:** | David Bjornson |
| **To:** | Jill Broughton |
| **Subject:** | FW: For Review - Modification of Lease Agreement and Credit Enhancement Fee |
| **Date:** | Sunday, January 5, 2020 9:26:07 PM |
| **Attachments:** | Modification of Lease Agreement Credit Enhancement Agreement et al. 12.30.19 V5.docx |

**From:** Dan Stivers <dan@hyperblock.co>
**Sent:** Thursday, January 02, 2020 3:26 PM
**To:** David Bjornson <david@bjornsonlaw.com>; Steve Nelson <bsmcorpmt@gmail.com>
**Subject:** Re: For Review - Modification of Lease Agreement and Credit Enhancement Fee

One more small change. See section 5 f
Edited the timing of the stock warrant issuance to resemble the process by regulation

Use this version as final. See attached.

On Thu, Jan 2, 2020 at 12:45 PM Dan Stivers <dan@hyperblock.co> wrote:

> Hi David and Steve,
>
> Our review is complete. Please review the two examples added in section 5 d for the purpose of clarification. If you are ok with these, then this version of the agreement is final.
>
> Thanks
> Dan

EXHIBIT 26.
PAGE 3

ATTACHMENT TO 26(i)

# MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT

**THIS MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT ("Modification")** is dated as of the 31st day of December, 2019, by and between Bonner Property Development, LLC, a Montana limited liability company ("Landlord"), and Hyperblock LLC, a Delaware limited liability company ("Tenant" and sometimes "Hyperblock").

## Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.      The Lease was assigned by Project Spokane to, and assumed by, Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").

E.      Landlord and Tenant executed that certain Fourth Amendment to Commercial Lease Agreement dated and effective January 23, 2019 (the "Fourth Amendment").

F.      The First Amendment, Second Amendment, Third Amendment and Fourth Amendment are collectively referred to herein as the "Lease Amendments".

G.      As part of a change in plans as to certain expansion and improvements at the Property, Tenant will not be occupying certain parts of the Property and Landlord has agreed to remove them from the Lease.

H.      A certain financing arrangement designed to fund infrastructure and improvements was created through a line of credit arrangement undertaken by Landlord with Bank of Montana for the benefit of Tenant, and the parties entered into certain agreements in that certain Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement")

and that certain Security Agreement dated December 13, 2018 (the "Security Agreement") (the Lease, Side Agreement, Credit Enhancement Agreement and Security Agreement, sometimes referred to as the "Agreements"). As part of the change in plans, this financing line will be increased from $2,625,000 to $3,540,000, and will instead be used for the acquisition of new servers (instead of real property improvements).

      H.    The parties wish to amend the Lease, as previously modified by the prior Amendments, and also to amend the terms of the Side Agreement, the Credit Enhancement Agreement, and the Security Agreement, all as set forth in this Modification.

## Amendments

The parties agree as follows:

1.   Property.

      a.    Revised Description of "Property". Subsections iii. and iv. of the first paragraph of **Section 1.a.,** added to the Lease pursuant to the Third Amendment, shall be deleted in their entirety. They formerly read:

      iii.   Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit F.**

      iv.   Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit G.** In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

The accompanying **Exhibits F** and **G** are also deleted in their entirety.

    2.  Equity and Loan Financing of Improvements. **Subsection 1.b.II.ix**, added to the Lease pursuant to the Third Amendment, and relating to additional equity and loan financing of various improvements, shall be amended in its entirety to read as follows:

ix)    As part of an expansion of operations, Tenant is engaging in fundraising through additional borrowing of $3,540,000 from the Bank of Montana ("New Loan"). The New Loan shall consist of two separate portions: $2,625,000.00 (the "Original Amount") and the remainder of $915,000 (the "New Amount"). Tenant has committed to the expenditure of all of the proceeds of the New Loan to the acquisition of new servers ("New Servers") which will be held and operated on the Property. In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Lease, as amended, Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement") and that certain Security Agreement dated December 13, 2018. Landlord shall not be obligated to approve disbursements by Lender under the New Loan except for purchases of New Servers as provided herein. Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for

EXHIBIT 26.
PAGE 5

disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate invoices, purchase orders and other documentation that the disbursements are appropriate, and within the scope of and in accordance with specifications for New Servers approved in writing by Landlord. Notwithstanding anything provided herein, no advances shall be made in excess of the Original Amount without the establishment of the account for security for the New Amount provided in Section 5.c. of that certain Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement dated December 31, 2019 (the "Modification") and unless the payments under Sections 5.d. and 5.e. of the Modification are current at such time.

3.   Base Rent.  **Sections 4.a.(i) and (ii)**, relating to rent for bare land and for land for a power substation are deleted in their entirety.  **Section 4.a.(i)** shall be amended and restated in its entirety, beginning effective December 1, 2019, to read as follows:

(i)      The Base Rent payable hereunder shall initially be as follows:

A.  $75,420.90 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months.

The Base Rent as set forth above shall continue at this rate for through February 28, 2020.  On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

4.   Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements. Section 4 of the Third Amendment, regarding a pledge by Landlord for a loan at Bank of Montana is hereby modified to reflect that, instead of infrastructure and improvements, the New Loan will be used for the acquisition of New Servers.

5.   Credit Enhancement Agreement, Side Letter and Security Agreement.  The Credit Enhancement Agreement shall be amended to reflect the following new and modified provisions:

a.   The concepts of "New Equity" and "New Improvements" are eliminated from the Agreements and the proceeds of the "Bank Loan" (also referred to sometimes as "New Loan") from Bank of Montana will be used to acquire New Servers instead of real property improvements

b.   The Security Agreement is modified to include the Lease being amended by the Fourth Amendment to Commercial Lease Agreement dated January 23, 2019, and property described in this Modification, and is modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification.

EXHIBIT 26.
PAGE 6

c.   At some time prior to any advances to be made in excess of the Original Amount. Hyperblock shall place into an account with Bank of Montana, an amount of cash in the full amount of the New Amount, which shall partially secure Hyperblock's obligations under the Agreements.  Hyperblock will execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code, including a Deposit Account Control Agreement. Alternatively, with Landlord's advance written consent, this obligation may be satisfied with alternative deposits or pledges, including cryptocurrency, in a manner satisfactory to Landlord and its legal counsel.

d.   Consistent with loan documents with Bank of Montana for the New Loan, payment by Hyperblock will commence as provided hereinafter.   Notwithstanding the minimum payment requirements of the New Loan, including interest only for 6 months ("BOM Minimum Payment") or the timing of such payments, Hyperblock shall also make an additional payment amount calculated and administered as follows:

-   the amount advanced under the New Loan shall be amortized in level payments of interest and principal over a 36-month term at the greater of (i) Wall Street Prime Rate plus 299 basis points, or (ii) 8.24% (the "BPD Payment Amount"), with the payment being adjusted from time to time for additional advances as approved and made;

-   the excess of the BPD Payment Amount over the BOM Minimum Payment (whether or not interest only) (the excess is estimated at approximately $24,474 per month) shall be paid into another special account maintained at Bank of Montana, which shall further secure the obligations of Hyperblock under the Agreements.  Hyperblock shall execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code including a Deposit Account Control Agreement.  Further application of the balance of this account shall be only with the express written agreement of both parties.

-   For one example, if the interest rate is 8.24% and the loan balance is $2,625,000, then the BOM Minimum Payment would be approximately $64,380 per month, and the 36-month amortized payment would be approximately $82,549 per month, resulting in an excess payment of approximately $18,168 per month and a Credit Enhancement Fee of $15,000 per month.

-   For another example, if the interest rate is 8.24% and the loan balance is $3,540,000, then the BOM Minimum Payment would be approximately $86,821 per month, and the 36-month amortized payment would be approximately $111,323 per month, resulting in an excess payment of approximately $24,502 and a Credit Enhancement Fee of approximately $20,229 per month.

EXHIBIT 26.
PAGE 7

These payments shall commence on the date which is the 30th day after installation and operation of the first servers ordered to arrive at the Property, even if such first arrival does not consist of all servers ordered, or, if a weekend or holiday, the first business day thereafter.

e.   In addition to all payments due under the Lease and the New Loan, Hyperblock shall make monthly payments to Landlord of a credit enhancement fee for Landlord's securing of the New Loan for the entire term of the New Loan, on the final day of the month, commencing in January 2020.  The credit enhancement fee shall be  0.5714286% of the amount advanced on the New Loan.  For example, if the amount advanced is only the Original Amount, the fee would be $ 15,000.00, and if the full amount is advanced, the fee would be  $20,228.57.

f.   As additional consideration for the credit enhancement, Hyperblock shall issue within 30 days of the date hereof stock warrants in form and content acceptable to Landlord and its counsel for shares of its publicly trading common shares, calculated as follows:  the number of shares of common stock subject to the warrant is the number which is calculated by dividing the number which is 15% of the total amount of the New Loan, whether fully advanced or not ($3,540,000 * .15 = $531,000) by a strike price to be determined on the first day that public trading is allowed by relevant regulatory authorities at the volume weighted average price (VWAP).  The warrants shall have a term of 5 years.

6.   Renewable Energy Credits.   On or before the execution hereof, Tenant shall supply Landlord with copies of all correspondence with Missoula County regarding the potential of applying renewable energy credits to satisfy some of the requirements imposed by the Missoula County Commissioners affecting Tenant.

7.   Not a Precedent; Future Expansion.  Landlord's agreement pursuant to this Modification to remove Property from the scope of the Lease does not bind Landlord to agree to any future amendments reducing the leased Property, or the amount of Rent.  Should Tenant revise its expansion plans to reincorporate the portions of the Property hereby removed from the Lease, the terms shall be the same as what was negotiated in the Third Amendment to the Lease.

8.   Remaining Provisions of Agreements.  To the extent not modified herein, all remaining provisions of the Agreements shall remain in full force and effect, and are hereby reaffirmed.

9.   Counterparts.  This Modification may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 26.
PAGE 8

-

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                                    TENANT:

Bonner Property Development, LLC             Hyperblock LLC

By: _____         By:_____
Stephen Nelson, Co-Manager                   Print name:_____
                                             Its: _____

By: _____
Michael Boehme, Co-Manager

EXHIBIT 26.
PAGE 9

### MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT

**THIS MODIFICATION OF LEASE AGREEMENT, CREDIT ENHANCEMENT AGREEMENT, SECURITY AGREEMENT AND SIDE LETTER TO THIRD AMENDMENT TO LEASE AGREEMENT ("Modification")** is dated as of the 31st day of December, 2019, by and between Bonner Property Development, LLC, a Montana limited liability company ("Landlord"), and Hyperblock LLC, a Delaware limited liability company ("Tenant" and sometimes "Hyperblock").

### Recitals

A.      Effective March 1, 2016, Landlord and Project Spokane, LLC entered into that certain Commercial Lease Agreement (the "Lease") for certain real property premises located in the Bonner Mill Site in Bonner, Montana as further described in the Lease.  Capitalized terms not otherwise defined herein shall be as defined in the Lease.

B.      The original parties executed that certain First Amendment to Commercial Lease Agreement in December 2016, effective January 1, 2017 (the "First Amendment") and that certain Second Amendment to Commercial Lease Agreement dated July 13, 2017, but effective January 1, 2017 (the "Second Amendment").

C.      The Lease was assigned by Project Spokane to, and assumed by, Tenant pursuant to that certain Assignment, Assumption and Amendment of Lease executed effective July 10, 2018.

D.      Landlord and Tenant executed that certain Third Amendment to Commercial Lease Agreement dated and effective December 13, 2018 (the "Third Amendment").

E.      Landlord and Tenant executed that certain Fourth Amendment to Commercial Lease Agreement dated and effective January 23, 2019 (the "Fourth Amendment").

F.      The First Amendment, Second Amendment, Third Amendment and Fourth Amendment are collectively referred to herein as the "Lease Amendments".

G.      As part of a change in plans as to certain expansion and improvements at the Property, Tenant will not be occupying certain parts of the Property and Landlord has agreed to remove them from the Lease.

H.      A certain financing arrangement designed to fund infrastructure and improvements was created through a line of credit arrangement undertaken by Landlord with Bank of Montana for the benefit of Tenant, and the parties entered into certain agreements in that certain Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement")

and that certain Security Agreement dated December 13, 2018 (the "Security Agreement") (the Lease, Side Agreement, Credit Enhancement Agreement and Security Agreement, sometimes referred to as the "Agreements"). As part of the change in plans, this financing line will be increased from $2,625,000 to $3,540,000, and will instead be used for the acquisition of new servers (instead of real property improvements).

H.    The parties wish to amend the Lease, as previously modified by the prior Amendments, and also to amend the terms of the Side Agreement, the Credit Enhancement Agreement, and the Security Agreement, all as set forth in this Modification.

## Amendments

The parties agree as follows:

1.    Property.

a.    Revised Description of "Property". Subsections iii. and iv. of the first paragraph of **Section 1.a.,** added to the Lease pursuant to the Third Amendment, shall be deleted in their entirety. They formerly read:

iii.    Bare land located behind the Sorter building of approximately 106,650 square feet, as reflected on the site plan on **Exhibit F.**

iv.    Land for the power substation consisting of 15,625 square feet (125 x 125), located as reflected on the site plan on **Exhibit G.**    In addition to such land, Landlord shall grant to Tenant an easement for power poles to be located along the river bank, as reflected on **Exhibit B.**

The accompanying **Exhibits F** and **G** are also deleted in their entirety.

2.    Equity and Loan Financing of Improvements. **Subsection 1.b.II.ix**, added to the Lease pursuant to the Third Amendment, and relating to additional equity and loan financing of various improvements, shall be amended in its entirety to read as follows:

ix)    As part of an expansion of operations, Tenant is engaging in fundraising through additional borrowing of $3,540,000 from the Bank of Montana ("New Loan"). The New Loan shall consist of two separate portions: $2,625,000.00 (the "Original Amount") and the remainder of $915,000 (the "New Amount"). Tenant has committed to the expenditure of all of the proceeds of the New Loan to the acquisition of new servers ("New Servers") which will be held and operated on the Property. In connection with the New Loan, Landlord has agreed to provide certain credit enhancements through the pledge of Landlord's property to support such loan under the terms and conditions of the Lease, as amended, Side Agreement to Third Amendment to Lease Agreement between Landlord and Tenant dated January 23, 2019 (the "Side Agreement"), that certain Credit Enhancement Agreement between the parties, dated December 13, 2018 (the "Credit Enhancement Agreement") and that certain Security Agreement dated December 13, 2018. Landlord shall not be obligated to approve disbursements by Lender under the New Loan except for purchases of New Servers as provided herein. Landlord agrees to provide Bank of Montana and/or the applicable title company Landlord's approval and authorization for

EXHIBIT 26.
PAGE 11

disbursements on the New Loan provided Borrower submits to Landlord and the Bank of Montana fully detailed draw requests for disbursements supported by adequate invoices, purchase orders and other documentation that the disbursements are appropriate, and within the scope of and in accordance with specifications for New Servers approved in writing by Landlord. Notwithstanding anything provided herein, no advances shall be made in excess of the Original Amount without the establishment of the account for security for the New Amount provided in Section 5.c. of that certain Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement dated December 31, 2019 (the "Modification") and unless the payments under Sections 5.d. and 5.e. of the Modification are current at such time.

    3.   <u>Base Rent</u>.  **Sections 4.a.(i) and (ii)**, relating to rent for bare land and for land for a power substation are deleted in their entirety.  **Section 4.a.(i)** shall be amended and restated in its entirety, beginning effective December 1, 2019, to read as follows:

    (i)     The Base Rent payable hereunder shall initially be as follows:

    A.   $75,420.90 per month which is based on $3.71 per square foot per year multiplied by the square footage of the "Planer Building" and "Sorter Building" portions of the Property currently occupied by Tenant, 243,949 square feet, divided by 12 months.

The Base Rent as set forth above shall continue at this rate for through February 28, 2020.  On March 1, 2020, and then again on March 1st of each year thereafter, hereinafter referred to as a "Lease Anniversary Date," the Base Rent will increase two percent (2%) per annum.

    4.   <u>Pledge by Landlord for Bank of Montana Loan for Infrastructure and Improvements</u>. Section 4 of the Third Amendment, regarding a pledge by Landlord for a loan at Bank of Montana is hereby modified to reflect that, instead of infrastructure and improvements, the New Loan will be used for the acquisition of New Servers.

    5.   <u>Credit Enhancement Agreement, Side Letter and Security Agreement</u>.  The Credit Enhancement Agreement shall be amended to reflect the following new and modified provisions:

    a.   The concepts of "New Equity" and "New Improvements" are eliminated from the Agreements and the proceeds of the "Bank Loan" (also referred to sometimes as "New Loan") from Bank of Montana will be used to acquire New Servers instead of real property improvements

    b.   The Security Agreement is modified to include the Lease being amended by the Fourth Amendment to Commercial Lease Agreement dated January 23, 2019, and property described in this Modification, and is modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification.

EXHIBIT 26.
PAGE 12

c.   At some time prior to any advances to be made in excess of the Original Amount. Hyperblock shall place into an account with Bank of Montana, an amount of cash in the full amount of the New Amount, which shall partially secure Hyperblock's obligations under the Agreements.  Hyperblock will execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code, including a Deposit Account Control Agreement. Alternatively, with Landlord's advance written consent, this obligation may be satisfied with alternative deposits or pledges, including cryptocurrency, in a manner satisfactory to Landlord and its legal counsel.

d.   Consistent with loan documents with Bank of Montana for the New Loan, payment by Hyperblock will commence as provided hereinafter.   Notwithstanding the minimum payment requirements of the New Loan, including interest only for 6 months ("BOM Minimum Payment") or the timing of such payments, Hyperblock shall also make an additional payment amount calculated and administered as follows:

-   the amount advanced under the New Loan shall be amortized in level payments of interest and principal over a 36-month term at the greater of (i) Wall Street Prime Rate plus 299 basis points, or (ii) 8.24% (the "BPD Payment Amount"), with the payment being adjusted from time to time for additional advances as approved and made;

-   the excess of the BPD Payment Amount over the BOM Minimum Payment (whether or not interest only) (the excess is estimated at approximately $24,474 per month) shall be paid into another special account maintained at Bank of Montana, which shall further secure the obligations of Hyperblock under the Agreements.  Hyperblock shall execute and deliver documents which pledge such account in a manner which will be perfected under the Montana Uniform Commercial Code including a Deposit Account Control Agreement.  Further application of the balance of this account shall be only with the express written agreement of both parties.

-   For one example, if the interest rate is 8.24% and the loan balance is $2,625,000, then the BOM Minimum Payment would be approximately $64,380 per month, and the 36-month amortized payment would be approximately $82,549 per month, resulting in an excess payment of approximately $18,168 per month and a Credit Enhancement Fee of $15,000 per month.

-   For another example, if the interest rate is 8.24% and the loan balance is $3,540,000, then the BOM Minimum Payment would be approximately $86,821 per month, and the 36-month amortized payment would be approximately $111,323 per month, resulting in an excess payment of approximately $24,502 and a Credit Enhancement Fee of approximately $20,229 per month.

EXHIBIT 26.
PAGE 13

These payments shall commence on the date which is the 30th day after installation and operation of the first servers ordered to arrive at the Property, even if such first arrival does not consist of all servers ordered, or, if a weekend or holiday, the first business day thereafter.

e.   In addition to all payments due under the Lease and the New Loan, Hyperblock shall make monthly payments to Landlord of a credit enhancement fee for Landlord's securing of the New Loan for the entire term of the New Loan, on the final day of the month, commencing in January 2020.  The credit enhancement fee shall be  0.5714286% of the amount advanced on the New Loan.  For example, if the amount advanced is only the Original Amount, the fee would be $ \$15,000.00 $, and if the full amount is advanced, the fee would be  \$20,228.57.

f.   As additional consideration for the credit enhancement, Hyperblock shall issue within 60 days of the date that Hyperblock stock resumes active trading, stock warrants in form and content acceptable to Landlord and its counsel for shares of its publicly trading common shares, calculated as follows:  the number of shares of common stock subject to the warrant is the number which is calculated by dividing the number which is 15% of the total amount of the New Loan, whether fully advanced or not ($3,540,000 * .15 = $531,000) by a strike price to be determined on the first day that public trading is allowed by relevant regulatory authorities at the volume weighted average price (VWAP).  The warrants shall have a term of 5 years.

6.   <u>Renewable Energy Credits</u>.   On or before the execution hereof, Tenant shall supply Landlord with copies of all correspondence with Missoula County regarding the potential of applying renewable energy credits to satisfy some of the requirements imposed by the Missoula County Commissioners affecting Tenant.

7.   <u>Not a Precedent; Future Expansion</u>.  Landlord's agreement pursuant to this Modification to remove Property from the scope of the Lease does not bind Landlord to agree to any future amendments reducing the leased Property, or the amount of Rent.  Should Tenant revise its expansion plans to reincorporate the portions of the Property hereby removed from the Lease, the terms shall be the same as what was negotiated in the Third Amendment to the Lease.

8.   <u>Remaining Provisions of Agreements</u>.  To the extent not modified herein, all remaining provisions of the Agreements shall remain in full force and effect, and are hereby reaffirmed.

9.   <u>Counterparts</u>.  This Modification may be signed in counterparts and the counterparts assembled into one or more originals.  The counterparts shall be deemed delivered to the receiving party upon delivery of the signed counterparts to the receiving party's authorized representative.

-   SIGNATURES APPEAR ON FOLLOWING PAGE -

EXHIBIT 26.
PAGE 14

-

IN WITNESS WHEREOF this Modification has been executed effective the date and year first above written.

LANDLORD:                                   TENANT:

Bonner Property Development, LLC            Hyperblock LLC


By: _____      By:_____
Stephen Nelson, Co-Manager                  Print name:_____
                                            Its: _____


By: _____
Michael Boehme, Co-Manager

EXHIBIT 27.(i)
PAGE 1

# CHANGE IN TERMS AGREEMENT

| Original Commitment Amount | Original Loan Date | Original Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,625,000.00 | 12-03-2018 | 12-01-2023 | 2018004200 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** HyperBlock, LLC
5619 DTC Parkway #475
Greenwood Village, CO  80111

**Lender:** Bank of Montana
125 Bank Street
Suite 100
Missoula, MT  59802

**Current Principal Balance:  $0.00**

**Date of Agreement:  January 10, 2020**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** As of January 10, 2020, the principal amount of Loan 2018004200 (the "Loan") outstanding is $0.00. The Loan is evidenced by, among other things, that certain Promissory Note, Business Loan Agreement, and Deed of Trust, each executed by Borrower and/or Grantor effective as of December 14, 2018, in the original principal amount of $2,625,000.00 (all promissory notes, loan agreements, security agreements, environmental agreements, deed of trust, and all other instruments, agreements, and documents relating to the Loan (as they each may be amended, modified, extended, refinanced, renewed, or supplemented from time to time), including the Related Documents, the Security Documents (as defined below), the documents executed in connection with this Change in Terms Agreement are individually and collectively referred to herein as the "Loan Documents"). Capitalized terms used herein but not otherwise defined shall have the meanings set forth in the Business Loan Agreement and Promissory Note.

The Loan is secured by, among other things, that certain Deed of Trust and that certain Assignment of Rents, each as recorded in the office of the Clerk and Recorder of Missoula County, Montana, on December 18, 2018 (all of the foregoing and all documents relating to the Loan that grant or otherwise create a security interest in any property or right to secure the payment or performance of any part of or all of the Loan are referred to herein, individually and collectively, as the "Security Documents," with the security interests relating to the Security Documents being referred to, individually and collectively, as the "Security Interests," and the property and rights described therein or to which the Security Interests apply being referred to as the "Collateral").

**AGREEMENT. Effective as of the date of this Change in Terms Agreement, subject to the terms and conditions set forth herein, the parties agree as follows:**

- The Loan's principal balance is increased to $3,540,000.00 (the "Principal Increase"). Each of the Loan Documents is hereby amended so as to reflect the Principal Increase, and each of the amendments as stated in this Change in Terms;

- The Loan's Draw Period is extended to July 1, 2020 or until the principal has been fully advanced as described in the Note;

- The Loan's Maturity date is extended to July 1, 2024;

- Obligors herein agree that Deposit account #2014082 (defined in Exhibit A as the "Collateral Account") maintained by Borrower with Lender will be controlled by Grantor. For clarity, any and all requests for funds to be withdrawn from the Collateral Account must be acknowledged and approved by Grantor and delivered to Lender in writing, which may be done by electronic means, including but not limited to e-mail correspondence. Protections provided to Lender as described in Exhibit A related to the Collateral Account are incorporated herein.

- Obligors agree to the following lockbox arrangement:
  **Please see Exhibit A.**

- All amounts received by Grantor related to the real property collateral shall be directly and timely deposited into the Locked Account (#2014637) during the term of the Loan. Loan payments and any other amounts due and payable to Lender shall be automatically transferred to Lender from the Locked Account. For the avoidance of doubt, all gross revenue and/or gross proceeds of any kind due and/or paid to the Grantor or received by others for the benefit of the Grantor will first and directly be deposited by tenants, other recipients, and/or payors of such gross funds into the Locked Account without setoff or netting of any kind by any party. Grantor agrees to take steps to ensure tenants will make payment directly to the Locked Account. As a concession to Grantor, Lender is not initially requiring Grantor to maintain its operating account(s) related to the real property collateral at Lender, however, Lender reserves the right to require such account(s) to be maintained and held at Lender in the future, at Lender's sole discretion.

- An origination fee equal to $36,000.00 is charged by Lender and will be funded with an Advance upon the execution of this Change In Terms Agreement;

- As provided in the Business Loan Agreement, Borrower shall reimburse Lender for all third-party costs and expenses incurred including, without limitation, title policy endorsement premiums, recording fees, and legal fees. The reimbursement may be funded by an Advance, at Lender's sole discretion.

- Borrower and each party signing this Change in Terms, excluding only Lender, (individually and collectively referred to herein as the "Obligors") represent and warrant that the factual matters stated in this Change in Terms are true and correct in all material respects.

- Obligors represent and warrant that a Default has not occurred and is continuing, and no event, act or omission has occurred which, solely with the passage of time or giving of notice, would constitute a Default.

- Obligors represent and warrant that, since the execution of the Loan Documents, there has been no material adverse change in any Obligor's financial condition and no litigation has been initiated or threatened as relating to any Obligor or any Collateral.

- Except as amended herein, Obligors agree that the Loan, and all of the Loan Documents, as well as the Security Interests, are each hereby reaffirmed and remain enforceable in accordance with their terms (as amended herein or as previously amended in writing), and all of the representations and warranties set forth in the Loan Documents are true and correct as of the date of this Change in Terms Agreement.

- This Change in Terms Agreement shall not affect the priority or perfection of any of the Security Interests in favor of Lender. Further, the Obligors agree that nothing in this Change in Terms Agreement is waiver or forbearance by Lender with respect to any Right or remedy to which Lender is, or hereafter become, entitled. The Obligors each, jointly and severally, indemnify and agree to hold Lender harmless from any and all costs, losses, claims and liabilities arising out of or related to Lender's execution or performance of this Change in Terms Agreement, the Principal Increase, or Obligor's breach or noncompliance with any terms of this Change in Terms Agreement. Each Guarantor affirms its Guaranty and that such guaranty shall include the payment and performance of the Loan as amended by this Change in Terms Agreement.

- Without limiting any other provision of this Change in Terms Agreement, if any or all of the Note, the Related Documents, or the Indebtedness is invalidated, discharged, or found to be unenforceable for any reason, including but not limited to if the Borrower or the parent entity of Borrower lacked authority to execute or perform, such invalidation, discharge, or unenforceability shall in no way limit or reduce any Guarantor's obligation to pay and perform, and each Guarantor hereby agrees to be bound by the terms of such Guarantor's respective guaranty (as amended herein) without regard to such invalidation, discharge, or unenforceability and to the same extent as if no invalidation, discharge, or unenforceability existed.

- Each Obligor waives and releases any claim or right to which it may be entitled and arising out of or related to any action or omission of Lender relating to the Loan or the Loan Documents prior to the effective date of this Change in Terms.

- Each Obligor agrees that the Indebtedness whether now existing or hereafter created, shall be superior to any claim that any Obligor may now have or hereafter acquire against any other Obligor. Each Obligor hereby expressly subordinates any claim and security interest Obligor may have against each other Obligor, upon any account whatsoever, to any claim that Lender may now or hereafter have against each Obligor.

- Each person executing this Change in Terms Agreement represents and warrants that such person is authorized to so act and bind the party to this Change in Terms Agreement.

- All of the parties comprising Obligor have common ownership with or in each of the other parties comprising Obligor or otherwise acknowledge receiving a material benefit from this Change in Terms Agreement or the Principal Increase. Any Collateral being pledged (or reaffirmed) or granted as security (or reaffirmed) by a party comprising Obligor is being done so at the request of the other parties comprising Obligor, and not at Lender's request, and such pledge or granting of security is a material inducement for Lender entering this Change in Terms Agreement and making the Principal Increase. Each grantor of Collateral under any of the Security Documents has established adequate means of obtaining from Obligor on a continuing basis information about Obligor's financial condition and the obligations secured by the Security Documents. Further, Lender has made no representation to a grantor of Collateral (under any of the Security Documents) about Obligor, including without limitation the creditworthiness of Obligor.

- Obligors shall promptly provide and comply with all other reasonable items or requests made by Lender and execute any documents reasonably necessary with respect to this Change in Terms Agreement, including but not limited to any renewals or reaffirmations of any of the Loan Documents;

**CHANGE IN TERMS CONDITIONS.** Lender's obligation to be fund the Principal Increase and to be bound by the terms of this Change In Terms Agreement are conditioned upon the following:

- All necessary parties executing, delivering and recording such documents as Lender may require;
- Lender receiving satisfactory updated title insurance and coverage, including confirmation that Lender is in first priority lien position on the Collateral;
- All of Obligor's representations and warranties being true and correct;
- Evidence satisfactory to Lender of the due authorization of this Change in Terms Agreement by each party;
- Lender 's compliance, prior to any disbursements on the Loan, with all applicable regulatory requirements, including legal lending limitation restrictions. To be clear, as of the date of this Change In Terms Agreement, Lender has approximately $3,100,000.00 of Loan proceeds contingently committed. There is material risk that Lender may fail in placing the remaining $440,000 and such third-party participants are obviously beyond the control of Lender.
- Borrower paying all costs and fees related to this Change In Terms Agreement, including Lender's origination fee, plus legal fees and costs and title and recording fees and costs, including those costs and fees incurred following the date of execution of this Change in Terms. All fees shall be paid with an Advance, and are fully earned by Lender and nonrefundable as of the date of this Change in Terms Agreement; and
- Lender's receipt of a fully executed copy of this Change In Terms Agreement on or before January 10, 2020. Borrower agrees that if this Change In Terms Agreement is not executed and returned to Lender by January 10, 2020, then this proposed Change In Terms Agreement automatically expires at that time with all current terms and conditions remaining unchanged. This condition is only for Lender's benefit and Lender reserves the unilateral right to waive this condition and accept the fully endorsed Change In Terms Agreement after January 10, 2020, but Lender has no obligation to do so.

Lender reserves the right to retract or amend this offer at any time up until this Change In Terms Agreement is fully executed by all parties, with all fees being paid and all conditions being met, at Lender's sole discretion.

**ENTIRE AGREEMENT.** This Change In Terms Agreement supersedes all prior written or oral communications between Lender and Obligors related to the Loan. No modification or waiver of any of the provisions hereof shall be binding unless set forth in writing that specifically references and contemplates the amendment of this Loan and which is signed by the party(ies) to be bound thereby.

**CONTINUING VALIDITY; NO OTHER CHANGES.** Except as specifically stated in this Change in Terms Agreement and the other documents executed concurrently herewith, no amendment or modification of the Loan Documents is intended or made hereby. Obligors agree that, except as expressly changed by this Change in Terms Agreement and the other documents executed concurrently herewith, the Loan, and all of the Loan Documents, as well as the Security Interests, remain unchanged and in full force and effect and are hereby reaffirmed, and all of the representations and warranties set forth in the Loan Documents are true and correct as of the date of this Change in Terms Agreement. This Change in Terms Agreement in no way obligates, or in any manner implies, in any shape, manner or form, that future concessions or amendments will be granted by Lender, and consent by Lender to this Change in Terms Agreement does not waive Lender's right to strict performance of the terms of the Loan Documents as changed hereby, nor obligate Lender to grant any future consents or make any future changes in terms. Nothing in this Change in Terms Agreement will constitute a satisfaction or reduction of any obligation related to the Loan, and the parties further acknowledge, agree and reaffirm their intent that the Loan still be secured by all security interests of the Loan Documents and law, including the Security Documents. It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Change in Terms Agreement.

**OTHER TERMS.** In the event of a conflict between the terms of the Loan Documents and the terms of this Change in Terms Agreement, the terms of this Change in Terms Agreement shall control and govern to the extent necessary to resolve the conflict. If any provision of this Change in Terms