James A. Patten (ID No. 1191)
Daniel L. Snedigar (ID No. 9428)
PATTEN, PETERMAN, BEKKEDAHL & GREEN, P.L.L.C.
2817 Second Ave. North, Suite 300
P.O. Box 1239
Billings, MT  59103-1239
Telephone:  (406) 252-8500
Facsimile:    (406) 294-9500
E-mail:    apatten@ppbglaw.com
               dsnedigar@ppbglaw.com

Peter W. Ito (pro hac vice)
ITO LAW GROUP, P.C.
1550 Larimer Street, Suite 667
Denver, Colorado 80202
Telephone: 720-281-5294
Email: peter@itolawgroup.com

Attorneys for Defendants, Project Spokane LLC and Sean Walsh

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| STEVE NELSON, MICHAEL BOEHM and BONNER PROPERTY DEVELOPMENT, LLC,<br><br>         Plaintiffs,<br><br>vs.<br><br>PROJECT SPOKANE, LLC, and SEAN WALSH,<br><br>         Defendants. | Cause No.  CV-20-82-DLC<br><br><br>**DEFENDANTS PROJECT SPOKANE, LLC'S AND SEAN WALSH'S OBJECTION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

1

Defendants Project Spokane, LLC and Sean Walsh, through counsel, object to the Motion of Plaintiffs for a Preliminary Injunction. In support of this objection, the Defendants state:

Steve Nelson, Michael Boehm, and Bonner Property Development, LLC (collectively, "BPD") have moved this Court for a preliminary injunction restraining any sale or other disposition of any personal property and fixtures pending entry of final judgment. The Defendants Project Spokane, LLC and Sean Walsh (collectively, "PS") object to the relief sought because BPD cannot meet the four-part test for entry of a preliminary injunction. Further, should a preliminary injunction be imposed, BPD should be required to post a bond sufficient to protect Walsh for the substantial damages that will result.

An applicant for the injunction must show: (i) a likelihood of success on the merits; (ii) a likelihood of irreparable injury; (iii) the balance of equities favors preliminary relief; and (iv) preliminary relief is in the public interest. *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (citations omitted). "A preliminary injunction is an 'extraordinary and drastic remedy'. . . never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008) (citation omitted).

The BPD factual predicate for the relief sought is that "some" fixtures belong to BPD and the remaining assets, except computer servers purchased prior to December 31, 2019, are subject to BPD's non-priority security interest.

In 2016, Project Spokane, LLC and BPD entered into a Commercial Lease Agreement for purposes of conducting bitcoin mining. (Nelson Dec., ¶ 4).

In 2018, several Canadian bitcoin mining entities were amalgamated into HyperBlock, Inc., which was thereafter publicly traded on the Canadian Securities Exchange. The amalgamated company had about 50 employees, three operating companies, and over $20 million in annualized revenue. (Walsh Dec., ¶ 16). HyperBlock Inc. created HyperBlock LLC, a Delaware limited liability company. (Walsh Dec., at ¶ 8). Project Spokane then sold its Bitcoin mining assets to HyperBlock LLC. (Walsh Dec., at ¶ 9). Thereafter, the Project Spokane Commercial Lease Agreement was assigned to HyperBlock LLC (Nelson Dec., at ¶ 8).

In connection with the sale of Project Spokane's property to HyperBlock LLC, Project Spokane was paid cash and a Secured Promissory Note in the amount of CAD $5,000,000. (Walsh Dec., ¶ 9). Project Spokane's financing of a portion of the mining asset sale was a matter of public knowledge. (Walsh Dec., at ¶ 9). A financing statement was filed with the Delaware Secretary of State. (Walsh Dec., ¶

5). A security agreement was executed on February 1, 2019. (Walsh Dec., Exhibit C).

In December, 2018 BPD, Hyperblock, LLC and the Bank of Montana entered into a transaction for the purpose of expanding the HyperBlock, LLC's mining operation at the BPD facility. HyperBlock LLC obtained a loan from Bank of Montana for the purpose of site improvements. (Nelson Dec., ¶ 13). As a part of the transaction, HyperBlock LLC and BPD entered into a Credit Enhancement Agreement (Nelson Dec., Exhibit 13). The Credit Enhancement Agreement provided that HyperBlock LLC would grant BPD a first lien on the assets acquired with the proceeds of the Bank of Montana loan to secure the indemnity and hold harmless provisions of the Credit Enhancement Agreement. (Id.). The Credit Enhancement Agreement was executed by Sean Walsh in his capacity as Chief Executive Offer of HyperBlock LLC, by way of his instructions to his executive assistant to attached his digital signature to the documents. (Walsh Dec., at ¶ 15).

In April, 2019, the Missoula County Commission unexpectedly changed the building codes to effectively prevent HyperBlock LLC's expansion, and to prevent any new cryptocurrency mining operations in the County. (Walsh Dec., ¶ 11). This precluded the proposed expansion of the HyperBlock, LLC operations at the BPD facility.

In June, 2019, Sean Walsh lent HyperBlock LLC $2,000,000, secured by all assets of HyperBlock LLC. (Walsh Dec., ¶ 12). The loan was documented by a Secured Promissory Note and Security Agreement.  (Walsh Dec., Exhibits B and D).

In December, 2019, HyperBlock LLC and BPD determined that in lieu of expanded operations, HyperBlock LLC would acquire new generation servers to conduct the cryptocurrency mining operations; the financing arrangements made a year earlier with the Bank of Montana were modified, and it was agreed that the loan amount would be increased and new servers would be purchased.  (Walsh Dec., ¶ 13).

At the time the modified loan documents were executed with the Bank of Montana, both Project Spokane and Walsh held perfected security interests in the assets of HyperBlock LLC and their liens were of record with the Delaware Secretary of State.  Importantly, BPD did not request Walsh individually or as the sole member of Project Spokane to execute any instrument subordinating their perfected security interests to a lien to be granted to BPD, an act that would have required substantial consideration to be paid to PS  (Walsh Dec., ¶ 16).  BPD did not request HyperBlock LLC to file a financing statement to perfect the BPD security interest in the new assets acquired with the proceeds of the Bank of Montana loan, nor did BPD file a financing statement itself. (Walsh Dec., ¶ 16).

Throughout the various transactions, and before this Court, BPD conflates Walsh, while acting as CEO of HyperBlock LLC, with Walsh acting individually and as the member of Project Spokane. While Walsh executed various documents, and made those documents binding upon HyperBlock LLC, he did not sign them individually or on behalf of Project Spokane. As he states in his Declaration, at ¶ 13, he "was not personally involved in the negotiation of these documents" which were handled by other members of the management team. (Walsh Dec., ¶ 15). Further, at no time was he personally requested to release or subordinate his or Project Spokane's liens.

## ARGUMENT

BPD conflates Sean Walsh and Project Spokane with HyperBlock, LLC. Contractual commitments of HyperBlock, LLC are not contractual commitments of Walsh or Project Spokane.

### *Likelihood of Success on the Merits*

The first of the four-part test for a preliminary injunction is the movant must show a likelihood of success on the merits. BPD advances four legal theories to support an injunction: (i) promissory estoppel; (ii) equitable estoppel; (iii) unjust enrichment; and (iv) fraud.

    (i)    *Promissory Estoppel*

To establish a claim for promissory estoppel, BPD must show (1) a clear and

unambiguous promise, (2) reliance by the promisee, (3) reasonableness and foreseeability of the reliance, and (4) resulting injury to the promisee. *S&P Brake Supply, Inc. v. STEMCO, LP,* 2016 MT 324, ¶ 44, 385 P.3d 567, 285 Mont. 488.

Here, BPD cannot show the first element: a clear and unambiguous promise because the promisor is HyperBlock, LLC. There is no clear and unambiguous promise by either Project Spokane or Walsh. The promise made was by Walsh, acting in his representative capacity as an agent for HyperBlock. An agent is not liable for the contracts of the principal, unless credit is given to the agent personally in a transaction, the agent enters into a written contract in the name of the principal without a good faith belief the agent has authority to do so, or when the agent's acts are wrongful. §28-10-702, M.C.A. The Montana Supreme Court has identified wrongful acts as ones where the agent was personally negligent or the agent's actions were tortious in nature. *Crystal Springs Trout Co. v. First State Bank,* 225 Mont. 122, 129, 732 P.2d 819, 823 (1987) (citing *Little v. Grizzly Mfg.,* 195 Mont. 419, 424, 636 P.2d 839, 841 (1981). Here, while Walsh instructed his executive assistant to attach his digital signature to various documents on behalf of HyperBlock, LLC, he was not familiar with the documents as they had been negotiated and prepared by others. As stated in *Little*: "As a matter of public policy, the officers and agents of a corporation must be shielded from personal liability for acts taken on behalf of the corporation in furtherance of corporate

goals, policies and business interests." *Little,* 636 P.2d at 842. The exception is when the officer personally committed a tort. *Id.*

BPD cannot show reliance on the HyperBlock, LLC agreement that BPD would have a first lien since BPD did nothing to perfect a lien or to obtain a subordination agreement from PS until after HyperBlock LLC defaulted on its secured debts to PS and PS's counsel, Peter Ito notified BPD's attorney of the absence of it financing statement in late May, 2020.

### (ii)   *Equitable Estoppel*

The elements of equitable estoppel are (1) the existence of conduct, acts, language, or silence amounting to a representation; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least the expectation, that it will be acted upon by the other party, or under circumstances both natural and probably that it will be so acted upon; (5) the conduct must be relied upon by the other party and, thus relying, he must be led to act upon it; and (6) he must in fact act upon it in such a matter as to change his position for the worse. *In re Estate of Stukey*, 2004 MT 279, ¶ 38, 323 Mont. 241, 100 P.3d 114.

Estoppel is not favored; it will be sustained only upon clear and convincing evidence. *Id.,* at ¶ 37. "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. It is more than a preponderance of evidence, but less that beyond a reasonable doubt." *McJunkin v. Kaufman & Broad Home Syst.,* 229 Mont. 432, 446, 748 P.2d 910, 918 (1987).

Here, the representation was made by HyperBlock, LLC, not by Project Spokane or Walsh. Walsh was unaware of the terms of transaction, notwithstanding his execution of the transaction documents. Under the circumstances here, the fact that he executed the documents is not clear and convincing evidence that he knew the terms thereof. BPD has not produced any emails or correspondence supporting this claim. BPD has not shown the first element of equitable estoppel, a representation made by Project Spokane or Walsh with clear and convincing evidence.

 (iii) *Unjust Enrichment*

The elements of unjust enrichment require (1) the defendant received a benefit, (2) the defendant knew the about or appreciated the benefit, and (3) the defendant accepted the benefit under circumstances where it was inequitable for the defendant to do so. *Darty v. Grauman,* 2018 MT 129, ¶ 11, 419 P.3d 116, 391 Mont. 393.

Defendants Project Spokane and Walsh did not receive a benefit from the HyperBlock, LLC transaction. Both Project Spokane and Walsh held superior, prior perfected liens to the lien granted by HyperBlock, LLC to BPD. Both Project Spokane and Walsh took those necessary steps required under UCC Article 9 to perfect their liens. BPD took no step to either perfect its lien or to obtain a subordination of the Project Spokane and Walsh senior liens.

Without a benefit to Project Spokane or Walsh neither can be unjustly enriched. Moreover, PS did not know about, or appreciated any benefit, because Walsh was not familiar with the details of the terms of the financing arrangements.

*(iv) Fraud*

The elements of fraud are well known: (1) a representation; (2) the falsity of that representation or the speaker's ignorance of the truth of the representation; (3) the materiality of that representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury caused by their reliance on the representation. *Morrow v. Bank of America, N.A.,* 2014 MT 117, ¶¶ 57 - 59, 375 Mont. 38, 324 P.3d 1167.

Walsh did not have knowledge of the representation. Walsh did not negotiate the terms of the transaction but, instead, delegated those duties to the management team charged with the day-to-day operations of HyperBlock LLC.

### *Likelihood of Irreparable Injury*

"To satisfy the irreparable harm requirement [the movant] must demonstrate it will suffer an imminent, continuing injury that could be adequately remedied upon a final determination of the merits." *Am. Nat' Prop. & Cas. Co. v. Camp,* 2011 U.S. Dist. LEXIS, *9 (D. Mont. 2011). If money damages are a remedy, a preliminary injunction should not be granted. Absent evidence of an impending insolvency or a pattern of secreting or dissipating assets to avoid judgment, there is no irreparable injury *Glasser v. Bixseth*, 2014 U.S. Dist. LEXIS 150068, *12 (W.D. Wash) (citing *Hilao v. Marcos (In re Estate of Marcos),* 25 F.3d 1467, 1480 (9th Cir. 1994)). BPD's claim is that it is entitled to a first lien on the computer servers purchased with the Bank of Montana loan proceeds. BPD seeks an injunction on the disposition of the collateral held by PS because (1) the "most valuable" assets are subject to BPD's first position security interest, (2) some assets are fixtures that belong to BPD in which neither Defendant claims a security interest, (3) the remaining assets, "except computer servers purchased prior to December 31, 2019" are subject to BPD's junior security interest which

11

Defendants failed to acknowledge in their prior efforts to sell them. *Plaintiffs' Brief in Support of Motion for Preliminary Injunction*, p. 1.

BDP will suffer no irreparable injury if Walsh is allowed to dispose of the computer servers purchased prior to December 31, 2019, which BPD apparently claims no interest in. Allowing the disposition of those assets will impose no injury on BPD since it unequivocally states that it has no interest in those Bitcoin mining servers.

BPD will similarly suffer no injury if the assets subject to its "nonpriority security interest" are disposed because it will be entitled to any surplus from the sale. § 30-9A-610(1) M.C.A.; *Christman v. Clause,* 2019 MT 132, ¶ 14, 396 Mont. 142, 443 P.3d 472. If there is a surplus following the disposition of the collateral by the first position lienholder, the surplus is paid to the next position lienholder. Therefore, BPD will suffer no injury if the "remaining assets" are disposed since it will be entitled to a surplus, if there is one.

By its own statement, BDP will apparently suffer injury only if Walsh disposes of the computer servers purchased after December 31, 2019. There are 1493 servers purchased in January, 2020, at an approximate cost of $2,600,000. (Walsh Dec., ¶ 13). If this Court finds that money damages are inadequate, PS should be permitted to dispose of all collateral but the 1493 servers. On the other

hand, if money damages are adequate, PS should be permitted to dispose of the 1493 servers.

BPD argues that if the collateral is sold, it will be difficult to determine which parts are sold and how much was credit bid. Walsh needs to account for the sale per § 30-9A-610(1). There will be a record of the item and the price.

BPD has not shown that it will suffer irreparable injury unless a preliminary injunction is granted. It is not argued that Walsh is secreting or dissipating assets and under well-established Ninth Circuit jurisprudence, in the absence of an impending insolvency or a pattern of dissipating or secreting assets, there is no irreparable injury.

### *Balance of the Equities*

The balance of the equities favors the denial of the requested relief.

Bitcoin servers are highly specialized. They rapidly become obsolete and therefore rapidly decline in value. (Walsh Dec., ¶ 18). The servers will hold substantially less value in a year than they hold now losing approximately $1,000,000 in value over the next 12 months. Moreover, the servers used for bitcoin mining purposes currently generate an estimated $15,200 per day. (Walsh Dec., at ¶ 17).

Enjoining the disposition and use of the servers for the period before a final judgment is entered in this case is inequitable to PS. Denying relief to BPD will

not be inequitable because BPD will have a money claim if it prevails. In the absence of any showing that Walsh is insolvent, BPD will, in the event it prevails at trial, have a remedy. On the other hand, if Walsh prevails at trial, they will be left with obsolete computer servers with little or no value.

The only way the equities can be tipped to favor BPD is if they provide a bond for the anticipated loss of value and lost income Walsh will suffer if a preliminary injunction is granted.

### *Public Interest*

"The fourth factor in determining whether to issue a preliminary injunction is consideration of the impact on the public interest. 'The focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *Unique Functional Prods. v. Mastercraft Boat Co.,* 2002 U.S. Dist. LEXIS 26954, * 25 (C.D. Cal.) (quoting, *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1458 (Fed. Cir. 1988).

Walsh does not believe this dispute implicates the public interest.

## CONCLUSION

The Plaintiffs have failed to show their entitlement to a preliminary injunction. They have not shown a likelihood of success on the merits, that they

will suffer irreparable injury, or that the balance of the equities favors an injunction. Indeed, here the Plaintiffs have not shown that their damages will not be adequately met by a money judgment in the event they prevail on the merits. Nor have they shown that a preliminary injunction will not be wholly inequitable to the Defendants due to the substantial losses the Defendants will suffer if the Defendants' collateral cannot be moved, disposed of, or used pending a final judgment.

For these reasons, the Motion for a Preliminary Injunction should be denied.

DATED this 22nd day of June, 2020.

>
> Peter W. Ito (Pro hac vice)
> **ITO LAW GROUP, P.C.**
> 1550 Larimer Street, Suite 667
> Denver, CO 80202
>
> **PATTEN, PETERMAN, BEKKEDAHL
>   & GREEN, PLLC**
> 2817 2nd Avenue North, Ste. 300
> P.O. Box 1239
> Billings, MT 59101
>
>
> By:  /s/JA Patten
>     James A. Patten
>
> Attorneys for Defendants,
> Project Spokane LLC and Sean Walsh

## CERTIFICATE OF COMPLIANCE

Pursuant to Civil Rule 7.1 (d)(2)(E) I certify the foregoing **OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION** is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced; and the word count calculated by Microsoft Word is 3424 words, excluding caption, certificate of service, and certificate of compliance.

DATED this 22nd day of June, 2020.

Peter W. Ito (Pro hac vice)
**ITO LAW GROUP, P.C.**
1550 Larimer Street, Suite 667
Denver, CO 80202

**PATTEN, PETERMAN, BEKKEDAHL
 & GREEN, PLLC**
2817 2nd Avenue North, Ste. 300
P.O. Box 1239
Billings, MT 59101


By:  /s/JA Patten
       James A. Patten

Attorneys for Defendants,
Project Spokane LLC and Sean Walsh

CERTIFICATE OF SERVICE

    I hereby certify that on this 22nd day of June, 2020 a true and correct copy of the foregoing **OBJECTION TO MOTION FOR PRELIMINARY INJUNCTION** was served on the following persons by the following means:

| | |
|---|---|
|  1, 2  | CM/ECF |
| _____ | Hand delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-mail |

**1.**     Clerk, U.S. District Court

**2.**     Quentin M Rhoades
       Robert Erickson
       Rhoades, Siefert & Erickson PLLC
       430 Ryman Street
       Missoula, MT 59802
       qmr@montanalawyer.com
       erickson@montanalawyer.com

    /s/ JA Patten
    For Patten, Peterman, Bekkedahl & Green