IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION


FILED
JUN 25 2020
Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| STEVE NELSON, MICHAEL BOEHME and BONNER PROPERTY DEVELOPMENT, LLC, | CV 20–82–M–DWM |
| Plaintiffs, | ORDER |
| v. | |
| PROJECT SPOKANE, LLC, and SEAN WALSH, | |
| Defendants. | |

This suit arises out of competing security interests in the assets of a cryptocurrency operation run by HyperBlock LLC in Bonner, Montana. Plaintiffs Steve Nelson and Michael Boehme are members and co-managers of Bonner Property Development, which owns the Planer Building at the Bonner Mill Site, the location of the Bitcoin mine. Bonner Property Development helped HyperBlock obtain financing in exchange for what it thought was a priority security interest in HyperBlock's assets. However, Defendants Project Spokane LLC and Sean Walsh hold superior interests. Bonner Property Development claims that Walsh, acting on behalf of Project Spokane and HyperBlock, promised that his and Project Spokane's interest would be subordinated. Pending before the Court is Nelson, Boehme, and Bonner Property Development's (collectively

1

"Bonner Property Development") motion for a preliminary injunction to prohibit Project Spokane and Walsh (collectively "Project Spokane") from disposing of the assets at issue. (Doc. 15.) A hearing was held on June 25, 2020. For the following reasons, the motion is granted.

## BACKGROUND

The factual basis for this Order is set forth in the following narrative and the attached timeline. In March 2016, Bonner Property Development leased space at the Bonner Mill Site to Project Spokane for use as a cryptocurrency mine. (Doc. 8-6 at ¶¶ 3–4.) On July 10, 2018, Project Spokane sold substantially all of its assets to HyperBlock LLC, another company in which Walsh is actively involved, for cash and a $5 million (Canadian) promissory note secured by HyperBlock's assets. (*Id.* at ¶ 7; Doc. 21-1 at ¶¶ 5, 7, 9; Doc. 21-2.) Project Spokane filed a financing statement with the Delaware Secretary of State on the day of the transaction. (Doc. 21-1 at ¶ 5.) With Bonner Property Development's consent, Project Spokane assigned its lease to HyperBlock. (Doc. 8-6 at ¶ 10.)

In late 2018, HyperBlock initiated discussions with Bonner Property Development about expanding into additional space at the Bonner Mill Site. (*Id.* at ¶ 12; Doc. 21-1 at ¶ 10.) The proposed expansion involved the construction of a 40-Megawatt substation on the premises to increase the electric capacity at the site. (Doc. 21-1 at ¶ 10.) To finance the expansion, HyperBlock applied for a loan from

2

Bank of Montana. (Doc. 8-6 at ¶ 13; Doc. 21-1 at ¶ 10.) Bonner Property Development, and Nelson and Boehme in their personal capacities, offered guaranties and pledged collateral, including the Site, to help HyperBlock obtain the loan. (Doc. 8-6 at ¶¶ 13, 16; Ex. 12, Doc. 11-1 at 30–36, Doc. 11-2 at 1–36; Ex. 13, Doc. 11-2 at 37–42.) In exchange, HyperBlock granted Bonner Property Development a security interest in the assets acquired with the loan. (Doc. 8-6 at ¶¶ 18–22; Ex. 14, Doc. 11-3 at 1–7.)

Bonner Property Development was unaware that Project Spokane already held an interest in HyperBlock's assets. (Doc. 8-6 at ¶ 18.) According to Nelson, during the negotiations and in subsequent communications, Walsh and other HyperBlock representatives promised that Bonner Property Development's lien had first priority. (*Id.* at ¶¶ 18–22.) However, Bonner Property Development did not file a financing statement in Delaware until May 22, 2020. (Doc. 21-1 at ¶ 16; Ex. 30(iii), Doc. 11-4 at 61.)

In January 2019, based on Walsh's plans for the expansion, the parties executed a side agreement and an amendment to the lease to reflect that Bonner Property Development would own the fixtures and certain personal property on the Site at the termination of the lease. (Doc. 8-6 at ¶ 24; Ex. 19, Doc. 11-3 at 48–60.) Shortly after, HyperBlock restructured its obligations to Project Spokane. (Doc. 8-6 at ¶ 25.) Specifically, on February 1, 2019, HyperBlock granted Project Spokane

3

a new security interest in, among other assets, its equipment and fixtures. (Doc. 21-4.) Project Spokane filed an amended financing statement in Delaware on February 15, 2019. (Doc. 21-1 at ¶ 5.) As part of the transaction, Bonner Property Development agreed to a collateral assignment of the lease to Project Spokane, meaning that Project Spokane would be responsible if HyperBlock defaulted on its rent obligations. (Doc. 8-6 at ¶¶ 25–26.) Nelson claims that during the negotiations, Walsh acknowledged a promise by Project Spokane to subordinate its interests in to Bonner Property Development's interests. (*Id.* at ¶ 26.) Walsh disputes this. (Doc. 21-1 at ¶ 16.)

In June 2019, Walsh lent HyperBlock $2,000,000 secured by all its assets. (*Id.* at ¶ 12; Docs. 21-3, 21-5.) He filed a financing statement in Delaware on July 19, 2019. (Doc. 21-1 at ¶ 5.)

HyperBlock was ultimately unable to move forward with the expansion due to a change in Missoula County's building codes. (*Id.* at ¶ 11.) In December 2019, the parties agreed that it could use the loan proceeds on new servers instead of on equipment and improvements related to the expansion. (*Id.* at ¶ 13; Doc. 8-6 at ¶ 27.) Bonner Property Development and HyperBlock executed documents to update the terms of the lease, credit enhancement agreement, security agreement, and previous side agreement to reflect the change. (Doc. 8-6 at ¶¶ 28–32; Doc. 21-1 at ¶ 13; Ex. 25, Doc. 11-3 at 164–70.) The new agreements gave Bonner

4

Property Development a security interest in all the personal property at the Site, except the servers that were already on the property. (Doc. 8-6 at ¶ 29; Ex. 25, Doc. 11-3 at 166.) HyperBlock then used $2,625,000 of the loan to purchase 1,493 servers. (Doc. 8-6 at ¶ 33; Doc. 21-1 at ¶ 13.)

HyperBlock purportedly ceased operations on May 14, 2020. (Doc. 7 at ¶ 66.) On May 19, Walsh and Project Spokane noticed a June 3 public sale of certain equipment and fixtures at the Bonner Mill Site in which they claim an interest as secured creditors of HyperBlock. (Doc. 11-4 at 62–65; Doc. 8-6 at ¶ 40.) As of May 31, 2020, HyperBlock is in default on the loan and its lease. (Doc. 8-6 at ¶¶ 43–46.) Bonner Property Development claims that it has a senior interest in the 1,493 servers and a nonpriority interest in HyperBlock's other assets that were noticed in the sale. (Doc. 7 at ¶ 23.) It also claims ownership of certain fixtures and personal property on the premises. (*Id.* at ¶ 70.)

On June 1, 2020, Bonner Property Development filed an Amended Complaint in state court against Project Spokane for fraud, unjust enrichment, promissory estoppel, and equitable estoppel, seeking declaratory relief, specific performance, and imposition of a constructive trust. (Doc. 7.) With the Amended Complaint, it filed a motion for a temporary restraining order to enjoin the June 3 public sale. (Doc. 8-2.) The state court granted the temporary restraining order and set a hearing on whether a preliminary injunction should issue for June 23.

(Doc. 8-5.) Project Spokane removed the action to this Court on June 9. (Doc. 1.) Bonner Property Development then filed a motion to extend the temporary restraining order, which was denied. (Docs. 2, 10.) On June 18, Bonner Property Development filed a motion for a preliminary injunction prohibiting Project Spokane from removing or disposing of any property previously or currently located at the Bonner Mill Site. (Doc. 15.) Project Spokane responded on June 22. (Doc. 21.) A hearing was held on June 25. (Doc. 10.)

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). The party seeking a preliminary injunction must show (1) a likelihood of success on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest. *See id.* at 20. The party "must establish that irreparable harm is *likely,* not just possible." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The other factors are then assessed on a sliding scale. *Id.* at 1135. For example, when "the balance of hardships tips sharply in the plaintiff's favor," an injunction may issue on a showing of "serious questions" going to the merits, rather than the stricter likelihood of success standard. *Id.* at 1134–35.

ANALYSIS

Unlike in *Energy Keepers v. Hyperblock LLC*, CV 20–76–M–DWM, there is no question in this case about the Court's authority to enter the requested preliminary injunction. Bonner Property Development claims an interest in the assets at issue and seeks equitable relief in addition to money damages. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310, 333 (1999). Accordingly, the only question is whether Bonner Property Development has satisfied the four-factor test for injunctive relief. It has.

## I.    Likelihood of Success on the Merits

This case has a unique posture. Bonner Property Development is not suing to enforce its security interest under the state statutes governing default in secured transactions. Mont. Code Ann. § 30-9A-601(1)(a); *Kapor v. RJC Inv., Inc.*, 434 P.3d 869, 873 (Mont. 2019). Rather, it is attempting to enforce a promise that its security interest would take priority over Project Spokane's and Walsh's and to hold Project Spokane liable for false representations to that effect. The parties have not briefed the law governing security interests, though some background is necessary to understand Bonner Property Development's claims.

The jurisdiction in which the debtor is located governs the priority of security interests in collateral. Mont. Code Ann. § 30-9A-301. When the debtor is a registered organization it is located in that state where it is organized. § 30-9A-

307(5). Here, the debtor is HyperBlock, which is a registered organization in Delaware. Accordingly, Delaware law governs the security interests at issue. However, because Delaware and Montana have both enacted the Uniform Commercial Code's provisions on secured transactions, *see* Mont. Code Ann. § 30-9A-101; Del. Code Ann. tit. 6, § 9-101, the law is the same in both jurisdictions.

A perfected security interest has priority over an unperfected interest. Del. Code Ann. tit. 6, § 9-322(a)(2). A security interest is perfected if it has "attached" and the relevant statutory requirements have been met. § 9-308(a). A security interest "attaches" when it becomes enforceable against the debtor, meaning value has been given, the debtor has rights in the collateral, and the debtor has authenticated, or signed, a security agreement that provides a description of the collateral. §§ 9-203, 9-102(7)(a). The only relevant statutory requirement in this case is the filing of a financing statement with the Delaware Secretary of State. §§ 9-310(a), 9-501(a)(2).

Here, Project Spokane and Walsh perfected their interests in HyperBlock's assets by filing financing statements with the Delaware Secretary of State in 2019. (Doc. 21-1 at ¶ 5.) Bonner Property Development did not file a financing statement in Delaware until May 2020. (*Id.* at ¶ 16; Ex. 30(iii), Doc. 11-4 at 61.) At present, Project Spokane and Walsh's interests therefore have priority over Bonner Property Development's. § 9-322(a). However, a party entitled to priority

8

may subordinate its interest by agreement. § 9-339.

Bonner Property Development contends that Project Spokane and Walsh should be bound by promises to subordinate under the doctrine of promissory estoppel and seeks specific performance. (Doc. 7 at ¶¶ 98–103, 123–27.) Bonner Property Development also seeks a declaratory judgment that it is the owner of the fixtures and certain personal property at the Site. (*Id.* at ¶¶ 112–22.) The other claims—for fraud, unjust enrichment, and equitable estoppel—concern alleged misrepresentations about the lien priority, not the security interests themselves. Whether Bonner Property Development is entitled to a superior interest in HyperBlock's assets, which is the primary basis for its requested preliminary injunction, turns on its promissory estoppel claim.

A promissory estoppel claim has four elements: "a clear and unambiguous promise, reliance by the promisee, reasonableness and foreseeability of the reliance, and resulting injury to the promisee." *S & P Brake Supply, Inc.*, 385 P.3d 567, 576 (Mont. 2016). On the first factor, Bonner Property Development argues that Walsh unambiguously promised a first priority lien in the Credit Enhancement Agreement, under which Bonner Property Development agreed to pledge collateral to help HyperBlock obtain the Bank of Montana loan. (Doc. 8-6 at ¶ 28; Ex. 13, Doc. 11-2 at 37–42.) Specifically, Section 1.2 of the Credit Enhancement Agreement provides in relevant part:

> The reimbursement obligation shall be secured by a first lien position security interest in the new assets and other improvements that [HyperBlock] intends to acquire with the proceeds from Bank Loan and the New Equity .... [HyperBlock] covenants to obtain lien waivers and releases from contractors and suppliers and to maintain [Bonner Property Development]'s first lien position in [HyperBlock]'s Pledged Assets at all times. Any default under the Bank Loan shall also be a default under this Agreement, and [Bonner Property Development] shall have the remedies provided under the Security Agreement.

(Ex. 13, Doc. 11-2 at 37–38.) Section 2.1(b) also referenced Bonner Property Development's "first lien security interest." (*Id.* at 38.) And in Section 4.1(f), HyperBlock promised to "[e]xecute such financing statements and other documents as [Bonner Property Development] may reasonably request to perfect and continue a first position security interest in [HyperBlock]'s Pledged Assets in favor of [Bonner Property Development]." (*Id.* at 39.)

The Credit Enhancement Agreement was executed by Sean Walsh in his capacity as CEO of HyperBlock and Steve Nelson in his capacity as co-manager of Bonner Property Development. (*Id.* at 42.) Walsh simultaneously authenticated a security agreement that described the collateral. (Ex. 14, Doc. 11-3 at 1–7.) Project Spokane does not dispute any of this. However, it argues that because Walsh executed the documents on behalf of HyperBlock, Bonner Property Development cannot establish that Project Spokane or Walsh acting individually made an unambiguous promise to subordinate their own security interests. Further, "[o]nly the person entitled to priority may make [a subordination] agreement: a

10

person's rights cannot be adversely affected by an agreement to which the person is not a party." § 9-339 cmt. 2. HyperBlock thus could not consent to subordinate Project Spokane and Walsh's interests.

However, Bonner Property Development alleges that Walsh is the alter ego of both HyperBlock and Project Spokane. (Doc. 7 at ¶ 7.) Alter ego doctrine allows courts to pierce the corporate veil to prevent unjust uses of a corporate entity. *Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960 (Mont. 1989). The alter ego inquiry is fact-specific. *See id.* The test is generally whether "the corporate affairs of both are so intertwined that, in effect, each no longer has a separate identity." *Id.* The facts alleged about Walsh's role in both HyperBlock and Project Spokane, (Doc. 7 at ¶¶ 22, 30; Doc. 21-1 at ¶¶ 1, 15), and the self-dealing transactions among the three, (Doc. 7 at ¶¶ 24–28, 51–52, 59, 68; Doc. 8-6 at ¶¶ 7, 43; Doc. 21-1 at ¶¶ 5, 9, 12), at least raise "serious questions" on the merits of Bonner Property Development's alter ego theory of liability.

With respect to the remaining promissory estoppel factors, Nelson's Declaration demonstrates that Bonner Property Development relied on the promise of a first priority security interest when deciding to pledge its property as security for HyperBlock's Bank of Montana loan. (Doc. 8-6 at ¶¶ 18, 22.) Further, securing a loan in exchange for an interest in the assets to be purchased with the loan proceeds is reasonable on its face, although questions remain here about what

Bonner Property Development knew or should have known about existing interests in the same collateral. (*Id.* at ¶ 16.) Finally, Bonner Property Development has suffered a resulting injury because the loan is in default and its property may be subject to foreclosure. (*Id.* at ¶¶ 43–44.) At this preliminary stage, Bonner Property Development has raised serious questions on the merits of its promissory estoppel claim.

Bonner Property Development also seeks to enjoin Project Spokane from disposing of the fixtures and certain personal property on the leased premises pending a declaration of who retains ownership. Based on the parties' January 2019 Fourth Amendment to Commercial Lease Agreement, (Doc. 8-6 at ¶ 24; Ex. 19(i), Doc. 11-3 at 48–56), Bonner Property Development is likely to succeed on this claim for declaratory relief.

## II.  Irreparable Harm

A harm is "irreparable" if it cannot be adequately remedied by money damages. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 1994). If Project Spokane disposes of the assets at issue, Bonner Property Development's subordinate security interest could be extinguished. § 9-622(b). Having a lien extinguished is an irreparable harm. *United States v. 475 Martin Lane*, No. CV 04-2788, 2011 WL 2939408, *4 (C.D. Cal. July 18, 2011); *Jet Midwest Int'l Co., Ltd. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1046 (8th Cir. 2020).

### III. Balance of the Equities and Public Interest

The relationship among HyperBlock, Project Spokane, and Walsh, (Doc. 7 at ¶¶ 24–28, 51–52, 59, 68; Doc. 8-6 at ¶¶ 7, 43; Doc. 21-1 at ¶¶ 5, 9, 12), and concerns that HyperBlock may end up in bankruptcy, (Doc. 7 at ¶¶ 10, 56, 67), outweigh any hardship Project Spokane would suffer from the depreciation in the value of the servers. Further, the public interest favors "settling allegations of fraud and competing security interests" before allowing a contested foreclosure or disposition by a creditor. *Jet Midwest*, 953 F.3d at 1046.

### CONCLUSION

IT IS ORDERED that Bonner Property Development's motion for preliminary injunction (Doc. 15) is GRANTED. Project Spokane, LLC and Sean Walsh are ENJOINED from selling or otherwise disposing of the fixtures, personal property described in Exhibit E-2 to the Fourth Amendment to Commercial Lease Agreement, and the 1,493 Bitmain Antminer S17+ servers until this action is resolved on the merits. The amount of bond, if any, will be determined within 21 days of the termination of settlement proceedings before Judge DeSoto.

DATED this 25th day of June, 2020.

12:10 P.M.

Donald W. Molloy, District Judge
United States District Court