JAMES A. PATTEN
DANIEL L. SNEDIGAR
**PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC**
2817 Second Avenue North
P.O. Box 1239
Billings, MT 59103-1239
Telephone:   (406) 252-8500
Facsimile:   (406) 294-9500
Email:  apatten@ppbglaw.com
Email:  dsnedigar@ppglaw.com


PETER W. ITO (Admitted *pro hac vice*)
**ITO LAW GROUP, P.C.**
1550 Larimer Street, Suite 667
Denver, CO 80202
Tel. No. (720) 281-5294
Email: peter@itolawgroup.com


Attorneys for Defendants

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| STEVE NELSON, MICHAEL BOEHME and BONNER PROPERTY DEVELOPMENT, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>PROJECT SPOKANE LLC, AND SEAN WALSH,<br><br>Defendants. | Civ. No. 9:20-cv-00082-DWM<br><br><br>**DEFENDANTS PROJECT SPOKANE, LLC AND SEAN WALSH'S (1) ANSWER TO FIRST AMENDED COMPLAINT AND (2) COUNTERCLAIMS AGAINST STEPHEN K. NELSON, MICHAEL D. BOEHME AND BONNER PROPERTY DEVELOPMENT**<br><br>**JURY TRIAL DEMANDED** |

**1**

## DEFENDANTS PROJECT SPOKANE, LLC AND SEAN WALSH'S ANSWER TO FIRST AMENDED COMPLAINT

Defendants Project Spokane, LLC ("**Project Spokane**") and Sean Walsh ("**Mr. Walsh**," and together with Project Spokane, collectively, the "**Defendants**"), by and through their undersigned counsel, for their answer ("**Answer**") to the First Amended Complaint and Demand for Jury Trial (the "**Complaint**") state and allege as follows:

### INTRODUCTION

1.     In response to paragraph 1 of the Complaint, Defendants state that the Complaint speaks for itself.  To the extent an answer is required, Defendants deny all allegations in paragraph 1 of the Complaint.

### PARTIES

2.      Defendants admit that Bonner Property Development, LLC ("**BPD**") owns real property located at the Bonner Mill Site.  Defendants lack sufficient knowledge or information to admit or deny the remaining allegations in paragraph 2 of the Complaint.

3.     Defendants lack sufficient knowledge or information to admit or deny the allegations in paragraph 3 of the Complaint.

4.     Defendants lack sufficient knowledge or information to admit or deny the allegations in paragraph 4 of the Complaint.

5.     Defendants admit the allegations in paragraph 5 of the Complaint.

6.      Defendants admit that Mr. Walsh is a citizen of the Commonwealth of Puerto Rico.

7.      The allegations in paragraph 7 of the Complaint are conclusions of law to which no response is required.  To the extent that an answer is required, Defendants deny the allegations.

## JURISDICTION AND VENUE

8.       The allegations in paragraph 8 of the Complaint are conclusions of law to which no response is required.  To the extent that an answer is required, Defendants admit that this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

9.      The allegations in paragraph 9 of the Complaint are conclusions of law to which no response is required.  To the extent that an answer is required, Defendants admit, solely based on the allegations contained in the Complaint, that venue is appropriate in this District.

## GENERAL ALLEGATIONS

10.     In response to paragraph 10 of the Complaint, Defendants admit that Mr. Walsh has been involved in the cryptocurrency business since 2014. Defendants deny the remaining allegations in paragraph 10 of the Complaint.

11.     Defendants admit the allegations in paragraph 11 of the Complaint.

12.     The document referenced in paragraph 12 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 12 of the Complaint.

13.     The document referenced in paragraph 13 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 13 of the Complaint.

14.     The document referenced in paragraph 14 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 14 of the Complaint.

15.     The document referenced in paragraph 15 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 15 of the Complaint.

16.     Defendants deny the allegations in paragraph 16 of the Complaint.

17.     In response to paragraph 17 of the Complaint, Defendants admit that in 2017, HyperBlock Technologies Corp. began a transaction with Project Spokane and that at the time Mr. Walsh was one of several members of Project Spokane. Defendants deny the remaining allegations in paragraph 17 of the Complaint.

18.     The document referenced in paragraph 18 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 18 of the Complaint.

19.     The document referenced in paragraph 19 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 19 of the Complaint.

20.     The document referenced in paragraph 20 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 20 of the Complaint.

21.     In response to paragraph 21 of the Complaint, Defendants admit that HyperBlock, LLC is a Delaware limited liability company, that HyperBlock, Inc. is the sole member of HyperBlock, LLC, that HyperBlock, Inc. was formed as a result of a merger between HyperBlock Technologies Corp. and CryptoGlobal Corp., and that HyperBlock, LLC was engaged in the business of Bitcoin mining. Defendants deny the remaining allegations in paragraph 21 of the Complaint.

22.     In response to paragraph 22 of the Complaint, Defendants admit that Mr. Walsh was formerly the Chairman and Chief Executive Officer of HyperBlock, Inc., that Mr. Walsh was the Chief Executive Officer of HyperBlock, LLC, that by December 2019, Mr. Walsh had become the sole member of Project Spokane and that prior to that there were nine members of Project Spokane. Defendants deny the remaining allegations in paragraph 22 of the Complaint.

23.     In response to paragraph 23 of the Complaint, Defendants admit that BPD was the landlord of HyperBlock, LLC. The remaining allegations in

paragraph 23 are conclusions of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

24.     In response to paragraph 24 of the Complaint, Defendants admit that in January 2018 HyperBlock, LLC entered into an agreement with Project Spokane.   The agreement referenced in paragraph 24 of the Complaint speaks for itself.  Any characterization of the agreement or other allegation is denied. Defendants deny the remaining allegations in paragraph 24 of the Complaint.

25.     In response to paragraph 25 of the Complaint, Defendants admit that in July 2018, the sale transaction between HyperBlock, LLC and Project Spokane closed, that HyperBlock, Inc. was formed through a merger of Hyperblock Technologies Corp. and CryptoGlobal Corp., and that Mr. Walsh was formerly the Chairman, after the resignation of Eric So, who was the initial Chairman of HyperBlock, Inc., and Chief Executive Officer of HyperBlock, Inc.  Defendants deny the remaining allegations in paragraph 25 of the Complaint.

26.     In response to paragraph 26 of the Complaint, Defendants admit that HyperBlock, LLC paid consideration, in the form of approximately US$10 million cash and a CAD$5 million promissory note, as part of its acquisition of Project Spokane's assets and that as part of its acquisition it executed and delivered a promissory note to Project Spokane.  Both the acquisition agreement and promissory note referenced in Paragraph 26 speak for themselves.  Any

characterization of those documents or other allegation is denied. Defendants deny the remaining allegations in paragraph 26 of the Complaint.

27.   In response to paragraph 27 of the Complaint, Defendants admit that on July 10, 2018, Project Spokane filed a UCC-1 Financing Statement with the Delaware Secretary of State.

28.   Defendants deny the allegations in paragraph 28 of the Complaint.

29.   The document referenced in paragraph 29 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 29 of the Complaint.

30.   The documents referenced in paragraph 30 of the Complaint speak for themselves.  Any characterization of the documents or other allegation is denied. Defendants deny the remaining allegations in paragraph 30 of the Complaint.

31.   Defendants deny the allegations in paragraph 31 of the Complaint.

32.   Defendants deny the allegations in paragraph 32 of the Complaint.

33.   Defendants lack sufficient knowledge or information to admit or deny the allegations in paragraph 33 of the Complaint. To the extent that an answer is required, such allegations are denied.

34.   The documents referenced in paragraph 34 of the Complaint speak for themselves.  Any characterization of the documents or other allegation is denied. Defendants deny the remaining allegations in paragraph 34 of the Complaint.

35.     The document referenced in paragraph 35 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 35 of the Complaint.

36.     The document referenced in paragraph 36 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 36 of the Complaint.

37.     The document referenced in paragraph 37 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 37 of the Complaint.

38.     Defendants admit that in his representative capacity as the Chief Executive Officer a digital image of Mr. Walsh's signature was attached by his executive assistant to the Credit Enhancement Agreement on behalf of HyperBlock, LLC.

39.     The document referenced in paragraph 39 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 39 of the Complaint.

40.     In response to paragraph 40 of the Complaint, Defendants admit that in his capacity as the Chief Executive Officer of HyperBlock, Inc, which was the sole member of HyperBlock, LLC, a digital image of Mr. Walsh's signature was attached by his executive assistant to the promissory note.  The document

referenced in paragraph 40 of the Complaint speaks for itself. Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 40 of the Complaint.

41.     In response to paragraph 41 of the Complaint, Defendants admit that BPD granted the Bank of Montana a lien against the real property as collateral for a loan made by the Bank of Montana to HyperBlock, LLC. Defendants deny the allegation in paragraph 41 of the Complaint.

42.     Defendants lack sufficient knowledge or information to admit or deny the allegations in paragraph 42 of the Complaint. To the extent that an answer is required, such allegations are denied.

43.     Defendants lack sufficient knowledge or information to admit or deny the allegations in paragraph 43 of the Complaint. To the extent that an answer is required, such allegations are denied.

44.     Defendants lack sufficient knowledge or information to admit or deny the allegations in paragraph 44 of the Complaint. To the extent that an answer is required, such allegations are denied.

45.     In response to paragraph 45 of the Complaint, Defendants deny the allegation that without the guaranties of Nelson and Boehme, HyperBlock, LLC could not expand its mining operations. Defendants lack sufficient knowledge or

information to admit or deny the remaining allegations in paragraph 45 of the Complaint. To the extent that an answer is required, such allegations are denied.

46.    The allegations in paragraph 46 of the Complaint are conclusions of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

47.    The allegations in paragraph 47 of the Complaint are conclusions of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

48.    The document referenced in paragraph 48 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 48 of the Complaint.

49.    The document referenced in paragraph 49 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 49 of the Complaint.

50.    Defendants deny the allegations in paragraph 50 of the Complaint.

51.    The document referenced in paragraph 51 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 51 of the Complaint.

52.     In response to paragraph 52, Defendants admit that Mr. Walsh filed a UCC-1 Financing Statement on July 19, 2019 with the Delaware Secretary of State.

53.     Defendants deny the allegations in paragraph 53 of the Complaint.

54.     In response to paragraph 54 of the Complaint, Defendants admit that BPD and HyperBlock, LLC entered into a Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amended to Lease Agreement, and that in his capacity as the Chief Executive Officer of HyperBlock, LLC, a digital image of Mr. Walsh's signature was attached by his executive assistant to the documents.  Defendants deny the remaining allegations in paragraph 54 of the Complaint.

55.     The document referenced in paragraph 55 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 55 of the Complaint.

56.     Defendants deny the allegations in paragraph 56 of the Complaint.

57.     In response to paragraph 57 of the Complaint, Defendants admit that HyperBlock, LLC purchased 1493 Bitcoin mining servers with the loan from the Bank of Montana.  Defendants deny the remaining allegations in paragraph 57 of the Complaint.

58.     Defendants deny the allegations in paragraph 58 of the Complaint.

59.     The document referenced in paragraph 59 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 59 of the Complaint.

60.     Defendants deny the allegations in paragraph 60 of the Complaint.

61.     Defendants deny the allegations in paragraph 61 of the Complaint.

62.     In response to paragraph 62 of the Complaint, Defendants admit that at some point in 2020 HyperBlock, LLC ceased making payments to Energy Keepers, Inc.

63.     In response to paragraph 63 of the Complaint, Defendants admit that on or about April 24, 2020, Mr. Walsh resigned as the Chief Executive Officer of HyperBlock, Inc. and that same month Mr. Walsh and Project Spokane accelerated the maturity date of the promissory notes issued to them by HyperBlock, LLC. Defendants deny the remaining allegations in paragraph 63.

64.     In response to paragraph 64 of the Complaint, Defendants admit that on or about May 11, 2020, a halving of Bitcoin mining rewards occurred.

65.     In response to paragraph 65 of the Complaint, Defendants admit that Energy Keepers, Inc. terminated it supply contract with HyperBlock, LLC and that a Bitcoin mining business cannot operate without electricity.

66.     The document referenced in paragraph 66 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 66 of the Complaint.

67.     In response to paragraph 67 of the Complaint, Defendants admit that in May 2020 HyperBlock, Inc. filed an Assignment in Bankruptcy.

68.     In response to paragraph 68 of the Complaint, Defendants admit that they issued a Notice of Disposition of Collateral by Public Sale.  The Notice of Disposition of Collateral by Public Sale speaks for itself.  Any characterization of the document or other allegation is denied.  Defendants deny the remaining allegations in paragraph 68 of the Complaint.

69.     The Notice of Disposition of Collateral by Public Sale speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 69 of the Complaint.

70.     Defendants deny the allegations in paragraph 70 of the Complaint.

71.     The document referenced in paragraph 71 of the Complaint speaks for itself.  Any characterization of the document or other allegation is denied. Defendants deny the remaining allegations in paragraph 71 of the Complaint.

72.     In response to paragraph 72 of the Complaint, Defendants admit that on or about May 26, 2020, there was a telephone meeting by and between Defendants and their counsel, on the one hand, and plaintiffs and their counsel on

the other.  The parties agreed that the call would be subject to Rule 408 of the

Federal Rules of Evidence.  Pursuant to that agreement, Defendants will not

response to the allegations made in paragraph 72.

73.    Pursuant to Rule 408 of the Federal Rules of Evidence, agreement,

Defendants will not response to the allegations made in paragraph 73.

74.    In response to paragraph 74 of the Complaint, Defendants admit that

the Bank of Montana has declared a default.

75.    The allegations in paragraph 75 of the Complaint are conclusions of

law to which no response is required.  To the extent that an answer is required,

such allegations are denied.  Defendants admit that BPD issued a Notice of Default

to HyperBlock, LLC.

76.    The allegations in paragraph 76 of the Complaint are conclusions of

law to which no response is required.  To the extent that an answer is required,

such allegations are denied.

## COUNT ONE
### (Fraud)

77.    Defendants refer to and incorporate their answers to paragraph 1

through 76 above.

78.    Defendants deny the allegations in paragraph 78 of the Complaint.

79.    Defendants deny the allegations in paragraph 79 of the Complaint.

80.    Defendants deny the allegations in paragraph 80 of the Complaint.

81.     Defendants deny the allegations in paragraph 81 of the Complaint.

82.     Defendants deny the allegations in paragraph 82 of the Complaint.

83.     Defendants deny the allegations in paragraph 83 of the Complaint.

84.     Defendants deny the allegations in paragraph 84 of the Complaint.

85.     Defendants deny the allegations in paragraph 85 of the Complaint.

86.     Defendants deny the allegations in paragraph 86 of the Complaint.

87.     Defendants deny the allegations in paragraph 87 of the Complaint.

88.     Defendants deny the allegations in paragraph 88 of the Complaint.

89.     Defendants deny the allegations in paragraph 89 of the Complaint.

90.     The allegation in paragraph 90 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

## COUNT TWO (MISTAKENLY LABLED COUNT THREE)
### (Unjust Enrichment)

91.     Defendants refer to and incorporate their answers to paragraphs 1 through 90 above.

92.     Defendants deny the allegations in paragraph 92 of the Complaint.

93.     Defendants deny the allegations in paragraph 93 of the Complaint.

94.     Defendants deny the allegations in paragraph 94 of the Complaint.

95.     Defendants deny the allegations in paragraph 95 of the Complaint.

96.     Defendants deny the allegations in paragraph 96 of the Complaint.

97.     The allegation in paragraph 97 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

## COUNT THREE
## (Promissory Estoppel)

98.     Defendants refer to and incorporate their answers to paragraphs 1 through 97 above.

99.     Defendants deny the allegations in paragraph 99 of the Complaint.

100.    Defendants deny the allegations in paragraph 100 of the Complaint.

101.    The allegations in paragraph 101 of the Complaint are conclusions of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

102.    The allegation in paragraph 102 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

103.    Defendants deny the allegations in paragraph 103 of the Complaint.

## COUNT FOUR
## (Equitable Estoppel)

104.    Defendants refer to and incorporate their answers to paragraphs 1 through 103 above.

105.    Defendants deny the allegations in paragraph 105 of the Complaint.

106.    Defendants deny the allegations in paragraph 106 of the Complaint.

107.    Defendants deny the allegations in paragraph 107 of the Complaint.

108.    Defendants deny the allegations in paragraph 108 of the Complaint.

109.    Defendants deny the allegations in paragraph 109 of the Complaint.

110.    Defendants deny the allegations in paragraph 110 of the Complaint.

111.    The allegation in paragraph 111 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

### COUNT FIVE
### (Declaratory Judgment)

112.    Defendants refer to and incorporate their answers to paragraphs 1 through 111 above.

113.    The allegation in paragraph 111 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

114.    The allegation in paragraph 114 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

115.    Defendants deny the allegations in paragraph 115 of the Complaint.

116.    Defendants deny the allegations in paragraph 116 of the Complaint.

117.    The allegation in paragraph 117 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

118.    The allegations in paragraph 118 of the Complaint are conclusions of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

119.    Defendants deny the allegations in paragraph 119 of the Complaint.

120.    The allegations in paragraph 120, including each subparagraph, of the Complaint are conclusions of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

121.    The allegation in paragraph 121 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

122.    The allegations in paragraph 122 of the Complaint are conclusions of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

## COUNT SIX
### (Specific Performance)

123.    Defendants refer to and incorporate their answer to paragraphs 1 through 122 above.

124.   The allegation in paragraph 124 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

125.   The allegation in paragraph 125 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

126.   Defendants deny the allegations in paragraph 126 of the Complaint.

127.   The allegation in paragraph 127 of the Complaint is a conclusion of law to which no response is required.  To the extent that an answer is required, such allegations are denied.

## RELIEF REQUESTED

The paragraphs following paragraph 127 of the Complaint contain a request for relief as to which no response is required.  To the extent a response is required, Defendants deny that plaintiffs are entitled to the relief requested.

## GENERAL DENIAL

Except as otherwise previously admitted in paragraphs 1 through 127, Defendants deny each and every allegation contained in paragraphs 1 through 127 of the Complaint, including without limitation, the headings and subheadings. Defendants expressly reserve the right to amend and/or supplement this answer.

## AFFIRMATIVE DEFENSES

Defendants assert the following additional or affirmative defenses and reserves the right to amend this Answer to assert other and further defenses or affirmative defenses if information developed through discovery or otherwise merits such supplementation.  By designating these matters as "affirmative defenses," Defendants do not admit that they bear the burden of pleading, production or proof as to such matters, or that such matters are not elements that the plaintiff must affirmatively establish in order to prove the claims asserted in the Complaint.

## FIRST AFFIRMATIVE DEFENSE

The Complaint, and each and every claim and cause of action stated therein, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The claims for relief sought in the Complaint are barred by the applicable statute or statutes of limitation.

## THIRD AFFIRMATIVE DEFENSE

The claims for relief alleged in the Complaint are barred by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

The claims for relief alleged in the Complaint are barred by the doctrine of waiver and/or acquiescence.

## FIFTH AFFIRMATIVE DEFENSE

The claims for relief alleged in the Complaint are barred by the doctrine of unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

Without admitting that plaintiffs suffered any damages, plaintiffs' claims are barred in whole or in part by their failure to mitigate their damages, if any.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent plaintiffs have suffered or will suffer any damages, such damages were caused, in whole or in part, by the actions or omissions of other persons or entities over which Defendants had no control and for which Defendants are not liable.  In the event any fault of Defendants is found to have caused or contributed to cause any damages to plaintiffs, which is denied, any recovery against Defendants must be reduced and limited by comparative fault of such persons or entities.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent plaintiffs have suffered or will suffer any damages, plaintiffs' own actions, inactions, or negligence has caused or contributed to such damages, therefore, plaintiffs' claims are barred or, alternatively, any recovery due to plaintiffs must be reduced in proportion to such fault on the part of plaintiffs.

## NINTH AFFIRMATIVE DEFENSE

Defendants are not liable under a veil piercing theory because at no time were Defendants members of HyperBlock, LLC.  Other than HyperBlock, Inc., there have been no other members of HyperBlock, LLC.

## TENTH AFFIRMATIVE DEFENSE

**Neither** Project Spokane nor HyperBlock, LLC are the alter ego of Mr. Walsh.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs fail to establish that the corporate veil of either Project Spokane or HyperBlock, LLC should be pierced.

## TWELFTH AFFIRMATIVE DEFENSE

There was never a contract, oral or written, whereby Project Spokane or Mr. Walsh agreed to provide Plaintiffs with a first priority security interest, and any alleged contract would fail due to lack of consideration and mutuality.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs had constructive knowledge of the lien recorded by Project Spokane and failed to obtain a subordination agreement.

## FOURTEENTH AFFIRMATIVE DEFENSE

Mr. Walsh had not yet perfected his lien at the time that Plaintiffs allege that they were promised a first priority security interest and, therefore, could have

but failed to obtain a security interest senior in priority to the lien held by Mr. Walsh.

## FIFTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs suffered any injury, it is attributable to their legal counsel, David Bjornson and Bjornson Jones Mungas, PLLC, who represented Plaintiffs in the relevant transaction. The lawsuit filed by Plaintiffs is an attempt to correct a mistake made by their own legal counsel.  If they have not already done so, Plaintiffs should place said counsel on notice regarding their claim and counsel should tender said claim to its malpractice carrier.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendants expressly reserve the right to assert additional defenses, by way of affirmative defenses, counterclaims, third-party claims and/or cross-claims, as additional facts are disclosed in the course of discovery.

WHEREFORE, Defendants pray that Plaintiffs' Complaint be dismissed as against them in its entirety and with prejudice, with all costs taxed against Plaintiffs; that Defendants recover from Plaintiffs their expenses of litigation, including attorneys' fees; and that Defendants recover such other and additional relief as the Court deems just and appropriate against plaintiffs.

## COUNTERCLAIMS FOR DECLARATORY RELIEF AND INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST STEPHEN K. NELSON, MICHAEL D. BOEHME AND BONNER PROPERTY DEVELOPMENT

Defendants and Counter-Claimants Project Spokane, LLC ("**Project Spokane**") and Sean Walsh ("**Mr. Walsh**," and together with Project Spokane, collectively, the "**Counter-Claimants**"), by and through their undersigned counsel, allege for their counterclaims against Bonner Property Development, LLC, Steven K. Nelson and Michael D. Boehme (collectively, "**Counter-Defendants**") as follows:

## INTRODUCTION

1.      The crux of Counter-Defendants' lawsuit is their argument that Counter-Claimants agreed to provide BPD with a first priority security interest against all of the collateral of HyperBlock, LLC.  The undisputed facts do not support this claim.  Counter-Defendants at all relevant times were represented by counsel.  HyperBlock at all relevant times was represented by counsel.  Notably, Counter-Claimants were never represented by counsel.  Counter-Claimants, Mr. Walsh and Project Spokane, were never represented by counsel as they never believed that they were parties to any of the relevant transactions between Counter-Defendants and HyperBlock, LLC.  It is undisputed that the only parties to the Expansion Transaction Documents (as defined below) and the Fourth Amendment (as defined below) were Bonner Property Development, LLC and HyperBlock, LLC. To the extent that Counter-Defendants suffered any injury, it is attributable to their legal counsel who represented them in the relevant transaction, not to

24

Counter-Claimants.  In summary, the lawsuit filed by Counter-Defendants is an attempt to correct a mistake made by their own legal counsel.  If they have not already done so, Counter-Defendants should place said counsel on notice regarding their claim and counsel should tender said claim to its malpractice carrier.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter under 28 U.S.C. § 1332 (diversity jurisdiction).  The parties to this action are citizens of different states, and the amount in controversy exceeds the statutory requirement.

3.     Venue is appropriate in the District Court for the District of Montana pursuant to 28 U.S.C. §§ 1391(b)(2) and (g).

## PARTIES

4.     Counter-claimant Project Spokane is a Colorado limited liability company with its principal place of business in Colorado.

5.     Counter-claimant Mr. Walsh is a member of Project Spokane and is a resident of the Commonwealth of Puerto Rico.

6.     Counter-defendant Bonner Property Development, LLC ("**BPD**"), is a Montana limited liability company with its principal place of business in Missoula County, Montana.  It owns real property at the Bonner Mill Site (the "**Property**"), the site of the former Stinson Lumber Mill in Bonner, Montana.

7.    Counter-defendant Stephen K. Nelson ("**Mr. Nelson**") is a resident of Missoula, Montana, and is a member of BPD.

8.    Counter-defendant Michael D. Boehme ("**Mr. Boehme**") is a resident of Missoula, Montana, and is a member of BPD.

## GENERAL ALLEGATIONS

**I.    Counter-Defendants Have Pocketed Around $30 Million Over the Course of Their Relationship With Counter-Claimants, Mr. Walsh and Project Spokane**

9.    Over the course of the last several years, Counter-Defendants, either directly or through entities owned and/or controlled by Mr. Nelson and/or Mr. Boehme, have been paid tens of millions of dollars by doing business with Counter-Claimants.

10.    Project Spokane, and later HyperBlock, LLC, each month gave Mr. Nelson and Mr. Boehme each one Bitcoin per month.  This started in late 2016, when one Bitcoin was valued at approximately $500, and continued until present day.  Over the course of approximately 40 months, Mr. Nelson and Mr. Boehme each received $400,000 worth of Bitcoins at today's prices.  At peak Bitcoin prices, these rewards exceed $750,000 to both Mr. Nelson and Mr. Boehme.

11.    MSJ, LLC ("**MSJ**"), is Montana limited liability company.  On information and belief, Mr. Nelson and Mr. Boehme are members of MSJ.  MSJ purchased 976 Bitmain S7 servers from Project Spokane for approximately

$200,000 in 2016. Project Spokane sold these servers to MSJ at a deeply discounted price and then agreed to host these servers at below-market rates. From late 2016 to late 2017, when Project Spokane repurchased the servers, MSJ earned 886 Bitcoins. At that time, the price of each Bitcoin was $20,000 per Bitcoin. In total, in consideration for its acquisition cost of $200,000 plus the costs it incurred for hosting of approximately $600,000, MSJ earned a total of 866 Bitcoins valued collectively at $17,320,000 for a total net profit of $16,430,000.

12.     Terahash, LLC ("**Terahash**"), is a Montana limited liability company. On information and belief, Mr. Nelson and Mr. Boehme are members of Terahash. Terahash entered into a transaction with Project Spokane that was similar to the transaction between MSJ and Project Spokane.  In total, in consideration for its acquisition cost of approximately $200,000 plus the costs it incurred for hosting of approximately $500,000, Terahash earned a total of 453 Bitcoins, between late 2016 and late 2017,  valued collectively at approximately $9,060,000 for a total net profit of $8,360,000.

13.     Like Mr. Nelson and Mr. Boehme, BPD also benefitted.  BPD has collected approximately $5,000,000 in the form of lease payments on the Property made pursuant to the Commercial Lease (defined below). The monthly lease payments were well in excess of market rates and, based on an income approach to value, vastly exceeded the underlying fair market value of the Property.

14.     BPD also received free of charge all of the outdoor electrical infrastructure that was paid for by Project Spokane at a cost well in excess of $1,000,000.  The value of the outdoor infrastructure is still well in excess of $1,000,000.

15.     Project Spokane and, later, HyperBlock, LLC agreed to sell BPD power from their electrical service at a deeply discounted rate, which saved BPD approximately $5,000 per month and, over the course of time, approximately $200,000.

16.     In total, Counter-Defendants, BPD and/or Mr. Nelson and/or Mr. Boehme, have received nearly $30,000,000, in the form of cash and Bitcoin, over the course of their relationship and dealings with Counter-Claimants.

## II.     HyperBlock Technologies Corp. Formation and Business

### A.     HyperBlock Technologies Corp.

17.     Aletheum Blockchain Technologies was incorporated under the Ontario Business Corporations Act on October 10, 2017, and later changed its name to HyperBlock Technologies Corp. ("**HyperBlock Technologies**").  It was formed by a group of more than five Canadian citizens, none of whom were known by Mr. Walsh, until later.

18.     HyperBlock Technologies principal business was an aggregator of cryptocurrency mining assets, with aspirations to become a publicly traded company in Canada.

19.     At the time of its formation, Mr. Walsh neither controlled HyperBlock Technologies, nor was he an officer or director of the same, nor was he aware of HyperBlock Technologies' existence, nor had he yet been introduced to its founders.

20.     As of December 29, 2017, the officers and directors of HyperBlock Technologies were:

> Ted Colivas, Director and President
>
> Robert Chalmers, Director
>
> Kent Farrell, Director
>
> Ronald Spoehel, Director
>
> Eric So, Director

21.     Between the date of its incorporation and February 28, 2018, HyperBlock Technologies issued an aggregate of 129,120, 919 shares to certain holders (the "**Initial Shareholders**").

22.     Mr. Walsh was not an Initial Shareholder.

23.     The proceeds raised from the issuance of shares to the Initial Shareholders were used to fund the preliminary expenses related to HyperBlock

Technologies' pursuit of a variety of cryptocurrency mining operations, including Project Spokane's assets.

24.     Mr. Walsh was introduced to HyperBlock Technologies and its team through Venture Capricorn ("**Venture Capricorn**"), which was a buy-side investment bank located in Austin, Texas.  Venture Capricorn sought out and found at least three cryptocurrency mining businesses for HyperBlock Technologies to pursue.

> B.     HyperBlock Technologies Purchases Mining Servers From Project Spokane

25.     Prior to the Spokane Acquisition (defined below), Project Spokane and HyperBlock Technologies entered into two separate commercially reasonable, arm's length transactions that were similar in nature to numerous other server sales transactions previously consummated by Project Spokane.

26.     On November 29, 2017, HyperBlock Technologies entered into an sale agreement with Project Spokane (the "**Sale Agreement**") pursuant to which HyperBlock Technologies agreed to purchase Bitmain S9 servers capable of producing 10 Petahashes/second, collectively, with power supply units ("**PSUs**") (the "**Sector 14 Servers**").

27.     On December 18, 2017, HyperBlock Technologies entered into an amendment to the Sale Agreement with Project Spokane (the "**Amendment Agreement**") to purchase certain additional Bitmain S9 servers, capable of

producing an additional 10 Petahashes/second, with PSUs (the "**Sector 22 Servers**").

28.     The closing date for the transactions contemplated by the Sale Agreement and the Amendment Agreement occurred on December 19, 2017 (the "**Sale Closing**").  On the Sale Closing, Project Spokane transferred the Section 14 Servers to HyperBlock Technologies.  The transfer of the Section 22 Servers occurred upon Project Spokane's receipt, installment and deployment of such servers.  The Section 22 Servers were fully deployed on February 2, 2018.

## III.   HyperBlock, LLC Formation and Business

### A.     Formation of HyperBlock, LLC

29.     HyperBlock, LLC was formed on December 29, 2017, as a Delaware limited liability company.

30.     At the time of its formation, and for all times relevant afterward, HyperBlock, LLC's sole member was HyperBlock Technologies.

### B.     HyperBlock, LLC Acquires Project Spokane

31.     On January 7, 2018, HyperBlock, LLC entered into the Spokane Purchase Agreement (the "**Spokane Purchase Agreement**") with Project Spokane to acquire substantially all of the assets used in the operation of the mining business of Project Spokane (the "**Purchased Assets**"), and assume certain

liabilities of Project Spokane for the consideration in the form of cash and a

CAD$5,000,000 Promissory Note (collectively, the "**Spokane Acquisition**").

## IV.    Amalgamation of HyperBlock Technologies and CryptoGlobal Corp.

32.    After the Amalgamation (described below) HyperBlock, Inc. ("**HBI**")

was a publicly traded Canadian corporation.

33.    Attached hereto and incorporated herein by this reference as Exhibit

"A" is a Form 2A Listing Statement in Connection with the Listing of HyperBlock,

Inc. dated July 10, 2018 ("**Listing Statement**").

34.    As described in the Listing Agreement, on April 3, 2018, HyperBlock

Technologies entered into an Arrangement Agreement ("**Arrangement**") with

CryptoGlobal Corp. ("**CryptoGlobal**"), pursuant to which and among other things,

HyperBlock Technologies agreed to acquire all of the shares of CryptoGlobal, and

HyperBlock Technologies and CryptoGlobal would amalgamate (the

"**Amalgamation**") to form HBI.  *See* Listing Agreement, p. 4.

35.    The Listing Agreement provides that HBI would operate as one

corporation under the Ontario Business Corporations Act.  *Id*. at p. 10.

36.    Prior to the Arrangement, HyperBlock Technologies had one wholly

owned subsidiary, HyperBlock, LLC. *Id*. at p. 10.

37.     After the Arrangement, HBI would have three wholly owned

subsidiaries:  CryptoGlobal, HyperBlock, LLC and Blockchain Dynamics.  Id. at p.

11.

38.     The Arrangement was approved by an Order of the Superior Court of

Justice in June 2018.

**V.     HyperBlock, LLC, By and Through Inder Saini, Its Chief Financial
         Officer, Executes Secured Promissory Note in Favor of Project Spokane**

39.     As part of the Spokane Acquisition, HyperBlock, LLC executed a

Secured Promissory Note (the "**Project Spokane Secured Promissory Note**")

dated July 10, 2018.  A true and correct copy of the Project Spokane Secured

Promissory Note is attached hereto and incorporated by reference as Exhibit "B."

40.     The Project Spokane Secured Promissory Note obligated HyperBlock,

LLC to pay Project Spokane the principal amount of CAD$5,000,000.

41.     Inder Saini, in his capacity as the Chief Financial Officer, executed

the Project Spokane Secured Promissory Note on behalf of HyperBlock, LLC.

42.     The Project Spokane Secured Promissory Note is secured by Security

Agreement (the "**Project Spokane Security Agreement**").  A true and correct

copy of the Project Spokane Security Agreement is attached hereto and

incorporated hereby this reference as Exhibit "C."

43.    The Project Spokane Security Agreement grants Project Spokane a lien against the assets described in Section 2 of the agreement, whether now owned or hereafter owned, existing, arising or acquired and wherever located.

44.    The Project Spokane Security Agreement further provides that HyperBlock, LLC shall maintain "so long as the Security Interest may remain outstanding, title to each item of Collateral (including the proceeds and products thereof), free and clear of all Liens except the Security Interest. *Id*. at Section 4.

45.    Project Spokane perfected its security interest by filing a UCC-1 Financing Statement ("**Project Spokane UCC-1 Financing Statement**") with the Delaware Secretary of State on July 10, 2018 as Filing No. 2018-4736126.  A true and correct copy of this Project Spokane UCC-1 Financing Statement is attached hereto and incorporated herein by this reference as Exhibit "D."  An amendment (the "**Amended Project Spokane UCC-1 Financing Statement**") was filed with the Delaware Secretary of State on February 15, 2019 as Filing No. 2019-1099303. A true and correct copy of the Amended Project Spokane UCC-1 Financing Statement is attached hereto and incorporated here by this reference as Exhibit "E."

**VI.    HyperBlock, LLC, by and through Jason Vaughn, Its Site Manager, Executes Secured Promissory Note in Favor of Mr. Walsh**

46.    In June 2019, subsequent to the execution of the Expansion Transaction Documents (as defined below) and after the Bank of Montana Loan (as defined below) had been paid to zero by HyperBlock, LLC, Mr. Walsh lender

HyperBlock, LLC $2,000,000 for the purpose of funding the acquisition of approximately 1,500 new generation servers.

47.     The loan was evidenced by a Secured Promissory Note (the "**Walsh Secured Promissory Note**") dated June 19, 2019 and executed by HyperBlock, LLC in favor of Mr. Walsh.  A true and correct copy of the Walsh Secured Promissory Note is attached hereto and incorporated by reference as Exhibit "F."

48.     Jason Vaughn, Site Manager for HyperBlock, LLC, executed the Walsh Secured Promissory Note on behalf of HyperBlock, LLC.

49.     The Walsh Secured Promissory Note is secured by Security Agreement (the "**Walsh Security Agreement**") dated June 19, 2019.  A true and correct copy of the Walsh Security Agreement is attached hereto and incorporated hereby this reference as Exhibit "G."

50.     The Walsh Security Agreement grants Mr. Walsh a lien against the assets described in Section 2 of the agreement, whether now owned or hereafter owned, existing, arising or acquired and wherever located.

51.     The Walsh Security Agreement further provides that HyperBlock, LLC shall maintain "so long as the Security Interest may remain outstanding, title to each item of Collateral (including the proceeds and products thereof), free and clear of all Liens except the Security Interest.  *Id*. at Section 4.

52.     Mr. Walsh perfected his security interest by filing a UCC-1 Financing Statement ("**Walsh UCC-1 Financing Statement**") with the Delaware Secretary of State on July 19, 2019 as Filing No. 2019-5007682.  A true and correct copy of this Walsh UCC-1 Financing Statement is attached hereto and incorporated herein by this reference as Exhibit "H."

**VII.   Pari Pasu Treatment of Secured Liens Held by Counter-Claimants**

53.     Pursuant to a Priority Agreement ("**Priority Agreement**") dated June 14, 2019, Mr. Walsh and Project Spokane agreed that their respective liens would be treated on a pari pasu basis.  A true and correct copy of the Priority Agreement is attached hereto and incorporated herein by this reference as Exhibit "I."

**VIII.  Counter-Claimants Issue Notice of Default to HyperBlock, LLC, Accelerate the Indebtedness Owing Under the Secured Promissory Notes and Commence a Public Foreclosure Under Article 9 of the Uniform Commercial Code**

54.     On April 1, 2020, Mr. Walsh issued a notice of default to HyperBlock, LLC on the Walsh Secured Promissory Note for failure to timely make a quarterly interest payment.  When HyperBlock, LLC failed to cure the default, Mr. Walsh issued a notice of acceleration to HyperBlock, LLC on April 14, 2020.

55.     On April 2, 2020, Project Spokane issued a notice of default to HyperBlock, LLC on the Project Spokane Secured Promissory Note for failure to timely make a quarterly interest payment.  When HyperBlock, LLC failed to cure

the default, Project Spokane issued a notice of acceleration to HyperBlock, LLC on April 14, 2020.

56.     True and correct copies of the notices of default and notices of acceleration issues by Counter-Claimants are attached hereto and incorporated here by this reference as Exhibits "J" and "K," respectively.

57.     Having accelerated the obligations owing under the Walsh Secured Promissory Note and the Project Spokane Secured Promissory Note, Counter-Defendant issued a Notice of Disposition of Collateral by Public Sale ("**Notice of Disposition**"), a true and correct copy of which is attached hereto and incorporated herein by this reference as Exhibit "L."

58.     The Notice of Disposition notified interested parties that Counter-Claimants intended to "conduct a disposition of the below described collateral by public sale in accordance with the provision of the New York Uniform Commercial Code Section 9-601, et. seq." on June 3, 2020 (the "**Foreclosure**").

59.     The Foreclosure was stayed by a Temporary Restraining Order obtained by Counter-Defendants and issued by the Fourth Judicial District Court of Montana, Missoula County, in Case No. DV-32-2020-0000604-OC.

60.     Counter-Defendants subsequently obtained a preliminary injunction barring Counter-Claimants from foreclosing on the 1493 Servers along with those assets identified on Exhibit E-2 to the Fourth Amendment.

## IX.    The December 2018 Transaction Between BPD and HyperBlock, LLC

61.    In connection with the Spokane Acquisition, the Commercial Lease

Agreement ("**Commercial Lease**") between Project Spokane, as tenant, and BPD,

as landlord, was assigned, with the consent and approval of BPD, to HyperBlock,

LLC.  More specifically, HyperBlock, LLC assumed the Commercial Lease

pursuant to an Assignment, Assumption and Amendment of Lease executed

effective July 10, 2018.

62.    In or around the summer of 2018, HyperBlock, LLC entered into

negotiations with BPD to expand the capacity of HyperBlock, LLC's data center

operated at the Property owned by BPD.  Specifically, HyperBlock, LLC sought to

expand the electric capacity from 20 Megawatts (MW) to 60 MW, which

necessitated a 40MW outdoor electrical substation to be built and owned by

HyperBlock, LLC (the "**Expansion Transaction**").

63.    The negotiations for the Expansion Transaction were conducted

between Dan Stivers, on-site manager of HyperBlock, LLC, and Mr. Nelson, on

behalf of BPD.  The Expansion Transaction was an exciting development for BPD

as it meant that it would collect more rent, in addition to the above-market rent that

it was already receiving each month, and have a dramatically larger tenant for the

Property, which had sat empty for many years.  Furthermore, BPD would end up

with a 40MW high-voltage outdoor substation that would *dramatically* increase the

value of the entire Bonner Millsite, which Counter-Claimants on information and belief allege that Mr. Nelson and Mr. Boehme acquired for nearly nothing, just a few years prior.

64.     In order to finance the Expansion Transaction, HyperBlock, LLC obtained a loan from the Bank of Montana ("**Bank of Montana Loan**").  The loan made by the Bank of Montana is evidenced by various loan documents (the "**Bank of Montana Loan Documents**") entered into by and between HyperBlock, LLC and Bank of Montana.  The Bank of Montana Loan Documents were executed by HyperBlock, LLC by and through its sole member, HBI.

65.     As security for the Bank of Montana Loan, BPD purportedly granted Bank of Montana a security interest in the Property represented by a Deed of Trust, which was executed by Mr. Nelson and Mr. Boehme in their capacities as co-managers and members of BPD.  As further security for the Bank of Montana Loan, Mr. Nelson and Mr. Boehme each purportedly executed and delivered a Commercial Guaranty to Bank of Montana.

66.     In a separate but related transaction, BPD and HyperBlock, LLC entered into three agreements, all dated December 13, 2018, relating to the Bank of Montana Loan and the Expansion Transaction ("**Expansion Transaction Documents**"):  (i) Third Amendment to Commercial Lease Agreement ("**Third**

**Amendment**"); (ii) Credit Enhancement Agreement ("**Credit Enhancement**

**Agreement**"); and (iii) Security Agreement ("**BPD Security Agreement**").

67.    BPD and HyperBlock, LLC are the only parties to the Expansion

Transaction Documents.

68.    David Bjornson ("**Mr. Bjornson**"), a named partner with the law firm

of Bjornson Jones Mungas, PLLC (the "**Firm**"), represented Counter-Defendants

with regard to the Expansion Transaction Documents.

69.    More specifically, Mr. Bjornson, on behalf of Counter-Defendants,

negotiated the principal terms of the Expansion Transaction Documents.

70.    Throughout the negotiation and documentation of the Expansion

Transaction Documents, HyperBlock, LLC was represented by its own legal

counsel.  Specifically, James A. Bowditch ("**Mr. Bowditch**"), who is a shareholder

with Boone Karlberg, P.C., represented HyperBlock, LLC.

71.    Mr. Nelson has acknowledged that Mr. Bowditch was counsel for

HyperBlock, LLC:

> Throughout November and December of 2018, Walsh
> and Jaymie Bowditch ("Bowditch") of Boone Karlberg
> PC, as attorney for Hyperblock, had multiple
> correspondence and conversations with BPD's counsel
> [Mr. Bjornson] related to BPD's security interests,
> various issues related to the contemplated financing and
> expansion, and the details regarding the intent of the
> parties if a default should occur.  These negotiations
> included specific discussions about BPD's security
> interests and revisions to the Security Agt., Credit

Enhancement Agt. and the Third Amendment to Commercial Lease Agreement, to address, among other things, specific provisions related to BPD's first lien priority security interest in the assets acquired through the BOM Loan, and Hyperblock's desire that the Security Agt. no longer secure Hyperblock's obligations under the Lease once the BOM Loan was paid off. Bowditch made revisions to the Security Agt. and expressly acknowledged BPD's security interest in the following statement:

> "However, I do not want the security agreement to secure all obligations under the lease since the lease will be in effect well after the Bank of Montana loan is paid. I have therefore agreed to retain the language in Section 1 of the attached Security Agreement stating that said agreement secures obligation HB owes under the lease but have added language to clarify that the 40 MW substation only serves as collateral under the lease until the BoM loan is paid."

Walsh was copied on most of the correspondence I reviewed from Bowditch and expressly weighed in on and consented to various revisions to the documents and terms through emails, as well as participating in the negotiation process through Bowditch.

Declaration of Steve Nelson dated May 31, 2020 ("**Nelson Declaration**"), ¶ 19, a true and correct copy of which is attached hereto and incorporated herein by this reference as Exhibit "M."

72.     Counter-Defendants relied on Mr. Bjornson and the Firm, as their counsel, to protect their legal interests regarding, among other things, BPD's alleged first priority security interest.

73.     Neither Mr. Walsh nor Project Spokane were represented by counsel during the negotiation or drafting of the Expansion Transaction Documents.

74.     At no time during the negotiation and documentation of the Expansion Transaction Documents did Counter-Defendants or, their counsel, Mr. Bjornson or the Firm, ever have any communications, whether oral or written, with any lawyer or law firm purporting to represent Mr. Walsh or Project Spokane.  The only communications that occurred were with Mr. Bowditch, who Mr. Nelson acknowledges was counsel for HyperBlock, LLC.

75.     The Expansion Transaction Documents were executed by HyperBlock, LLC.

76.     Mr. Walsh, in his individual capacity, is not a party to any of the Expansion Transaction Documents.

77.     Project Spokane is not a party to any of the Expansion Transaction Documents.

**X.    Fourth Amendment to Commercial Lease Agreement**

78.     On or about January 23, 2019, BPH and HyperBlock, LLC entered into a Fourth Amendment to Commercial Lease Agreement ("Fourth Amendment").  A true and correct copy of the Fourth Amendment is attached hereto and incorporated herein by this reference as Exhibit "N."

79.     The Fourth Amendment provides that all fixtures and "personal property located on or about the Property as of the Lease Commencement Date (defined below) shall be considered part of the Property hereby leased and subject to all terms and conditions hereof."

80.     The Fourth Amendment further provides "whether or not best legally described as Fixtures, all property relating to electrical supply and distribution shall remain with the Property and become the property of Landlord at the termination of the Commercial Lease, including but not limited to the property described in **Exhibit E-2**, attached hereto and incorporated herein by reference."

81.     As of the date set for the Foreclosure, the Commercial Lease had not been terminated and, therefore, the purported transfer of ownership of the property described in Exhibit E-2 had not yet transferred to BPD.

## XI.     Modification of Expansion Transaction Documents

82.     As a result of payments made by HyperBlock, LLC, the balance due on the Bank of Montana Loan was zero as of December 1, 2019.

83.     In December 2019, the Expansion Transaction Documents were modified to allow HyperBlock, LLC to use the proceeds from the Bank of Montana Loan for the acquisition of 1493 Bitmain S17+ Servers (the "**1493 Servers**").  Concurrent with this modification, the Bank of Montana agreed to

increase the loan to $3,540,000, and HyperBlock LLC agreed to begin paying another $15,000 per month to BPD, immediately.

84.     The modification was memorialized in a "Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement" (the "**Modification**").

85.     Pursuant to the Modification, the BPD Security Agreement was "modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification."

## XII.   Damages, If Any, Suffered by Counter-Defendants Was the Direct Result of the Negligence of Mr. Bjornson and the Firm, Not Counter-Claimants

86.     In their First Amended Complaint and Demand for Jury Trial (the "**Complaint**"), Counter-Defendants allege that "Walsh promised that the security interest by HyperBlock granted to BPD would have first priority and to undertake such steps as are required to establish and maintain first priority." *See* Complaint, ¶ 32.

87.     Section 1.2 of the Credit Enhancement Agreement states, in part, that BPD is provided a "first lien security interest" in the assets acquired with the Bank of Montana Loan.

88.     Section 4.1(f) of the Credit Enhancement Agreement expressly states that Borrower will "[e]xecute such financing statements and other documents as [BPD] may reasonably request to perfect and continue a first position security interest in Borrower's Pledged Assets in favor of [BPD]."

89.     The Credit Enhance Agreement defines "Borrower" as "HYPERBLOCK LLC, a Delaware limited liability company."

90.     Section 2 of the BPD Security Agreement states that "[t]he Debtor agrees to take all reasonable actions and execute instruments which [BPD] may reasonably request in order to create, perfect, evidence, determine the priority of, protect, enforce, continue, or terminate the security interest created by this Agreement."

91.     The BPD Security Agreement defines the "Debtor" as "Hyperblock, LLC, a Delaware limited liability company."

92.     In his declaration, Mr. Nelson states:

> Had I known Walsh and Project Spokane had security interests or that they did not actually intend to provide BPD's first-priority lien as promised, I would not have provided the requested credit enhancement and the BOM Loan would not have been approved by BOM or closed. In other words, without the first lien security interest provided in the documents, there would not have been financing for Hyperblock to purchase new assets.

*See* Nelson Declaration, ¶ 18.

93.     Mr. Nelson's statement reveals two fatal flaws in the lawsuit filed by Counter-Defendants against Counter-Claimants alleging that Counter-Claimants perpetrated a fraud, were unjustly enriched and should be equitably estopped from enforcing their first priority security interests.

94.     First, at the time the Expansion Transaction Documents were executed, Mr. Walsh had not yet perfected his security interest.  Had, as explained below, Mr. Bjornson and the Firm promptly filed a UCC-1 Financing Statement, Counter-Defendants would have held a security interest senior to the lien eventually obtained by Mr. Walsh.  Counter-Claimants did nothing to prevent Counter-Defendants from perfecting their security interest.  Indeed, the act of filing UCC-1 Financing Statement requires only the signature of the secured party (e.g., BPD). It was only as a result of the negligence of Mr. Bjornson and the Firm that Counter-Defendants' lien is junior to the lien of Mr. Walsh.

95.     Two, at the time the Expansion Transaction Documents were signed, Counter-Defendants had constructive knowledge that Project Spokane had claimed a lien against the assets by virtue of the fact that the Project Spokane UCC-1 Financing Statement was already on file with the Delaware Secretary of State as of December 13, 2018, i.e., the date of the Expansion Transaction Documents.

96.     Even a reasonably skilled transactional attorney would have performed a lien search of HyperBlock, LLC, with the Delaware Secretary of

State.  That search would have revealed the Project Spokane UCC-1 Financing Statement.  Apparently, neither Mr. Bjornson nor his firm performed a lien search.

97.    Even a reasonably skilled transactional attorney would have concurrent with the execution of the Expansion Transactional Documents filed a UCC-1 Financing Statement with the Delaware Secretary of State.  Mr. Bjornson and the Firm filed a UCC-1 Financing Statement but they filed it with the Montana Secretary of State, not the Delaware Secretary of State.  Attached hereto and incorporated herein by this reference as Exhibit "O" is the UCC-1 Financing Statement filed by the Firm with the Montana Secretary of State on January 7, 2019.  It was only when counsel for Counter-Claimants alerted Mr. Bjornson and the Firm of this mistake in late May 2020 that they filed a UCC-1 Financing Statement on behalf of BPD with the Delaware Secretary of State on May 22, 2020.   Attached hereto and incorporated herein by this reference as Exhibit "P" is the Certified Certificate issued by the Delaware Secretary of State certifying that a UCC-1 Financing Statement was filed by BPD with the Delaware Secretary of State on May 22, 2022 as Filing No. 2020-3609866.

98.    Had Mr. Bjornson and the Firm promptly filed a UCC-1 Financing Statement in the correct jurisdiction, i.e., Delaware, BPD's lien would have only been junior to the lien held by Project Spokane since the lien filed by Mr. Walsh was not perfected until July 19, 2019.

99.     Even a reasonably skilled transactional attorney would have, after having discovered the lien filed by Project Spokane, requested that Project Spokane execute a subordination agreement.  Despite having constructive notice of Project Spokane's lien, Mr. Bjornson and the Firm apparently never advised Counter-Defendants that Project Spokane needed to execute a subordination agreement as part of the Expansion Transaction Documents.

100.   At no time during the negotiation of the Expansion Transaction Documents did Counter-Defendants, Mr. Bjornson or the Firm request that Mr. Walsh and Project Spokane be added as parties to the documents.

101.   At no time during the negotiation of the Expansion Transaction Documents did Mr. Bjornson or the Firm recommend to Counter-Defendants that Mr. Walsh and Project Spokane be added as parties to the documents.

102.   The lawsuit filed by Counter-Defendants is an attempt to correct a mistake made by Mr. Bjornson and the Firm.  If they have not already done so, Counter-Defendants should place Mr. Bjornson and the Firm on notice regarding their claims against him and the Firm.

## FIRST COUNTERCLAIM FOR RELIEF
(Declaratory Relief)

103.   Counter-Claimants refer to and incorporate by this reference the allegations contained in paragraphs 1 through 90 above.

104.   Pursuant to 28 U.S.C. § 2201(a), this Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

105.   Counter-Claimants seek a declaration regarding the priorities of their security interests, which were perfected with the Delaware Secretary of State on July 10, 2018 and July 19, 2019, and the security interest of BPD, which was perfected with the Delaware Secretary of State on May 22, 2020.

106.   The priorities among conflicting security interests is governed by Article 9 ("**Article 9**") of the Uniform Commercial Code.

107.   While a debtor is located in a jurisdiction, the local laws of that jurisdiction govern the perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral.  *See* Montana Uniform Commercial Code § 30-9A-301(1).

108.   A limited liability company is deemed located in the state where it is organized.  *Id*. § 30-9A-307(5).

109.   Because HyperBlock, LLC is registered limited liability company organized under the laws of the State of Delaware, Article 9 of the Delaware Uniform Commercial Code Section 9-101, et. seq. ("**Delaware UCC**") governs the priorities of conflicting security interest.

110.   Delaware UCC § 9-322(a) governs the priorities among conflicting security interests.

111.   Delaware UCC § 9-322(a) states: "Conflicting perfected security interests and agricultural liens rank according to priority in time of filing or perfection.  Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest or agricultural lien is first perfected if there is no period thereafter when there is neither filing nor perfection."

112.   Delaware UCC § 9-322(a) is a "pure race" statute.  It is not a "race-notice" statute.

113.   Pursuant to Delaware UCC § 9-322(a), Counter-Claimants request a declaratory judgment that their perfected security interest in the collateral identified in Schedule A attached to the Notice of Disposition attached hereto as Exhibit "L" ranks senior in priority to the security interest of BPD in that same collateral.

## SECOND COUNTERCLAIM FOR RELIEF
(Declaratory Relief)

114.   Counter-Claimants refer to and incorporate by this reference the allegations contained in paragraphs 1 through 101 above.

115.   Pursuant to 28 U.S.C. § 2201(a), this Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or

not further relief is or could be sought.  Any such declaration shall have the force

and effect of a final judgment or decree and shall be reviewable as such.

116.   Counter-Claimants seek a declaration determining the rights of the

Counter-Claimants, on the one hand, and BPD, on the other, to the collateral

described on Exhibit E-2 to the Fourth Amendment.

117.   The Fourth Amendment provides, in part, as follows:

> Any fixtures and personal property located on or about
> the Property as of the Lease Commencement Date
> (defined below) shall be considered part of the Property
> hereby leased and subject to all terms and conditions
> hereof.  The term "Fixture" shall refer to those items so
> permanently attached or embedded to [sic] as to be
> considered part of the premises, as defined in Section 70-
> 15-103, MCA.  Upon termination or expiration of the
> Lease for any reason, Tenant shall be entitled to remove
> from the Property any improvements that Tenant has
> made to the Property and that are not considered
> "Fixtures." As used herein the term "Fixture" shall not
> include unattached personal property, furniture, or trade
> fixtures of Tenant including those set forth in **Exhibit E-
> 1**, attached hereto and incorporated herein by reference.
> Furthermore, however, whether or not best legally
> described as Fixtures, all property relating to electrical
> supply and distribution shall remain with the Property
> and become the property of Landlord at the termination
> of the Lease, including but not limited to the property
> described in **Exhibit E-2**, attached hereto and
> incorporated herein by reference.

118.   By its express terms, the collateral identified on Exhibit E-2 to the

Fourth Amendment would "become the property of [BPD] at the termination of the

Lease."

119.   The lease between BPD, as landlord, and HyperBlock, LLC, as tenant, terminated on June 23, 2020 ("**Lease Termination Date**").  Attached hereto and incorporated herein by reference as Exhibit "Q" is a Notice of Termination of Lease Agreement issued by counsel for BPD.

120.   As of the date of the Lease Termination Date, Counter-Claimants held a properly perfected, first priority security interest in all of collateral owned by HyperBlock, LLC, including many of the items identified on Exhibit E-2 attached to the Fourth Amendment.

121.   Delaware UCC § 9-315(a) governs a secured party's rights on the disposition of collateral.

122.    Delaware UCC § 9-315(a) states: "Except as otherwise provided in this Article and in Section 2-403(2): (1) a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and (2) a security interest attaches to any identifiable proceeds of collateral."

123.   Counter-Claimants never authorized the disposition of collateral identified on Exhibit E-2 to the Fourth Amendment free of their perfected security interest.

124.   Pursuant to Delaware UCC § 9-315(a), Counter-Claimants request a declaratory judgment that their perfected security interests continues in the collateral set forth on Exhibit E-2 to the Fourth Amendment notwithstanding the purported disposition of that collateral to BPD.

## THIRD COUNTERCLAIM FOR RELIEF
(Declaratory Relief)

125.   Counter-Claimants refer to and incorporate by this reference the allegations contained in paragraphs 1 through 112 above.

126.   Pursuant to 28 U.S.C. § 2201(a), this Court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

127.   Counter-Claimants seek a declaration determining whether only BPD and HyperBlock, LLC are legally obligated to satisfy the terms and conditions of the Expansion Transaction Documents and Fourth Amendment that were executed only by BPD and HyperBlock, LLC, and that neither Mr. Walsh nor Project Spokane are legally obligated to satisfy the terms and conditions of the Expansion Transaction Documents and Fourth Amendment.

128.   A limited liability company can only act through its agents, which are its officers.

129.   An agent acting with authority of the principal can act on behalf of the principal.

130.   With regard to the Expansion Transaction Documents and the Fourth Amendment, Counter-Defendants were aware that Mr. Walsh executed said documents in his capacity as the Chief Executive Officer of HyperBlock, LLC.

131.   Mr. Nelson has admitted and acknowledged that Mr. "Walsh negotiated and executed [the Expansion Transaction Documents] on behalf of HyperBlock," LLC.  *See* Nelson Declaration, ¶ 17.

132.   Mr. Nelson has also admitted and acknowledged that Mr. "Walsh executed the Fourth Amendment and the Side Agreement in the stated capacity as 'Chief Executive Officer' of HyperBlock," LLC. *Id.* at ¶ 24.

133.   Counter-Claimants request a declaratory judgment that only BPD and HyperBlock, LLC are legally obligated to satisfy the terms and conditions of the Expansion Transaction Documents and Fourth Amendment that were executed only by BPD and HyperBlock, LLC, and that neither Mr. Walsh nor Project Spokane are legally obligated to satisfy the terms and conditions of the Expansion Transaction Documents and Fourth Amendment.

## FOURTH COUNTERCLAIM FOR RELIEF
(Intentional Interference With Prospective Economic Advantage)
(Against All Counter-Defendants)

134.   Counter-Claimants refer to and incorporate by this reference the allegations contained in paragraphs 1 through 121 above.

135.   If the mining servers that are subject to the perfected security interests held by Counter-Claimants are put back to work mining for Bitcoin, they will generate, per current market conditions, approximately $15,200 a day in revenue and over $10,000 per day in profit after hosting costs (including electricity).

136.   Bitcoin mining servers are highly specialized and become obsolete very quickly.  The 1493 Servers purchased in January 2020 for approximately $2,600,000 have a life span of around two and a half years, and are expected to decline in value by more than $2,500 per day for the next year.

137.   Counter-Claimants' liens against the 1493 Servers are senior in priority to the lien held by BPD in those same servers.

138.   The fact that BPD's lien against the 1493 Servers is junior to the liens of Counter-Claimants is in no way the fault of Counter-Claimants.  Rather, it directly attributable to the negligence and fault of Mr. Bjornson and the Firm, who failed to exercise the care and diligence that a reasonable attorney would have exercised.  Had Mr. Bjornson and the Firm exercised reasonable care and diligence this whole dispute would have been avoided.

55

139.    Rather than pursue their claims directly against Mr. Bjornson and the Firm, Counter-Defendants have made the intentional and willful decision to pursue recovery against Counter-Claimants.  By doing so, Counter-Defendants have prevented Counter-Claimants from foreclosing on their properly perfectly security interest in the collateral.

140.    By preventing Counter-Claimants from foreclosing on the servers, Counter-Defendants have intentionally and willfully interfered with the prospective economic advantage of Counter-Claimants.

141.    Counter-Defendants' intentional and willful act of preventing Counter-Claimants from foreclosing on the servers has been and is calculated to cause damage to Counter-Claimants, who were not able to foreclose on the servers and, by reason thereof, were not able to put the servers back into operation or, alternatively, were not able to sell the servers.

142.    Counter-Defendants' intentional and willful act of preventing Counter-Claimants from foreclosing on the servers was, and continues to be, done with the unlawful purpose of causing damage and/or loss to Counter-Claimants, without right or justifiable cause on the part of Counter-Defendants.

143.    Counter-Defendants' intentional and willful act of preventing Counter-Claimants from foreclosing on the servers has resulted in actual damage and/or loss to Counter-Claimants in an amount to be proven at trial.

## **REQUESTED RELIEF**

WHEREFORE, Counter-Claimants request a final judgment of this Court awarding the following:

1.     Declaratory judgment pursuant to Delaware UCC § 9-322(a) that Counter-Claimants' perfected security interests in the collateral identified in Schedule A attached to the Notice of Disposition attached hereto as Exhibit "L" ranks senior in priority to the security interest of BPD in the same collateral;

2.     Declaratory judgment pursuant to Delaware UCC § 9-315(a), that Counter-Claimants' perfected security interests continues in the collateral set forth on Exhibit E-2 to the Fourth Amendment notwithstanding the purported disposition of that collateral to BPD;

3.     Declaratory judgment that only BPD and HyperBlock, LLC are legally obligated to satisfy the terms and conditions of the Expansion Transaction Documents and Fourth Amendment that were executed only by BPD and HyperBlock, LLC, and that neither Mr. Walsh nor Project Spokane are legally obligated to satisfy the terms and conditions of the Expansion Transaction Documents and Fourth Amendment.

4.     Judgment in favor of Counter-Claimants and against Counter-Defendants for intentional interference with prospective economic advantage in an amount to be determined at trial;

5.      Such other and further relief, at law or in equity, to which Counter-

Claimants may be justly entitled; and

6.      Such other and further relief as this Court may deem just and

equitable.

Dated this 1st of July 2020.

James A. Patten
**PATTEN, PETERMAN, BEKKEDAHL
& GREEN**
2817 Second Ave. North, Suite 300
Billings, Montana 59101

By:    /s/ JA Patten
       **JAMES A. PATTEN**
       Attorneys for Defendants


Peter W. Ito (Admitted *Pro Hac Vice*)
**ITO LAW GROUP, P.C.**
1550 Larimer Street, Suite 667
Denver, CO 80202

By:    /s/ Peter W. Ito
       **PETER W. ITO**
       Attorneys for Defendants

CERTIFICATE OF SERVICE

    I hereby certify that on this 1st day of July, 2020 a true and correct copy of the foregoing **DEFENDANTS PROJECT SPOKANE, LLC AND SEAN WALSH'S (1) ANSWER TO FIRST AMENDED COMPLAINT AND (2) COUNTERCLAIMS AGAINST STEPHEN K. NELSON, MICHAEL D. BOEHME AND BONNER PROPERTY DEVELOPMENT** was served on the following persons by the following means:

| | |
|---|---|
|   1, 2   | CM/ECF |
| _____ | Hand delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-mail |

1.    Clerk, U.S. District Court

2.    Quentin M Rhoades
       Robert Erickson
       Rhoades, Siefert & Erickson PLLC
       430 Ryman Street
       Missoula, MT 59802
       qmr@montanalawyer.com
       erickson@montanalawyer.com

            /s/ JA Patten                      
            For Patten, Peterman, Bekkedahl & Green