# EXHIBIT B

*Nelson et al. v. Walsh et al.*

Case No. 9:20-cv-00082-DWM

## SECURED PROMISSORY NOTE

**$5,000,000**                                                                                                               July 10, 2018

WHEREAS Hyperblock LLC, a Delaware limited liability company (the "Maker") is indebted to Project Spokane, LLC, a Colorado limited liability company (the "Holder") for the principal sum of $5,000,000 CAD (the "Debt");

AND WHEREAS such indebtedness has been secured by certain assets of the Maker pursuant to a UCC Financing Statement filed with the Delaware Department of State at 6:27 PM on July 10, 2018 as U.C.C. Initial Filing No: 2018 4736126;

AND WHEREAS such indebtedness is due July 10, 2019;

AND WHEREAS the Maker is the wholly owned subsidiary of Hyperblock Inc. an Ontario, Canada, company (the "Parent");

AND WHEREAS the Holder wishes to grant the Maker an option to extend the term of such indebtedness by twenty-four (24) months, upon written notice to Holder on or before the Maturity Date (defined below), in consideration for the Parent being a co-debtor together with Maker for the Debt, and the Maker, the Parent and Holder wish to formalize the indebtedness via this Secured Promissory Note (the "Note"), and to acknowledge and agree to such extension and the terms associated therewith;

FOR VALUE RECEIVED, the Maker and the Parent, jointly and severally, hereby promise to pay to the order of the Holder, the Debt, or such other amount as may be outstanding hereunder from time to time, together with interest as set out herein, at such place as the Holder may designate in writing by July 10, 2019 (the "Maturity Date"); provided, however, that at the Maker's sole option, upon written notice to Holder on or before the Maturity Date, Maker may extend the due date of the Debt by up to twenty-four (24) months (the "Extension Term") at which point the Debt shall bear interest at a rate of fifteen percent (15%) per annum which interest shall be payable quarterly during the Extension Term, in either cash or stock of the Parent at the Maker's sole option.

Section 1.     Maturity. The Debt shall be due and payable in full on Maturity Date; provided, however, at the Maker's sole option, upon written notice to Holder on or before the Maturity Date, Maker may extend the due date of the Debt by up to twenty-four (24) months (the "Extension Term"). at which point the Debt shall bear interest at a rate of fifteen percent (15%) per annum which interest shall be payable quarterly during the Extension Term, in either cash or stock of the Parent at the Maker's sole option.

Section 2.     Interest Rate. From and after July 10, 2019, this Note shall bear interest at an annual rate equal to fifteen percent (15%) per annum until this Note is paid in full, which interest shall be payable quarterly during the Extension Term, in either cash or stock of the Parent at the Maker's sole option. All interest due hereunder shall be computed on the per annum basis for the actual number of days (including the first day but excluding the last day) elapsed in a 365-day or 366-day year, as the case may be, and compounded annually.

Section 3.     Collateral. This Note is secured by those certain Security Agreements dated as of the date hereof, by and between the Maker and the Holder (the "Maker Security Agreement") and by and between the Parent and Holder (the "Holder Security Agreement"). This Note is also secured by a Collateral Assignment of Lease by and between the Maker and the Holder (the "Collateral Lease Assignment"). The Maker Security Agreement, the Parent Security Agreement, the Collateral Lease Assignment and the Note are collectively referred to herein as the "Loan Documents". The Holder shall have such rights with respect to the Collateral (as defined in the Security Agreements) as set forth in the Security Agreements.

Section 4.   Representations and Warranties. The Maker and the Parent represent and warrant to the Holder that (a) the Parent is an Ontario Company duly organized and in good standing under Ontario law, the Maker is a Delaware limited liability company duly organized and in good standing under Delaware law, and both the Maker and the Parent are duly qualified to do business in each jurisdiction where such qualification is necessary, (b) the execution and delivery of this Note, and the performance by the Maker and the Parent of their obligations hereunder are within the powers of both the Maker and the Parent and have been duly authorized by all necessary corporate action on the part of both the Maker and the Parent, (c) this Note is a legal, valid and binding obligation, enforceable in accordance with its terms, against both the Maker and the Parent, jointly and severally, (d) the execution, delivery and performance of this Note by the Maker and the Parent will not (i) violate any provision of any law, statute, rule or regulation or any order, writ, judgment, injunction, decree, determination or award of any court, governmental agency or arbitrator presently in effect having applicability to the Maker or the Parent, (ii) violate or contravene any provision of the organizational documents of the Maker or the Parent, or (iii) result in a breach of or constitute a default under any agreement, lease or instrument to which either the Maker or the Parent are bound.

Section 5.   Events of Default. If any one or more of the following events ("Events of Default") shall occur, then, in any such event, the Holder may, at its option, declare this Note to be immediately due and payable, together with all unpaid interest accrued hereon, without further notice or demand, but in the case of the occurrence of any of the events described in paragraph (d) below, this Note shall become automatically due and payable, including unpaid interest accrued hereon, without notice or demand:

(a)   Nonpayment. The Maker or the Parent shall fail to pay any principal or interest due on this Note or any fees, charges, costs, or expenses under the Loan Documents when due, upon no less than five (5) days written notice by the Holder to the Maker and the Parent.

(b)   Nonperformance. The Maker or the Parent shall fail to perform or observe any agreement, term, provision, condition, or covenant required to be performed or observed by the Maker or the Parent hereunder or under any other Loan Document or other agreement with or in favor of the Holder. Any event of default shall occur under the respective Security Agreement(s).

(c)   Misrepresentation. Any financial information, statement, certificate, representation, or warranty given to the Holder by the Maker or the Parent in connection with entering into this Note or the other Loan Documents and/or any borrowing thereunder, or required to be furnished under the terms thereof, shall prove untrue or misleading in any material respect (as determined by the Holder in the exercise of its reasonable judgment) as of the time when given.

(d)   Inability to Perform; Bankruptcy/Insolvency. The Maker or the Parent shall become insolvent or shall generally not pay its debts as they mature or shall apply for, shall consent to, or shall acquiesce in the appointment of a custodian, trustee or receiver for the Maker or the Parent or for a substantial part of the property thereof or, in the absence of such application, consent or acquiescence, a custodian, trustee or receiver shall be appointed for the Maker or the Parent or for a substantial part of the property thereof; or any bankruptcy, reorganization, debt arrangement or other proceedings under any bankruptcy or insolvency law shall be instituted by or against the Maker or the Parent.

Section 6.   Acceleration of Obligations. Upon the occurrence of any Event of Default, and the passage of any applicable cure periods, the Holder may at any time thereafter, by written notice to the Maker and the Parent, declare the unpaid principal balance hereunder, together with the interest accrued thereon and other amounts accrued hereunder and under the other Loan Documents, to be immediately due and payable, and the unpaid balance shall thereupon be due and payable, all without presentation, demand, protest, or further notice of any kind, all of which are hereby waived, and notwithstanding anything to the contrary contained herein or in any of the other Loan Documents. Upon the occurrence of any Event of

Default under Section 5(d), the unpaid principal balance hereunder, together with all interest accrued thereon and other amounts accrued hereunder and under the other Loan Documents, shall thereupon be immediately due and payable, all without presentation, demand, protest, or notice of any kind, all of which are hereby waived, and notwithstanding anything to the contrary contained herein or in any of the other Loan Documents. The Holder shall also have, in addition to any other rights it may have under applicable laws, the right to set off the indebtedness evidenced by this Note against any indebtedness of such holder to the Maker or the Parent.

Section 7.    No Waiver; Remedies. No failure or delay on the part of the Holder in exercising any power or right under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any such power or right preclude any other or further exercise thereof of the exercise of any other power or right. No notice to or demand on the Maker or the Parent in any case shall entitle the Maker or the Parent to any notice or demand in similar or other circumstances. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

Section 8.    GOVERNING LAW. THIS NOTE IS TO BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAW. AT THE OPTION OF THE HOLDER, THIS NOTE MAY BE ENFORCED IN ANY FEDERAL COURT OR NEW YORK COURT SITTING IN NEW YORK, NEW YORK; AND THE MAKER AND THE PARENT CONSENT TO THE JURISDICTION AND VENUE OF ANY SUCH COURT AND WAIVE ANY ARGUMENT THAT THE VENUE IN SUCH FORUMS IS NOT CONVENIENT. IF THE MAKER OR THE PARENT COMMENCE ANY ACTION IN ANOTHER JURISDICTION OR VENUE UNDER ANY TORT OR CONTRACT THEORY ARISING DIRECTLY OR INDIRECTLY FROM THE RELATIONSHIP CREATED BY THIS NOTE, THE HOLDER AT ITS OPTION SHALL BE ENTITLED TO HAVE THE CASE TRANSFERRED TO ONE OF THE JURISDICTIONS AND VENUES ABOVE-DESCRIBED, OR, IF SUCH TRANSFER CANNOT BE ACCOMPLISHED UNDER APPLICABLE LAW, TO HAVE SUCH CASE DISMISSED WITHOUT PREJUDICE.

Section 9.    WAIVER OF JURY TRIAL. THE MAKER AND THE PARENT AND, BY ITS ACCEPTANCE OF THIS NOTE, THE HOLDER IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.

Section 10.    Notices. Any notice or other communication to any party in connection with this Note shall be in writing and shall be sent by e-mail, manual delivery, overnight courier or United States mail (postage prepaid) addressed to such party at such address as such party shall have specified to the other party hereto in writing. All periods of notice shall be measured from the date of delivery thereof if sent by e-mail or manually delivered or, from the first business day after the date of sending if sent by overnight courier, or from four days after the date of mailing if mailed.

Section 11.    Successors and Assigns. This Agreement shall (a) be binding upon the Maker and the Parent and their successors and assigns, and (b) inure, together with the rights and remedies of the Holder hereunder, to the benefit of, and be enforceable by, the Holder and its successors, heirs, transferees and assigns. Notwithstanding anything to the contrary, neither the Maker, the Parent nor the Holder may assign its rights or delegate its obligations hereunder without the prior written consent of all others.

Section 12.    Maximum Rate. Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to this Note, together with all fees, charges and other amounts that are treated as interest on this Note under applicable law (collectively, the "Charges"), shall exceed the maximum lawful rate (the "Maximum Rate") that may be contracted for, charged, taken, received or reserved by the Holder

in accordance with applicable law, the rate of interest payable in respect hereof, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate.

Section 13.   <u>Presentment; Costs of Collection</u>. The Maker and the Parent hereby waive presentment for payment, notice of dishonor, protest and notice of protest.

Section 14.   <u>Entire Agreement</u>. This Note embodies the entire understanding between the Holder and the Maker with respect to the subject matter hereof and thereof. This Note supersedes all prior agreements and understandings relating to the subject matter hereof including, without limitation, that certain Asset Purchase Agreement dated January 7, 2018 (as amended) between the Maker as buyer and the Holder as seller.

[The remainder of this page is intentionally left blank.]

IN WITNESS WHEREOF, the undersigned have duly caused this Note to be executed as of the date first above written.

**Maker:**

**HYPERBLOCK LLC.**

By: _Inder Saini_
Title: _Interim CFO_

**Parent:**

**HYPERBLOCK INC.**

By: _Inder Saini_
Title: _Interim CFO_

Acknowledged and Agreed:

**PROJECT SPOKANE, LLC**
By: PS Mgt LLC, its Manager

By: _[signature]_
Sean Walsh
Manager

[Signature Page to Secured Promissory Note]

{F:/Files/001017/001001/00663098.DOCX 2}