# EXHIBIT F

*Nelson et al. v. Walsh et al.*

Case No. 9:20-cv-00082-DWM

**SECURED PROMISSORY NOTE**

**US$2,000,000**                                                                                                June 19, 2019

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, **HYPERBLOCK LLC**, a Delaware limited liability company, and **HYPERBLOCK INC.**, an Ontario corporation (together, the "**Makers**"), hereby acknowledge themselves jointly and severally indebted to, and promise to pay to, or to the order of, **SEAN WALSH** (the "**Holder**"), the principal sum of **TWO MILLION ($2,000,000) US DOLLARS** in lawful money of the United States (collectively, the "**Debt**") together with accrued interest thereon as set out herein, at such place as the Holder may designate from time to time in writing.

Section 1. <u>Purpose</u>. The proceeds of the Debt shall only be used for the purchase of cryptocurrency mining servers to be deployed in the United States, with the specific make and model to be approved by the Holder, acting reasonably.

Section 1. <u>Maturity</u>. The Debt, including all interest accrued thereon, shall be due and payable in full on July 31, 2021 (the "**Maturity Date**"); provided, however, that at the Holder's option and upon prior written notice to the Makers, the Maturity Date may be extended to July 31, 2023 (the "**Extension Term**").

Section 2. <u>Interest Rate</u>. From and after the date hereof, this Note shall bear interest at the rate of fifteen percent (15%) per annum, payable in arrears on the last business day of each calendar quarter, commencing on June 28, 2019, until and including the date on which all of the Debt is repaid in full. During the Extension Term, the Makers shall be required to make quarterly blended payments of principal and interest, which payments shall be made in either cash or stock of Hyperblock Inc., at the Makers' option. At the commencement of the Extension Term, the Holder shall provide the Makers with an amortization schedule which sets out the required quarterly payments to the end of the Extension Term. The recording by the Holder in its accounts of the Debt owing and accrued interest thereon is, in the absence of manifest mathematical error, *prima facie* evidence of such indebtedness; provided that the failure of the Holder to record the same shall not affect the obligation of the Makers to pay to the Holder amounts outstanding under this Note. All interest due hereunder shall be computed on the per annum basis for the actual number of days (including the first day but excluding the last day) elapsed in a 365-day or 366-day year, as the case may be, and compounded annually.

Section 3. <u>Collateral</u>. This Note is secured by those certain security agreements dated on or about the date hereof between the Holder and each of the Makers (the "**Security Agreements**"). The Security Agreements and this Note are collectively referred to herein as the "**Loan Documents**".

Section 4. <u>Representations and Warranties.</u> The Makers represent and warrant to the Holder that (a) Hyperblock Inc. is an Ontario corporation duly organized and in good standing under Ontario law, Hyperblock LLC is a limited liability company duly organized and in good standing under Delaware law, and the Makers are each qualified to do business in each jurisdiction where such qualification is necessary, (b) the execution and delivery of this Note,

and the performance by the Makers of their obligations hereunder are within the powers of each of the Makers, respectively, and have been duly authorized by all necessary corporate action on the part of each Maker, respectively, (c) this Note is a legal, valid and binding obligation of the Makers, enforceable in accordance with its terms, against the Makers, jointly and severally, (d) the execution, delivery and performance of this Note by the Makers will not (i) violate any provision of any law, statute, rule or regulation or any order, writ, judgment, injunction, decree, determination or award of any court, governmental agency or arbitrator presently in effect having applicability to either of the Makers, (ii) violate or contravene any provision of the organizational documents of either of the Makers, or (iii) result in a breach of or constitute a default under any agreement, lease or instrument to which either of the Makers are bound.

Section 5.  Events of Default. If any one or more of the following events (collectively, "**Events of Default**") shall occur, then the Holder may, at its option, declare this Note to be immediately due and payable, together with all unpaid interest accrued hereon, without further notice or demand, but in the case of the occurrence of any of the events described in paragraph (d) below, this Note shall become automatically due and payable, including unpaid interest accrued hereon, without notice or demand.

(a)  Non-Payment. The Makers shall fail to pay any principal or interest due on this Note or any fees, charges, costs, or expenses under the Loan Documents when due, and such failure continues for a period of no less than five (5) days.

(b)  Non-Performance. The Makers shall fail to perform or observe any agreement, term, provision, condition, or covenant required to be performed or observed by the Makers hereunder or under any other Loan Document or other agreement with or in favor of the Holder, or any event of default shall occur under the respective Security Agreements.

(c)  Misrepresentation. Any financial information, statement, certificate, representation, or warranty given to the Holder by either of the Makers in connection with entering into this Note or the other Loan Documents and/or any borrowing thereunder, or required to be furnished under the terms thereof, shall prove untrue or misleading in any material respect (as determined by the Holder in the exercise of its reasonable judgment) as of the time when given.

(d)  Inability to Perform: Bankruptcy/Insolvency. Either of the Makers shall become insolvent or shall generally not pay its debts as they mature or shall apply for, shall consent to, or shall acquiesce in the appointment of a custodian, trustee or receiver for such Maker or for a substantial part of the property thereof or, in the absence of such application, consent or acquiescence, a custodian, trustee or receiver shall be appointed for either of the Makers or for a substantial part of the property thereof; or any bankruptcy, reorganization, debt agreement or other proceedings under any bankruptcy or insolvency law shall be instituted by or against either of the Makers.

Section 6.  Acceleration of Obligations. Upon the occurrence of any Event of Default, and the passage of any applicable cure periods, the Holder may at any time thereafter, by written notice to the Makers, declare the unpaid principal balance hereunder, together with the interest accrued thereon and other amounts owing hereunder and under the other Loan Documents, to be

immediately due and payable, and the unpaid balance shall thereupon be due and payable, all without presentation, demand, protest, or further notice or any kind, all of which are hereby waived, and notwithstanding anything to the contrary contained herein or in any of the other Loan Documents. Upon the occurrence of an Event or Default under Section 5(d), the unpaid principal balance hereunder, together with all interest accrued thereon and other amounts accrued here under and under the other Loan Documents, shall thereupon be immediately due and payable, all without presentation, demand, protest, or notice of any kind, all of which are hereby waived, and notwithstanding anything to the contrary contained herein or in any of the other Loan Documents. The Holder shall also have, in addition to any other rights it may have under applicable laws, the right to set off the indebtedness evidenced by this Note against any indebtedness of the Holder to either of the Makers.

Section 7. <u>No Waiver: Remedies</u>. No failure or delay on the part of the Holder in exercising any power or right under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any such power or right preclude any other or further exercise thereof of the exercise of any other power or right. No notice to or demand on the Makers in any case shall entitle the Makers to any notice or demand in similar or other circumstances. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

Section 8. <u>Governing Law</u>. This note is to be governed by and interpreted in accordance with the laws of the Province of Ontario, without reference to principles of conflicts of law.

Section 9. <u>Submission to Jurisdiction</u>. Each of the parties irrevocably and unconditionally (i) submits to the non-exclusive jurisdiction of the courts of (A) Ontario, located in Toronto, or (B) the State of New York, (ii) agrees that all claims in respect of any suit, action or proceeding arising out of or relating to this Note may be heard and determined in any such court, and (iii) waives, to the fullest extent permitted by law, any objection which it may now or hereafter have based upon doctrines of venue or forum incoveniens. Nothing herein shall limit the right of the Holder to bring proceedings against the Makers in the courts of any other jurisdiction. If the Makers commence any action in another jurisdiction or venue under any tort or contract theory arising directly or indirectly from the relationship created by this Note, the Holder at its option shall be entitled to have the case transferred to one of the jurisdictions and venues above-described, or, if such transfer cannot be accomplished under applicable law, to have such case dismissed without prejudice.

Section 10. <u>Waiver of Jury Trial</u>. Each of the Makers, by their acceptance of this Note, and the Holder, irrevocably waive any and all right to trial by jury in any legal proceeding arising out of or relating to this note or the transactions contemplated hereby.

Section 11. <u>Notices</u>. Any notice or other communication to any party in connection with this Note shall be in writing and shall be sent by e-mail, manual delivery, overnight courier or mail (postage prepaid) addressed to such party at such address as such party shall have specified to the other party hereto in writing. All periods of notice shall be measured from the date of delivery thereof if sent by e-mail or manually delivered or, from the first business day after the date of sending if sent by overnight courier, or from four days after the date of mailing if mailed.

Section 12.   <u>Successors and Assigns</u>. This Agreement shall (a) be binding upon the Makers and their respective successors and assigns, and (b) inure, together with the rights and remedies of the Holder hereunder, to the benefit of, and be enforceable by, the Holder and his successors, heirs, transferees and assigns. The Holder may at any time assign all or any of his rights and benefits hereunder and all references to the "Holder" are deemed to include a reference to such assigns. The Makers may not assign any of their rights or obligations hereunder.

Section 13.   <u>Maximum Rate</u>. Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to this Note, together with all fees, charges and other amounts that are treated as interest on this Note under applicable law (collectively, the "**Charges**"), shall exceed the maximum lawful rate (the "**Maximum Rate**") that may be contracted for, charged, taken, received or reserved by the Holder in accordance with applicable law, the rate of interest payable in respect hereof, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate.

Section 14.   <u>Presentment; Costs of Collection</u>. The Makers hereby waive presentment for payment, notice of dishonor, protest and notice of protest.

Section 15.   <u>Entire Agreement</u>. This Note embodies the entire understanding between the Holder and the Makers with respect to the subject matter hereof and thereof. This Note supersedes all prior agreements and under standings relating to the subject matter hereof.

Section 16.   <u>Counterparts</u>. This Note may be executed in any number of counterparts, each of which when delivered, either in original, PDF email or facsimile form, shall be deemed to be an original and all of which together shall constitute one and the same document.

[The remainder of this page is intentionally left blank.]

IN WITNESS WHEREOF, the undersigned have duly caused this Note to be executed as of the date first above written.

**Makers:**

**HYPERBLOCK LLC**

Per: *Jason Vaughan*
Name: Jason Vaugnan
Title: Site Manager

**HYPERBLOCK INC.**

Per: *[signature]*
Name: Roozbeh Ebbadi
Title: COO

**Holder:**

In the presence of:

_____        _____
Witness Signature                              SEAN WALSH