# EXHIBIT M

*Nelson et al. v. Walsh et al.*

Case No. 9:20-cv-00082-DWM

F I L E D
06/01/2020
Shirley Faust
CLERK
Missoula County District Court
STATE OF MONTANA
By: Latishia Atkins
DV-32-2020-0000604-OC
Deschamps, Robert L III
7.00

Quentin M. Rhoades
State Bar No. 3969
Robert Erickson
State Bar No. 9966
Rhoades, Siefert & Erickson PLLC
430 Ryman Street
Missoula, Montana 59802
Telephone: (406) 721-9700
qmr@montanalaywer.com
erickson@montanalawyer.com

*Pro Querente*

# IN THE FOURTH JUDICIAL DISTRICT COURT OF MONTANA
# MISSOULA COUNTY

| | |
|---|---|
| **STEVE NELSON, MICHAEL BOEHME and BONNER PROPERTY DEVELOPMENT, LLC,**<br><br>Plaintiffs,<br><br>**vs.**<br><br>**PROJECT SPOKANE, LLC, and SEAN WALSH,**<br><br>Defendants. | Cause No. **DV-32-2020-0000604-OC**<br>Dept. No. **1**<br><br><br>***DECLARATION OF STEPHEN NELSON*** |

## DECLARATION OF STEPHEN NELSON

Per MONT. CODE ANN. § 1-6-105, the undersigned declares under

oath as follows:

Exhibit G (1 of 3)

1. I am over eighteen (18) years of age, and a resident of Missoula County, Montana. I am mentally sound and competent to attest to the matters set forth herein. The matters set forth in this Declaration are based upon my own personal knowledge, unless otherwise stated.

2. I am a member and a Co-Manager of Bonner Property Development, LLC, a Montana limited liability company ("BPD"). Michael Boehme ("Boehme") is a member and Co-Manager of BPD. BPD is the owner of certain real property in Missoula County, Montana, commonly known as the "Planer Building at Bonner Mill Site" (the "Property").

3. In 2015, I had multiple telephone conferences with Sean Walsh ("Walsh") and Yan Alwaiss regarding his interest in leasing space at the Property for the purposes of operating a cryptocurrency mining operation in the form of a data center with a very large number of high-tech computer servers specifically designed to "mine" cryptocurrency, including Bitcoin.

4. After negotiations, I signed that certain Commercial Lease Agreement, effective March 1, 2016[1] (as amended to date, the "Lease"), on behalf of BPD, as landlord, with Project Spokane, LLC, a Colorado limited liability company ("Project Spokane"), as tenant. During the negotiations

---

[1] Ex. 1: Commercial Lease Agreement

Declaration of Stephen Nelson                                           2

related to the Lease, Walsh represented to me that he was acting in the capacity as an authorized agent of Project Spokane.

5.      BPD and Project Spokane subsequently amended the terms of the Lease arrangement, and I signed first and second amendments to the commercial lease agreement as a Co-Manager of BPD.[2]

6.      I was involved with and negotiated two loans from BPD to Project Spokane, specifically a loan in the original principal amount of $140,000.00, evidenced by a Promissory Note and a Security Agreement, each dated April 5, 2016, and a loan in the amount of $1,200,000.00, evidenced by a Promissory Note and a Security Agreement, each dated December 23, 2016.[3] These loans were later repaid by Project Spokane.

7.      In the summer of 2018, I had discussions with Walsh and Dan Stivers, who I understood to be the manager of the operations of Project Spokane, and then later of HyperBlock ("Stivers"), regarding the desire for Project Spokane to enter into a transaction whereby it would sell substantially all of its assets and assign its obligations under the Lease to HyperBlock LLC, a Delaware limited liability company ("HyperBlock").[4]

---

[2] Ex. 2:  (i) First Amendment to Commercial Lease Agreement dated December 2016, to be effective January 1, 2017,  *AND* (ii) Second Amendment to Commercial Lease Agreement dated July 13, 2017, and effective January 1, 2017

[3] Ex. 3:  (i) Promissory Note dated 04/05/2016; (ii) Security Agreement dated 04/05/2016; (iii) Promissory Note dated 12/23/2016; AND (iv) Security Agreement dated 12/23/2016

[4] Ex. 4: Emails among Rambod Peykar, Walsh, Stivers, Steve Nelson, Bjornson RE HyperBlock-Project Spokane transaction from 07/02/2018-07/09/2018

HyperBlock was formed in December 2017 as a Delaware limited liability company, and the sole member of HyperBlock was HyperBlock, Inc., an Ontario (Canada) corporation ("HBI").[5] Stivers was Sean Walsh's man on the ground for the Bonner data center. It was clear at the time that Walsh was actively involved with both Project Spokane and HyperBlock and Walsh would continue to be involved with the bitcoin mining operations at the Property, even after the transaction between HyperBlock and Project Spokane closed, in much the same manner as before.

8.      In a telephone conversation with Walsh in late June or early July of 2018, Walsh told me he would send me $100,000 worth of HyperBlock stock once the transaction with Project Spokane closed. I informed him that any stock would need to be not just to me personally but would also need to be shared with my partner. Neither I nor BPD ever received this stock.

9.      I met with Walsh at the Property in July of 2018 to discuss, among other things, the transaction between HyperBlock and Project Spokane.

---

[5] Ex. 5:  (i) Certificate of Formation of HyperBlock dated 12/29/2017; (ii) LLC Operating Agreement of HyperBlock dated 12/29/2017; (iii) Articles of Arrangement of HBI, filed with Ministry of Government and Consumer Services (Ontario), effective 7/10/2018;

10.     In connection with the HyperBlock-Project Spokane transaction, I executed consent letter on behalf of BPD, as Co-Manager, dated July 3, 2018,[6] and an Assignment, Assumption and Amendment of Lease effective July 10, 2018 (the "Assignment"),[7] under which HyperBlock assumed Project Spokane's obligations under the Lease. Walsh executed documents related to the acquisition of Project Spokane's assets by HyperBlock in the capacity of the Manager of PS Mgt LLC, a limited liability company which was the Manager of Project Spokane.[8]

11.     In connection with the acquisition of Project Spokane's assets by HyperBlock, all outstanding balances to BPD under the prior loans from BPD to Project Spokane were paid off.

12.     In the fall of 2018, I had discussions with Stivers and Walsh regarding HyperBlock's desire to expand its bitcoin mining operations by leasing additional space and constructing certain improvements on the Property, and we negotiated further modifications to the Lease. On November 2, 2018, I sent a term sheet[9] to David Bjornson, BPD's counsel ("Bjornson"), related to the lease modification and construction of the

---

[6] Ex. 6: Email from Kristen Martin (Walsh's executive assistant) to Nelson on 12/07/2018 at 1:46 PM with executed assignment and Project Spokane consent letter, dated 07/03/2018 (signed by Walsh on behalf of Project Spokane and by BPD)

[7] Ex. 7: Assignment and Assumption and Amendment of Lease, executed effective July 10, 2018

[8] *See* Ex. 5 and Ex. 6

[9] Ex. 8: Email from Nelson to Bjornson dated 11/02/2018 and attached term sheet

improvements at the Property. I had drafted and revised the term sheet based on my discussions with Walsh and Stivers. A provision included on the term sheet was "UCC filings & lien releases for each job & piece of equipment putting Bonner Property Development LLC in a first lien position." This term sheet was sent to Bowditch for his review and discussion with Walsh.[10] In addition, I had multiple correspondence with Walsh and on which Walsh was copied related to HyperBlock's desire to expand the leased space and construct improvements on the Property.[11]

13.     HyperBlock applied for a loan from Bank of Montana ("BOM") to finance the expansion through the construction of additional improvements and the acquisition of certain additional equipment. BOM was not willing to provide the loan to HyperBlock withoutcredit enhancements from BPD and its principals. To induce BOM to provide the loan to HyperBlock, BPD and its principals (specifically Boehme and I) agreed to provide certain credit enhancements, described in more detail below.

14.     In connection with HyperBlock's application to BOM for the loan, I was copied on email correspondence from representatives of HyperBlock, including Kristen Martin and Eric So, where they provided

---

[10] Ex. 8: (i) Term sheet provided from Nelson to Bjornson dated 11/02/2018; (ii) Bjornson emailing term sheet to Bowditch
[11] Ex. 9: Email chain with multiple corr. between Walsh, Nelson, and Jake Pelczar of BOM on 11/27/2018

certain governing documents and resolutions of HyperBlock and HBI. The resolutions and documents provided in connection with the BOM Loan indicated Walsh was designated as a party authorized to execute and deliver documents on behalf of HBI and HyperBlock, as the Chief Executive Officer of HBI, the sole member of HyperBlock.[12] [13]

15.    BOM ultimately provided HyperBlock a loan in the principal amount of up to $2,625,000 on or around December 14, 2018 (the "BOM Loan"). All documents related to the BOM Loan that required HyperBlock's signature were executed by Walsh on behalf of HyperBlock.[14]

16.    As part of the required credit enhancements for the BOM Loan, I personally, along with each of Boehme and BPD, each signed a Commercial Guaranty and pledged certain of our assets to guarantee and secure HyperBlock's obligations under the BOM Loan. I executed certain documents, both in my individual capacity and as a Co-Manager of BPD, including but not limited to a Commercial Guaranty from me personally, a Commercial Guaranty from BPD, and a Deed of Trust, an Assignment of

---

[12] Ex. 10:  Resolutions of HyperBlock and HBI: (i) Limited Liability Company Resolution to Borrow/Grant Collateral/Subordinate Debt of HyperBlock, signed by Walsh as CEO of HBI, sole member of HyperBlock on 12/14/2018; (ii) Resolution of Corporate LLC Member, signed by Walsh as CEO of HBI, on 12/14/2018; (iii) Resolution of Directors of HBI (including Walsh) dated 12/03/2018

[13] *See also* Ex. 5 (Formation and governing documents of HyperBlock and HBI)

[14] Ex. 11: Select BOM Loan documents executed by Walsh on behalf of HyperBlock: (i) Promissory Note, (ii) Business Loan Agreement, (iii) Landlord's Consent to Assignment, (iv) Subordination Agreement – Lease, (v) Disbursement Request and Authorization, (vi) Errors and Omissions Agreement, (vii) General Authorization, (viii) Consent to Disclosure of Income Tax Return Information, (ix) IRS Form W-9, (x) Beneficial Ownership Form

Rents, and a Landlord's Consent to Assignment, each by BPD related to the Property. Boehme also executed and delivered a Commercial Guaranty regarding his obligations as a personal guarantor of HyperBlock's obligations related to the BOM Loan.[15] Neither I nor Boehme personally received any consideration from HyperBlock in exchange for each of us providing a personal guaranty.

17.    Walsh negotiated and executed documents on behalf of HyperBlock related to BPD's credit enhancements for the BOM Loan, including a Credit Enhancement Agreement dated December 13, 2018 (the "Credit Enhancement Agt."),[16] and a Security Agreement, dated December 13, 2018 (the "Security Agt.").[17] Walsh also negotiated and executed a Third Amendment to Commercial Lease Agreement on behalf of HyperBlock, effective December 13, 2018 ("Third Amendment").[18] I signed each of the Credit Enhancement Agt., Security Agt., and Third Amendment as a Co-Manager of BPD.

18.    Walsh executed the Security Agt. and Credit Enhancement Agt. on behalf of HyperBlock and granted BPD a first lien security interest in the

---

[15] *See* Ex. 12: BOM Loan documents signed by BPD and its principals: (i) Commercial Guaranty from Nelson; (ii) Commercial Guaranty from BPD; (iii) Deed of Trust; (iv) Assignment of Rents; (v) Landlord's Consent to Assignment; (vi) Hazardous Substances Certificate and Indemnity Agreement; and (vii) Commercial Guaranty from Boehme
[16] Ex. 13: Credit Enhancement Agreement
[17] Ex. 14:  Security Agreement
[18] Ex. 15: Third Amendment to Lease

assets HyperBlock acquired with the BOM Loan for the purposes of securing HyperBlock's obligations to BPD under the Lease and the Credit Enhancement Agt..[19] I agreed to provide the credit enhancements and guarantee the BOM Loan because Sean, negotiating and signing documents, provided security interest in favor of BPD which was a first priority lien on the assets of HyperBlock to be acquired with BOM Loan. Had I known Walsh and Project Spokane had security interests or that they did not actually intend to provide BPD's first-priority lien as promised, I would not have provided the requested credit enhancements and the BOM Loan would not have been approved by BOM or closed. In other words, without the first lien security interest provided in the documents, there would not have been financing for Hyperblock to purchase new assets.

19.    Throughout November and December of 2018, Walsh and Jaymie Bowditch ("Bowditch"), of Boone Karlberg PC, as attorney for HyperBlock, had multiple correspondence and conversations with BPD's counsel related to BPD's security interests, various issues related to the contemplated financing and expansion, and the details regarding the intent of the parties if a default should occur. These negotiations included specific discussions about BPD's security interests and revisions to the Security

---

[19] *See* Security Agt. and Credit Enhancement Agt.

Agt., Credit Enhancement Agt. and the Third Amendment to Commercial Lease Agreement, to address, among other things, specific provisions related to BPD's first lien priority security interest in the assets acquired through the BOM Loan,[20] and HyperBlock's desire that the Security Agt. no longer secure HyperBlock's obligations under the Lease once the BOM Loan was paid off.[21] Bowditch made revisions to the Security Agt. and expressly acknowledged BPD's security interest in the following statement:

> "However, I do not want the security agreement to secure all obligations under the lease since the lease will be in effect well after the Bank of Montana loan is paid. I have therefore agreed to retain the language in Section 1 of the attached Security Agreement stating that said agreement secures obligation HB owes under the lease but have added language to clarify that the 40 MW substation only serves as collateral under the lease until the BoM loan is paid."[22]

Walsh was copied on most of the correspondence I reviewed from Bowditch and expressly weighed in on and consented to various revisions to the documents and terms through emails, as well as participating in the negotiation process through Bowditch.[23]

---

[20] Ex. 16: Emails with Bowditch, Walsh, Nelson, Bjornson, Stivers, regarding Credit Enhancement Agreement and Third Amendment, including Email from Bowditch dated 12/07/2018 at 4:06 PM with attached redline of Credit Enhancement Agt. and Third Amendment in which Bowditch revised language in the Credit Enhancement Agt., including specifically the provisions related to HyperBlock's obligation to maintain BPD's first lien position in Borrower's Pledged Assets at all times.

[21] Ex. 17: Emails from Bowditch dated 12/11/2018 at 5:46 PM and at 6:15 PM with attached Security Agt.

[22] Id.

[23] Ex. 18: Emails with Bowditch, Walsh, Nelson, Bjornson, Stivers, et. al., from December 2018 related to agreements, revisions, and Walsh's participation in negotiations process

20.     The Credit Enhancement Agt. specifically provided in Section 1.2 that BPD is provided a "first lien security interest" in the assets acquired with the BOM Loan.[24] There was an affirmative covenant in §1 of the Security Agt. and in §4.1.f. of the Credit Enhancement Agt. that [HyperBlock would] "Execute such financing statements and other documents as [BPD] may reasonably request to perfect and continue a first position security interest in Borrower's Pledged Assets in favor of [BPD]."

21.     During the course of these discussions, all indications from Walsh and Stivers indicated the intention to provide the contractually committed first-lien priority security interest to BPD, and there was no indication by Walsh, Stivers, or any other party on behalf of HyperBlock or Project Spokane that indicated an intention otherwise, or that Walsh or Project Spokane was intending to levy against any assets acquired by the BOM Loan.

22.     The first lien position on any assets acquired with the BOM Loan was a key term and material inducement for me to consent to the proposed transaction, without which I would not have agreed to personally

---

[24] *See* §1.2 of Credit Enhancement Agt.: "The reimbursement obligation [of HyperBlock to reimburse BPD and its principals] shall be secured by a first lien security interest in the new assets and other improvements that Borrower intends to acquire with the proceeds from the Bank Loan and the New Equity ("Borrower's Pledged Assets"). Borrower shall execute and deliver a security agreement contemporaneously with this Agreement in form and substance acceptable to Pledgor and its counsel ("Security Agreement"). Borrower covenants to obtain lien waivers and releases from contractors and suppliers and to maintain Pledgor's first lien position in Borrower's Pledged Assets at all times."

provide the credit enhancements which facilitated the financing for HyperBlock, and without which I would not have voted to approve BPD providing the credit enhancements which gave HyperBlock the ability to obtain the BOM Loan.

23.    In January 2019, I learned that it was taking HyperBlock longer than anticipated to raise the capital required for the construction of the improvements, and I had conversations with Stivers related to modifications to the terms of the BOM Loan and amendments to the Lease.

24.    On or about January 23, 2019, I signed on behalf of BPD and the following documents, each related to Walsh's request to modify the premises leased by HyperBlock and related to the parties' intent that all "fixtures" on the Property were to remain on the Property and be owned by BPD upon the termination or expiration of the Lease, in addition to certain other pieces of property that were agreed upon by the parties to belong to BPD at the termination of the Lease: the Side Agreement to the Third Amendment to the Lease (the "Side Agreement") and the Fourth Amendment to Commercial Lease Agreement (the "Fourth Amendment").[25] The Fourth Amendment included Exhibit E-2 to the Lease, which listed

---

[25] Ex. 19:  (i) Fourth Amendment to Commercial Lease Agreement, dated 01/23/2019; (ii) Side Agreement, dated 01/23/2019

certain items that were agreed to remain with the Property at the termination or expiration of the Lease (the "BPD Property"). Walsh executed the Fourth Amendment and the Side Agreement in the stated capacity as "Chief Executive Officer" of HyperBlock.[26]

25.    Also in January 2019, I was party to correspondence and discussions with Walsh, Stivers, Bowditch, and BPD's counsel regarding the intent of Project Spokane and HyperBlock to restructure a deferred obligation that HyperBlock owed to Project Spokane. In exchange for Project Spokane's agreement to so, HyperBlock agreed to a collateral assignment of the Lease, which required the consent of BPD.[27] I executed the collateral assignment of lease as a Co-Manager of BPD.[28] Walsh signed on behalf of Project Spokane.

26.    During these negotiations, Walsh acknowledged the promise of Project Spokane to subordinate its interests in the leased premises to those of BPD and the guarantors on the BOM Loan, agreeing that in the event of default under the BOM Loan, if Project Spokane did not step in as tenant under the assignment and continue to run the bitcoin mine, Project

---

[26] *See* Fourth Amendment and Side Agreement (Ex. 19)
[27] Ex. 20: Emails between Bowditch, Walsh, Bjornson, Nelson, etc., RE restructuring from January-February 2019
[28] Ex. 21: Collateral Assignment of Lease, dated February 1, 2019

Spokane's rights to HyperBlock's assets would be subject to those of BPD and its principals who were guarantors on the BOM Loan.[29]

27.    By December 2019, Hyperblock had still not drawn down the BOM Loan due to challenges in its expansion plans. In December of 2019, Walsh, Stivers, and I discussed changing plans for the proceeds of the BOM Loan to allow HyperBlock to be more profitable by upgrading the computer hardware used for the bitcoin mining operations, and I agreed on behalf of BPD to allow HyperBlock to use the funds from the BOM Loan for the acquisition of 1,493 Bitmain S17+ Servers, with PSU (the "Financed Equipment") instead of other equipment and improvements to the Property. BPD and its principals consented to HyperBlock's use of the BOM Loan to acquire the Financed Equipment.[30]

28.    In connection with this adjustment to the plans for the use of proceeds of the BOM Loan, Walsh negotiated with BPD a "Modification of Lease Agreement, Credit Enhancement Agt., Security Agt. and Side Letter to Third Amendment to Lease Agreement" (the "Modification"). The initial draft of this document was provided to Walsh by Stivers with a request that

---

[29] Ex. 22: Emails with Bowditch, Walsh, Nelson, to Bjornson regarding priority of BPD's interest and rights in event of default under BOM Loan from January-February 2019

[30] Ex. 23:  Emails with Nelson, Stivers, et. al. from December 2019 regarding HyperBlock's desire to use the funds for the acquisition of new servers, modification of lease, and request that BPD and its principals consent to HyperBlock's use of the BOM Loan to acquire the Financed Equipment, including changes to Modification Section 5.b. regarding negotiated language regarding equipment in place on 12/31/2019 not included in BPD's first-priority security interest

Walsh review and comment on the draft Modification, and Walsh was involved in subsequent correspondence related to the revisions to the Modification.[31]

29.    Pursuant to negotiations between and among the parties, including Walsh, the Modification was finalized and was signed by me on behalf of BPD, effective December 31, 2019.[32] Walsh executed the Modification on behalf of HyperBlock. The Modification provides in part that the Security Agt. was "*modified to include ALL personal property owned by Tenant which is located currently at the Property (and not just newly acquired New Servers), but specifically excluding all servers owned by Tenant and located on the Property as of the date of this Modification*." The Modification maintained in effect the first lien position to be held on any assets acquired through the BOM Loan as provided in the Credit Enhancement Agt., which now was clearly only the 1,493 servers comprising the Financed Equipment which was directly acquired by disbursement of the BOM Loan proceeds.

30.    Without BPD's continued first lien position on HyperBlock's assets acquired with the BOM Loan, and relying on representations and

---

[31] Ex. 24: Emails among Walsh, Stivers, Bowditch, Bjornson, Nelson, etc. regarding negotiations and revisions to Modification

[32] Ex. 25: Modification of Lease Agreement, Credit Enhancement Agreement, Security Agreement and Side Letter to Third Amendment to Lease Agreement, effective December 31, 2019

statements of Walsh, Stivers and Bowditch, as an agent and attorney of HyperBlock, related to BPD's interests and assurances that BPD's first lien security interest existed with respect to the Financed Equipment purchased with the BOM Loan, I would not have agreed (personally or as a member or Co-Manager of BPD) to the change in terms regarding the BOM Loan, or authorized disbursement to purchase the Financed Equipment. The continuation of BPD's first-lien priority security interest was a key term and material inducement to my consent to the change in terms.

31.     In January 2020, I had communications with Stivers and Walsh regarding HyperBlock's desire to execute a change in terms agreement related to the BOM Loan to increase the amount that could be advanced under the BOM Loan to $3,540,000.00.[33] BPD required supplemental security provisions, including the placement by HyperBlock of funds into a cash account as security an amount matching the amount drawn in excess of $2,625.000.

32.     On or about January 10, 2020, I executed on behalf of BPD and Walsh executed on behalf of HyperBlock certain documents related to the change in terms for the BOM Loan.[34] I again saw provided resolutions of

---

[33] Ex. 26: Email from Stivers to Nelson on 01/02/2020 at 12:45 PM and 3:26 PM regarding Modification

[34] Ex. 27: Documents related to change in terms, each dated 1/10/2020: (i) Change in Terms Agreement; (ii) Guarantor Addendum; (iii) Modification of Deed of Trust

HyperBlock and HBI that showed Walsh's authority to sign on behalf of HyperBlock.[35]

33.    Proceeds of the BOM Loan in the amount of $2,625,000 were used to acquire the Financed Equipment.[36] No amount was drawn down on the BOM Loan in excess of that amount.

34.    I am aware of certain UCC Financing Statements that were filed related to BPD's security interests in certain assets of HyperBlock.[37]

35.    On or around May 19, 2020, I received on behalf of BPD a Notice of Disposition of Collateral by Public Sale (the "Notice")[38] stating the intent of Project Spokane and Walsh to sell certain assets of HyperBlock's at a public sale scheduled for June 3, 2020 at 12:00 p.m. Eastern time (the "Sale") to satisfy obligations of HyperBlock to Walsh and Project Spokane. The items to be sold at the Sale include the Financed Equipment and certain items of the BPD Property which Hyperblock is not entitled to sell or

---

[35] Ex. 28: Resolutions of HyperBlock and HBI related to change in terms: (i) Certified Extract of Minutes of Meeting of Board of Directors of HBI held on 1/7/2020, dated 1/8/2020 (RE CIT) (Walsh reported to Board, authorized Walsh to sign on behalf of HBI and HyperBlock; Walsh signed extract as director of HBI); (ii) Limited Liability Company Resolution to Borrow/Grant Collateral/Subordinate Debt of HyperBlock, signed by Walsh as CEO of HBI, sole member of HyperBlock on 01/10/2020; (iii) Resolution of Corporate LLC Member, signed by Walsh as CEO of HBI, on 1/10/2020

[36] Ex. 29: Evidence of use of BOM Loan proceeds

[37] Ex. 30: BPD's UCC filings: (i) UCC Financing Statement filed with the Montana Secretary of State on January 7, 2019, as File # 1901072389302, and amended by that certain UCC Amendment filed with the Montana Secretary of State on January 20, 2020, as File # 20200059663; (ii) that certain UCC Financing Statement recorded on January 22, 2019, in the office of the Clerk and Recorder of Missoula County, Montana, as Document No. 201900835, Book 1007, Page 1370, as a fixture filing against the Property; and (iii) that certain UCC Financing Statement filed with the Delaware Secretary of State on May 22, 2020, as File # 20203609866.

[38] Ex. 31: Notice of Disposition of Collateral by Public Sale, dated May 19, 2020

remove from the Property. It was my belief that if Project Spokane or Walsh had any security interest in the assets listed in the Notice, BPD's first lien position respecting the Financed Equipment would have had priority. Any security interest of Walsh or Project Spokane would be subordinate to BPD's security interests in the Financed Equipment and BPD's ownership interest in the BPD Property. The Notice does not include any mention of the Security Agt., the Credit Enhancement Agt. or the Modification respecting BPD's security interest in the assets to be sold. Walsh had just negotiated and executed the Modification on December 31, 2019, which specifically addressed modifications to the Security Agt., a mere 4 ½ months previously.

36.     Moreover, some of the assets listed in the Notice are fixtures and belong to BPD – not HyperBlock – and Project Spokane and Walsh have no interest in those assets whatsoever, and therefore no right to sell them or to encumber them. These include most critically 467 industrial fans, 58 power transformers, 445 electrical breaker panels, among other items. These are items that are permanently installed and have become so related to the building and property that, upon information and belief, any interest in them would arise under real property law, not under the UCC. If the roof fans are removed from the building, for example, there will be 467

gaping holes in the roof of the building, creating a substantial urgent problem and costing a large amount of money to repair. And, as noted above, HyperBlock, through Walsh, contractually committed very specifically and clearly in the Fourth Amendment that these items, and other items, would remain with the property. Now Project Spokane and Walsh state that they intend to illegally sell these fixtures as part of their sale even though Project Spokane and Walsh have no rights in them.

37.    Until I received the Notice of Sale on May 19, 2020, I did not receive any communication from Walsh or any other party on behalf of HyperBlock or Project Spokane that indicated there was an intention not to provide the contractually committed first-lien priority security interest to BPD, or that Walsh or Project Spokane was intending to levy against any assets acquired by the BOM Loan. In all of the conversations I had with Walsh and Stivers prior to May 19, 2020, and even in a conversation I had with Walsh and Stivers following May 19, 2020, Walsh and Stivers stated it was their intent to make the continuation of payments under the BOM Loan a priority. We discussed having Project Spokane (or another business entity with Walsh as a principal) take over the Lease and continue the bitcoin mining operations at the Property, with some potential modifications to the Lease. We also discussed BPD consenting to some temporary

accommodations regarding payment terms under the Lease to help facilitate the transfer of HyperBlock's energy contract from its previous energy provider to a new energy provider and to allow HyperBlock to continue its operations. This was necessary because HyperBlock's contract with its prior energy provider, Energy Keepers, Inc., was terminated due to HyperBlock's default in payment of an outstanding balance of over $800,000.00, which defaults I understand commenced in February 2020, and HyperBlock was requesting a temporary reduction in rent or ability to use reserve funds for rent payments. Stivers of HyperBlock represented in March 2020 that HyperBlock was negotiating with Talen Energy, of Colstrip, Montana for a new power supply contract. I subsequently learned that in May 2020 Energy Keepers filed a court action against HyperBlock, Walsh, and Project Spokane alleging that both Project Spokane and HyperBlock worked out of the same facility just outside of Missoula, Montana, and owe more than $3.7 million for their power use.[39]

38.     The Notice asserted that both Project Spokane and Walsh (personally) had a first-priority security interest in HyperBlock's personal

---

[39] Ex. 32: Article RE: Tribal Power Co. Says Cryptocurrency Miner Owes $3.7M; *See also* Case No. 9:20-cv-00076-DWM filed in UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA MISSOULA DIVISION: *Sx̣ʷnq̓els l Suẇeċm / Ksukłiłmumaɫ ʾA·k aɫmukwaʾits, Incorporated d/b/a Energy Keepers, Incorporated, A federal corporation wholly owned by the Confederated Salish and Kootenai Tribes v. HYPERBLOCK LLC, A Delaware limited liability company, PROJECT SPOKANE LLC, A Colorado limited liability company, and SEAN WALSH, Controlling Member of Hyperblock LLC and Project Spokane LLC*

property, including without limitation all equipment and fixtures of HyperBlock, and stated the property would be sold free and clear of BPD's lien. The Notice alleged that Walsh's rights in HyperBlock's assets arose under certain agreements between Walsh and HyperBlock, dated June 19, 2019, and Project Spokane's rights in HyperBlock's assets arose under certain agreements between Project Spokane and HyperBlock, dated July 10, 2018.

39.     When I spoke with Walsh and Stivers following my receipt of the Notice, they both continued to state that Project Spokane's, HyperBlock's, and Walsh's intentions were to work with BPD to arrange for Project Spokane's assumption of HyperBlock's obligations under the Lease and the BOM Loan. However, Walsh and Stivers were unwilling to commit these representations and assertions to writing. It is my belief, based upon their refusal to commit any of the statements in writing or sign any agreements and based upon their actions that demonstrate they are not attempting to work with me or BPD to resolve these issues, that Walsh made these statements in order to lull me into thinking Walsh and Project Spokane would cooperate until the Sale occurs, at which time it would be too late for me to stop it and protect myself and BPD from the negative consequences that would result.

40.    Bjornson, on behalf of BPD, sent a written response to Walsh and Peter Ito ("Ito"), attorney for Walsh and Project Spokane, on May 25, 2020, to notify them of the defects in the Notice including the failure to account for BPD's first lien priority security interests in certain of HyperBlock's assets, specifically the Financed Equipment, and BPD's nonpriority security interests in the remainder of the property subject to the Sale.[40] The response also points out that some of the property listed for sale are fixtures and personal property that remain with the Property under the terms of the Commercial Lease and are not subject to sale.

41.    Bjornson also sent correspondence Ito and Walsh on May 25, 2020, that included an offer made with the intent of resolving the dispute and making the most of a bad situation for everyone involved.

42.    In subsequent conversations, including in a telephone conference that I attended on May 26, 2020, Walsh and Ito informed me, Bjornson, Stivers, Boehme, and Mike Heisey (the general manager of the Property) that Walsh/Project Spokane were not planning to acknowledge the contractually committed first lien security interest, and they were not planning to work with BPD to negotiate agreements between Project

---

[40] Ex. 33: Email from Bjornson dated 05/25/2020 with attached notice regarding defects in notice of disposition of collateral by public sale

Spokane and BPD for a resolution that could have prevented this litigation. Walsh and Ito also stated in this telephone conference that they intended to go forward with the Sale and they did not intend to recognize BPD's claimed first lien security interest in the Financed Equipment or to exclude the BPD Property from the Sale, nor were they willing to revise the Notice to reflect BPD's security interests. Ito also sent written correspondence relaying these intentions of Project Spokane and Walsh to continue with the Sale and to disregard BPD's security interests.

43.     On May 26, 2020, BOM sent a notice of default to HyperBlock related to HyperBlock's defaults under the BOM Loan (I received the notice of default as a guarantor of HyperBlock's obligations related to the BOM Loan).[41]

44.     Pursuant to the documents related to the BOM Loan, upon a default under the BOM Loan, BOM is entitled to foreclose on the Property, proceed against the guarantors for collection, or exercise other remedies under the documents related to the BOM Loan.

45.     Based on the provisions in the Credit Enhancement Agt., Security Agt., and Modification related to the obligation to provide such documents as may be necessary to reference the priority of BPD's security

---

[41] Ex. 34: BOM Notice of Default

interests in certain assets of HyperBlock, Bjornson sent Ito and Walsh a draft subordination agreement with the request it be executed by Project Spokane and Walsh.[42] Ito communicated that Walsh and Project Spokane refused to execute the same or to acknowledge the contractually committed first lien security interest, even when presented with the specific various provisions and covenants in the agreements negotiated and executed by Walsh that obligated such documents be provided related to BPD's first-priority lien.[43]

46.    Due to HyperBlock's defaults under the Lease, Credit Enhancement Agt., and Security Agt,, BPD sent HyperBlock a notice of default on May 31, 2020.[44]

47.    I have viewed advertisements on Twitter posted by Walsh related to the Sale and news articles referencing the Sale and Walsh's conduct related to Project Spokane and HyperBlock.[45] I also saw news articles related to Walsh's resignation as CEO of HyperBlock in April.[46]

---

[42] Ex. 35: Email from Bjornson on 05/26/2020 at 9:30 PM with draft subordination agreement

[43] Ex. 36: (i) Email from Ito to Bjornson on 05/27/2020 at 2:51 PM; (ii) Email from Ito to Bjornson on 05/26/2020 at 4:18 PM

[44] Ex. 37: BPD notice of default to HyperBlock

[45] Ex. 38: (i) bitcoinnews.com article regarding the Sale; (ii) Twitter posting regarding Sale; and (iii) Missoula Independent Article (accessed via

[46] Ex. 39: Press Release Published: April 24, 2020 at 10:15 a.m. ET: "Press Release: HyperBlock Provides April 2020 Status Update on Promissory Note Acceleration of Maturity Dates; Sean Walsh Resigns as Chairman and CEO of Hyperblock Inc." at https://www.marketwatch.com/press-release/hyperblock-provides-april-2020-status-update-on-promissory-note-acceleration-of-maturity-dates-2020-04-24?mod=mw_more_headlines&tesla=y

48.     If the Sale is allowed to proceed and the BPD Property and the Financed Equipment is sold, BPD will experience substantial financial harm, and it will also detrimentally impact me and Boehme personally in a substantial and material manner. It is my belief that if the Sale is allowed to occur, Walsh and Project Spokane will be allowed to benefit personally from their failure to follow through with and honor the contractual obligation made by Walsh as agent to provide a first lien security interest in the Financed Equipment, and from their misrepresentations that induced BPD and its principals to expose themselves to risk and extend credit on behalf of HyperBlock.

49.     I declare under penalty of perjury that the foregoing is true and correct.

## *[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURE PAGE FOLLOWS]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Missoula, Montana, on this 31st day of May 2020.

Stephen Nelson